## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **BMG RIGHTS MANAGEMENT** | ) | |
| **(US) LLC, and ROUND HILL** | ) | |
| **MUSIC LP** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  1:14-cv-1611(LOG/JFA) |
| | ) | |
| **COX ENTERPRISES, INC.,** | ) | |
| **COX COMMUNICATIONS, INC.,** | ) | |
| **COXCOM, LLC** | | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiffs BMG Rights Management (US) LLC and Round Hill Music LP (collectively "Plaintiffs"), by and through their counsel, hereby allege as follows:

### Nature of Case

1.      Massive online pirating of copyrighted music, movies and other digital works has evolved over the years spurred on by technological advancements.  The distribution of perfect copies of digital content has moved from an Internet user downloading an entire file from a host server, to Napster-like peer-to-peer [P2P] services where an Internet user can obtain a file from another Internet user, and now to BitTorrent systems that distribute the copies in pieces using many users' computers working together.  Today, BitTorrent systems are like the old P2P systems on steroids.  BitTorrent systems allow users to join a "swarm" of collaborating host computers to download and upload copyrighted works from each other simultaneously. When a file is requested, BitTorrent software identifies multiple host computers with the identical file and will take small pieces of the requested file from each of those host computers and download

them simultaneously onto the requester's computer where they will be reassembled into one file. Thus, BitTorrent allows large files to be transferred, like entire catalogs of recordings, quickly and efficiently, all for free and without authorization. Moreover, the BitTorrent systems are designed so that the more files a user shares, the faster the user's downloads are. In other words, BitTorrent systems reward the users who make the most copyrighted works available for download. This results in a much more efficient system for copying – speeding up the process and shrinking the bandwidth for uploading and downloading. In its September 24, 2013 report, NetNames estimated that 99.97% of non-pornographic files distributed by BitTorrent systems infringe copyrights. Accordingly, the current scope of copyright infringement on the Internet is, as the Supreme Court has recognized, "staggering." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 923 (2005).

2.      Plaintiffs own or have the exclusive rights to administer or publish the copyrights in numerous popular musical works, recordings, and compositions. In an effort to combat the massive pirating of their copyrighted works, Plaintiffs' agent, Rightscorp, Inc., has developed a technological system that identifies actual infringements and the perpetrators of these infringements (by IP address, port number, time, and date) by monitoring BitTorrent systems and extracting information about the infringing activity, including, *inter alia,* the IP address, internet service provider, the infringing content being uploaded or downloaded, and the suspected location of the host computer accessing BitTorrent networks. The system also has the capability to acquire entire files from the infringing host computers. Since 2012, Plaintiffs, through their agent, using this system, have notified Internet service providers ("ISPs") of specific instances of first-time and repeat copyright infringement committed by their account holders and have requested that the ISPs notify their account holders of their infringements.

2

3.      ISPs are required under the Digital Millennium Copyright Act ("DMCA") to implement and maintain a policy that provides for the termination of subscribers and account holders that are repeat copyright infringers in order to maintain the safe harbor protection afforded by the DMCA from copyright infringement claims that the ISPs otherwise would enjoy. This requirement is designed to effectuate one of the purposes of the DMCA that "those who repeatedly or flagrantly abuse their access to the Internet through disrespect for the intellectual property rights of others should know that there is a realistic threat of losing that access." H.R. Rep. No. 105-551, pt. 2, at 61.

4.      Defendants Cox Enterprises, Inc., Cox Communications, Inc. and CoxCom, LLC (collectively, "Cox" or "Defendants") have been notified by Plaintiffs, through their agent of tens of thousands of repeated and blatant infringements of Plaintiffs' copyrighted works by Cox account holders.  Despite these notices and its actual knowledge of repeat infringements, Cox has continued to permit its repeat infringer subscribers to use the Cox network to continue to infringe Plaintiffs' copyrights without consequence.  And, despite its published policy to the contrary, Cox's actual policy is to refuse to suspend, terminate, or otherwise penalize subscriber accounts that repeatedly commit copyright infringement through its network in any meaningful numbers. Cox subscribers do not face any realistic threat of account termination even where Cox has specific and actual knowledge of its subscribers' blatant repeated infringement.

5.      Cox's policy of refusing to terminate repeat infringers protects a large revenue stream that Cox receives every month from the many repeat infringers who are its subscribers and account holders.  Cox's policy to protect its repeat infringer subscribers and account holders at the expense of copyright owners precludes Cox from relying on the safe harbor protections of the DMCA.  Accordingly, Cox's knowledge of specific repeated infringements by identified

subscribers occurring through its network and, despite such knowledge, its material contribution, participation, and enablement and profiting from such infringement makes Cox liable for contributory and vicarious copyright infringement.

## Jurisdiction and Venue

6.      This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101 *et seq*.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

8.      This Court has personal jurisdiction over Cox because Cox resides in and/or does systematic and continuous business in Virginia and in this judicial district.  Cox provides a full slate of services in Virginia, including TV, Internet, and phone service, among others.  Cox also has a number of stores and service centers within this judicial district including stores located at 5958 Kingstowne Towne Ctr., Ste. 100, Alexandria, VA 22315 and 11044 Lee Hwy., Suite 10, Fairfax, VA 22030 and 3080 Centerville Road, Herndon, VA 20171.

9.      Each of the Cox defendants in the past has been a party, as a plaintiff or a defendant, in this Court.

10.      In addition, many of the acts complained of herein occurred in Virginia and in this judicial district.  For example, a number of the most egregious repeat infringers on Cox's network reside in Virginia and this judicial district.  Plaintiffs have identified hundreds of Cox subscribers' accounts suspected of residing in Virginia who have repeatedly infringed one or more of the Plaintiffs' copyrighted works.  By way of example, Cox subscriber account having had IP address 70.168.128.98 at the time of the infringement, believed to be located in Fairfax, Virginia, was used to infringe twenty-four particular copyrighted works 1,586 times since

December 9, 2013. A different Cox subscriber's account also believed to be located in Fairfax, having had IP address 72.192.248.207 at the time of infringement, has been used to infringe a different copyrighted work 284 times since December 4, 2013. Yet another Cox subscriber's account believed to be from Alexandria, VA, having had IP address 98.163.68.25 at the time of the infringement, was used to infringe a different copyrighted work 181 times since October 19, 2013.

11.     Venue in this District is proper under 28 U.S.C. § 1391(b)-(c), and/or 28 U.S.C. § 1400(a). A substantial part of the acts of infringement complained of herein occurs or has occurred in this District, and/or this is a judicial district in which Cox resides or may be found.

## The Parties

12.     Plaintiff BMG Rights Management (US) LLC is a Delaware company, with its principal place of business at 1745 Broadway, New York, NY 10019.

13.     Plaintiff Round Hill Music LP is a Delaware limited partnership, with its principal place of business at 400 Madison Avenue, Floor 18, New York, NY 10017.

14.     Plaintiffs are engaged in the business of acquiring, owning, publishing, administering, licensing, and/or otherwise exploiting copyrights in musical compositions. Plaintiffs invest substantial sums of money, as well as time, effort, and creative talent, to acquire, administer, publish, license and otherwise exploit such copyrights, on their own behalf and/or on behalf of songwriters and musicians. Plaintiffs are the copyright owners or owners of exclusive rights under United States copyright law with respect to certain copyrights (the "Copyrighted Musical Compositions"), including, but not limited to the representative sample of such musical compositions listed in Exhibit A, each of which is the subject of a valid Certificate of Copyright Registration from the Register of Copyrights.

15.     Upon information and belief, Cox Enterprises, Inc. is a Delaware corporation with its principal place of business at 6205 Peachtree Dunwoody Road, Atlanta, GA 30328.  Cox Enterprises, Inc. operates as a broadband communications services company that provides high-speed Internet access, commercial telecommunications services, and cable television distribution to residential and commercial clients.

16.     Upon information and belief, Defendant Cox Communications, Inc. is a Delaware corporation with its principal place of business at 1400 Lake Hearn Drive NE, Atlanta, Georgia.  Cox Communications, Inc. is a wholly owned subsidiary of Cox Enterprises, Inc.  Cox Communications, Inc. operates as a broadband communications and entertainment company for residential and commercial customers in the United States.  Specifically, Cox Communications, Inc. offers digital video, high-speed Internet, telephone, voice, phone and long distance, data and video transport, high definition video, digital cable television, and DVR services over its IP network.

17.     Upon information and belief, CoxCom, LLC is a Delaware Limited Liability Company with its principal office located at 1400 Lake Hearn Drive NE, Atlanta, Georgia.  CoxCom, LLC conducts business in Virginia as Cox Communications Northern Virginia.  CoxCom, LLC is a wholly owned subsidiary of Cox Communications, Inc.  On information and belief, CoxCom, LLC provides Internet and related services to Cox subscribers including in Virginia and this judicial district.

## Factual Background

### Cox's Knowledge of the Extensive and Continuing Copyright Infringement by Its Subscribers

18.     Among the services provided by Cox to its customers is its high speed Internet service.  According to Cox, its customers have "the fastest in-home Wi-Fi."  *See*

http://www.cox.com/residential/internet.cox.   As Cox notes on its website, it has "doubled" its internet speeds and offers "Fast speeds, lower price! More speed for the money." *Id.* In exchange for this service, Cox charges its customers monthly fees ranging in prices from approximately $49.99 for 50 Mbps download speeds and 5 Mbps upload speeds, to approximately $79.99 for 150 Mbps download speeds and 20 Mbps upload speeds. *See* https://store.cox.com/residential-store/shop.cox?hsi=w.

19.     Upon purchasing high speed internet access from Cox, its subscribers and account holders can then access BitTorrent systems and upload and download copyrighted works from those sites with ease and increasing speed – depending upon the level of Cox service that the subscribers select.  In other words, Cox provides its subscribers and account holders with a fully functioning system that allows them to engage in copyright infringement using BitTorrent systems on a massive scale.  And for those account holders and subscribers who want to pirate larger files at faster speeds, Cox obliges them for higher rates.  The greater the bandwidth its subscribers require for pirating content, the more money Cox makes.   Cox has over four million Internet subscribers.

20.     Having created and for a monthly fee provided its subscribers with the site and facilities to engage in copyright infringement, Cox is required to implement a policy that terminates "subscribers and account holders" who are repeat infringers if it desires safe harbor protection under the DMCA.  Cox has chosen, however, not to do this and has not maintained a reasonable policy for terminating the accounts of its subscribers that are repeat infringers.

21.     Since at least 2012, Plaintiffs, through their agent, have provided Cox with sufficient notice under the DMCA of specific infringers using the Cox system to infringe specific copyrights.  Plaintiffs have also requested that Cox terminate the "subscribers and account

holders" who are repeat infringers of their copyrighted works. Despite its knowledge of specific repeat infringers of specific copyrighted works, Cox has refused to do so.

22.     Plaintiffs' notifications to Cox are based upon a software system developed and employed by their agent. This system identifies specific actual infringements of Plaintiffs' copyrighted works and the users of BitTorrent networks who infringe Plaintiffs' copyrighted works. At its most basic level, the software acts as a crawler in search of specific copyrighted content, and when it communicates with a host computer using BitTorrent that has acknowledged it has specific copyrighted content available for unauthorized distribution, the software will log certain identifying information (*i.e.* the IP address and port number of the host computer, the date and time the host computer was offering the content, the name of the host computer's ISP, and information about the infringing file). Upon collecting this information, Plaintiffs send a notice of infringement to the applicable ISP, including Cox, detailing the exact nature of the infringement(s). Plaintiffs request that the notice be sent to the Cox subscriber since only the ISP can identify and contact directly the proper account holder. Thereafter, Plaintiffs, through their agent, continue to monitor Cox's network to determine if the same subscriber or account holder continues to infringe copyrighted works (in other words, whether the subscriber or account holder is a repeat infringer). If repeat infringement is detected, Plaintiffs, through their agent, further notify Cox of the infringement.

23.     In addition to the daily and summary notifications identified above that are sent by Plaintiffs' agent to Cox, Plaintiffs provide a free online "dashboard" to Cox that documents the infringers and each instance of infringement of Plaintiffs' copyrighted works using the Cox network. Cox has been provided information on how to access the "dashboard" as part of Plaintiffs' robust repeat infringer notification procedure, and specifically in a telephonic meeting

8

that took place in April 2011 between Cox representatives and Plaintiffs' agent. This online dashboard provides a continuously updated log of repeat infringer information and a backup of all copyright infringement notices sent on behalf of Plaintiffs to Cox since 2012, as well as representative samples of infringing files downloaded by specific Cox subscribers.

24.     Specifically, the infringement dashboard provides Cox with detailed notice of each infringement, including the track name; the file name; the date the file was made available; the IP address of the Cox subscriber's account; the port number; and, for a sampling of certain infringements, a link to "play" the infringed work.   The infringement dashboard also provides Cox with additional copies of the infringement notices previously sent to Cox via its DMCA agent.

25.     The infringement dashboard also provides to Cox further detailed information on the repeat infringers on the Cox network.  The information provided in this portion of the infringement dashboard includes the IP address; port; number of infringements; date of first and last infringement recorded; and number of days during which infringements occurred.  Cox can also access the detailed information on each repeat infringer through this infringement dashboard, including the identification of each and every copyrighted work uploaded, the date thereof, and copies of all previous notices sent to Cox in connection with those repeat infringements.

26.     The infringement dashboard is updated on a daily basis and is and has been continuously available to Cox as another means for Cox to analyze and address the egregious repeat copyright infringement in its network.

27.     Through Plaintiffs' efforts, Cox has been informed and has knowledge of over seven million repeat infringements and that over 200,000 subscriber accounts have been engaged

in repeated acts of copyright infringement—some of which have involved tens of thousands of repeat infringements over a significant period of time. By way of example only, Cox has received 54,489 individual notifications for each act of copyright infringement committed by its subscriber having IP address 98.185.52.220. Those 54,489 infringements occurred over a 64 day period. Cox subscriber having IP address 24.252.149.211 engaged in 39,432 acts of copyright infringement over 189 days. Cox subscriber having IP address 98.176.207.69 engaged in 20,182 acts of copyright infringement over 407 days. And, Cox has been notified of each of these acts of infringement.

28.     These egregious repeat infringers on the Cox network are merely a sample of the over 200,000 repeat copyright infringers whom Cox has – and has had actual knowledge of – using its system. These, and other of Cox's repeat infringers, continue to use the Cox network to infringe Plaintiffs' copyrights without consequence.

29.     Cox has had actual and ongoing specific knowledge of the repeat infringements by its subscribers and account holders of the Copyrighted Musical Compositions occurring through the use of its network for years. Nonetheless, Cox has repeatedly refused to terminate the accounts of repeat infringers. The reason that Cox does not terminate these subscribers and account holders is obvious – it would cause Cox to lose revenue.

30.     Plaintiffs, through their agent, have attempted to work closely with Cox to find a workable and common sense solution to Cox's system-wide repeat infringer problem. Cox, however, has refused to engage with Plaintiffs' agent in any substantive way and instead has taken the position that repeat infringement notices provided to Cox "do not relate to matters subject to the DMCA." Incredibly, Cox's Privacy Counsel advised Plaintiffs' agent that it has implemented a "policy not to accept or to forward notices such as those sent to us by your firm."

Moreover, Cox chose "to limit the number of notices that [it] can accept from many senders because of the total volume that [it] receive[s]."

31.     By its actions, Cox has intentionally ignored and continues to ignore the overwhelming evidence that provides it with actual knowledge of repeat copyright infringers on its network and Cox actually has taken measures to avoid and stop receiving those notifications in direct violation of the spirit and legal requirements of the DMCA.  Cox cannot have any credible, effective repeat infringer policy, let alone one that is reasonably implemented as required by 512(i), if it purposefully ignores notifications, sufficient under the DMCA, of repeat infringers sent by copyright owners who are tracking the repeat infringers on the Cox network and providing Cox with actual knowledge of those repeat infringers on a daily basis.

32.     By ignoring the repeat infringement notifications and refusing to terminate internet access for repeat infringers, Cox has made an affirmative decision to contribute to known copyright infringement and to continue reaping the substantial financial benefits in the form of subscription fees and fees for higher bandwidth. Cox's conduct renders it ineligible for safe harbor immunity from copyright liability under the DMCA.

33.     Cox provides the site and facilities necessary for its subscribers to commit direct infringement by delivering uninhibited access to the Internet, as well as the pipes, system, and the technology that allow for the storage and transmission of data constituting the infringing files of the Copyrighted Musical Compositions.  In addition to providing the site and facilities for the infringement, Cox materially contributes to its subscribers' direct infringement by providing continued access to account holders it knows to be repeat infringers.

34.     Cox directly profits from repeat infringers.  Cox collects significant fees from its subscribers and subscribers that frequently upload media content often pay higher monthly

premiums for higher bandwidth.  Plaintiffs' agent has identified – and notified Cox of – over 200,000 repeat infringers on the Cox network.  On information and belief, the number of actual repeat infringers on the Cox network not known to Plaintiffs or their agent is substantially higher.

35.     Despite Plaintiffs' continuous and frequent notifications to Cox of specific instances of infringement and repeat infringement committed by Cox's account holders and subscribers and Cox's knowledge thereof, Cox has refused to terminate any or any meaningful number of its account holders by reason of their repeat infringements and continues to collect substantial internet service subscription fees from accounts of known repeat infringers.  Therefore, Cox has financially benefited and continues to financially benefit from the direct infringement of its subscribers.

## Claims for Relief

## Count I – Contributory Infringement of Copyright

36.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 35, inclusive.

37.     The Copyrighted Musical Compositions are directly infringed each time a Cox subscriber without authorization uploads or downloads through the Cox system a recording that embodies that composition.  By providing the site and facilities necessary for its subscribers to commit direct copyright infringement, by providing access to the Internet and the pipes, system, and technology that allows for the storage and transmission of data, and by failing to terminate known repeat infringers, Cox has and continues to materially contribute to the unauthorized reproductions and distributions by its subscribers of the Copyrighted Musical Compositions.

38.     Through Plaintiffs' agent, Cox has repeatedly, over years, been provided with actual knowledge of the direct infringements occurring through its system.

39.     In the case of repeat infringers, Plaintiffs, through their agent, have forwarded additional notices to Cox, requesting that it terminate the subscribers' or account holders' accounts. Further, Plaintiffs, through their agent, have provided Cox with free access to the online infringement dashboard that provides Cox with a log of the repeat infringers, the copyright infringement notices sent to Cox and samples of infringing files copied by specific Cox subscribers. Upon information and belief, Cox has refused to terminate the subscribers' or account holders' accounts or to otherwise act effectively in response to these notices.

40.     Cox has not acted reasonably or in good faith in response to Plaintiffs' notices of infringement and repeat infringement.

41.     Cox's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

42.     As a direct and proximate result of Cox's infringements of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages and Cox's profits pursuant to 17 U.S.C. § 504(b) for each infringement.

43.     Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

44.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

45.     Cox's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or

measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of

Plaintiffs' copyrights.

## Count II – Vicarious Infringement of Copyright

46.     Plaintiffs incorporate herein by reference each and every averment contained in

paragraphs 1 through 45, inclusive.

47.     Cox had, and continues to have, the right and ability to supervise and/or control

the infringing conduct of its subscribers and account holders through its agreements with its

subscribers and account holders by, without limitation, blocking access to its subscribers and

account holders or terminating the accounts of subscribers who engage in infringing activity.

But Cox has failed to exercise such supervision and/or control.  As a direct and proximate result

of such failure, Cox's subscribers and account holders have repeatedly infringed and will

continue to repeatedly infringe Plaintiffs' Copyrighted Musical Compositions on a massive scale.

48.     Cox derived (and continues to derive) substantial and direct financial benefit from

the infringements of the Copyrighted Musical Compositions by its subscribers or account holders

in the form of continued monthly subscription payments and by having subscribers and account

holders drawn to its service for the purpose of accessing and/or providing infringing content.

49.     Cox has not acted reasonably or in good faith in response to Plaintiffs' notices of

infringement and repeat infringement.

50.     Cox's acts of infringement have been willful, intentional, and purposeful, in

disregard of and indifference to Plaintiffs' rights.

51.     As a direct and proximate result of Cox's vicarious infringements of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages and Cox's profits pursuant to 17 U.S.C. § 504(b) for each infringement.

52.     Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

53.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

54.     Cox's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of Plaintiffs' Copyrighted Musical Compositions.

### Prayer for Relief

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

a.     For entry of judgment against Defendants for all damages to which Plaintiffs may be entitled, including Defendants' profits and for damages in an amount as may be proven at trial. Alternatively, at Plaintiffs' election, for the maximum statutory damages amount allowed by law for all individual copyright infringements involved in this action with respect to any one work, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c);

b.     For a permanent injunction enjoining Defendants and their respective officers, agents, servants, employees, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from (a) directly or indirectly

infringing in any manner any of Plaintiffs' respective copyrights or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the Copyrighted Musical Compositions, and (b) causing, contributing to, enabling, facilitating, or participating in the infringement of any of Plaintiffs' respective copyrights or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the Copyrighted Musical Compositions;

      c.      For an order directing defendant to promptly forward plaintiffs' infringement notices to their subscribers;

      d.      For prejudgment and post-judgment interest according to law;

      e.      For Plaintiffs' attorneys' fees, and full costs and disbursements in this action; and

      f.      For such other and further relief as the Court may deem proper and just.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand trial by jury of all issues triable by right of jury.

Respectfully submitted,

Dated: December 10, 2014

Jeremy D. Engle (VSB #72919)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902
*Attorneys for Plaintiffs*

Of Counsel:
Michael J. Allan
William G. Pecau
John M. Caracappa
Stephanie L. Roberts
Elizabeth McKenzie
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia  30601
Tel. (706) 548-0970
Fax: (706) 369-8869

**EXHIBIT A**

| SONG TITLE | COMPOSERS | Copyright Registration |
|---|---|---|
| Coastal | Thrasher/Mobley/Mobley | PA0001729084 |
| Ghosts In Empty Houses | Siegel | PA0001881072 |
| The Awakening | Wilson/Catchpole | PA0001869955 |
| All The Heavy Lifting | Hinds/Dailor/Kelliher/Sanders | PA0001867941 |
| Take Me Home | Adler/Perl | PA0001880221 |
| Somebody | Thornewill | PA0001869859 |
| Oh, Emily | Siegel | PA0001881072 |
| At Last | Thornewill | PA0001869859 |
| Say When | Siegel | PA0001881072 |
| Don't Let Me Fall Behind | Thornewill | PA0001869859 |
| Dead | Siegel | PA0001881072 |
| Adulthood | Thornewill | PA0001869859 |
| Devils On Our Side | Thornewill | PA0001869859 |
| All For Love | Thornewill | PA0001869859 |
| Man In The Moon | Siegel | PA0001881072 |
| Everybody Knows | Thornewill | PA0001869859 |
| The Spiritual | Thornewill | PA0001869859 |
| Dope Peddler | Crawford/Epps/Brown | PA0001817873 |
| Loco-Motive | Jones/Wilson | PA0001880621 |
| Be Free, A Way | Coyne/Drozd | PA0001860262 |
| The Terror | Coyne/Drozd | PA0001860262 |
| Try To Explain | Coyne/Drozd | PA0001860262 |
| Turning Violent | Coyne/Drozd | PA0001860262 |
| You Are Alone | Coyne/Drozd | PA0001860262 |
| You Lust | Coyne/Drozd | PA0001860262 |
| The New Black | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Locked Out Of Heaven | Hernandez/Lawrence/Levine | PA0001820283 |
| Young Girls | Hernandez/Lawrence/Levine/Bhasker/Haynie | PA0001850610 |
| Moonshine | Bhasker/Hernandez/Lawrence/Levine/Ronson | PA0001850620 |
| When I Was Your Man | Hernandez/Lawrence/Levine/Wyatt | PA0001850617 |
| Money Make Her Smile | Hernandez/Lawrence/Levine/Brown | PA0001850611 |
| If I Knew | Hernandez/Lawrence/Levine | PA0001850609 |

| Show Me | Hernandez/Lawrence/Levine/Chin-Quee/Chin | PA0001850612 |
|---|---|---|
| Treasure | Acito/Berland/Brown/Hernandez/Lawrence/L | PA0001850622 |
| Tears Always Win | Hernandez/Lawrence/Keys/Bhasker | PA0001851229 |
| What You Need | Crawford/Garrett/Abernathy | PA0001853150 |
| So Sick | Crawford/Ellington/Garrett | PA0001853151 |
| Let Me Go | Crawford/Garrett/Abernathy/Zachrisson/Yt | PA0001852883 |
| Swim and Sleep (Like a Shark) | Nielson | PA0001839017 |
| So Good at Being in Trouble | Nielson | PA0001839017 |
| One At A Time | Nielson | PA0001839017 |
| The Opposite of Afternoon | Nielson | PA0001839017 |
| No Need For a Leader | Nielson | PA0001839017 |
| Monki | Nielson | PA0001839017 |
| Dawn | Nielson | PA0001839017 |
| Faded in the Morning | Nielson | PA0001839017 |
| Secret Xtians | Nielson | PA0001839017 |
| Harlem | Sinclair/Boyd/Hansen/Viola | PA0001865093 |
| If Only | Wilson/Wigmore | PA0001871013 |
| Juniper | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| My Own Mistakes | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Morocco | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Change | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Suspicious | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Beaches | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Young Journey | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Running Wild | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| River Water | Bailey/Putnam/Ritter/Terndrup/Thomson | PA0001868920 |
| Bliss | Brichard/Hamilton/Stephens/Taylor | PA0001853345 |
| Nothing's Funny | Weinman/Puciato | PA0001861032 |
| Understanding Decay | Weinman/Puciato | PA0001861032 |
| Paranoia Shields | Weinman/Puciato | PA0001861032 |
| Magic That I Held You Prisoner | Weinman/Puciato | PA0001861032 |

| | | |
|---|---|---|
| Cross Burner | Weinman/Puciato | PA0001861032 |
| Before Your Very Eyes... | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| Ingenue | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| Dropped | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| Unless | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| Stuck Together Pieces | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| Judge, Jury and Executioner | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| Reverse Running | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| Amok | Waronker/Yorke/Godrich/Refosco/BALZARY | PA0001853335 |
| I Wanna Be A Warhol | Skiba/Andriano/Grant | PA0001859681 |
| Renacer | Comitas/Nielsen/Roach/Smith/Trapp | PA0001881394 |
| Holy Mountain | Comitas/Nielsen/Roach/Smith/Trapp | PA0001881394 |
| Courage Of The Knife | Nielsen/Trapp/Comitas/Roach/Smith | PA0001881394 |
| Snake Bite | Nielsen/Trapp/Comitas/Roach/Smith | PA0001881394 |
| Canine | Nielsen/Trapp/Comitas/Roach/Smith | PA0001881394 |
| Glass | Nielsen/Trapp/Comitas/Roach/Smith | PA0001881394 |
| The Path | Nielsen/Trapp/Comitas/Roach | PA0001881392 |
| The Beginning | Bareilles/Fauntleroy Ii/Hollis/Michaelso | PA0001887741 |
| Red City | Mayorga/Rand/Root/Taylor | PA0001856397 |
| Black John | Mayorga/Rand/Root/Taylor | PA0001856397 |
| Sadist | Mayorga/Rand/Root/Taylor | PA0001856397 |
| Gravesend | Mayorga/Rand/Root/Taylor | PA0001856397 |
| Ancient Tombs | Nielsen/Trapp/Comitas/Roach/Smith/Lopez/ | PA0001881390 |
| Back On The Ground | Beathard/Martin/Thrasher | PA0001784525 |
| Ballin Out | Cardiak/Combs/Jeremih/Kharbouch | PA0001876466 |
| Bandz A Make Her Dance | Carter/Epps/Garner/Houston/Williams | PA0001872632 |
| Butterflies | Evigan/Johnson/Johnson/Lomax/Watters | PA0001869700 |
| By the Grace of God | Wells/Perry | PA0001878338 |
| The Uncanny Valley | Mayorga/Rand/Root/Taylor | PA0001856397 |
| Blue Smoke | Mayorga/Rand/Root/Taylor | PA0001856397 |

| | | |
|---|---|---|
| The Conflagration | Mayorga/Rand/Root/Taylor | PA0001856397 |
| Beautiful | Gracia/Kakaty/Karkazis/Lichtenstein | PA0001867307 |
| Believer | Shelley/Barnett/Sanchez/Rublin/ Goodman/Accetta | PA0001898746 |
| Best day Of My Life | Shelley/Barnett/Sanchez/Rublin/ Goodman/Accetta | PA0001898750 |
| Undo It | Underwood/DioGuardi/Frederiksen/Laird | PA0001771815 |
| Bawitdaba | Ritchie/Shafer/Krause | PA0001009073 |
| Hook Me Up | Bon Jovi/Sambora/Carlsson/Child | PA0001643930 |