**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC,  )<br>)<br>Defendants.  )<br>) | Case No. 1:14-cv-1611 (LO/JFA) |

**DEFENDANTS COX ENTERPRISES, INC., COX COMMUNICATIONS, INC. AND COXCOM, LLC'S' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37, Defendants (collectively "Cox") respectfully submit this Memorandum in Support of their Motion to Compel Plaintiffs to appropriately respond to, or produce documents in response to, certain of Defendants' discovery requests. Specifically, Cox moves the Court to order Plaintiffs to produce (1) financial data regarding the value of Plaintiffs' copyrighted works and the income derived from those works, responsive to Cox's Requests For Production Nos. 106, 107, 108, and (2) documents and communications relating to Plaintiffs' agent Rightscorp, Inc., responsive to RFP Nos. 53, 54, 55, 56, 63, 68, 69, 81, 84, 85, 86, 87, 90, 111-112.

**I.  BACKGROUND**

In accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure, Cox propounded three sets of RFPs on Plaintiffs BMG and Round Hill. Plaintiffs served objections to Cox's First Set of RFPs on March 2, 2015, and served responses on March 16, 2015. Plaintiffs served objections to Cox's Second Set of RFPs on April 22, 2015, and served responses on May

7, 2015. *See* Exhibits A, B (excerpts of requests and responses). Pursuant to the Court's May 4, 2015 order, Dkt. 67, which modified the Court's Rule 16(b) Scheduling Order, (Dkt. 49), the parties were required to substantially complete their production of documents by May 14, 2015.

In accordance with the substantial compliance deadline, Cox complied by producing over 35,000 documents on or before May 14, 2015. By comparison, as of June 15, 2015, Plaintiffs collectively had produced just 2,764 documents, 1,244 (nearly half) of which are copyright registrations.[1] Plaintiff Round Hill has produced a total of just 446 documents. Within Plaintiffs' thin production, Cox identified numerous substantive deficiencies, which it raised with Plaintiffs in a detailed letter sent on June 15, 2015. Counsel for the parties held a follow-up telephonic meet-and-confer on June 18, 2015, in which the parties narrowed the scope of issues that require this Court's intervention. But Plaintiffs have not produced or agreed to produce two categories of information that are subject of the instant Motion.

## II. LEGAL STANDARD

The Federal Rules establish a broad right to discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts have consistently interpreted Rule 26 to allow wide-ranging discovery of all information reasonably calculated to lead to the discovery of admissible evidence, regardless of whether the information is itself admissible. *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). As such, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997). Plaintiffs cannot show cause for not producing the relevant documents at issue.

---

[1] On June 16, 2015, Plaintiff BMG produced an additional 763 documents, 570 of which are copyright registrations and which were not produced by the substantial compliance deadline.

### III. PLAINTIFFS ARE IMPROPERLY WITHHOLDING CERTAIN CATEGORIES OF HIGHLY RELEVANT AND RESPONSIVE DOCUMENTS.

Per the Court's May 4, 2015 order, the parties' substantial compliance deadline was May 14, 2015—*over one month ago*. Plaintiffs have failed to comply with this deadline and have improperly withheld entire categories of responsive documents that are highly relevant to Plaintiffs' claims and Cox's defenses. Among the documents absent from Plaintiffs' production are (1) detailed financial data regarding the value of Plaintiffs' copyrighted works and the income derived from those works, and (2) documents and communications relating to Plaintiffs' agent, Rightscorp. The parties are deep into the discovery process and Cox has suffered prejudice by not yet having these documents at its disposal. Cox stands to suffer continuing prejudice if Plaintiffs are not compelled to produce this information immediately, as fact witness depositions are currently being scheduled and expert report deadlines are fast approaching.

#### A. Financial Data Regarding The Value of Plaintiffs' Copyrighted Works and The Income Derived Therefrom Is Relevant to The Calculation of Actual and Statutory Damages (RFP Nos. 106, 107, 108).

Despite Plaintiffs' election to pursue statutory damages, calculation of Plaintiffs' actual damages is nonetheless highly relevant, as actual damages inform a Court's statutory damages award. Statutory damages should bear a relationship to actual damages suffered. *Seoul Broad. Sys. Int'l, Inc. v. Young Min Ro*, No. 1:09CV433 LMB/IDD, 2011 WL 3207024, at *8 (E.D. Va. July 27, 2011) (in assessing the amount of statutory damages in copyright infringement cases, courts begin by considering actual damages suffered); *Dae Han Video Production, Inc. v. Chun*, No. Civ.A. No. 89-1470-A, 1990 WL 265976, at *7 (E.D. Va. June 18, 1990) ("When awarded, statutory damages should bear some relation to the actual damages suffered."). Thus, financial documents and information regarding Plaintiffs' actual operations and profits are relevant.

3

Nonetheless, Plaintiffs have each produced only a single spreadsheet containing general information as to the total income derived from their copyrighted works. Each provides a single numerical figure representing total income associated with a copyrighted work and Plaintiff Round Hill does not provide income by year. These documents appear to have been selectively generated for purposes of this litigation, and do not provide Cox with comprehensive income information kept in the ordinary course of business. Without this detailed financial data by year, Cox is unable to determine how Plaintiffs' income figures were calculated or to assess various metrics associated with income for Plaintiffs' copyrighted works, such as the various sources of that income.

For example, Plaintiffs do not provide Cox with the amount of revenue derived from each of Plaintiffs' various distribution channels (*i.e.*, income derived from physical album sales, digital downloads, streaming royalties and licensing royalties). This data, which can be broken down into revenues per channel, units underlying revenue per channel, metrics used to calculate units per channel, average price or royalty per channel, associated costs per channel, and incremental profit margins per channel, is essential to Defendant's ability to analyze Plaintiffs' hypothetical actual damages, including metrics such as lost profits and unjust enrichment. Plaintiffs have also failed to produce basic financial data relating to their overall businesses, including but not limited to Plaintiffs' annual revenues, costs, expenses, and incremental profit margins. Neither Plaintiff is a publicly traded company with publicly available financials—this information is thus otherwise unavailable to Cox.

Because financial data relating to the value of Plaintiffs' copyrighted works, including detailed financial data regarding income, source of income, revenues, units, average price or royalty, associated costs, and incremental profit margins broken down by distribution channel is

4

highly relevant to a hypothetical calculation of the measure of Plaintiffs' actual damages, Plaintiffs should be compelled immediately to produce this information to Cox.

### B. Rightscorp and Its Agency Relationship With Plaintiffs Are At The Heart of This Litigation (RFP Nos. 53, 54, 55, 56, 63, 68, 69, 81, 84, 85, 86, 87, 90, 111-112, 119).

Plaintiffs have also withheld documents relating to Rightscorp, Plaintiffs' agent[2] for detecting and giving notice of alleged infringement by Cox subscribers. Rightscorp's agency relationship with Plaintiffs is central to this litigation; indeed, its role is arguably more important than that of Plaintiffs with respect to allegations of copyright infringement.

Rightscorp claims to track instances of alleged infringement, communicates with alleged infringers, negotiates and executes "settlement" agreements, and communicates with service providers, including Cox, on behalf of Plaintiffs. Rightscorp performed the alleged "investigation" of Cox subscribers on which the Plaintiffs base their claim that Cox does not appropriately enforce its "repeat infringer termination" policies. Rightscorp communicated with Cox regarding the alleged infringement that underlies Plaintiffs' claims. Rightscorp has information on the design and operation of its internal systems, through which Rightscorp supposedly identified copyright infringers using Cox services.

Moreover, Rightscorp apparently solicited the Plaintiffs to use Rightscorp's "settlement" monetization services *and* enlisted them to serve as litigants here to vindicate Rightscorp's business model. This lawsuit is a bid both to punish Cox for refusing to participate in Rightscorp's scheme and to gain leverage over Cox's customers for the shakedown business model that

---

[2] Plaintiffs admit that they are principals in an agency relationship with Rightscorp. *See* Plaintiffs' Amended Complaint (Dkt. 16), ¶¶ 2-5. Since at least 2011, when Rightscorp and Plaintiffs first entered into their agency relationship pursuant to a formal written agreement, Rightscorp has acted as Plaintiffs' agent for purposes of monitoring for alleged infringement of Plaintiffs' copyrighted works, contacting alleged infringers, negotiating "settlement" payments and executing releases on Plaintiffs' behalf.

Plaintiffs and Rightscorp employ.  Cox thus must have access to all documents and information relating to all aspects of Rightscorp's agency relationship to Plaintiffs for monitoring copyright infringement on Plaintiffs' behalf, including all communications with Plaintiffs, alleged infringers, and other non-Cox service providers.

Cox learned during its June 18 meet-and-confer call that Plaintiffs' production of documents regarding Rightscorp was improperly limited in scope.  Plaintiffs' counsel revealed that they have only produced documents regarding "Rightscorp generally" (whatever that means) or Rightscorp in relation to Cox specifically.  Plaintiffs have withheld documents that relate to Rightscorp in other ways.  It is unclear what other documents Plaintiffs withheld, and their counsel refused to specify, but at a minimum those documents apparently include Rightscorp communications or documents in relation to other ISPs.  Plaintiffs' counsel indicated that those documents were collected and identified, but not produced.

The documents Plaintiffs have withheld reflect their efforts to monitor, supervise, direct, or approve all of the activities of Rightscorp taken on their behalf.  Such documents are essential to understanding the nature, scope, and operation of this principal-agency relationship, including documents reflective of Rightscorp's authority to act on behalf of Plaintiffs and Plaintiffs' oversight of Rightscorp.  The withheld documents will also inform Plaintiffs' knowledge of, or independent efforts to investigate, Rightscorp's activities and the accuracy or validity of its processes for identifying alleged infringement. Such documents are responsive, at a minimum, to Cox's RFP Nos. 54, 56, 81, 86, 111-112, 119.

Given the critical role of Rightscorp as Plaintiffs' agent, and the actions it has taken on behalf of Plaintiffs, Plaintiffs should be compelled to all responsive, non-privileged documents in

their possession, custody, or control that relate in any way to Rightscorp's duties, authority,

actions and communications on behalf of its principals, the Plaintiffs.

## CONCLUSION

For the reasons set forth above, this Court should grant Defendants' Motion to Compel.

Respectfully submitted,

Dated:  June 19, 2015      */s/ Craig C. Reilly*
Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
Tel:  (703) 549-5354
Fax:  (703) 549-5355
Email:  craig.reilly.@ccreillylaw.com

*Counsel for Defendants*

*Of Counsel for Defendants*

Andrew P. Bridges (*pro hac vice*)
Fenwick & West LLP
555 California Street
San Francisco, CA 94104
Tel:  (415) 875-2300
Fax:  (415) 281-1350
Email:  abridges@fenwick.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2015, the foregoing was filed and served electronically by

the Court's CM/ECF system upon all registered users.

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
Tel:  703-549-5354
Fax:  (703) 549-5355
Email:  craig.reilly.@ccreillylaw.com
*Counsel for Defendants*