UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BMG RIGHTS MANAGEMENT ) <br> (US) LLC, and ROUND HILL ) <br> MUSIC LP ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COX ENTERPRISES, INC., ) <br> COX COMMUNICATIONS, INC., ) <br> COXCOM, LLC ) <br> Defendants. ) <br> _____) | | Case No. 1:14-cv-1611(LOG/JFA) <br><br> Filed Under Seal |

**[REDACTED VERSION]**
**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR INSTRUCTIONS REGARDING MAY 15, 2015 ORDER ON MOTION TO COMPEL AND FOR MISCELLANEOUS RELIEF**

Plaintiffs BMG Rights Management (US) LLC and Round Hill Music LP (collectively "Copyright Holders") file this response to Defendants' Motion for Instructions Regarding May 15, 2015 Order on Motion to Compel (Dkt. 86) ("Motion for Instructions"). The Court's May 15 Oder is clear and there is no justification for Cox's non-compliance. Cox should be ordered – again – to produce all subscriber information for the 17 IP addresses that failed to file objections with the Court by June 5, 2015. And for the subscribers associated with the 111 IP addresses that Cox now incredibly claims it cannot identify, the Court should impose an adverse evidentiary inference that prevents Cox from challenging any direct infringement proofs.

**I. INTRODUCTION AND BACKGROUND**

On May 15, 2015, the Court granted in part Copyright Holders' Motion to Compel the Identifies of the Direct Infringers (Dkt. 71, 72). The Court Order was clear, and stated that:

1

> Defendants shall produce customer information associated with the 'top 250 IP Addresses recorded to have infringed in the six months prior to filing the Complaint as identified in Exhibit 4 of [Copyright Holders'] Memorandum in Support of their Motion. This production shall include the information as requested in Interrogatory No. 13, specifically: name, address, account number, the bandwidth speed associated with each account, and associated IP address of each customer ["subscriber information")].

5/15/15 Order, Dkt. 78.

The Complaint in this case was filed on November 26, 2014. As such, Cox had an order from this Court to produce customer information associated with the top 250 IP Addresses recorded as of May 26, 2014 unless that subscriber filed an objection with the Court. Indeed, Copyright Holders' made the task straightforward by identifying the IP addresses of the subscribers during this time period. *See* Dkt. 72, Exhibit 4.

During the hearing on that motion, the Court gave Cox clear instructions on the timeframe and process by which Cox was to comply with the Order. Cox was to notify the direct infringers that the Court ordered their subscriber information disclosed, and unless the direct infringers filed objections with the Court by June 5, 2015, Cox was obligated to produce the information. Specifically, the Court stated that "[i]f they put you on notice but don't follow up with the Court, they just merely send you an e-mail, and the time period has run with the Court, then you will have to … produce that information." Dkt. 80, May 15, 2015 Hearing Tr. at 34:16-19. Not once during the hearing, or anytime thereafter did Cox state that it would not, or could not comply with this Order.

Despite this clear Order and instruction by the Court, Cox improperly instructed its subscribers that if they informed Cox (rather than the Court) of their intent to file objections by June 5, then Cox would not disclose their information. *See* Cox Motion, Allen-Wang Decl., Exhs. A and B. Consequently, and according to Cox, after it contacted its subscribers associated

with the top 250 IP addresses recorded to have infringed six months prior to the complaint being filed, 17 of them informed Cox that they objected, or that they intended to object to the production of their subscriber information. Cox Motion at 3; Allen-Wang Decl., Exh. C (worksheet 2). However, **none** of those subscribers filed objections with the Court before June 5, 2015.[1] Nonetheless, and in violation of the Court Order, Cox refuses to produce the subscriber information associated with those 17 IP addresses. See Exhibit A (Cox's June 5, 2015 production letter of direct infringers' subscriber information).

In addition to improperly withholding this information, Cox claims that it is "unable" to locate subscriber information for **nearly half** (111) of the relevant IP addresses for the time period in question (six months prior to the complaint being filed). *Id*.; Cox Motion, Allen-Wang Decl., Exh. C (indicating "no information available").

In a letter to Cox on June 8, 2015, Copyright Holders explained that the Court's May 15 Order clearly required the subscribers' information be disclosed unless the subscriber filed objections with the Court by June 5. In that same letter, Copyright Holders requested the subscriber information of those subscribers that were improperly withheld and asked Cox to explain why it was unable to identify information for 111 IP addresses for the time period in question. *See* Exhibit B (June 8 letter from Gennari to Buckley). Cox ignored that June 8th letter. Copyright Holders' followed-up on June 10, and requested that Cox respond to their June 8 letter by close of business that day. Exhibit C. Cox ignored that June 10th letter. Finally, on June 11 during a meet and confer on other issues, Cox indicated that it would seek clarification on the issue from the Court. By this Motion, Cox apparently asks to Court to clarify an already crystal clear Order.

---

[1] One of the 17 subscribers filed an objection with the Court, but it was filed on June 16, 2015, well after the June 5, 2015 deadline. See Dkt. 90.

Copyright Holders' submit that there was no ambiguity with the Court's May 15 Order, and respectfully request that the Court—again—order Cox to produce the subscriber information associated with the 17 IP addresses recorded to have infringed during the six months prior to the complaint being filed, but who did not file any objections with the Court. Copyright Holders' further request that the Court order Cox to determine and produce the subscriber information of the subscribers for the 111 IP addresses recorded to have infringed during the six months prior to the complaint being filed that Cox claims it was unable to identify. If Cox is unwilling or unable to do so, because, for example, this information has been destroyed, Copyright Holders request that the Court impose an adverse evidentiary inference that prevents Cox from challenging any direct infringement proofs with respect to all the information that it has destroyed and/or grant Copyright Holders leave for additional briefing on the appropriate sanction.

## II.   COX HAS NOT COMPLIED WITH THE COURT'S MAY 15 ORDER

### A.   Cox has No Basis to Withhold Any Subscriber Information with Respect to Those Subscribers who Failed to Seek Protection with the Court.

Cox has apparently provided information for two groups of subscribers. The first group of subscribers contacted by Cox, coined the "historical subscribers," are the direct infringers associated with the top 250 IP addresses recorded to have infringed during the six months prior to the complaint being filed. These are the subscribers identified in Copyright Holders' Exhibit 4 (Dkt. 72-4) and are the subject of the Court's Order. The second group of subscribers contacted by Cox were those currently assigned to those same top 250 IP addresses. For both groups of subscribers, Cox improperly instructed them that if they informed Cox (rather than the Court) of their intent to file objections by June 5, then Cox would not disclose their information. *See* Cox Motion, Allen-Wang Decl., Exhs. A and B. Clearly, that instruction is at odds with the Court's instruction to Cox – that "if [the subscribers] put you on notice but don't follow up with the

Court, and the [21 day] time period has run with the Court, then you will have to … produce that information." Dkt. 80, 5/15/15 Hearing Tr. at 34:16-19.

As discussed above, according to Cox, 17 of the historical subscribers indicated to Cox that they objected or intended to object to the disclosure of their subscriber information. Exhibit A; Cox Motion, Allen-Wang Decl., Exh. C (worksheet 2). As such, Cox has withheld the information with respect to these subscribers. However, upon review of the John Doe objections filed to date (both before and after June 5, 2015), only one is from a subscriber associated with the 17 IP addresses that Cox has withheld, and that was filed on June 16, 2015, well after the June 5 deadline. See Dkt. 90.[2] Accordingly, Copyright Holders respectfully ask the Court to again order Cox to disclose the subscriber information for those 17 IP addresses that did not file objections with the Court, either by June 5, 2015 or otherwise.

### B. Subscribers that Cox Claims it was Unable to Identify

In its June 5 letter, Cox indicated that it was "unable" to identify the subscribers for ***nearly half*** (111) of the IP addresses of the historical subscribers referenced in the Order. *See* Exhibit A; Cox Motion, Allen-Wang Decl., Exh. 3, pgs. 38-41. Not once at the hearing or any time prior to the June 5 deadline did Cox ever indicate that it could not identify these subscribers. If Cox had legitimate concerns that it could not comply with the Order, it should have raised these concerns prior to June 5.

After receiving Cox's incomplete list of subscriber information, Copyright Holders' requested that Cox explain why it was unable to identify these subscribers, as it claims. *See*

---

[2] To date, it appears that a total of 14 subscribers have filed objections. *See* Dkts. 81, 85, 88, 90. Of those, only four filed objections before the June 5, 2015 deadline, and none of those were associated with any of the 17 IP addresses from the historical subscribers identified by Cox, which it refuses to produce on the grounds that these subscribers indicated that they objected or indicated their intent to file objections; they all appear to be associated with the subscribers who are currently associated with the identified IP address.

5

Exhibit B. Cox refuses to this day to provide an explanation, and is conspicuously silent on this issue in its Motion.

[redacted]

If true, Cox's failure or refusal to identify these subscribers is highly prejudicial to Copyright Holders. The reason Copyright Holders sought this information in the first place was, *inter alia*, to be able to rebut Cox's anticipated defense that the IP addresses alone could not demonstrate direct infringement because, among other reasons raised by Cox, the addresses are not static, but are assigned to different subscribers over time, and an IP address assigned to, *e.g.*, a school or library does not necessarily mean that the subscriber is the direct infringer. If Cox destroyed this information, Copyright Holders are prevented from contacting the subscribers that directly infringed during that time period. Ever more concerning, however, is that fact that Cox appears to have destroyed all the subscriber information for the direct infringers at issue in this case from 2011 until today, including since the complaint was filed on Nov. 26, 2014.

Since March 2011, Rightscorp has sent roughly 14 million copyright infringement notice letters to Cox on behalf of copyright owners (including Copyright Holders) informing Cox that its subscribers are infringing its clients copyrighted works using Cox's network, all of which were ignored by Cox. Of those 14 million notices, 2.5 million are notice letters sent to Cox for the infringement on the Cox network of the copyrights at issue in this case. The information

contained in each notice letter included the IP address implicated, the date of infringement, the specific copyrights infringed, and an explanation that the perpetrator – Cox's subscriber – could be liable for copyright infringement. *See* Exhibit F, RGHTS12453044 (notice letter dated 3/15/2013). Rightscorp further indicated in these and other communications to Cox that if it did not act to stop the infringing activity, Cox would face secondary liability for copyright infringement. *See* Exhibit G. Accordingly, Cox was put on notice at least since February 2012 that it could be sued for copyright infringement by Copyright Holders. In addition, by at least that same time, it knew that its implicated subscriber information would also be at issue in this case. *See Id*. Cox was therefore required to retain its records, including the identification of its implicated subscribers, since at least February 2012 in anticipation of such a suit (and at the very latest since Nov. 26, 2014 when this lawsuit was filed), even if such record retention meant deviating from its normal course of business. *See, e.g., Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."). ███████████████████ ████████████████████████████████████████ ████████████████████████████

If Cox is unable to identify the subscribers' information for any of the top 250 IP addresses listed in Copyright Holders' Exhibit 4 (of Dkt. 72), and ██████████████ ████████ for the 2.5 million Cox subscribers that Rightscorp has been identifying since February 2012, it is respectfully submitted that Copyright Holders are either (1) entitled to an adverse inference that all the Cox subscribers identified by Rightscorp since February 2012 are direct infringers of the copyrighted works at issue in the notice letters to which they are implicated, or

7

(2) leave to file additional briefing on the appropriate sanction. *See, e.g,, Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 284 (E.D. Va. 2001) ("Spoliation is the willful destruction of evidence or the failure to preserve potential evidence for another's use in pending or future litigation") (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 778 (2nd Cir.1999) ("Spoilation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."))

        Respectfully submitted,

        */s/Walter D. Kelly, Jr.*

        Walter D. Kelley, Jr. (VSB No. 21622)
        HAUSFELD, LLP
        1700 K Street, NW
        Washington, DC 20006
        Tel: (202) 540-7157
        Fax: (202) 540-7201

        Paul Gennari (VSB No. 46890)
        pgennari@steptoe.com
        Jeremy D. Engle (VSB No. 72919)
        jengle@steptoe.com
        STEPTOE & JOHNSON, LLP
        1330 Connecticut Ave, NW
        Washington, DC 20036
        Tel.: (202) 429-3000
        Fax: (202) 429-3902

        *Of Counsel*

        Michael J. Allan (admitted *pro hac vice*)
        William G. Pecau (admitted *pro hac vice*)
        John M. Caracappa (admitted *pro hac vice*)
        Stephanie L. Roberts (admitted *pro hac vice*)
        Elizabeth McKenzie (admitted *pro hac vice*)
        STEPTOE & JOHNSON, LLP
        1330 Connecticut Avenue, NW
        Washington, DC 20036

Tel.: (202) 429-3000
Fax: (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia 30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

  I hereby certify that on June 23, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

            */s/ Paul A. Gennari*_____
            Paul Gennari (VSB No. 46890)
            pgennari@steptoe.com
            STEPTOE & JOHNSON, LLP
            1330 Connecticut Ave, NW
            Washington, DC 20036
            Tel.:  (202) 429-3000
            Fax:  (202) 429-3902