### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **BMG RIGHTS MANAGEMENT** | ) | |
| **(US) LLC, and ROUND HILL** | ) | |
| **MUSIC LP** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  1:14-cv-1611(LOG/JFA) |
| | ) | |
| **COX ENTERPRISES, INC.,** | ) | |
| **COX COMMUNICATIONS, INC.,** | ) | |
| **COXCOM, LLC** | ) | |
| Defendants. | ) | |
| | ) | |

### RIGHTSCORP INC.'S OPPOSITION TO COXCOM, LLC'S
### MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules 37 and 45 and Local Rules 37 and 45, third-party Rightscorp, Inc. ("Rightscorp") respectfully submits this opposition to Defendant CoxCom, LLC's ("Cox") Motion to Compel the Production of Documents from Rightscorp (the "Motion"), much of which is now moot.

## I.    INTRODUCTION

Cox's request to produce certain documents (settlement pricing, phone scripts, letter templates, and employee handbooks) was premature, and in any event, is now moot.  On June 16, 2015, Cox issued its third document subpoena to Rightscorp (bringing the total document requests sought from Rightscorp to 86) and also served a corporate deposition subpoena with 59 separate topics on June 17, 2015.  The document subpoena requested that these specific documents be produced by June 26, 2015.  However, in an attempt to supersede its 10-day request for documents, Cox filed this Motion.  These documents are not relevant to any

1

communications with Cox or Cox's subscribers, and thus, were not produced in response to any of Cox's prior 77 requests to Rightscorp.  Despite not being relevant to the claims and defenses in this matter, Rightscorp has produced these documents in advance of Cox's requested deadline for its responses to the third subpoena to Rightscorp, rendering this portion of the Motion moot.

Regarding the requested source code, Rightscorp does not object to producing additional source code in response to Cox's request, to the extent that the code has not already been produced.  However, as Cox was informed, the two individuals at Rightscorp knowledgeable about the Rightscorp source code are on vacation until the end of this week (June 26th). In an attempt to respond to Cox's request, Counsel conferred with Plaintiff's technical expert who confirmed that source code responsive to Cox's requests has already been produced.

However, Cox is not just asking Rightscorp to confirm that is has produced certain relevant portions of the code.  It is asking Rightscorp and/or Rightscorp's attorneys, through a letter from counsel, to identify where in the code certain functions occur.  For example, Cox is asking us to identify *every* line of code that connects to, read from, and/or writes to the requested files, routines, and tables.  If Cox wants to know how the code works it can perform its own analysis.  Further, Cox served at least seven deposition topics on Rightscorp related to the code and can ask questions about the code at a deposition.  There is no obligation under any reading of the rules that requires Rightscorp to comply with Cox's request to identify lines of code.  For at least these reasons, Cox's Motion should be denied.

## II.     ARGUMENT

### A.     Cox's Motion to Compel Certain Documents Is Now Moot

Cox's request to produce these documents was premature.  Specifically, on June 16, 2015, Cox issued its third document subpoena to Rightscorp (bringing the total document requests sought from Rightscorp to 86) and served a corporate deposition subpoena with 59

separate topics on June 17, 2015.  Rightscorp's response to this document subpoena, which

requested documents related to these requests, was due on June 26, 2015.[1]  In an effort to narrow

the issues before the Court, Rightscorp produced the settlement pricing, phone scripts, letter

templates, and employee handbooks on June 23, 2015, rendering this motion moot.

### B.  Cox's Motion to Compel Additional Rightscorp Code Should be Denied

Cox's request for additional source code should also be denied.  Importantly, to the extent

it exists, Rightscorp has not objected to producing additional code.  Indeed, Rightscorp has been

responsive to Cox's prior requests for additional code and has also identified code in response to

Cox's requests.  *See*, *e.g.*, Exhibit A (June 10 letter from Roberts to Buckley) and Dkt. No. 95-3

(identifying code).

However, as Cox's Counsel was informed (*see* Dkt. No. 95 at f/n7), the only two

individuals at Rightscorp who can confirm that the specific portions of the code referenced in

Cox's June 15th letter have all been produced are on vacation and as such, have not been

responsive to Counsel's request for additional information.  Thus, even if additional code exists

that is responsive and relevant to Cox's requests, Rightscorp is not in a position to produce it

until these two individuals are back from vacation on June 26th.

To address Cox's request while these two individuals are on vacation, Counsel conferred

with Plaintiffs' technical expert and confirmed that code responsive to Cox's requests has been

produced and is located in at least the following files:  Deamon.java; CVSdump.jsp;

MusicDownLoad1, MusicDownLoadPDCleanUP1, AMMagic2, AcusticId.java,

AutoTorrentTransferCode.java, AutoTermRequest.jsp; and CEmail.java.  Indeed, Plaintiffs'

---

[1] These documents were not related to the requests in Cox's first and second subpoena to Rightscorp.  As Cox admits, Rightscorp's notices were not forwarded to Cox's customers.  Thus, any communications or documents relating to communications with non-Cox customers are not related to the claims and defenses in this case.  Further, the employee manuals dealing with general employee guidelines such as vacation, hours, pay, conduct, etc., have no relevance to any issue in this case.

expert served her expert report on June 19, 2015, in which she examined and opined on the operation of Rightscorp's code, including the code listed above.

Rather than waiting until Counsel could confer with the individuals knowledgeable about the code, Cox chose to prematurely run to the Court – an unnecessary waste of resources.  In fact, throughout the discovery process, Cox has continued to request code that was already in its possession, and has been available to Cox for months.[2]  On June 10, 2015, Counsel was asked to identify file names of the Rightscorp code that had already been produced and was responsive to Cox's requests.  *See* Exhibit A.  Again on June 15, 2015, Cox asked us to identify where in the Code it could locate the "[t]he source code for the 'Infringement Finder' core routine."  Dkt. No. 95 at 8.  Counsel for Rightscorp produced this code on May 22, 2015, and specifically identified the code for the "Infringement Finder." (*see* Dkt. No. 95-3).

To be clear, after a reasonable search, Rightscorp has produced the code requested by Cox.  However, Rightscorp can confirm that this production is in fact complete when the individuals most knowledgeable regarding this production return from vacation this week.

### C.    Cox's Motion to Compel The Identify Of Certain Portions of Rightscorp's Code, And How the Code Works Should Be Denied

On June 15th, Cox sent Rightscorp's Counsel a letter.  *See* Exhibit B.  In this letter, Cox asked Rightscorp to identify how the code works by performing a technical analysis of the Rightscorp code and identifying ***every single piece*** of Rightscorp code that connect to, read from, and/or write to the identified tables, routines, and files.  Exhibit B, Dkt. No. 95 at 7-9. Specifically, Cox requests:

- **All code** that connects to, reads from, and/or writes to the "tracks" database table;

---

[2] Counsel for Rightscorp informed Cox's counsel that the Rightscorp code was available for inspection at the offices of Steptoe & Johnson, LLP in early April.  After coming to an agreement to host the code at a different location, the source code was made available at that location on May 22, 2015.

- **<u>All code</u>** that connects to, reads from, and/or writes to the table(s) that store(s) "validated hashes";

- **<u>All code</u>** that connects to, reads from, and/or writes to the tables in the "database of infringements";

- **<u>All code</u>** that connects to, reads from, and/or writes to the following tables: "OwnerPasswords"; "AutoTermContactList"; "InfMultiSummary"; "InfSummary"; "infractions"; and "Emailed";

- The source code for the "Infringement Finder" core routine;

- **<u>All source code</u>** utilized to run the "Infringement Finder" core routine;

- **<u>All source code</u>** related to executing the following files: runme0.bat; runme1.bat; runme2.bat; runme3.bat; runme4.bat; runme5.bat; runme6.bat; runme7.bat; runme8.bat; runme9.bat; runmeA.bat; runmeB.bat; runmeC.bat; runmeD.bat; runmeE.bat; runmeF.bat; NEWrunme0V2.bat; NEWrunme1V2.bat; NEWrunme2V2.bat; NEWrunme3V2.bat; NEWrunme4V2.bat; NEWrunme5V2.bat; NEWrunme6V2.bat; NEWrunme7V2.bat; NEWrunme8V2.bat; NEWrunme9V2.bat; NEWrunmeAV2.bat; NEWrunmeBV2.bat; NEWrunmeCV2.bat; NEWrunmeDV2.bat; NEWrunmeEV2.bat; NEWrunmeFV2.bat; NEWRUNTHEMALL.bat; and

- Code that identifies potential infringers by IP address notwithstanding that those IP addresses are dynamically assigned over time.

Cox's request is ridiculous.  First, it may not even be possible to identify *every single* portion of the code that connects to, reads from, and/or writes, or is related to the specific files, tables, and routines identified by Cox.  If Cox would like to know how the code works, then it can ask its technical expert.

Second, and if Cox's expert is unable to perform this analysis, then Cox can ask these questions at a deposition and/or through proper discovery.  For example, Cox could have questions about the code at the deposition of Robert Steele, which occurred on June 11, 2015, and was attended by four of Cox's attorneys and Cox's technical expert, but it did not. Additionally, Cox has not asked for this information through discovery.  Indeed, it does not identify a single discovery request that would call for the identity of every line of code.  Instead, Cox is asking for discovery through a letter to Counsel.  *See* Exhibit B.

Lastly, Cox's request is for Rightscorp, Plaintiff, or its Counsel to perform a technical analysis of source code that has been produced is unduly burdensome.  Discovery may be limited to protect a party or person from undue burden or expense.  *Graves v. Indus. Power Generating Corp.*, No. 3:09-CV-717, 2010 WL 2943079, at \*5 (E.D. Va. July 20, 2010).  While discovery is invasive, the burden on non-parties should be given special weight when balancing competing needs.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

Rightscorp, a third party to this litigation, is a small company and only two employees have familiarity with the Rightscorp code.  Cox has served on Rightscorp 87 document requests.[3] In response to these requests, Rightscorp has produced approximately 23 million notices that were sent to Cox, thousands of additional documents, and the source code used to identify the direct infringers on the Cox network.  Indeed, Cox has noticed up the corporate deposition of Rightscorp and at least seven of the 59 topics relate directly to Rightscorp's source code.

If Cox does not know how the code works, it can perform its own technical analysis with a technical expert.  Cox can also review Plaintiffs' technical expert's report, which provided detail relating regarding many of the routines/code and described which specific routines/code performed which operations.  If Cox has additional questions about the Rightscorp code, it can ask these questions at a deposition.  Requiring Rightscorp to respond to a letter from counsel by provide a line by line analysis of its code is overly burdensome and should not be permitted. Rightscorp is not under any obligations to perform a technical analysis of its code and identify every line of code that is responsive to Cox's requests and Cox has provided no authority to the contrary.

---

[3] The requested response date for the third subpoena to Rightscorp is June 26, 2015.

## III.    CONCLUSION

For the reasons set forth above, and because the majority of this Motion is moot, Cox's

Motion should be denied.

June 24, 2015

Respectfully submitted,

/s/ Walter D. Kelley, Jr.

Walter D. Kelley, Jr. (VSB No. 21622)
HAUSFELD, LLP
1700 K Street, NW
Washington, DC 20006
Tel:  (202) 540-7157
Fax:  (202) 540-7201

Paul Gennari (VSB No. 46890)
pgennari@steptoe.com
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

*Of Counsel*

Michael J. Allan (admitted *pro hac vice*)
William G. Pecau (admitted *pro hac vice*)
John M. Caracappa (admitted *pro hac vice*)
Stephanie L. Roberts (admitted *pro hac vice*)
Elizabeth McKenzie (admitted *pro hac vice*)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks

7

297 Prince Avenue, Suite 24
Athens, Georgia  30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Rightscorp*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

/s/ Paul Gennari
Paul Gennari (VSB No. 46890)
pgennari@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902