**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP,<br><br>                Plaintiffs,<br><br>v.<br><br>COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC,<br><br>                Defendants. | Case No. 1:14-cv-1611 (LOG/JFA) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR INSTRUCTIONS
REGARDING MAY 15, 2015 ORDER ON MOTION TO COMPEL**

# **INTRODUCTION**

The federal Cable Privacy Act (47 U.S.C. § 551) prohibits Cox from disclosing a subscriber's personally identifiable information (PII) without a court order, after notice to the subscriber. At the hearing on Plaintiffs' Motion to Compel the Identities of Direct Infringers (Doc. 71), the Court stated that if an implicated subscriber contacted Cox to object to production of that subscriber's PII, Cox was temporarily relieved of the duty to produce that information so the subscriber could take further action with the Court (Hearing Transcript at 34:5-19). The Court itself recognized that Plaintiffs' motion to compel PII was different from the usual "John Doe" litigation in which an ISP may be compelled by subpoena to identify subscribers who a rightsholder seeks to sue for direct infringement.

Even though Plaintiffs claim the Order is "crystal clear," Cox respectfully submits that the Order (Doc. 78) is silent as to the process or timing for subscribers to object. The situation is further complicated because one "John Doe" subscriber filed an objection (Doc. 81) without identifying himself *or* his IP address, making it impossible for Cox to match that objection to a particular subscriber. Given the strictures of the Cable Privacy Act and the significant privacy concerns involved here, Cox seeks additional instruction from the Court regarding the PII for the 49 subscribers who contacted Cox.

Despite their strident opposition, Plaintiffs have not identified any prejudice they suffered by a short delay in receiving that PII while Cox seeks additional instruction. And there is none. These subscribers will not be added as parties, and their PII will, at most, facilitate "correlation" of documents showing Cox's communications with those subscribers (if any) and other follow-up discovery. Once the Court provides those instructions, the PII will be promptly produced, if so ordered, to permit Plaintiffs to engage in those discovery activities.

Plaintiffs do, however, attempt to turn Cox's motion unfairly to Plaintiffs' advantage. As Cox understood this (to Cox's knowledge) unique discovery order, Cox attempted to identify not only current subscribers attached to the 250 IP addresses that Plaintiffs identified, but also historical subscribers attached to those IP addresses in the specific periods of purported infringement on which Plaintiffs rely. Even though, for entirely logical and legitimate reasons discussed below, Cox was only able to match a portion (but over half) of the addresses to historical subscribers, Plaintiffs now accuse Cox of "spoliation" and seek an "adverse inference" that *all* Cox subscribers identified by Plaintiffs' agent, Rightscorp, since February 2012 are "direct copyright infringers."

Cox did not "spoliate" anything. Even if it had, the appropriate sanction plainly is *not* to relieve Plaintiffs of their burden to establish direct infringement as a predicate to their claims against Cox. In addition to being procedurally improper (because Plaintiffs seek substantive affirmative relief without filing a proper motion), Plaintiffs' inflammatory accusations and request for severe sanctions are legally, conceptually, and equitably baseless. In any event, Cox respectfully submits that the issue of whether any "spoliation" occurred – and if so, whether any remedy for it may be appropriate – is neither properly before the Court nor ripe for decision.

## ARGUMENT

### I.   COX SEEKS FURTHER INSTRUCTION FROM THE COURT REGARDING THE REMAINING SUBSCRIBER PII.

Plaintiffs imply, incorrectly, that Cox is somehow evading the Court's May 15 Order. Respectfully, the Order is silent on a key component of the Court's ruling, namely how to address Cox subscribers who received notice and contacted Cox to object to the production of their PII. The Court's colloquy with Cox's counsel at the May 15 hearing confirmed that an objection from a subscriber at least temporarily suspended Cox's obligation to produce PII, but

2

that a subscriber must then take some affirmative action with the Court to preserve the objection.

Unclear from the colloquy, however, was the process and timing for those subscriber objections:

> THE COURT: And I think under that circumstance, what we will do is you probably won't produce the information. If nothing gets done within the 21-day time period with the Court, then we'll have to follow up with that. And then you will have to produce that information if they haven't sought leave from the Court within that time.
>
> So if you get put on notice, I think you probably are obligated to hold off until we see whether they've really followed through and filed something with the Court. If they have, then the Court will have to deal with it and then rule on it at that time.
>
> If they put you on notice but don't follow up with the Court, they just merely send you an e-mail, and the time period has run with the Court, then you will have to do a supplemental production and produce that information. Okay?

(Hearing Transcript at 34:5-19.)  Cox is prepared to make a supplemental production of the remaining subscriber PII if so ordered.

On June 5, 2015, Cox timely produced PII for 338 subscribers who did not contact Cox. As set forth in Cox's motion, 49 subscribers contacted Cox to assert some form of objection to the notice they received. Two of those subscribers subsequently filed objections with the Court that specifically identified the IP addresses at issue. (Doc. Nos. 85, 88, 90.)[1] In addition, on June 1, 2015 (before Cox's June 5 deadline to produce PII), another subscriber filed an objection, styled a "Motion to Quash or Modify." (Doc. 81.) That subscriber filed his objection *pro se* and as a "John Doe." Moreover, nowhere in the objection does the subscriber identify the IP address at issue. Consequently, Cox is unable to connect that timely objection to any of the 49 subscribers who contacted Cox. That was another compelling reason Cox was not willing to produce the remaining PII without further direction from the Court.[2]

---

[1] Filings 85 and 88 relate to the same IP address and appear to be from the same subscriber.

[2] In fact, it is possible that the subscriber who filed the "Motion to Quash or Modify "(Doc. 81)

Cox's obligations under the Cable Privacy Act — and the privacy implications of disclosing PII for innocent subscribers who are accused of "egregious infringement" and who have objected to production of their PII — are too important to treat lightly. Plaintiffs already received PII for 338 subscribers and have not articulated any form of prejudice Plaintiffs have suffered because the remaining PII was not produced on June 5.[3] Cox respectfully seeks the Court's specific instructions on how to handle PII for the remaining 49 subscribers who contacted Cox, particularly in light of the pending objections filed with the Court.

## II.  COX DID NOT "SPOLIATE" ANY EVIDENCE.

In the guise of a response to Cox's motion for further instructions, Plaintiffs attempt to smuggle in a motion of their own. They accuse Cox of "spoliation" of evidence and request a draconian sanction—*i.e.*, that 2.5 million Cox subscribers since February 2012 be declared "direct copyright infringers" *and* that Cox be precluded from challenging that remarkable and patently incorrect proposition. Plaintiffs' "motion" for sanctions was not properly made or noticed under the Federal or Local Rules. If the Court were inclined to consider Plaintiffs' extraordinary request, at a minimum Plaintiffs should be required to properly make and notice their motion, and Cox should be given adequate time to respond. But the Court need not take those steps because Plaintiffs' improper request must be denied.

The Court's Order requires Cox to produce "customer information associated with" the 250 IP addresses identified in Plaintiffs' Exhibit 4 in support of their motion. The Order does

---

is not among the 49 subscribers who contacted Cox. If Cox were truly seeking to evade the Court's Order, as Plaintiffs suggest, Cox could have refused, in good faith, to produce *any* PII until the confusion with respect to this particular objection was resolved.

[3]  As the Court stated at the May 15 hearing, "looking at a sampling with 250 [IP addresses]" would be sufficient for Plaintiff's articulated purposes (Hearing Transcript at 32:24-25), and Plaintiffs actually received PII for substantially more than 250 subscribers – both current and (if found) historical.

4

not specify whether it applies to information for the customers *currently* associated with those IP addresses, or customers *historically* associated with those IP addresses during the periods of purported infringement identified in Exhibit 4. Cox read the Order expansively and attempted to notify *both* categories of subscriber.

For current subscribers, Cox was able to identify the subscriber attached to a particular IP address by referring to its current DHCP logs. DHCP refers to "dynamic host configuration protocol," and is a network protocol that enables a server to automatically assign an IP address to a computer from a defined range of numbers. DHCP logs allow Cox to associate a particular IP address, at a particular date and time, with a particular cable modem MAC (media access control) address. The MAC address is associated with a specific physical cable modem, and Cox is then able to identify the subscriber assigned that modem at a particular time. DHCP logs do not allow Cox to identify subscribers with complete accuracy, because dynamic IP addresses may still be reassigned more quickly than MAC address provisioning records will reflect. But the DHCP logs are the most direct method to connect a particular IP address with a particular subscriber at a particular date and time.

For reasons discussed in more detail below, Cox only retains DHCP logs for six months. After that time (and arguably well before that time), those logs become stale and serve no important or legitimate business purpose that compels their retention. Consequently, to identify the historical subscribers associated with Plaintiffs' 250 IP addresses, Cox reviewed other records. Specifically, Cox reviewed information in the Cox Abuse Tracking System (CATS), which is the system that, among other things, receives and processes abuse complaints about Cox subscribers. For 139 of the 250 IP addresses Plaintiffs identified, Cox was able to locate in CATS abuse complaints associated with those IP addresses, which in turn allowed Cox to

5

connect those IP addresses to particular subscribers during the periods of purported infringement identified in Plaintiffs' Exhibit 4.[4] Cox then sent notice to those 139 subscribers and, on June 5, 2015, produced PII for 122 of those subscribers (those who did not contact Cox to object).

Based on its search, Cox was able to identify historical subscribers for over half of the IP addresses at issue, and for specific periods that are six to twelve months old. Nonetheless, Plaintiffs decry that effort and claim to be aggrieved that Cox was unable to match every historical address of a purported infringer (even though Plaintiffs disclaim any need to prove direct infringement by that or any other subscriber). Specifically, Plaintiffs claim that because Cox does not, in the ordinary course, retain DHCP logs for more than six months, Cox is guilty of spoliation of evidence. That accusation is unfounded and unfair.

The primary reasons Cox refers to DHCP logs are to forward abuse complaints to subscribers and respond to subpoenas. Most of the abuse complaints that Cox receives are for alleged conduct that recently occurred, typically within the prior week. Similarly, subpoenas typically relate to relatively recent alleged conduct, as well. That is so because, unlike Plaintiffs, most rightsholders act very quickly to address potential infringement of their rights. Consequently, Cox has no compelling business reason or need to retain "stale" DHCP logs (and those logs arguably become stale long before six months).[5] Weighed against the lack of any business rationale to indefinitely store many millions of unnecessary records are the privacy concerns of Cox subscribers. Internet subscribers — the vast majority of whom are not

---

[4] To be clear, none of those historical complaints were sent by Rightscorp or related to Plaintiffs or their copyrighted works. Those complaints merely created a record that connected each IP address to a particular subscriber at the relevant historical point in time.

[5] There are other less common ways in which Cox may refer to DHCP logs for internal use, such as for geo-targeting of advertisements. But for all of those applications, stale DHCP logs are not useful and Cox has found no compelling business reason to store logs for more than six months. Those logs, of course, consume storage space that can be devoted to records that have a longer useful life.

6

"egregious copyright infringers," as Plaintiffs would have it — are reasonably and legitimately concerned about the long-term storage of data that allows those subscribers to be "tracked."

Plaintiffs imply that the mere fact that Cox does not routinely retain DHCP records for more than six months is somehow improper. *See* Opp. (Doc. 101) at 6. But there is no free-floating duty to retain data that has no business purpose, particularly transient data like Cox's DHCP logs that become stale. *See*, *e.g.*, *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 177 (S.D.N.Y. 2004), *order clarified*, No. 00 CIV. 5141 GBDJCF, 2005 WL 1514284 (S.D.N.Y. June 24, 2005) ("[T]he data at issue here are ephemeral. . . . No business purpose ever dictated that they be retained, even briefly. Therefore, absent the violation of a preservation order, which is not alleged here, no sanctions are warranted."); *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 642 (E.D. Pa. 2007) (no duty to preserve cache files). Obviously Cox is not obligated to retain massive volumes of DHCP records or data, which serve no business purpose and raise privacy concerns, simply because some future plaintiff might deem that information useful.

Plaintiffs next contend that Cox had a duty to retain several years' worth of transient DHCP records because "Cox was put on notice at least since February 2012 that it could be sued for copyright infringement" by Plaintiffs. *See* Opp. (Doc. 101) at 7. That argument fails at multiple levels.

*First*, the Rightscorp notices given on or after February 2012 notices on which Plaintiffs rely did not threaten Cox with litigation. Exhibit F to Plaintiffs' brief is one of Rightscorp's threatening notices to a Cox *subscriber* regarding alleged copyright infringement. It says nothing about Cox's potential liability or a threat of suit. Exhibit G to Plaintiffs' brief is an 2011 email exchange between Rightscorp's CEO, Chris Sabec, and a Cox in-house lawyer, Randy

7

Cadenhead. Mr. Sabec's emails are a solicitation that Cox cooperate in forwarding Rightscorp's threatening "shakedown" notices to Cox subscribers and help Rightscorp profit from extortionate settlements from Cox subscribers. Despite Mr. Sabec's candid acknowledgment that Cox had ***no legal obligation*** to forward such notices, Mr. Sabec obliquely remarks that Cox may have "vicarious liability" and faces "risks" if Cox does not forward Rightscorp's settlement notices to subscribers. Importantly, despite the vaguely menacing tone, Mr. Sabec states no direct plan to file a lawsuit, does not identify a rightsholder who may sue Cox, a protected work that may be at issue, or a purported specific subscriber who may have infringed. Mr. Sabec does not even suggest an intention or a timeline for taking any action, let alone filing suit. In fact, Rightscorp itself has no standing to sue an ISP for copyright infringement – only the rightsholder may do so. Indeed, at that time (2011), Rightscorp was not even Plaintiffs' "agent" for sending notices.[6]

Moreover, neither Rightscorp nor the Plaintiffs-rightsholders did anything for over three years, at which time Plaintiffs were recruited by Rightscorp to file this lawsuit in November 2014. On this record, Rightscorp's bare suggestion *in 2011* that Cox "risks" some secondary liability exposure, to some rightsholder (other than Plaintiffs), based on some subscriber's conduct, regarding some unidentified protected work, at some unspecified time in the future, is not sufficient to trigger a duty to begin preserving all DCHP logs as "evidence." *See*, *e.g.*, *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—***most commonly when suit has already been filed*** …") (emphasis added). Thus, on this record, no duty to preserve potential evidence even arose – let alone a duty to indefinitely preserve all

---

[6] In fact, Mr. Sabec's email correspondence was arguably a solicitation to do business with them and as such would not reasonably be perceived as a threat of litigation.

8

DHCP information for millions of subscribers – simply because some subscribers may have committed direct copyright infringement for which some rightsholder might someday sue.

*Second*, the Rightscorp 2011 communications on which Plaintiffs now rely *had nothing to do with Plaintiffs*. Plaintiffs did not retain Rightscorp or begin sending notices to Cox until February 2012. That was more than six months after Mr. Sabec's threatening exchange with Mr. Cadenhead. When Plaintiffs signed up for Rightscorp's settlement scheme, Rightscorp *knew* that none of its notices were being received by Cox (and, interestingly, failed to share that fact with Plaintiffs). Plaintiffs now claim that Cox was on notice of a duty to preserve records with respect to subscribers associated with "2.5 million [] notice letters sent to Cox for the infringement on the Cox network of the copyrights at issue in this case." *See* Opp. (Doc. 101) at 6. But, *as a matter of fact*, Cox never received those notices or became aware of Plaintiffs' claims or the copyrights at issue in this case. And Plaintiffs' agent, Rightscorp, knew that fact.

*Third*, even if Cox had been aware of potential claims and an actual threat of suit by Plaintiffs, it does not follow that Cox had an obligation to preserve millions of transient DHCP records for more than six months. Spoliation "requires a showing that the party *knew the evidence was relevant to some issue at trial* and that his willful conduct resulted in its loss or destruction." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 287 (E.D. Va. 2001) (emphasis added) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). If Plaintiffs had filed a "John Doe" suit against particular subscribers shortly after an act of direct infringement, and sent Cox a subpoena for records, the relevance of the DHCP logs might have been apparent. But if, in 2011, Plaintiffs had directly threatened Cox with a lawsuit (they did not), it is not clear how such logs were "relevant to some issue at trial."

Indeed, that relevance is still not apparent. In this suit, Plaintiffs made a strategic decision not to name "John Doe" defendants and have, therefore, made a related strategic decision not to establish the liability of any particular subscriber for direct copyright infringement. Cox did not believe, and still does not believe, that the identity of any specific subscriber (or even a "sampling" of subscribers) is relevant to this case.

Spoliation of evidence is a very serious charge and requires a showing of willful misconduct. *See Trigon*, 204 F.R.D. at 156 (moving party must show that accused party's "willful conduct resulted in its loss or destruction"); *accord Anderson v. Nat'l R.R. Passenger Corp.*, 866 F. Supp. 937, 945 (E.D. Va. 1994), *aff'd*, 74 F.3d 1230 (4th Cir. 1996) ("[S]ome threshold level of blameworthiness is required before spoliation, if in fact shown to have occurred, becomes relevant."). Plaintiffs have made absolutely no showing that Cox knew that stale DHCP records would be relevant in this lawsuit. *See Vodusek*, 71 F.3d at 156 ("An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.") Indeed, until the lawsuit was actually filed Cox was unaware that Plaintiffs had any claims at all. Thus, Plaintiffs have utterly failed to carry their burden of showing that Cox is somehow "blameworthy."

*Fourth*, even if there were blame to assign here, the relief Plaintiffs seek defies both logic and any notion of fairness or equity. Remarkably, based on Cox's purported "spoliation" of old DHCP logs, Plaintiffs claim they are "entitled to an adverse inference that all the Cox subscribers identified by Rightscorp since February 2012 are direct infringers of the copyrighted works at issue in the notice letters to which they are implicated." *See* Opp. (Doc. 101) at 6. But

10

the sanction for a discovery violation or spoliation must bear some relation to the harm caused by the wrongful act, and be the least severe sanction necessary to remedy that wrong. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40-41 (4th Cir. 1995); *accord Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.*, Ltd., 769 F. Supp. 2d 269, 290-91 (S.D.N.Y. 2011) (holding that, given the combination of the alternative opportunities movant had to access samples and its failure to demonstrate their relevance, movant did not suffer prejudice sufficient to justify the "drastic" sanctions of exclusion of evidence:"[A]ppropriate sanctions should be tailored according to the prejudice suffered by the party seeking sanctions.") (*internal quotation and citations omitted*). Here, Plaintiffs seek disproportionately severe sanction without proving either a wrong or harm.

In their motion to compel, Plaintiffs were careful not to argue that they need PII for particular Cox subscribers in order to prove direct infringement. Indeed, Plaintiffs expressly disclaimed that as the rationale for seeking PII. *See*, *e.g.*, Reply In Support Of Motion To Compel (Doc. 76) at 2 (Plaintiffs "strongly disagree" with the contention that Plaintiffs "are unable to prove direct infringement based on the IP address and other data points collected by Rightscorp"); 4 ("Copyright holders do not plan to file suit against these individual direct infringers, and do not plan to use this information for any purpose other than to pursue its claims against Cox …"); 5 ("Neither Copyright Holders, nor non-party Rightscorp have any intention of harassing, threatening, shaking down or targeting anyone for potential lawsuits."). At the May 15 hearing, Plaintiffs' counsel stated unequivocally that the PII is "***not required for us to prove direct infringement***." (Hearing Transcript at 24:5-6 (emphasis added).) Early in the hearing, the Court asked Plaintiffs' counsel specifically why Plaintiffs need subscriber PII, and counsel responded that it was necessary to undo redactions in documents produced by Cox, and

to allow Plaintiffs to question Cox employees in deposition about communications with "infringers." (*Id*. at 4:22-5:1, 6:11-17.) Counsel later claimed subscriber information was necessary to allow Plaintiffs to test whether Cox IP addresses are in fact dynamic and change over time. (*Id*. at 12-16.)[7] But Plaintiffs *never* claimed that they needed Cox subscriber PII in order to establish direct infringement or even to make contact with specific Cox subscribers.

Now, improperly seeking to press a perceived advantage, Plaintiffs have changed their tune. Plaintiffs now claim that "Cox's failure or refusal to identify these subscribers is highly prejudicial" to Plaintiffs because they are "*prevented from contacting the subscribers that directly infringed during that time period*." Opp. (Doc. 101) at 6 (emphasis added). And based on that supposed "prejudice," Plaintiffs ask the Court to order an "adverse inference" that 2.5 million Cox subscribers are "direct copyright infringers." Plaintiffs' arguments misguided at best, and disingenuous at worst. It defies logic and equity that Plaintiffs would be entitled to a finding of direct infringement based on alleged spoliation of evidence they claimed was irrelevant to proving direct infringement. Nor should the Court ignore that the "adverse inference" Plaintiffs seek goes to a legal issue at the very heart of this lawsuit and a critical deficiency in Plaintiffs' claims. The Court should reject Plaintiffs' gambit to plug that hole in their legal strategy by improperly accusing Cox of spoliation.

---

[7] That statement was clearly ad hoc and not well-reasoned. A sampling of 500 IP addresses out of hundreds of thousands or millions addresses potentially implicated reveals absolutely nothing about the rate at which Cox's IP addresses are reassigned.

## **CONCLUSION**

Cox respectfully requests that the Court provide further instructions to Cox with respect to PII for the remaining 49 subscribers implicated by the Court's May 15, 2015 Order. Cox further requests that the Court reject outright Plaintiffs' procedurally improper and substantively baseless request for "spoliation" sanctions.


Dated: June 25, 2015                    /s/ Craig C. Reilly
                                        Craig C. Reilly, Esq. (VSB # 20942)
                                        111 Oronoco Street
                                        Alexandria, Virginia 22314
                                        TEL (703) 549-5354
                                        FAX (703) 549-5355
                                        craig.reilly@ccreillylaw.com

                                        *Counsel for Defendants*
                                        COX ENTERPRISES, INC.,
                                        COX COMMUNICATIONS, INC., and
                                        COXCOM, LLC

*Of Counsel for Defendants:*

Andrew P. Bridges (*pro hac vice*)
Brian D. Buckley (*pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
TEL (415) 875-2389
FAX (415) 281-1350
abridges@fenwick.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2015, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users:

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
craig.reilly@ccreillylaw.com

*Counsel for Defendants*
COX ENTERPRISES, INC., COX
COMMUNICATIONS, INC., and
COXCOM, LLC