UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BMG RIGHTS MANAGEMENT )<br>(US) LLC, and ROUND HILL )<br>MUSIC LP )<br> )<br>        Plaintiffs, )<br> )<br>    v. )<br> )<br>COX ENTERPRISES, INC., )<br>COX COMMUNICATIONS, INC., )<br>COXCOM, LLC )<br>        Defendants. )<br> ) | Case No.  1:14-cv-1611(LOG/JFA) |

**RIGHTSCORP INC.'S OPPOSITION TO COX'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND RELATED
RELIEF FROM RIGHTSCORP, INC.**

Pursuant to Federal Rules 26, 30, 37 and 45 and Local Rules 37 and 45, third-party Rightscorp, Inc. ("Rightscorp") respectfully submits this opposition to Defendants' ("Cox") Motion to Compel and related relief.

**I.    INTRODUCTION**

Cox continues to make inflammatory mischaracterizations with respect to the Rightscorp document production and the actions of Rightscorp and its counsel.  Cox has made abundantly clear in its filings in this case that it does not care for Rightscorp – but the accusations made in this motion are not fair.

**A. The Non-Source Code Documents Were Produced As Previously Represented**

Cox's claims that a misrepresentation was made to the Court concerning the four categories of material requested at the Robert Steele deposition are simply wrong.  The non-source code documents at issue in Cox's June 19, 2015 motion have all been produced and the

1

representation to the Court that "[a]ll the documents that were discussed in the Steele deposition that Cox asked for that concern the subject of this motion have been produced" is accurate. For the Court's convenience, the documents with their corresponding bates number and date of production and reference in the prior motion to compel appear in the below chart:

| Date of Production | Bates Nos. | Description | Reference in June 22 Motion to Compel |
|---|---|---|---|
| June 23, 2015 | RGHTS00012655-RGHTS00012671 | Guidelines regarding pricing of settlements | Dkt. No, 95, pg. 9. |
| June 23, 2015 | RGHTS00012672-RGHTS00012736 | Employee Handbook | Dkt. No, 95, pg. 10. |
| June 23, 2015 | RGHTS00012737 | ISP Letter Template | Dkt. No, 95, pg. 10. |
| June 23, 2015 | RGHTS00012738-RGHTS00012780 | Employee Handbook | Dkt. No, 95, pg. 10. |
| June 23, 2015 | RGHTS00012781-RGHTS00012785 | Telephone Script | Dkt. No, 95, pg. 9. |

As explained further below, the other non-source code documents that Cox now seeks to compel were *not* at issue in its prior motion, and Cox's attempt to argue otherwise is disingenuous. Specifically, the overreaching request for all recorded phone calls between Rightscorp and infringers (*none of whom are Cox customers*) and all telephone call logs between Rightscorp and infringers (*none of whom are Cox customers*) were made by document subpoena served only three days before Cox filed its first motion. They were not ripe for adjudication (much less production) and they were not at issue in the prior motion. To the extent they are at issue here, despite Cox's inadequate and improper meet and confer, they do not concern Cox or its defenses in any way and should not be produced.

B. **Rightscorp's Source Code**

Rightscorp personnel have spent over *100 hours* in an effort to respond to the various subpoenaed document demands and to satisfy Cox's continued requests for more source code.

*See* Exhibit A, Boswell Decl. at ¶ 8.  As set forth in the attached declaration of Greg Boswell, Rightscorp's lead developer, Rightscorp's code that concerns the mechanism for detecting and sampling online infringements, as well as the process of sending infringement notices is comprised of hundreds of files located on multiple servers.  Exhibit A, Boswell Decl. at ¶¶ 4, 7, and Exhibit 1.  The collection and production requires a careful account of the files associated with each of these three main functions.  *Id.* at ¶¶ 4 and 7.  Mr. Boswell and others working for him have worked diligently and in good faith to locate and produce to Cox all the code requested by Cox so that Rightscorp could meet its discovery obligations and comply with the Court's June 26, 2015 Order.  Rightscorp has produced to Cox so much code that a programmer could build or duplicate the three main modules of Rightscorp's system.  Boswell Decl. at ¶7.

### 1. The 11-line BitField Code

The source code portion of Cox's motion pertains to a script having eleven (11) lines of code that, as explained herein, was inadvertently not produced.  Cox's claim that this code is somehow central to the case, however, is the ultimate red herring.  While this 11-line module of source code changed the amount of the infringing file Rightscorp needed to verify in order to send an infringement notice, it was implemented *after* the case was filed and is thus of limited relevance, if any at all.   These eleven lines of code were produced immediately after the error was discovered.

### 2. The Frederiksen-Cross Code

In 2013, Plaintiffs' technical expert, Barbara Fredrickson-Cross, served in a consulting expert capacity.  In that role, Ms. Frederiksen-Cross was provided certain source code modules.  As discussed in detail below, these modules were not maintained at Rightscorp in the ordinary course of business and thus were not located during the lengthy process of reviewing Rightscorp's servers.  On June 13th, Steptoe & Johnson recalled that outdated code modules

3

might still reside with Ms. Frederiksen-Cross. Counsel promptly confirmed that Ms. Frederiksen-Cross did indeed possess some Rightscorp code modules from 2013, as well as some publicly available open source code. Preparations were made for the immediate production of same to Defendants and those 2013 code modules were produced today.

Rightscorp and its counsel have at all times worked diligently to respond in full and adhere to all discovery obligations with respect to the production of documents and, in particular, source code. While we disagree vehemently with Defendants' mischaracterizations concerning the non-source code documents as well as the 11-line BitField code, we recognize that Defendants may want to evaluate the code modules that resided on Ms. Frederiksen-Cross' files and which have been produced. To that end, Rightscorp agrees to certain of the relief requested by Cox in its motion to compel – namely, an additional Rightscorp Rule 30(b)(6) deposition on source code and leave for Cox's technical expert to supplement the expert report. Ms. Frederiksen-Cross' deposition is not scheduled to take place until August 12, 2015, so Cox can ask Ms. Frederiksen-Cross any questions it wants on this code.

## II. ARGUMENT

### A. Rightscorp Produced the Documents Subject to the Court's June 26 Order

Cox's motion is riddled with inflammatory comments about Rightscorp's production and behavior that simply are not true. Neither Rightscorp nor its counsel has intentionally withheld any relevant documents or source code.

#### 1. The Non-Source Code Documents Were Produced

The first example of Cox's mischaracterizations concerns the specific documents that Cox sought in its motion to compel. Specifically, in its June 19 motion to compel (Dkt No. 95), Cox requested that Rightscorp be compelled to produce certain documents that Mr. Steele identified during his deposition which were limited to:

4

- "a guideline sheet regarding pricing of settlements;
- a phone script to guide Rightscorp telephone agents in their communications with callers;
- a Rightscorp employee handbook; and
- letter templates for Rightscorp's communications with ISPs."

(*See* Dkt. No. 95 at 8-9)

As represented to the Court on June 26, 2015, the documents listed above were produced on June 23, 2015, prior to the June 26 hearing date and even in advance of the date required for production under the applicable Cox subpoena.[1] *See* Exhibit B, June 23 Rightscorp Production Letter.

### 2. The Rightscorp Telephone Script Has Been Produced

Cox maintains that there are additional versions of the phone script that have not been produced. Cox is wrong and was so advised in advance of this motion – the phone script that was produced is the current phone script. Rightscorp has performed a reasonable search for and has not located prior versions of the phone script. There is therefore, nothing additional for Rightscorp to produce.

The debate and dispute over the telephone script is indicative of Cox's incredibly long, irrelevant and now abusive discovery reach into Rightscorp, its business and its personnel. Rightscorp never communicated with any Cox customers because Cox saw fit to wholesale ignore the voluminous notices of infringement Rightscorp provided to Cox on behalf of the plaintiffs and others. Yet, Rightscorp is battling motions to compel and hours of inane and

---

[1] Proving that no good deed goes unpunished, Rightscorp produced the current version of the call script to Cox even before production per Cox's third document subpoena to Rightscorp. Production was made early precisely to avoid a fight with defendants and despite its lack of relevance – again because no calls were made to any Cox subscriber.

irrelevant deposition testimony on its telephone call script. And, as explained below, there are even more irrelevant, burdensome and harassing requests to Rightscorp now before the Court.[2]

### 2. The Phone Logs and Audio Recordings Were Not Subject to the Court's Order

In an attempt to further paint Rightscorp and its counsel in a bad light on this issue, Cox points to yet a *fifth* category of documents – phone logs and audio recordings. To be clear, this fifth category of documents was not, and in fact could not have been at issue in Cox's earlier motion, as it was first requested by Cox in its third document subpoena to Rightscorp served on June 16, 2015.

As is Cox's general procedure, Cox first sought production of these documents on July 8, 2015, just two days before this motion to compel. *See* Exhibit C, July 8, 2015 letter from A. Nercessian to M. Allan. Again, this fifth category of documents was never within the scope of the Court's June 26 Order, and the representation to the Court regarding the documents discussed in Mr. Steele's deposition were, and remain, accurate.

### 3. The Phone Logs and Audio Recordings are Irrelevant

The phone logs of Rightscorp's telephone agents and any voice recordings are not relevant to any claims and defenses in this action. Cox has repeatedly admitted that it has deleted, ignored and never forwarded any of Rightscorp's copyright infringement notices to its subscribers, including all those sent on behalf of Plaintiffs in this case. Thus, no Cox subscriber has ever received an infringement notice from Rightscorp on behalf of the Plaintiffs. No Cox subscriber would even know to call Rightscorp. Knowing full well that there are no communications between Rightscorp and any Cox subscriber, Cox now demands production of any and all telephone recordings and logs of any telephone calls between Rightscorp and *non-*

---

[2] To date, Cox has taken 24 hours of on the record deposition testimony of Rightscorp personnel. And Rightscorp has produced voluminous documentation in response to three separate document subpoenas.

6

*Cox* subscribers that concern any copyright. The recordings of telephone calls between Rightscorp and *other* ISPs' subscribers or logs of calls with *other* ISPs' subscribers are simply not relevant to this action.

Cox's demand for phone logs and recordings of Rightscorp's phone conversations with individuals from other ISPs stands in stark contrast to Cox's prior positions before the Court on relevance, particularly as it pertains to individual direct infringers. Cox's attempts to stretch the boundaries of relevant information is undercut by its prior argument that even the identities of its *own* subscribers accused of infringing plaintiffs' copyrights *at issue in this case* were not relevant since Rightscorp's notices were not forwarded by Cox to these customers. *See Cox Opposition to Motion to Compel* (Dkt. No. 74) at 7. ("Cox vigorously disputes that its subscribers' PII is properly the subject of discovery."). Now, Cox asks the Court to find that information concerning Rightscorp's telephone calls with irrelevant third parties that are *not Cox customers* – *i.e.* infringers using other ISPs that *are not* the direct infringers in this action – are relevant even though Rightscorp has never communicated directly with Cox subscribers by telephone and, indeed, cannot communicate with Cox subscribers because Cox does not forward its notices.

Requiring Rightscorp to produce the audio recordings and phone logs would also be unduly burdensome on Rightscorp. There are approximately 10,000 phone logs stored in Rightscorp's database. Each log amounts to approximately three pages of data, where the personal identifiers of other ISPs' subscribers would have to be redacted. The audio recordings of Rightscorp's agents and other ISPs' customers would also have to somehow be edited to remove the personal identifiers of the subscribers. Requiring Rightscorp, a small, start-up company to review, redact, and produce this information would be costly and overly

burdensome. While Rightscorp is the agent of the Plaintifs, its human and economic resources have been taxed by Cox's discovery. The burden far outweighs any alleged relevance Cox may provide. The request for this information is nothing but a fishing expedition in furtherance of Cox's smear campaign of Rightscorp. Rightscorp has not improperly withheld the phone logs and voice recordings. Rightscorp properly objected to these requests on June 26, 2015 as not being relevant to this action, and thus, Cox is not entitled to receive them.

### 4. Rightscorp 30(b)(6) witnesses were adequately prepared

Cox's allegation that Mr. Sabec was unprepared to testify about the 30(b)(6) topics he was designated for is also untrue. First, Mr. Sabec was deposed for a total of 10 hours, resulting in approximately 410 pages of deposition transcript. Mr. Sabec was adequately prepared to discuss topics relating to the Rightscorp telephone agents and did testify about the telephone agents. Approximately 40 pages of Mr. Sabec's transcript included testimony regarding the Rightscorp phone script. Additionally, Mr. Sabec testified about the training the telephone agents receive and the when voice recordings are made between the telephone agents and ISPs' subscribers. The fact that Mr. Sabec did not know the rationale behind every phrase in the phone script or whether earlier versions of the phone script were available, which Rightscorp has since confirmed that there are not, does not make Mr. Sabec unprepared for the topics for which he was designated. Rightscorp has presented witnesses for 14 hours of 30(b)(6) deposition testimony and made Mr. Steele available for 7 hours of deposition testimony in his individual capacity. Cox has had ample time to discuss these topics. Further, as discussed above, because Cox does not forward any of Rightscorp's notices to its subscribers, information relating to the telephone agents is not reasonably related to the claims and defenses in this case.

The fact that Mr. Sabec testified that Mr. Steele was the most knowledgeable about these topics does not render Mr. Sabec unprepared to testify about the topics. For a 30(b)(6)

8

deposition, a party does not have to designate the person with the most knowledge about the topic. *See QBE Ins. Corp. v. Jorda Enterprises, Inc.,* 277 F.R.D. 676, 688 (S.D. Fla. 2012) (The rule does not require a corporation to produce the "person most knowledgeable" for a corporate deposition); *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y.) aff'd, 293 F. Supp. 2d 315 (S.D.N.Y. 2003) (a party need not produce the organizational representative with the "greatest" knowledge on a subject). Cox now alleges that Rightscorp must put up the person most knowledgeable about certain topics. This is not the standard and is not the way Cox has conducted itself in this case. Indeed, if Cox were to apply this rationale to its own witnesses, Cox should re-produce witnesses on many of the topics its witnesses were designated. For example, Cox employees Jason Zabek and Joseph Sikes, who run the department responsible for addressing infringement notices – a central issue in this case – were curiously not designated to be 30(b)(6) witnesses on any topic. Moreover, Cox should not be allowed to dictate who Rightscorp designates as its corporate witnesses. Cox has declined to do the same when requested by Plaintiffs in this very action.

For the reasons discussed above, Cox's motion to compel these additional Rightscorp documents and for additional relief, including sanctions, should be denied.

  **B.**  **The Rightscorp Source Code**

Rightscorp's system code is not contained in a single repository, but rather consists of hundreds of different files of code residing on several different servers. Exhibit A, Boswell Decl. at ¶ 4. Together, these hundreds of files form Rightscorp's proprietary system that identifies infringements by monitoring BitTorrent systems and extracting information about the infringing activity, including, the IP address, the internet service provider, the infringing content being uploaded or downloaded, the date and time, and the suspected location of the host computer accessing BitTorrent networks.

There are three main functional components of Rightscorp's system, each component consisting of numerous source code files. *Id*. at ¶¶ 3 and 4. The first group of source code files are those that detect and/or find infringers on the BitTorrent system, referred to as the "Infringement Finder" files. *Id.* The second group are those that sample the downloaded songs to verify that they are copies of the protected copyrighted works, referred to as the "SampleIt" files. *Id.* The third group of source code files are those that prepare and send copyright infringement notices to the applicable Internet Service Provider ("ISP"), in this case Cox, referred to as the "Infringement Notices" files. *Id.* The core source code relating to these three components of Rightscorp's system was provided to Cox on May 22, 2015, in Rightscorp's initial source code production.

Rightscorp has gone to tremendous lengths to respond to Cox's subpoenas and to its numerous follow-up requests, which, for the most part, were overbroad and sought code and/or data that is not relevant to the issues in this case.[3] Specifically, to produce the relevant source code, Rightscorp searched many different servers and hundreds of source code files to determine which files were relevant to finding infringements on Cox's network and notifying Cox of the same. *Id.* at ¶¶ 4, 7, and 8. To date, Rightscorp has produced at least 176 source code files with over 17,000 lines of code that make up the three main functional components of Rightscorp's system, which are listed in Exhibit 1 to Mr. Boswell's declaration. *Id.* at ¶ 7. Rightscorp has expended over 100 hours searching for any code relevant to Cox's requests and providing such code. Exhibit A, Boswell Decl. at ¶ 8.

---

[3] It is worth noting that Cox mischaracterizes the meet and confer process here and instead continues its rush to file approach. Cox misinforms the Court that two Steptoe lawyers "refused to participate in the July 9 call." Dkt. No. 136 at f/n 3. This accusation is flat wrong. Incredibly, Cox fails to inform the Court that Cox sent a detailed letter at 10:00 p.m. on July 8th and demanded that additional source code issues be discussed at a pre-existing meet and confer set for at 2:00 p.m. the next day on a different issue. Cox attorneys were informed that Steptoe was looking into the issues raised in the July 8th letter 10:00 PM letter and would contact Cox's attorneys after speaking to Rightscorp. At approximately 5:00 p.m. on July 9th, Rightscorp's attorneys called Brian Buckley to discuss these issues. Neither Mr. Buckley nor any Cox attorney returned the call.

Rightscorp has gone even a step further and tested the code to verify that all the relevant code has been produced. Specifically, Rightscorp has assembled the source code files for each of the three main functional components on a computer – Infringement Finder, SampleIt, and Infringement Notices – using the files listed in Boswell Declaration Exhibit 1 (all of which have been produced to Cox), and then compiled each of the three sets. Exhibit A, Boswell Decl. at ¶ 10. There was only one error that occurred during the compile procedure. *Id.* While this one additional file, which is related to password generation, is not relevant, this additional file has been produced. *Id*.

Accordingly, Rightscorp has produced to Cox all the source code that Cox would need for a programmer to build or duplicate the three main functional components of Rightscorp's System if it chose to do so. *Id*. Rightscorp has also produced additional files that are need to run its system, but are not necessary to understand or build the three main functional components. These include SQL files, manual commands, and Rightscorp's accounting function. *Id.* at 11.

Despite these efforts, there were two categories of code that were inadvertently not produced. The first category relates to the 10% BitField code (that was not used by Rightscorp prior to the filing of the complaint.) The second relates to certain portions of the code as it existed in 2013.

            1.     **The 10% BitField Code**

Cox complains that of the 176 files and over 17,000 thousand of lines of code produced to date, Rightscorp's failure to produce the roughly 11 lines of code related to the 10% bitfield threshold was deliberate and tactically designed to impede the work of Cox's expert. This is not true and Cox is doing exactly what it promised not to do, which is to create a "gotcha" moment in an attempt to smear Rightscorp and its attorneys. *See* June 26, 2015 Hearing when Mr. Buckley stated "Your Honor, and that's fair. And this is not intended to be a gotcha exercise so

11

we can say later, oh, you were told to give us every line of code and you failed to do that." June 26, 2015 Hearing Tr. at 5:12-15.

To be clear, these 11 lines of code were not produced by June 30, 2015, but the failure to produce these 11 lines of code was inadvertent. Prior to June 29 hearing, Mr. Caracappa conferred with all counsel on this case involved in collecting and producing source code. Mr. Caracappa obtained assurances from these individuals that this was the case,[4] which is what he represented to the Court at the June 29 hearing, but stated that he needed further confirmation from the client that all the code had been produced. June 26, 2015, Hearing Tr. at 7:13-8:13. Attorneys at Steptoe spoke to Rightscorp on June 26th and 29th. After those discussions, some additional code was produced on June 30, 2015.

On Friday, July 3, 2015, Cox took the deposition of Mr. Boswell. Mr. Boswell testified about the change that was made to the bitfield threshold *after the complaint was filed*. Mr. Boswell testified that this specific code was contained in a query, but was not able to recall the specific name of the file at that time. Mr. Boswell informed counsel that he believed the file was called sqltext.txt, but Mr. Boswell and counsel were not able to verify that this was the case at the deposition. Exhibit D, Roberts Decl. at ¶ 4. Following the deposition, Mr. Boswell checked his files and notified counsel on the evening of July 4, 2015 that the file relating to the bitfield threshold had been transmitted to counsel on June 15, 2015. Exhibit D, Roberts Decl. at ¶ 5. On Sunday, July 5, 2015, counsel investigated whether this file – consisting of about 11 lines of code – had been produced and determined that it had *inadvertently* not been produced, either to Cox or to Plaintiffs' expert. Exhibit D, Roberts Decl. at ¶ 6. As soon as this oversight was

---

[4] These assurances were based on communications with Rightscorp that the relevant code had been produced. The attorneys in this case are not software programmers and do not read code and would not be able to determine whether all of the code had been produced without conferring with Rightscorp.

discovered, counsel immediately produced the file on the next business day, Monday, July 6, 2015. Exhibit D, Roberts Decl. at ¶ 6.

In an attempt to get this file to Cox in an expeditious manner, not as any sort of gamesmanship as Cox alleges, Rightscorp's counsel produced a printout of this file on July 6, 2015, which amounts to approximately half a page of code, and sent it to Cox via FedEx. The printout of the code is exactly the same as the electronic copy of the code that was electronically produced on July 9, 2015. Pursuant to the Protective Order in this case, source code is required to be on a stand-alone computer that is not connected to the internet and may not accept peripheral devices such as USB thumb drives. Dkt. No. 46 at 22. In this case, Cox requested that the Rightscorp source code be hosted at a third party vendor, rather than at the offices of Steptoe & Johnson. Rightscorp accommodated this request. However, this adds additional time for Cox to receive printouts of source code. Under the Protective Order, the procedure for producing Rightscorp's source code is:

- Steptoe & Johnson sends the source code to the vendor;
- Cox's expert reviews the source code at the vendor;
- Cox's expert requests printouts of the source code;
- the vendor sends Steptoe & Johnson the printout of the source code via FedEx;
- Steptoe & Johnson bates stamps and copies the source code; and
- Steptoe & Johnson sends the printouts of the source code to Cox's counsel.

At Cox's request, Rightscorp's counsel sent the 11 lines of code to the vendor as well on July 9, 2015. There was no gamesmanship in the production of the hard copy of the source code to Cox's counsel. It was merely an attempt to get the printout of the source code to them in an expeditious manner while at the same time, complying with the Protective Order.

With regard to the file FullFileFix.txt, as Mr. Boswell testified, this file is merely a text file with ***one line of code*** that schedules when the 10% bitfield threshold code runs in a publicly available database, MySQL database. Mr. Boswell did not realize that this file was not produced

13

to Cox until he was deposed on July 3, 2015. Subsequent to his deposition, Mr. Boswell produced this file to counsel, who immediately provided it to Cox's counsel. Again, there was no bad faith withholding of this *one line of scheduling code* by Rightscorp or its counsel. While these two files were inadvertently not produced to Cox in response to the June 26, 2015 order, they were not withheld in bad faith. Rightscorp and its counsel reviewed the list of files that had been produced and did not realize that these two files were missing. The omission of these two files were inadvertent and not an attempt to prejudice Cox.

With regard to the preparation for the deposition, Mr. Boswell was fully prepared for the topics he was designated for. Mr. Boswell wrote the Rightscorp code and testified about the threshold for the bitfield, when it was changed, and why it was changed and testified at length about the Rightscorp code. Because there was no bad faith withholding of source code and no additional source code that Rightscorp is aware of that is relevant to the evidence in this case, Cox's motion to compel and for additional relief, including sanctions, should be denied.

### 2. The 10% BitField Code is Not Relevant

Importantly, this code is not relevant to the evidence that was collected in this case. As Mr. Boswell testified to several times during his deposition (testimony that Cox fails to cite to the Court), Rightscorp changed the percentage of the torrent a peer is required to have only *after* the complaint was filed. Prior to the filing of the complaint, and during the entire period of evidence collection for this case, Rightscorp ensured that a peer had 100% of the copyrighted work. Thus, all of the relevant evidence in this case is based on a peer having 100% of the copyrighted work. Indeed, this Court has previously stated that the infringements occurring after the filing of the complaint are not relevant. *See* May 15, 2015 Hearing Tr. (Dkt. No. 80) at 30:19-25 discussing the relevance of the identity of the direct infringers after the filing of the complaint.

### 3. Cox Complains About the Code Produced Pursuant to the Court's Order

With regard to Cox's alleged prejudice because it did not have hard copy printouts of certain source code for Mr. Boswell's deposition, this was Cox's own making. As discussed above, Cox requested that the Rightscorp source code be hosted at a third party vendor. The files that were produced in response to the June 26, 2015 Order were produced timely, approximately mid-day on June 30, 2015. Cox's expert reviewed the source code and requested printouts. However, the printouts were not received at the Washington, D.C. offices of Steptoe & Johnson until July 2, 2015 from the vendor hosting Rightscorp's source code. Cox requested that Rightscorp's counsel bring copies of this code to the July 3, 2015 deposition of Mr. Boswell, but that was not possible since the copies of the code were not received until after counsel left for the deposition in California. *See* Exhibit F. Pursuant to the Protective Order, electronic copies of the printed source code cannot be made. Thus, there was no way for Rightscorp's counsel to bring copies of the printed source code at the deposition in California, and Cox's counsel offered no other solutions.

### 4. Additional Code Rightscorp Produced on Wednesday, July 15th

Mr. Boswell testified that Rightscorp does not keep or maintain older versions of its source code files in the ordinary course of business. As a result, when Rightscorp received Cox's subpoena and the request to produce its code and all versions thereof, Rightscorp produced the current version of its code because it was the only version in its possession.

On Monday, July 13th, in preparation for expert depositions, Steptoe discovered that certain portions of an earlier version of portions of the source code still existed. Exhibit D, Roberts Decl. at ¶ 10. These additional code modules did not reside on Rightscorp's servers, but instead, were in the possession of Plaintiffs' expert, Ms. Barbara Frederiksen-Cross. The

omission of this code from the original production was an oversight, in large part because of Ms. Frederiksen-Cross' unique role. Specifically, Ms. Frederiksen-Cross was retained in 2013 as a consultant to conduct a preliminary assessment of the basic, core functionality of Rightscorp's code. Roberts Decl. at ¶ 8. In order to conduct her analysis, she was provided with certain of Rightscorp source code files. *Id.*

Ordinarily, one looks to the client for the collection and production of documents, including source code. If the client represents that they did not maintain earlier versions of the code in the ordinary course of business, and there was no evidence to suggest otherwise (which there is not in this case) then there would ordinarily be no reason to look to the expert as a custodian. However, as discussed above, because of Ms. Frederiksen-Cross' unique role in 2013, she did possess an earlier version of certain portions of the code. As a result, Steptoe & Johnson inadvertently overlooked the fact that Ms. Frederiksen-Cross could have been, and in fact was, a custodian of additional source code.

Upon confirmation from Ms. Frederiksen-Cross on June 14th, 2015 that she was in possession of these files, and that these files were not identical to the code that had previously been produced, Steptoe immediately contacted Cox and on July 15th, 2015, produced this additional code. Ms. Frederiksen-Cross did not rely on the 2013 code modules she had in her possession in forming her opinions in this case. Nevertheless, in order to be able to inform the Court and Cox's lawyers that the earlier code modules that reside on her system contained no significant differences between the core functionality (*i.e.*, Infringement Finder and SampleIt) of the code already in Cox's possession, Steptoe & Johnson asked Ms. Frederiksen-Cross to review the old code in her files. Such a comparison was conducted and confirmed between Monday July 13 when this error was discovered and today. Exhibit E, Frederiksen-Cross Decl. at ¶¶ 3-4.

As indicated above, Rightscorp consents to the relief requested in Cox's motion concerning an additional Rightscorp Rule 30(b)(6) designee on the code and Plaintiffs consent to Cox's request for leave to amend any code related technical expert report. Again, there is a month left in discovery and Cox will have an opportunity to examine this code and if it wishes, question both Rightscorp and Ms. Frederiksen-Cross on how this code works.

### III.   CONCLUSION

For the reasons discussed above, Cox's motion to compel and for additional relief, including sanctions, should be denied.

July 15, 2015

Respectfully submitted,

/s/ Paul Gennari

Walter D. Kelley, Jr. (VSB No. 21622)
HAUSFELD, LLP
1700 K Street, NW
Washington, DC 20006
Tel:  (202) 540-7157
Fax:  (202) 540-7201

Paul Gennari (VSB No. 46890)
pgennari@steptoe.com
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

*Of Counsel*

Michael J. Allan (admitted *pro hac vice*)
William G. Pecau (admitted *pro hac vice*)
John M. Caracappa (admitted *pro hac vice*)
Stephanie L. Roberts (admitted *pro hac vice*)
Elizabeth McKenzie (admitted *pro hac vice*)

STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia 30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Rightscorp*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 15, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

                                /s/ Paul Gennari
                                Paul Gennari (VSB No. 46890)
                                pgennari@steptoe.com
                                STEPTOE & JOHNSON, LLP
                                1330 Connecticut Ave, NW
                                Washington, DC 20036
                                Tel.:  (202) 429-3000
                                Fax:  (202) 429-3902