# EXHIBIT 1

```
                                                                   1
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




---------------------------------:
                                 :
BMG RIGHTS MANAGEMENT (US) LLC,  :
et al.,                          :
             Plaintiffs,         :
                                 : Case No. 1:14-cv-1611
    vs.                          :
                                 :
                                 :
COX ENTERPRISES, INC., et al.,   :
             Defendants.         :
---------------------------------:




                      HEARING ON MOTIONS

                         May 15, 2015

          Before:  John F. Anderson, Mag. Judge




APPEARANCES:

John M. Caracappa, Paul Gennari, and Walter D. Kelley, Jr.,
Counsel for the Plaintiffs

Brian D. Buckley and Craig C. Reilly,
Counsel for the Defendants




                               Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626
```

1  misspoke.  What I am saying is that it is highly likely that of
2  the 250 IP addresses that they have identified where allegedly
3  infringement occurred on those IP addresses after the filing of
4  this lawsuit, that at least some of those are not the same
5  folks who had those IP addresses before the suit was filed.
6          So to the extent that we're talking about historical
7  acts that led up to the filing of this lawsuit, those post-
8  filing 250, there is not going to be complete overlap with the
9  folks tho had them before the filing.
10         And it's just one more reason, Your Honor, and one
11 more illustration of the fact that these IP addresses in and of
12 themselves don't tell you very much.  And that's what the cases
13 that we cited to you say.
14         THE COURT:  Yeah.  You know, we deal with this issue
15 fairly frequently.  They provide you information.  And if the
16 investigation does lead that through a certain IP address there
17 has been infringement, that doesn't necessarily know who the
18 actual person was, but you do know the IP address that the
19 infringement occurred.
20         I mean, it's not unimportant information.  It just
21 doesn't necessarily mean that the person who actually has the
22 account with the Internet service provider was the one who
23 actually did the inappropriate --
24         MR. BUCKLEY:  Is a wrongdoer.
25         THE COURT:  Is the wrongdoer.

20

1           MR. BUCKLEY:  Right, right.
2           THE COURT:  But it is through that person's account
3    that alleged wrongdoing has been done.
4           MR. BUCKLEY:  While I agree with that, Your Honor, I
5    think that's only relevant and only important if you're trying
6    to prove that an infringement occurred in connection with that
7    IP address.  And here they are saying they are not going to do
8    that.
9           And if they intended to do it, why would they be
10   asking for 500 out of 150,000 IP addresses?  That wouldn't make
11   any sense.
12          So if they're not intending to show that a particular
13   IP address or the subscriber of a particular IP address engaged
14   in direct infringement, then what is all of this relevant for?
15   And really the only response you've gotten to that is, well,
16   Cox intends to rely on it.  Cox intends to use PII in support
17   of its defenses.  And that's just categorically untrue.  Even
18   if we wanted to do it, we couldn't do it.  So it can't be that.
19          So, Your Honor, I keep coming back to what is the --
20   it's their burden, they've got to show good cause.  What's the
21   good cause?  How is this information relevant to the lawsuit in
22   the first place?
23          And then you still have to weigh it against, it
24   violates people's privacy expectations under the Cable Privacy
25   Act.  It imposes significant burdens on Cox.  Potentially

1    significant burdens on this Court.  And creates, I think,
2    nontrivial procedural issues when all of these third parties
3    have to come in and protect their rights.  And for what?
4             THE COURT:  Okay.  Thank you.
5             MR. REILLY:  Your Honor, if I may --
6             THE COURT:  No, we're not tag-teaming.  Sorry.  If
7    you want to talk to your counsel and have him do it --
8             MR. REILLY:  Sure.
9             THE COURT:  But I am not going to --
10            MR. CARACAPPA:  Thank you, Your Honor.
11            THE COURT:  So let him --
12            MR. CARACAPPA:  Sorry.
13            MR. BUCKLEY:  Your Honor, could I make one additional
14   point on the post-filing 250?
15            THE COURT:  Sure.
16            MR. BUCKLEY:  So the notion that these 250 that the
17   plaintiffs have identified are the most egregious infringers,
18   as Mr. Caracappa said, that's based on some measurement, which
19   we haven't had a chance to explore yet, some measurement of the
20   number of alleged acts of infringement associated with each of
21   those IP addresses.
22            Presumably if there is really that volume, at least
23   some of that happened before the lawsuit.  And maybe even
24   before the six months leading up to the lawsuit.
25            So again, this goes back to the problem of picking an

1   IP address, asking for the PII associated with that IP address,
2   and then labelling that subscriber an egregious infringer.
3          The temporal limitations on that matter and the fact
4   that these IP addresses are dynamic, that they turn over, that
5   they are reassigned, matters and weighs -- waters down any
6   potential relevance that that PII is going to have.  And at a
7   minimum it opens up --
8          THE COURT:  Well, if you look at Exhibit 4 -- and
9   these are the lists of the IP addresses.
10         MR. BUCKLEY:  Right.
11         THE COURT:  It talks about a date range of -- and I
12  assume that's the date range of when the number of alleged
13  infringements occurred.  And so, you -- am I misunderstanding
14  what you're saying?
15         It looks like, you know, they have a date range in
16  which they have calculated the number of alleged infringements
17  and, you know, this is the top 250 in each category.
18         MR. BUCKLEY:  If the infringements they're relying on
19  to apply the egregious infringer label all occurred within that
20  time frame, then I agree with you, there is less of a temporal
21  issue.  It was not clear to me that that was the case.  And
22  that's a question that you could put to Mr. Caracappa.
23         THE COURT:  Okay.
24         MR. BUCKLEY:  The point being, Your Honor, that the
25  fact that these things are dynamic matters and mitigates

23

1   against whatever relevance they might have.  And requiring us
2   to go through all the steps I identified and produce PII with
3   respect to a particular IP address, does not tell you very
4   much.  And worse, potentially, targets people who didn't do
5   anything wrong.
6           THE COURT:  Thank you.  All right.
7           First let's clear up the start of date -- start of
8   date range, end of date range, and what that terminology means
9   and how it was used in determining the number of infringements.
10          MR. CARACAPPA:  Sure, Your Honor.
11          THE COURT:  Alleged infringements.
12          MR. CARACAPPA:  That's exactly right.  What we tried
13  to do was identify an IP address and a date range.  And we want
14  the personal information for that IP address during that time
15  frame because we have in the first example, IP address
16  68.108.246.250 between 9/5/2014 and 11/18/2014, there is over
17  2,000 instances of copyright infringement.
18          We would like --
19          THE COURT:  So the alleged instances of copyright
20  infringement occurred during that date range?
21          MR. CARACAPPA:  Yes, Your Honor.
22          THE COURT:  Okay.  So --
23          MR. CARACAPPA:  And again, I find it hard to believe
24  that counsel can say that this information is irrelevant when
25  they have said a number of times --

1          THE COURT:  Well, what they're saying is you're
2     saying it's not relevant.  You're saying, we don't have to
3     prove direct infringement.  So why is it relevant to any claim
4     that you are making in this case?
5          MR. CARACAPPA:  Then I may have misspoke.  We -- it's
6     not required for us to prove direct infringement.  But it does
7     help us with our case, no question.
8          They continue to say that IP addresses change, and
9     that they are going to stand up and they are going to say, even
10    though all these instances of infringement occurred with this
11    IP address, it has changed over time.
12         And with this information identifying the personal
13    information associated with that IP address, if for these 500
14    or 150,000 IP addresses they can show it has changed, that is
15    certainly information that we should know and that we can
16    consider in preparing our case.
17         Let me go back and correct a factual inaccuracy.  Cox
18    has received our notice letters.  We send them.  It gets them.
19    It looks at them.  It says, they are from Rights Corp., we are
20    not going to process them any further.
21         So analogizing this to the U.S. mail, I look at a
22    letter I get from the IRS, I don't want to open it, I throw it
23    out.
24         That's exactly what they've done.  Now, in the past
25    week --

35

## CERTIFICATE of TRANSCRIPTION

 1

 2

 3

 4

 5    I hereby certify that the foregoing is a true and
 6  accurate transcript that was typed by me from the recording
 7  provided by the court.  Any errors or omissions are due to the
 8  inability of the undersigned to hear or understand said
 9  recording.

10

11    Further, that I am neither counsel for, related to,
12  nor employed by any of the parties to the above-styled action,
13  and that I am not financially or otherwise interested in the
14  outcome of the above-styled action.

20                                     /s/ Norman B. Linnell
21                                     Norman B. Linnell
22                                     Court Reporter - USDC/EDVA