# EXHIBIT 58



**WIPO**
WORLD INTELLECTUAL PROPERTY ORGANIZATION

# WIPO Copyright Treaty

(adopted in Geneva on December 20, 1996)

CONTENTS

Preamble
Article 1: Relation to the Berne Convention
Article 2: Scope of Copyright Protection
Article 3: Application of Articles 2 to 6 of the Berne Convention
Article 4: Computer Programs
Article 5: Compilations of Data (Databases)
Article 6: Right of Distribution
Article 7: Right of Rental
Article 8: Right of Communication to the Public
Article 9: Duration of the Protection of Photographic Works
Article 10: Limitations and Exceptions
Article 11: Obligations concerning Technological Measures
Article 12: Obligations concerning Rights Management Information
Article 13: Application in Time
Article 14: Provisions on Enforcement of Rights
Article 15: Assembly
Article 16: International Bureau
Article 17: Eligibility for Becoming Party to the Treaty
Article 18: Rights and Obligations under the Treaty
Article 19: Signature of the Treaty
Article 20: Entry into Force of the Treaty
Article 21: Effective Date of Becoming Party to the Treaty
Article 22: No Reservations to the Treaty
Article 23: Denunciation of the Treaty
Article 24: Languages of the Treaty
Article 25: Depositary

## Preamble

*The Contracting Parties,*

*Desiring* to develop and maintain the protection of the rights of authors in their literary and artistic works in a

manner as effective and uniform as possible,

*Recognizing* the need to introduce new international rules and clarify the interpretation of certain existing rules in order to provide adequate solutions to the questions raised by new economic, social, cultural and technological developments,

*Recognizing* the profound impact of the development and convergence of information and communication technologies on the creation and use of literary and artistic works,

*Emphasizing* the outstanding significance of copyright protection as an incentive for literary and artistic creation,

*Recognizing* the need to maintain a balance between the rights of authors and the larger public interest, particularly education, research and access to information, as reflected in the Berne Convention,

*Have agreed* as follows:

## Article 1
### Relation to the Berne Convention

(1) This Treaty is a special agreement within the meaning of Article 20 of the Berne Convention for the Protection of Literary and Artistic Works, as regards Contracting Parties that are countries of the Union established by that Convention. This Treaty shall not have any connection with treaties other than the Berne Convention, nor shall it prejudice any rights and obligations under any other treaties.

(2) Nothing in this Treaty shall derogate from existing obligations that Contracting Parties have to each other under the Berne Convention for the Protection of Literary and Artistic Works.

(3) Hereinafter, "Berne Convention" shall refer to the Paris Act of July 24, 1971 of the Berne Convention for the Protection of Literary and Artistic Works.

(4) Contracting Parties shall comply with Articles 1 to 21 and the Appendix of the Berne Convention.[1]

## Article 2
### Scope of Copyright Protection

Copyright protection extends to expressions and not to ideas, procedures, methods of operation or mathematical concepts as such.

## Article 3
### Application of Articles 2 to 6 of the Berne Convention

Contracting Parties shall apply *mutatis mutandis* the provisions of Articles 2 to 6 of the Berne Convention in respect of the protection provided for in this Treaty.[2]

## Article 4
## Computer Programs

Computer programs are protected as literary works within the meaning of Article 2 of the Berne Convention. Such protection applies to computer programs, whatever may be the mode or form of their expression.[3]

## Article 5
## Compilations of Data (Databases)

Compilations of data or other material, in any form, which by reason of the selection or arrangement of their contents constitute intellectual creations, are protected as such. This protection does not extend to the data or the material itself and is without prejudice to any copyright subsisting in the data or material contained in the compilation.[4]

## Article 6
## Right of Distribution

(1) Authors of literary and artistic works shall enjoy the exclusive right of authorizing the making available to the public of the original and copies of their works through sale or other transfer of ownership.

(2) Nothing in this Treaty shall affect the freedom of Contracting Parties to determine the conditions, if any, under which the exhaustion of the right in paragraph (1) applies after the first sale or other transfer of ownership of the original or a copy of the work with the authorization of the author.[5]

## Article 7
## Right of Rental

(1) Authors of

    (i) computer programs;

    (ii) cinematographic works; and

    (iii) works embodied in phonograms, as determined in the national law of Contracting Parties,

shall enjoy the exclusive right of authorizing commercial rental to the public of the originals or copies of their works.

(2) Paragraph (1) shall not apply

    (i) in the case of computer programs, where the program itself is not the essential object of the rental; and

    (ii) in the case of cinematographic works, unless such commercial rental has led to widespread copying of such works materially impairing the exclusive right of reproduction.

(3) Notwithstanding the provisions of paragraph (1), a Contracting Party that, on April 15, 1994, had and continues to have in force a system of equitable remuneration of authors for the rental of copies of their works embodied in phonograms may maintain that system provided that the commercial rental of works embodied in phonograms is not giving rise to the material impairment of the exclusive right of reproduction of authors.[5][6]

## Article 8
### Right of Communication to the Public

Without prejudice to the provisions of Articles 11(1)(ii), 11*bis*(1)(i) and (ii), 11*ter*(1)(ii), 14(1)(ii) and 14*bis*(1) of the Berne Convention, authors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that members of the public may access these works from a place and at a time individually chosen by them.[7]

## Article 9
### Duration of the Protection of Photographic Works

In respect of photographic works, the Contracting Parties shall not apply the provisions of Article 7(4) of the Berne Convention.

## Article 10
### Limitations and Exceptions

(1) Contracting Parties may, in their national legislation, provide for limitations of or exceptions to the rights granted to authors of literary and artistic works under this Treaty in certain special cases that do not conflict with a normal exploitation of the work and do not unreasonably prejudice the legitimate interests of the author.

(2) Contracting Parties shall, when applying the Berne Convention, confine any limitations of or exceptions to rights provided for therein to certain special cases that do not conflict with a normal exploitation of the work and do not unreasonably prejudice the legitimate interests of the author.[8]

## Article 11
### Obligations concerning Technological Measures

Contracting Parties shall provide adequate legal protection and effective legal remedies against the circumvention of effective technological measures that are used by authors in connection with the exercise of their rights under this Treaty or the Berne Convention and that restrict acts, in respect of their works, which are not authorized by the authors concerned or permitted by law.

## Article 12
## Obligations concerning Rights Management Information

(1) Contracting Parties shall provide adequate and effective legal remedies against any person knowingly performing any of the following acts knowing, or with respect to civil remedies having reasonable grounds to know, that it will induce, enable, facilitate or conceal an infringement of any right covered by this Treaty or the Berne Convention:

    (i) to remove or alter any electronic rights management information without authority;

    (ii) to distribute, import for distribution, broadcast or communicate to the public, without authority, works or copies of works knowing that electronic rights management information has been removed or altered without authority.

(2) As used in this Article, "rights management information" means information which identifies the work, the author of the work, the owner of any right in the work, or information about the terms and conditions of use of the work, and any numbers or codes that represent such information, when any of these items of information is attached to a copy of a work or appears in connection with the communication of a work to the public.[9]

## Article 13
## Application in Time

Contracting Parties shall apply the provisions of Article 18 of the Berne Convention to all protection provided for in this Treaty.

## Article 14
## Provisions on Enforcement of Rights

(1) Contracting Parties undertake to adopt, in accordance with their legal systems, the measures necessary to ensure the application of this Treaty.

(2) Contracting Parties shall ensure that enforcement procedures are available under their law so as to permit effective action against any act of infringement of rights covered by this Treaty, including expeditious remedies to prevent infringements and remedies which constitute a deterrent to further infringements.

## Article 15
### Assembly

(1)

    (a) The Contracting Parties shall have an Assembly.

    (b) Each Contracting Party shall be represented by one delegate who may be assisted by alternate delegates, advisors and experts.

    (c) The expenses of each delegation shall be borne by the Contracting Party that has appointed the delegation. The Assembly may ask the World Intellectual Property Organization (hereinafter referred to as "WIPO") to grant financial assistance to facilitate the participation of delegations of Contracting Parties that are regarded as developing countries in conformity with the established practice of the General Assembly of the United Nations or that are countries in transition to a market economy.

(2)

    (a) The Assembly shall deal with matters concerning the maintenance and development of this Treaty and the application and operation of this Treaty.

    (b) The Assembly shall perform the function allocated to it under Article 17(2) in respect of the admission of certain intergovernmental organizations to become party to this Treaty.

    (c) The Assembly shall decide the convocation of any diplomatic conference for the revision of this Treaty and give the necessary instructions to the Director General of WIPO for the preparation of such diplomatic conference.

(3)

    (a) Each Contracting Party that is a State shall have one vote and shall vote only in its own name.

    (b) Any Contracting Party that is an intergovernmental organization may participate in the vote, in place of its Member States, with a number of votes equal to the number of its Member States which are party to this Treaty. No such intergovernmental organization shall participate in the vote if any one of its Member States exercises its right to vote and *vice versa*.

(4) The Assembly shall meet in ordinary session once every two years upon convocation by the Director General of WIPO.

(5) The Assembly shall establish its own rules of procedure, including the convocation of extraordinary sessions, the requirements of a quorum and, subject to the provisions of this Treaty, the required majority for various kinds of decisions.

## Article 16
### International Bureau

The International Bureau of WIPO shall perform the administrative tasks concerning the Treaty.

## Article 17
### Eligibility for Becoming Party to the Treaty

(1) Any Member State of WIPO may become party to this Treaty.

(2) The Assembly may decide to admit any intergovernmental organization to become party to this Treaty which declares that it is competent in respect of, and has its own legislation binding on all its Member States on, matters covered by this Treaty and that it has been duly authorized, in accordance with its internal procedures, to become party to this Treaty.

(3) The European Community, having made the declaration referred to in the preceding paragraph in the Diplomatic Conference that has adopted this Treaty, may become party to this Treaty.

## Article 18
### Rights and Obligations under the Treaty

Subject to any specific provisions to the contrary in this Treaty, each Contracting Party shall enjoy all of the rights and assume all of the obligations under this Treaty.

## Article 19
### Signature of the Treaty

This Treaty shall be open for signature until December 31, 1997, by any Member State of WIPO and by the European Community.

## Article 20
### Entry into Force of the Treaty

This Treaty shall enter into force three months after 30 instruments of ratification or accession by States have been deposited with the Director General of WIPO.

## Article 21
### Effective Date of Becoming Party to the Treaty

This Treaty shall bind:

(i) the 30 States referred to in Article 20, from the date on which this Treaty has entered into force;

(ii) each other State from the expiration of three months from the date on which the State has deposited its instrument with the Director General of WIPO;

(iii) the European Community, from the expiration of three months after the deposit of its instrument of ratification or accession if such instrument has been deposited after the entry into force of this Treaty according to Article 20, or, three months after the entry into force of this Treaty if such instrument has been deposited before the entry into force of this Treaty;

(iv) any other intergovernmental organization that is admitted to become party to this Treaty, from the expiration of three months after the deposit of its instrument of accession.

### Article 22
### No Reservations to the Treaty

No reservation to this Treaty shall be admitted.

### Article 23
### Denunciation of the Treaty

This Treaty may be denounced by any Contracting Party by notification addressed to the Director General of WIPO. Any denunciation shall take effect one year from the date on which the Director General of WIPO received the notification.

### Article 24
### Languages of the Treaty

(1) This Treaty is signed in a single original in English, Arabic, Chinese, French, Russian and Spanish languages, the versions in all these languages being equally authentic.

(2) An official text in any language other than those referred to in paragraph (1) shall be established by the Director General of WIPO on the request of an interested party, after consultation with all the interested parties. For the purposes of this paragraph, "interested party" means any Member State of WIPO whose official language, or one of whose official languages, is involved and the European Community, and any other intergovernmental organization that may become party to this Treaty, if one of its official languages is involved.

### Article 25
### Depositary

The Director General of WIPO is the depositary of this Treaty.

---

[1] **Agreed statements concerning Article 1(4):** The reproduction right, as set out in Article 9 of the Berne Convention, and the exceptions permitted thereunder, fully apply in the digital environment, in particular to the use of works in digital form. It is understood that the storage of a protected work in digital form in an electronic medium constitutes a reproduction within the meaning of Article 9 of the Berne Convention.

[2] **Agreed statements concerning Article 3 :** It is understood that in applying Article 3 of this Treaty, the expression "country of the Union" in Articles 2 to 6 of the Berne Convention will be read as if it were a reference to a Contracting Party to this Treaty, in the application of those Berne Articles in respect of protection provided for in this Treaty. It is also understood that the expression "country outside the Union" in those Articles in the Berne Convention will, in the same circumstances, be read as if it were a reference to a country that is not a Contracting Party to this Treaty, and that "this Convention" in Articles 2(8) , 2bis(2) , 3 , 4 and 5 of the Berne Convention will be read as if it were a reference to the Berne Convention and this Treaty. Finally, it is understood that a reference in Articles 3 to 6 of the Berne Convention to a "national of one of the countries of the Union" will, when these Articles are applied to this Treaty, mean, in regard to an intergovernmental organization that is a Contracting Party to this Treaty, a national of one of the countries that is member of that organization.

[3] **Agreed statements concerning Article 4:** The scope of protection for computer programs under Article 4 of this Treaty, read with Article 2, is consistent with Article 2 of the Berne Convention and on a par with the relevant provisions of the TRIPS Agreement.

[4] **Agreed statements concerning Article 5:** The scope of protection for compilations of data (databases) under Article 5 of this Treaty, read with Article 2, is consistent with Article 2 of the Berne Convention and on a par with the relevant provisions of the TRIPS Agreement.

[5] **Agreed statements concerning Articles 6 and 7:** As used in these Articles, the expressions "copies" and "original and copies," being subject to the right of distribution and the right of rental under the said Articles, refer exclusively to fixed copies that can be put into circulation as tangible objects.

[6] **Agreed statements concerning Article 7:** It is understood that the obligation under Article 7(1) does not require a Contracting Party to provide an exclusive right of commercial rental to authors who, under that Contracting Party's law, are not granted rights in respect of phonograms. It is understood that this obligation is consistent with Article 14(4) of the TRIPS Agreement.

[7] **Agreed statements concerning Article 8 :** It is understood that the mere provision of physical facilities for enabling or making a communication does not in itself amount to communication within the meaning of this Treaty or the Berne Convention. It is further understood that nothing in Article 8 precludes a Contracting Party from applying Article 11bis(2) .

[8] **Agreed statement concerning Article 10:** It is understood that the provisions of Article 10 permit Contracting Parties to carry forward and appropriately extend into the digital environment limitations and exceptions in their national laws which have been considered acceptable under the Berne Convention. Similarly, these provisions should be understood to permit Contracting Parties to devise new exceptions and limitations that are appropriate in the digital network environment.

It is also understood that Article 10(2) neither reduces nor extends the scope of applicability of the limitations and exceptions permitted by the Berne Convention.

[9] **Agreed statements concerning Article 12:** It is understood that the reference to "infringement of any right covered by this Treaty or the Berne Convention" includes both exclusive rights and rights of remuneration.

It is further understood that Contracting Parties will not rely on this Article to devise or implement rights management systems that would have the effect of imposing formalities which are not permitted under the Berne Convention or this Treaty, prohibiting the free movement of goods or impeding the enjoyment of rights under this Treaty.