**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-cv-1611 (LOG/JFA) |
| v. | ) ) | |
| COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF LINDA J. TRICKEY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**REDACTED VERSION SOUGHT TO BE SEALED**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, <br><br> Plaintiff, <br><br> v. <br><br> COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:14-cv-1611 (LOG/JFA) |

**DECLARATION OF LINDA J. TRICKEY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Linda J. Trickey, submit this declaration pursuant to 28 U.S.C. § 1746.

1.      I am Assistant General Counsel, Product & Privacy at Cox Communications.

2.      I received my law degree from Southern Methodist University Denman School of Law in 1989 where I was a member of the Phi Delta Phi legal honor society.  I am an active member of the State Bar of Georgia and an inactive member of the state bars of California and Texas.  I am a Certified Information Privacy Professional (CIPP/US).

3.      I have practiced law for over twenty-five years.  Following law school, I worked in the commercial litigation group of a Dallas, Texas firm for three years until I moved to California to be a litigator in the legal department of GTE California.  In 1995 I moved to the wireless division of GTE in Atlanta in the position of Regional Counsel, and remained there until 2000 upon completion of the merger of GTE and Bell Atlantic (which formed Verizon Communications).   I then moved to GE Power Systems as the primary attorney for the Energy Management Systems division, and remained there until the move to Cox Communications.  I have worked in the Cox Communications legal department for thirteen years, joining Cox in 2002 as

Corporate Counsel and received increasing responsibility and several promotions before attaining my current position as Assistant General Counsel in 2013.  I directly supervise two other attorneys and a contract manager, and I report to Mark Padilla, Cox's Vice President of Legal Operations, who in turn reports to Jennifer Hightower, Cox's General Counsel.

4.     In my role as Assistant General Counsel, Product & Privacy, I am primarily responsible for providing legal advice regarding certain product development and privacy matters. In relation to product development, I am responsible for understanding how the new product or service will operate and how it will be sold to account holders, identifying account holder notifications or disclosures, and reviewing contracts with vendors.  Additionally, I often review and provide legal advice regarding customer-facing materials about Cox products and services.  In relation to privacy matters, I am responsible for reviewing Cox's products and services to identify and resolve privacy issues and to ensure compliance with federal and state regulations governing account holder privacy.

5.     I worked with Randy Cadenhead during his tenure at Cox.  After Mr. Cadenhead retired at the end of 2013, I inherited some of his responsibilities.  For example, I now work with my team to produce and release the annual privacy policy, and we handle account holder complaints regarding privacy issues.  My team also has primary responsibility for the Cox High Speed Internet (CHSI) Subscriber Agreement and Cox High Speed Internet Acceptable Use Policy. I also took over Mr. Cadenhead's responsibility of handling legal matters relating to the handling of complaints of copyright infringement and supervision of Cox's Graduated Response Procedure, which I discuss in further detail below.

### Cox's Network Management Practices

6.     As Assistant General Counsel, Product & Privacy, I am familiar with and responsible for several Cox Communications policies, including the Acceptable Use Policy, Subscriber Agreement, and Privacy Policy.  I am also familiar with Cox's practices with regard to privacy of account holders.

7.     **Exhibit 1** is a copy of a Cox Privacy Notice updated June 12, 2015.  As Cox

2

discloses in this Privacy Policy under the "Internet Security" section, in connection with Internet services, like most Internet service providers, Cox automatically collects and stores Internet Protocol (IP) addresses, the amount of bandwidth the account holder's household uses, Internet connection performance, the modem MAC address, and connection dates and times.  For account holders using a Cox Wi-Fi connection outside their home networks, Cox may collect the device MAC ID, device type, and session information such as duration and location of the access point used.  Additionally, Cox may also use available tools to collect and store other usage statistics, such as the amount of bandwidth used by various protocols and services, to help Cox understand how its network is used and to tailor the services it offers.

8.      Cox does not track the websites that account holders visit, the searches they conduct or the files the account holder transmits or receives, including the size, name, or content of files.  These types of monitoring implicate account holders' legitimate privacy concerns and could possibly, in some instances, violate Cox's commitment to its account holders under the Privacy Policy.  Additionally, Cox does not throttle (*i.e.*, slow down) or otherwise shape account holders' traffic on its network.  As Cox's Privacy Policy (Exhibit 1), acknowledges, Cox does not engage in this practice.  As Cox states under the "Network Practices" Section, Cox does not use inspection technology to shape or throttle account holders' Internet traffic.

### Cox Actively Discourages Copyright Infringement.

9.      Cox takes active steps to discourage its account holders from committing copyright infringement, prohibiting such action in its Acceptable Use Policy and related policies and agreements.

10.     **Exhibit 2** is a copy of the Cox Communications Policies updated May 5, 2015.  It contains a number of policies regarding Cox's services and business practices, including the Cox High Speed Internet Acceptable Use Policy, last updated on May 19, 2015; the Cox High Speed Internet Subscriber Agreement, last updated May 19, 2015; and the Terms and Conditions, effective June 1, 2015.  **Exhibits 3** and **Exhibit 4** are copies of earlier versions of the Cox Communications Policies, updated November 20, 2013 and November 18, 2011, respectively,

3

which were previously on Cox's Web site.  The three versions of the Cox Communications

Policies that are 2, 3, and 4 to this declaration are virtually identical with respect to the specific

aspects I discuss in the paragraphs below.

11.     Cox's Acceptable Use Policy contains a paragraph that explicitly prohibits

intellectual property infringement, including copyright infringement.  That paragraph states, in

relevant part:

> **2.  Intellectual Property Infringement.**   You may not use the Service to post,
> copy, transmit, or disseminate any content that infringes the patents, copyrights,
> trade secrets, trademark, moral rights, or propriety rights of any party.

The Acceptable Use Policy provides in the first paragraph that "[v]iolation of any term of

this Acceptable Use Policy may result in the immediate suspension or termination of either

your access to the Service and/or your Cox account."

12.     Paragraph 6 of Cox's Subscriber Agreement incorporates by reference the

Acceptable Use Policy, including its prohibition of copyright infringement.  Similarly, Cox's

Terms and Conditions state that, if an account holder receives Cox's High Speed Internet Service,

the account holder "will also be bound by the Cox High Speed Internet Service Subscriber

Agreement, and the Cox Acceptable Use Policy . . . ."

13.     **Exhibit 5** is a copy of a printout of a web page entitled "Legal Demands and

Claims of Film Copyright Infringement" that appears on Cox's Web site at:

http://www.cox.com/residential/support/internet/article.cox?articleId=9b5398e0-6407-11df-ccef-

000000000000.  In the section entitled "File Sharing and Copyright Infringement, it advises

readers:  "File sharing programs like BitTorrent and others provide a means for Internet users to

download content from others.  Sharing and downloading copyrighted materials like music, movies

and television programming without the consent of the copyright owner is illegal and can lead to

significant liability for those who download and those who make it available through these

programs.  Cox strongly discourages its customers from infringement like this and urges customers

to be sure that their computers or wireless networks are not used by others for these purposes."

14.     In keeping with Cox's policies against copyright infringement, Cox does not adapt or target its services to appeal to persons who commit copyright infringements or derive any financial benefit from infringements that its account holders commit.  Cox prices its services without seeking or obtaining any premium that would flow from infringement.  For the most part Cox charges prices for various tiers or packages of Internet service usage.  In fact, I understand that some of the greatest demand for bandwidth by consumers now arises from the popularity of streaming services such as Netflix, Hulu, Spotify, and Pandora, so high bandwidth usage does not imply infringements.  Cox Communications, through its cable television operations, also offers account holders a wide variety of commercial entertainment services and products, including premium subscriptions and on-demand or pay-per-view events and other programming.  Cox Communications also owns a stake in the Travel Channel cable network, and it once owned Discovery Communications, provider of the Discovery Channel cable network.  Cox has no desire, or practice, to exploit infringements for financial gain.  To the contrary, it seeks to promote and take advantage of a wide array of lawful options for its account holders in the entertainment and information landscape.

## Cox's Graduated Response Procedure and Suspension and Termination of Account Holders

15.     After Randy Cadenhead retired, I inherited the responsibility of advising the company regarding Cox's methods and procedures for addressing notices alleging copyright infringement.  In connection with this responsibility, I left in place the methods and procedures that Mr. Cadenhead developed during his tenure, including the Graduated Response Procedure by which Cox suspends or terminates Cox account holders who receive multiple notices of alleged copyright infringement.

16.     Consistent with the Cox Communications Policies discussed above, following its Graduated Response Procedure, Cox suspends and, in appropriate circumstances, terminates account holders, including in circumstances where account holders have received multiple notices of alleged copyright infringement.

17.     The following chart captures the number of warnings, suspensions, and

terminations that Cox issued by month from January 2010 through February 2015.



This information is drawn from Cox Communications' CATS database.

### Cox's History of Working With Complainants, Including CEG-TEK

18.     As I mentioned above, after Mr. Cadenhead retired, I took over the responsibility of advising and directing the company as to legal matters relating to notifications of claimed copyright infringement on the Cox network.  In connection with this responsibility, I advise the Cox Safety Team (formerly called the Abuse Team) with respect to non-standard or difficult communications from copyright holders or enforcement entities regarding claims of copyright infringement that require my input.  The vast majority of notices fall within the Graduated Response Procedure developed by Mr. Cadenhead and do not require my involvement.

19.     In the time since Mr. Cadenhead retired, I recall dealing with only one non-standard enforcement agent.  That company is CEG-TEK, which I understand also used the name Copyright Enforcement Group.  Mr. Cadenhead and the Safety Team had previously communicated with CEG-TEK regarding its notifications of claimed copyright infringement.

20.     I understand that before I took over Mr. Cadenhead's responsibilities, CEG-TEK

8

had previously sent notices with offensive demands to Cox account holders, that Cox had previously blacklisted CEG-TEK notices and that Cox had resumed acceptance and processing of CEG-TEK's notices after it changed its notices to drop offensive language.  In September 2014, Cox received new inbound notices from CEG-TEK that included improper and extortionate "settlement" demands, *i.e.*, language demanding a monetary payment from account holders accused of copyright infringement, and threatening various negative consequences, including the loss of Internet services, if the account holders failed to comply.  Throughout September 2014, I advised and supervised members of the Safety Team regarding their communications with CEG-TEK, in which they worked with CEG-TEK to conform its notices to comply with Cox's standards.

21.     After extensive negotiations with us, in October 2014 CEG-TEK agreed to remove the offensive settlement demand language from its notices and to send notices in volumes that were manageable for Cox.  Consequently, Cox resumed processing CEG-TEK's notices.  In November 2014, Cox also agreed to allow CEG-TEK to begin sending notices to Cox from more than one email address.  As far as I am aware, Cox has since continued to process CEG-TEK's notices since that time.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 18, 2015.

Linda J. Trickey

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2015, the foregoing was filed and served

electronically by the Court's CM/ECF system upon all registered users.


    *Craig C. Reilly*
Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
Tel:  703-549-5354
Fax:  (703) 549-5355
Email:  craig.reilly.@ccreillylaw.com

*Counsel for Defendants*