**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP,<br><br>Plaintiff,<br><br>v.<br><br>COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:14-cv-1611 (LOG/JFA) |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**


**NON-CONFIDENTIAL PUBLIC VERSION**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 3

I.  PLAINTIFFS CANNOT PROVIDE EVIDENCE OF ACTUAL
    INFRINGEMENT BY COX ACCOUNT HOLDERS.............................................. 3

    A.  Plaintiffs Ignore the Language of Section 106(3)........................................... 3

        1.  Plaintiffs Ignore the Transactional Requirement:
            "By Sale or Other Transfer of Ownership, or by Rental,
            Lease or Lending." ............................................................................... 4

        2.  Plaintiffs Ignore the "Copies or Phonorecords" Requirement. .......... 4

        3.  Plaintiffs Offer an Expansive and Improper "Making
            Available" Substitute for the Statutory Text of Section 106(3)......... 5

    B.  Plaintiffs Have No Evidence Regarding Cox *Account Holders*..................... 8

    C.  Plaintiffs Do Not Address the Requirement of Volition or Causation
        by Alleged Direct Infringers........................................................................... 9

II.  PLAINTIFFS CANNOT show A TRIABLE ISSUE OF FACT OF
     CONTRIBUTORY INFRINGEMENT................................................................... 10

    A.  There Is No Evidence to Support Contributory Infringement...................... 10

    B.  *Grokster* Clarified the Law of Contributory Infringement........................... 11

    C.  Plaintiffs Cannot Show a Triable Issue of Fact of Contributory
        Infringement Even Under Their Improper and Obsolete Standard. ............. 12

III.  PLAINTIFFS CANNOT SHOW A TRIABLE ISSUE OF FACT
      REGARDING VICARIOUS LIABILITY OF COX.............................................. 15

    A.  Plaintiffs Distort the Law to Expand the Doctrine of Vicarious
        Liability......................................................................................................... 15

    B.  Plaintiffs Cannot Adduce Material Facts to Support Vicarious
        Liability......................................................................................................... 16

        1.  Plaintiffs Cannot Show Cox's Right and Ability to Supervise........ 16

        2.  Plaintiffs Cannot Show Cox's Direct Financial Interest in
            Infringements of Their Works. ......................................................... 18

**TABLE OF CONTENTS (cont)**

**Page**

IV.     PLAINTIFFS HAVE FAILED TO ADDUCE ANY EVIDENCE OR
        DISPUTE OF FACT TO REBUT THEIR UNCLEAN HANDS. .......................... 19

V.      PLAINTIFFS HAVE FAILED TO ADDUCE ANY EVIDENCE OR
        FACTUAL DISPUTE TO REBUT THEIR FAILURE TO MITIGATE
        DAMAGES. ........................................................................................................ 20

CONCLUSION ..................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...................................................................................16, 17

*Agee v. Paramount Commc'n, Inc.*,
59 F.3d 317 (2d Cir. 1995)..........................................................................................7

*Atlantic Recording Corp. v. Howell*,
554 F. Supp. 2d 976 (D. Ariz. 2008) .............................................................................7, 8

*Capitol Records, Inc. v. Thomas*,
579 F. Supp. 2d 1210 (D. Minn. 2008)..........................................................................7

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ......................................................................................9

*Eldred v. Ashcroft*,
537 U.S. 186 (2003)....................................................................................................8

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) ...................................................................................13, 18

*Fox Broad.Co. v. Dish Network LLC*,
2015 U.S. Dist. LEXIS 23496 (C.D. Cal. Jan. 21, 2015) ..........................................7

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971)......................................................................................10

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
118 F.3d 199 (4th Cir. 1997) ......................................................................................5, 6

*In re Aimster Copyright Litig.*,
334, F.3d 643, 650-52 (7th Cir. 2003) .........................................................................13

*In re Napster, Inc. Copyright Litigation*,
377 F. Supp. 2d 796 (N.D. Cal. 2005) ........................................................................6, 16

*Latin American Music Co. v. Archdiocese of San Juan*,
499 F.3d 32 (1st Cir. 2007)..........................................................................................6

*London-Sire Records, Inc. v. Doe 1*,
542 F. Supp. 2d 153 (D. Mass. 2008) ..........................................................................7, 8

*Malibu Media, LLC v. Guastaferro*,
No. 1:14-cv-01544, 2015 WL 4603065 (E.D. Va. July 28, 2015)..................................19, 20

**TABLE OF AUTHORITIES (cont)**

**Page(s)**

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005).................................................................................................... *passim*

*Meyer v. Holley*,
    537 U.S. 280 (2003)......................................................................................................15

*National Car Rental System, Inc. v. Computer Assoc. Int'l, Inc.*,
    991 F.2d 426 (8th Cir. 1993) ........................................................................................7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................................16, 17

*Perfect 10, Inc. v. CCBill LLC*,
    488 F. 3d 1102 (9th Cir. 2007) ...................................................................................18

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-07098, 2014 WL 8628031 (C.D. Cal. 2014).................................18, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-07098, 2014 WL 8628034 (C.D. Cal. Nov. 14, 2014)...........................9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................................16, 17

*Perfect 10 v. Google*,
    416 F. Supp. 2d 828 (C.D. Cal. 2006), *aff'd sub nom. Perfect 10 v.*
    *Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)...................................................6

*Religious Tech. Center v. Netcom On-Line Commc'n Services*,
    907 F. Supp. 1361 (N.D. Cal. 1995) .....................................................................6, 9

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
    316 F.2d 304 (2d Cir. 1963)..................................................................................16, 18

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)..................................................................................... *passim*

*Tempo Music, Inc. v. Myers*,
    407 F.2d 503 (4th Cir. 1969) ......................................................................................19

*Universal Music Grp. v. Shelter Capital Partners*,
    718 F.3d 1006 (9th Cir. 2013) ....................................................................................17

*Viacom Int'l v. YouTube*,
    676 F.3d 19 (2d Cir. 2012)..........................................................................................13

**TABLE OF AUTHORITIES (cont)**

**Page(s)**

*Wolk v. Kodak Imaging Network, Inc.*,
  840 F. Supp. 2d 724 (S.D.N.Y. 2012)......................................................................................18

**STATUTES**

17 U.S.C. ............................................................................................................. *passim*

DMCA.........................................................................................................2, 17, 19, 20

**OTHER AUTHORITIES**

WIPO Treaty, Agreed Statement to Articles 6 and 7.......................................................4

FRE
  403...............................................................................................................5, 14, 18
  602.............................................................................................................13, 14, 18
  802.............................................................................................................13, 14, 18
  805.............................................................................................................................13
  901.............................................................................................................................18

Jed S. Rakoff, *Copyright Damages: A View from the Bench* ........................................20

2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* ...........................5, 7

Paul Goldstein, *Goldstein on Copyright* § 7.5.1 (2015) ..................................................6

Rick Sanders, *Is Nimmer & Menell's "Lost Ark of Copyright" Just a Prop*..................6

Rick Sanders, *Will Professor Nimmer's Change of Heart on File Sharing Matter* .......6

William F. Patry, *Patry on Copyright* § 13.11.50 (2015) ................................................6

**INTRODUCTION**

Plaintiffs seek to assert control over the vendor-customer relationships of online service providers through the statutory monopoly of copyright.  To do so they must distort the law in numerous aspects in order to create the illusion of materiality of irrelevant facts.  Under existing law Plaintiffs have no factual support for any of their claims.  Moreover, Plaintiffs' conduct crossed the line with unclean hands and a failure to mitigate their claimed damages.  As a consequence, Cox deserves summary judgment on both Plaintiffs' claims and on Cox's equitable defenses.  Here are highlights of the deficiencies of Plaintiffs' opposition:

1.      Plaintiffs make no argument based on violations of the reproduction right under Section 106(1).  Instead they focus solely on urging that a vague "making available" right should substitute for the statutory text of Section 106(3) in order to bring mere "offers" of a *work* – and not even a *copy or phonorecord* of a work – into the "distribution" right.

2.      In proposing a "making available" substitute for the Section 106(3) text, Plaintiffs ignore the explicit transactional element ("by sale or other transfer of ownership, or by rental lease or lending") of that section.  To disguise their failure to meet the distributed-object element ("copies or phonorecords," which must be "material objects"), they invent a bogus distinction between "digital material object" and a "physical material object," ignoring the "tangible" aspect of fixation in the Copyright Act and the meaning of "copies" in the WIPO Copyright Treaty.

3.      There is no evidence regarding alleged infringements by Cox account holders.  To disguise that problem, Plaintiffs blur the important distinction between users and "account holders," and their expert strangely defines a "subscriber" as an "internet node," not a person or customer.

4.      Plaintiffs fail to address volition or causation, necessary for underlying direct

1

infringements, because they cannot show any action at the initiative of a Cox subscriber or user.

5.      Plaintiffs admit that they have no evidence of contributory infringement under the

*Grokster* standard (intentional inducement or encouragement of infringement through clear

expression or other affirmative steps).  Instead they argue for a form of negligence rule, for passive

conduct, that has no proper place in contributory infringement doctrine.

6.      Plaintiffs seek to impose vicarious liability upon a standard vendor-customer

relationship, arguing frankly for expansion of vicarious liability which they divorce from its

underlying principles, in violation of Supreme Court limitations on the doctrine.

7.      Plaintiffs ignore the Fourth Circuit standard and this Court's most recent unclean

hands decision.  They gloss over the fact that they have now clearly revealed that *Rightscorp's*

*consultant and Plaintiffs' expert herself seeded Plaintiffs' works using the BitTorrent protocol*,

further justifying the unclean hands defense.  Plaintiffs minimize their extortionate and fraudulent

threats against account holders as mere "negotiating tactics" for apparently paltry sums, but they

threatened many persons whom they did not know to be infringers, demanded sums small enough

to keep the victims from hiring lawyers to defend them, and lured them into a trap as Plaintiffs

multiplied their demands and harassed them with robocalls and spam.

8.      Plaintiffs blame their failure to mitigate damages on imagined challenges in

targeting sources of torrent files, but they hide the fact that ███████████████████████

███████████ KickAssTorrents, has designated a DMCA agent with the Copyright Office and

provides online instructions for sending takedown requests.  Plaintiffs also fail to address this

Court's recent decision applying failure-to-mitigate defense to statutory damages claims.

9.      Apart from their gross distortions and mishandling of the law, Plaintiffs have

identified numerous "facts" in a Statement of Additional Facts which are simply

mischaracterizations and attorney arguments that the evidence does not support.  As they have done before, Plaintiffs frequently extract fragments of statements or documents, quote them out of context, and piece unrelated snippets together in order to create misleading impressions.  Cox does not call them all out specifically but counts on the Court to review the complete documents, which provide an accurate context and show how seriously and respectfully Cox takes copyright issues. Fragments out of context are not material "facts."

<strong>ARGUMENT</strong>

**I.     PLAINTIFFS CANNOT PROVIDE EVIDENCE OF ACTUAL INFRINGEMENT BY COX ACCOUNT HOLDERS.**

Plaintiffs do not argue any violations of the reproduction right under Section 106(1), and they have no evidence that Cox account holders downloaded infringing material through the Cox network.[1] Instead Plaintiffs focus on distorting Section 106(3), which pertains to the right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106(3).  Plaintiffs fail to create an issue of fact regarding underlying actual violations of that right by Cox account holders.

**A.     Plaintiffs Ignore the Language of Section 106(3).**

Plaintiffs never discuss the statutory language of Section 106(3), quoted above.  Instead, Plaintiffs beat around the bush, referring the 1996 WIPO Copyright Treaty without analyzing it, ignoring fatal concessions by their own "making available" expert Ralph Oman (the former US Register of Copyrights), and invoking case law that is not germane.

Section 106(3) requires a distribution(not an "offer to distribute") of *defined objects* (copies or phonorecords) to a *defined recipient* (the public) by *defined transactions* (sale, other transfer of ownership, rental, lease, or lending).  Plaintiffs failed to identify evidence to support any one

---

[1] Plaintiffs denied Cox's SOUF 3 but they identified no relevant evidence.

3

element, much less all three.  Cox addresses the first and third elements here.

1.   **Plaintiffs Ignore the Transactional Requirement:  "By Sale or Other Transfer of Ownership, or by Rental, Lease or Lending."**

Plaintiffs fail to show any fact of distribution "by sale or other transfer of ownership, or by rental, lease, or lending."  They completely ignore this language in their opposition.  Their witnesses confessed they had no evidence of any sale or other transfer of ownership, rental, lease, or lending of anything.  Dec. of Andrew P. Bridges in Support of Defendants' Mtn for SJ (Dkt. 311, "Bridges OpenDec.") ¶ 5(i), Ex. 17; ¶ 7(a), Ex. 22; ¶ 13(f), Ex. 43; ¶ 17(c), (i), Ex. 57.  Plaintiffs rely upon paragraphs 9-11 of their Statement of Additional Facts ("PSAF") on this point, but those paragraphs and the evidence they cite do not address this element.

2.   **Plaintiffs Ignore the "Copies or Phonorecords" Requirement.**

Plaintiffs dance around the requirement of distribution of "copies or phonorecords," which Section 101 defines as "material objects."  They invoke a distinction between "digital" and "physical" material objects to argue that a "file" is a "material object."  They chide Cox for "truncating" the definition of "copies" by not including language about fixation.  But Plaintiff's argument backfires:  Section 101 defines "fixed" as involving a *tangible medium* of expression." 17 U.S.C. § 101 (emphasis added).  The WIPO Copyright Treaty also thwarts their argument. Article 6 (the relevant portions are in the Statutory Appendix), to the "Right of Distribution," refers to distribution of "copies" by sale or transfer of ownership.  The Agreed Statement to Articles 6 and 7 states:  "'copies'… being subject to the right of distribution … refer exclusively to fixed copies that can be put into circulation as *tangible objects*." (emphasis added).  *Id.*  All relevant texts converge to establish that the Section 106(3) right pertains only to distribution of tangible,

material objects.[2]  Plaintiffs cannot show distribution of tangible material objects.

### 3.  Plaintiffs Offer an Expansive and Improper "Making Available" Substitute for the Statutory Text of Section 106(3).

Plaintiffs base their case on alleged "offers" of Plaintiffs' works.  Unable to prove *distribution*, they bypass the statutory language of Section 106(3) to argue that mere *availability* of a work (not merely a copy) violates Section 106(3).[3]  They must do that to evade the transactional and material object elements of Section 106(3).  All of Plaintiffs' arguments are wrong.

Plaintiffs invoke the Fourth Circuit's decision in *Hotaling v. Church of Jesus Christ of Latter-Day Saints,* 118 F.3d 199, 203 (4th Cir. 1997).  *Hotaling* is very different from this case, and it did not establish a rule that applies here.  Cox addressed the case extensively over two pages in its opening brief.  CoxOpen at 13-14.  Plaintiffs avoided Cox's discussion, relegating their response to a footnote opaquely invoking deep packet inspection as a reason why *Hotaling does* apply here.  (Plaintiffs' opp'n, Dkt. 386, "POpp.") at 12 n.7.  Plaintiff's expert McGarty testified that he had not seen evidence that Cox's current use of deep packet inspection would be capable of

---

[2] David Nimmer, whose treatise is controversial on related issues (see footnote 7 below), agrees. *See Nimmer on Copyright* at §§ 8.11[C][1][b] and 8.11[C].

[3] Not only do Plaintiffs lack evidence regarding account holders, Rightscorp generated at least some of the 2.5 million notices Plaintiffs claim are relevant without verifying whether a peer had 'made available' (or for that matter even possessed) the specific copyrighted material related to the corresponding notice.  Plaintiffs simultaneously disclaim the relevance of the 10% bitfield threshold but then rely on notices generated under the 10% threshold to inflate the number of notices at issue in this case.  *See* Opp. at 11 n.6.  Of "the 2.5 million instances of infringement" that Plaintiffs claim are relevant to this case, over 500,000 arose *after* the filing of this lawsuit.  *See* Rucinski Dec., Ex. 17.  And Plaintiffs' technical expert admitted that ████████████████████ Bridges OpenDec., ¶ 15(g), Ex. 54; *see also Id.* at ¶ 15(a), Exs. 54-55 ("Ms. Frederiksen-Cross understands that ████████████████████████████████████████████████ ) (emphasis added).  (Similarly, the over 22 million notices Rightscorp now claims to have sent to Cox include millions of notices sent after the filing of the complaint and never produced in discovery).  Defendants object to the citations in PSAF 15 under FRE 403 and that they lack competence and to the extent anything remains it is not material.

investigating infringements at all.  Bridges RDec. ¶¶ 12(a)-(e), (g), Ex. 12.  Plaintiffs have no

factual support for availability of deep packet inspection to Cox and no explanation for why it

makes *Hotaling* relevant.  *Hotaling* involved physical objects and a lending institution, unlike this

case.  The court ruled on peculiar facts without discussing all the elements of Section 106(3).

 Conscious of *Hotaling*'s weakness, Plaintiffs invoke three other weak arguments.  First

they point to Section 506(a)(1)(C).  That argument also backfires on Plaintiffs.  Section

506(a)(1)(C) is a standalone criminal provision of the Copyright Act, and it does not refer to

Section 106(3). Section 506(a)(1)(C) refers to "distribution of a *work* being prepared for

commercial distribution," (emphasis added), not to distribution of "copies or phonorecords."  It

also refers to "distribution ... by making it available ...," not "distribution ... by sale or other transfer

of ownership, or by rental, lease, or lending."  Differences between Sections 506(a)(1)(C) and

106(3) show Congress intended different terms to mean different things in the different sections.

That is all the more reason to apply Section 106(3) as it is, not as Plaintiffs would rewrite it.[4]

---

[4] Plaintiffs also rely upon an article by Peter Menell and a section of *Nimmer on Copyright* that Menell co-authored, urging a substitution of "making available" for the statutory text of section 106(3). Menell's article and the *Nimmer* treatise have come under criticism, including for an infamous "flip flop" in the *Nimmer* treatise when Menell rewrote the section on distribution. *See* Rick Sanders, *Will Professor Nimmer's Change of Heart on File Sharing Matter*?, 15 Vanderbilt J. of Ent. & Tech. Law 857 (2013); Rick Sanders, *Is Nimmer & Menell's "Lost Ark of Copyright" Just a Prop*?, available at *http://ipbreakdown.com/blog/is-nimmer-menells-lost-ark-of-copyright-just-a-prop/*. *See also,* "Response of Andrew P. Bridges to the Request for Comments for the Study on the Right of 'Making Available,'" filed May 4, 2014, available at http://copyright.gov/docs/making_available/comments/docket2014_2/Andrew_Bridges.pdf (by Cox lead counsel, before this litigation occurred and before Mr. Bridges represented Cox). Moreover, two noted copyright treatises take positions opposite Menell and the revised *Nimmer*. *See* William F. Patry, *Patry on Copyright* § 13.11.50 (2015) ("the mere offering to distribute a copy [of a] work does not violate section 106(3)"); Paul Goldstein, *Goldstein on Copyright* § 7.5.1 (2015) ("an actual transfer must take place; a mere offer of sale will not infringe the right.").  So do a host of court decisions. *See e.g*., *Religious Tech. Center v. Netcom On-Line Commc'n Services*, 907 F. Supp. 1361, 1372 (N.D. Cal. 1995); *In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796 (N.D. Cal. 2005); *Perfect 10 v. Google*, 416 F. Supp. 2d 828 (C.D. Cal. 2006), *aff'd sub nom. Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007); *Latin American Music*

Second, Plaintiffs argue that the WIPO Treaty requires the United States to recognize "rights of making available."  But both the "right of distribution" in the Treaty's Article 6 and the "right of communication to the public" in Article 8[5] use the term "making available."  Article 6, ("Right of Distribution") states, in relevant part: "Authors…shall enjoy the exclusive right of authorizing the making available to the public of the original and copies of their works through sale or other transfer of ownership."  That is *narrower* than the language of Section 106(3), and the WIPO Treaty provides no basis to substitute a *broader* conception of "making available" for the statutory text.  Statements that current Section 106(3) accords with the WIPO Treaty are obvious; statements that Section 106(3) must become broader to accommodate the treaty are wrong.[6]

Third, Plaintiffs' attempt to import the term "publication" into "distribution" fails because

---

*Co. v. Archdiocese of San Juan*, 499 F.3d 32 (1st Cir. 2007); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153 (D. Mass. 2008); *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976 (D. Ariz. 2008); *Fox Broad.Co. v. Dish Network LLC,* 2015 U.S. Dist. LEXIS 23496 (C.D. Cal. Jan. 21, 2015).  Because *Nimmer on Copyright* is a loose leaf, its original statements contrary to its current one have been discarded with updates and are now visible only in quotations in judicial opinions.  *See Agee v. Paramount Commc'n, Inc.,* 59 F.3d 317, 325 (2d Cir. 1995)(transmission of sound recording over airwaves not a distribution within Section 106(3)); *National Car Rental System, Inc. v. Computer Assoc. Int'l, Inc.,* 991 F.2d 426, 434 (8th Cir. 1993)( "[i]nfringement of [the distribution right] requires an actual dissemination of either copies or phonorecords. 2 *Nimmer on Copyright* § 8.11[A], at 8-124.1.").  Moreover, *Nimmer* still retains two original, and accurate, statements: "violation of the distribution right arises only with regard to tangible embodiments: copies or phonorecords" and  "A copyright owner "possesses the exclusive right to sell, give away, rent, or lend any *material embodiment* of his work."  2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* §§ 8.11[C][1][b] and 8.11[C] (2015).

[5] Plaintiffs' expert lawyer Ralph Oman conceded that the WCT Article 8 "right of communication to the public" corresponds to the rights of public performance and public display in sections 106(4)-(6) of the Copyright Act.  *See* Bridges OpenDec. ¶ 17 (d), (e), Ex. 57.  Given the correspondences of Article 6 to Section 106(3) and of Article 8 to Section 106(4)-(6), there is no reason to import provisions from Article 8 into Section 106(3).

[6] Plaintiffs invoke a plaintiff-friendly letter in 2002, long after the 1996 WIPO Treaty, by former Register of Copyrights Marybeth Peters to Rep. Howard Berman (known as "the representative from Hollywood," *see* http://forward.com/news/13244/new-foreign-affairs-committee-chairman-draws-prais-01741/ ) that made the former point and then proceeded to opine on selected case law while ignoring countervailing decisions.  The Court may properly discount that letter.  *See Capitol Records, Inc. v. Thomas,* 579 F. Supp. 2d 1210, 1217 (D. Minn. 2008)(rejecting use of letter).

the definition of "publication" itself distinguishes between a distribution (using limiting language of Section 106(3)) and a separate "offering to distribute."  See 17 U.S.C. § 101 ("publication" definition).  Thus, the Copyright Act distinguishes actual distributions from mere offers.  *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 169 (D. Mass. 2008); *accord Atlantic Recording Corp.*, 554 F. Supp. 2d at 984.

Holders of the copyright statutory monopoly may wish to expand Section 106(3), but expansion of the monopoly is a political matter for Congress, not the courts.  *Eldred v. Ashcroft*, 537 U.S. 186, 212 (2003); *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984).

### B.    Plaintiffs Have No Evidence Regarding Cox *Account Holders*.

There is zero evidence in this case about any conduct of Cox account holders.  Plaintiffs' papers blur the line between users and "subscribers" for strategic advantage, but there is no evidence of account holder misconduct.  To create an illusion, Plaintiffs' expert Bardwell defined "Subscriber" in his report as an "internet node," not a person or account holder.[7]

Plaintiffs have admitted that they have no evidence that Cox account holders were actual infringers.  Bridges OpenDec., ¶ 8(h), (i), (k), Ex. 29; ¶ 10(b), Ex. 36; ¶ 13(q), Ex. 43; *see also id.* ¶ 5(i), Ex. 17; ¶7 (a), Ex. 22.  Faced with that fact, their response is evasive.

Plaintiffs' opposition shows that Rightscorp and Plaintiffs are incompetent when they base accusations on IP addresses.  Cox asserted as an undisputed fact that there is no evidence that any Cox representative accessed Rightscorp's ISP "dashboard."  CoxOpen at Statement of Undisputed Facts ("SOUF") 15.  Plaintiffs denied that fact, arguing there was evidence that a Cox representative accessed that dashboard.  Their evidence?  That "the dashboard was accessed from a

---

[7] Bardwell stated:  "I define a Subscriber as a single internet access node to which Cox assigns an Internet Protocol ("IP") address.  *See* Opp. Dec. of Robert A. Bardwell, Dkt. 391, Ex. 1 at 5.  In addition, for many reasons apparent elsewhere, Plaintiffs' witnesses lack competence to make statements about Cox "subscribers" and Cox objects to all such statements.  *E.g.*, PSAF 9, 10, 11.

Cox IP address." POpp. ¶ 16 at 6.  Allan Ex. 33, upon which Plaintiffs rely, shows an access from

IP address 98.190.210.2 on March 11, 2014.  But that IP address on that date belonged to the Ritz-

Carlton Hotel in Laguna Niguel, California.  *Rightscorp* personnel were at that hotel on that day,

for an investor conference where Rightscorp made a presentation.  *See* Bridges Reply Dec.

("Bridges RDec.") ¶ 11(a), Exs. 10 & 11; Beck Reply Dec., ¶¶ 2-5.  In other words, the access

"from a Cox IP address" was likely Rightscorp's access to its own dashboard.  When Rightscorp

can't even identify its own use of a Cox IP address and, using an IP address as a weapon, accuses

Cox representatives of an act that Rightscorp itself took, it is clear how pervasively wrong both

Rightscorp's business model and Plaintiffs arguments are.

      Nor may Plaintiffs label speculation as "circumstantial evidence" to fill the void in their

case.  Speculation, like Plaintiffs' wrongful speculation about access from a "Cox IP address," is

not fact and cannot thwart summary judgment.  Cases Plaintiffs cite to bolster their "circumstantial

evidence" argument were not cases against conduits like Cox.  Plaintiffs had opportunities to get

*real* evidence, if any existed:  they obtained identities of over 130 Cox account holders that held IP

addresses at the times that Rightscorp claimed to have observed infringements. Yet Plaintiffs got

no evidence of infringement.  That justifies summary judgment for Cox.

      **C.**      **Plaintiffs Do Not Address the Requirement of Volition or Causation by
Alleged Direct Infringers.**

      Plaintiffs do not address the holdings relating to a volition or causation requirement for

direct infringement in the seminal case, *Netcom*, 907 F. Supp. 1361; the most recent major case,

*Perfect 10, Inc. v. Giganews, Inc.,* No. CV 11-07098, 2014 WL 8628034 (C.D. Cal. Nov. 14,

2014); and the Fourth Circuit's leading case, *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th

Cir. 2004).  No wonder.  That is because there is no evidence of any Cox account holder or user

taking the initiative to engage in any relevant (mis)conduct.  Plaintiffs concede that all interactions

between Rightscorp and users of the Cox network were at Rightscorp's initiative.

Plaintiffs have now clearly revealed that Rightscorp's consultant and Plaintiffs' expert Barbara Frederiksen-Cross *herself seeded Plaintiffs' works to BitTorrent*.  *See* Opp. Dec. of B. Frederiksen-Cross (Dkt. 39, "F-C Dec."4) ¶¶ 3-4, Exs. 4-5.  The only initiative Plaintiffs proved is their own, in both contacting peers over BitTorrent and *actually "seeding" Plaintiffs' works.*

## II.   PLAINTIFFS CANNOT SHOW A TRIABLE ISSUE OF FACT OF CONTRIBUTORY INFRINGEMENT.

### A.   There Is No Evidence to Support Contributory Infringement.

The Supreme Court's original contributory copyright decision, *Sony Corp.,* 464 U.S. at 442, held that a provider of a technology could not be liable for contributory infringement arising from misuse if the technology is capable of substantial noninfringing uses.  Plaintiffs cannot deny that Cox's Internet service is capable of substantial noninfringing uses.  Cox cannot be liable under *Sony*.

The Court's second, and most recent, contributory copyright infringement decision was *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005). *Grokster* addressed peer-to-peer software (like BitTorrent) that was capable of substantial noninfringing uses.  Lower courts ruled that *Sony* protected the defendants against contributory infringement liability. *Grokster* made it clear that there is another route to contributory infringement liability apart from the characteristics of the product; it held that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement…."  *Id.*, at 930 (citing *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).  The Court noted that, where evidence goes beyond a product's characteristics or knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement, *id.* at 935, there can be contributory infringement liability: "one who distributes a device with the object of promoting its

use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id* .at 936-37.

The Court noted that the contributory standard left room for innovation and new technologies, and it explained the limits of the doctrine. "The inducement rule, instead, premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise." *Id.* at 937.

Plaintiffs admit they have no facts to meet the *Grokster* standard. Thus under both *Sony* and *Grokster*, Cox cannot be liable for contributory infringement. Plaintiffs try an end-run around these Supreme Court precedents. But a clear-eyed view of the law in this arena shows that summary judgment for Cox is proper.

### B.     *Grokster* Clarified the Law of Contributory Infringement.

In *Grokster*, the Court explained its earlier ruling in *Sony* on the ground that one may not "presume[] or imput[e] intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement." *Grokster*, 545 U.S. at 933.[8] *Grokster*'s focused on the culpable behavior and intent requirement for contributory infringement liability where the defendant offers a product or service capable of substantial non-infringing uses, like Cox's.

Justice Ginsburg, concurring, recognized the two branches of contributory infringement, the *Sony* branch relating to product (or service) characteristics alone, and the intent branch that *Grokster* clarified, resting on culpable expression and active conduct:

> Liability under our jurisprudence may be predicated on actively
> encouraging (or inducing) infringement through specific acts (as the

---

[8] The Court noted this ruling reflected the analogous "traditional staple article of commerce doctrine" of patent law "that distribution of a component of a patented device will not violate the patent if it is suitable for use in other ways." *Id*. at 932.

> Court's opinion develops) or on distributing a product distributees
> use to infringe copyrights, if the product is not capable of
> "substantial" or "commercially significant" noninfringing uses.
> *Sony*, 464 U.S., at 442, 104 S.Ct. 774…. While the two categories
> overlap, they capture different culpable behavior.

*Grokster,* 545 U.S. at 942 (Ginsburg, J., concurring)(citations omitted).

Contrary to the Supreme Court's emphasis throughout on fault and active, culpable conduct, and its explicit statement that the inducement rule leaves room for legitimate commerce and innovation with a lawful purpose, Plaintiffs urge an expanded negligence-tort view of contributory liability from Cox's alleged passive failure to stop alleged infringements on its system. There is no basis for such a negligence rule for contributory infringement.

To foist a negligence overlay on contributory infringement, Plaintiffs invoke a muddled "willful blindness" concept as a substitute for knowledge under pre-*Grokster* cases, and they argue a limitless notion of "material" contribution. Even by their distorted and outdated standard, Plaintiffs have no material evidence to survive summary judgment.

### C.   Plaintiffs Cannot Show a Triable Issue of Fact of Contributory Infringement Even Under Their Improper and Obsolete Standard.

No facts support specific and actionable knowledge by Cox of actual infringements to justify liability for contributory infringement.[9] Rightscorp's notices offered alternative accusations that users of an IP address "uploaded, downloaded, or offered to upload" files containing certain sound recordings. *See e.g.*, Bridges OpenDec. ¶ 5(a)-(b), (d), (q), Exs. 17-19. The notices were not definite, and an "offer to upload" violate Section 106. *See* CoxOpen at 10-15, 19. Rightscorp also claimed to send "repeat infringer" communications with summaries of allegations. *See* Cadenhead Dec. (Dkt. 320) Ex. 3. None of the Rightscorp communications established

---

[9] Contrary to Plaintiffs' assertion and as discussed in this section, Cox disputes Plaintiffs' notion that notifications of claimed infringement satisfy a knowledge requirement of contributory infringement. Cox has never conceded that incorrect assertion.

infringements by a *Cox account holder.* Cox could only guess as whether an account holder was responsible. In short, Cox could do nothing practical with that information. Plaintiffs admitted they have no idea as to what knowledge Cox had. *See* Bridges OpenDec. ¶ 4(g), Ex. 2; *id.* ¶ 7(g), Ex, 22; *see also* Bridges RDec. ¶8 (a), Ex. 7; ¶ 9 (b), Ex.8.

Nor do facts suggest "willful blindness" by Cox to actual infringements by account holders. Cox operated a system to receive notifications of claimed infringement, and it applied its graduated response process to address claims of infringement. It acted on allegations of infringement without demanding proof of adjudication. No court has found "willful blindness" of a service provider like Cox operating a graduated response system.[10]

Plaintiffs argue that Cox's refusal to accept Rightscorp's extortionate notices constituted "willful blindness" of infringement. But the question is "whether the defendants made a 'deliberate effort to avoid guilty knowledge'." *Viacom Int'l v. YouTube,* 676 F.3d 19, 35 (2d Cir. 2012). It is undisputed that Cox informed Rightscorp that it would not accept notices with extortionate language *but would accept and process proper notices.* Bridges RDec. ¶6, Ex. 5 at ¶¶ 25, 31-35 & Exs. 11-13; Cadenhead Dec. (Dkt. 320), ¶¶ 19-28. Cox's record of acting on notices from many copyright holders puts its refusal of Rightscorp's extortionate notices in context, and Rightscorp's notices were not competent evidence of infringement.[11] As a matter of law, Cox's dealings with Rightscorp cannot constitute "willful blindness."

Plaintiffs take potshots at various details of Cox's graduated response process to create an illusion of willful blindness to infringement. Plaintiffs cannot show that Cox's batching of notices

---

[10] In *Ellison,* the defendant had no operating notification system. *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004). In *Aimster*, encryption applied to all messages and the court found it was a deliberate effort to avoid guilty knowledge." *In re Aimster Copyright Litig.*, 334, F.3d 643, 650-52 (7th Cir. 2003).

[11] The cited evidence does not support PSAF 16, 17 and 21. In addition, Cox objects to the cited evidence as incomplete, misleading and argument as well as FRE 602, 802 and 805.

into single tickets and its load-balancing of notices, with different daily limits for different complainants, constituted willful blindness. Bridges RDec. ¶ 2, Ex.1 at ¶¶ 8; ¶7, Ex.6 at ¶¶ 67-68; 80-88. This is especially true when one understands how Rightscorp artificially multiplied notices, counting hundreds or thousands of alleged infringements by merely detecting a response concerning presence of pieces of a BitTorrent payload on multiple occasions, including many times in one day. Bridges OpenDec. ¶ 8(j), Ex. 29; ¶¶ 15(e), (f), Ex. 54; *see also* Rucinski Dec. in Support of Defts' Mtn for SJ (Dkt. 313, "Rucinski Dec."), Ex. 17 at ¶¶ 12, 17-22. Cox's use of a rolling 180-day window cannot show willful blindness; Plaintiffs' own expert McGarty admitted that was reasonable. Bridges RDec. ¶ 12(f), Ex. 12.

Plaintiffs point to several internal Cox emails showing some combination of suspicion and uncertainty regarding various cases, and some awareness that persons make excuses for their conduct[12], but (a) those are not evidence of actual knowledge of specific infringements and (b) in their context and without Plaintiffs' distortions they show how seriously Cox took copyright issues. Plaintiffs effectively suggest that Cox is chargeable with general knowledge of allegedly abundant infringements on the Internet.[13] That would bring this case within *Sony*. That Cox's Internet service is capable of substantial noninfringing uses precludes liability under *Sony*, and wrongful intent may not be presumed. *Grokster*, 545 U.S. at 932-33.

Nor can Plaintiffs show any fact suggesting that Cox makes a *material* contribution to infringement by others. Cox provides a standard, general-purpose Internet access and transmission service. Cox's service is not specially adapted to infringement and provides no special facility for infringement. It is equivalent to a typewriter or a photocopier. Any argument by Plaintiffs that

---

[12] Michael Allan Dec. in Opp. to Mtn for SJ (Dkt. 386, "Allan OppDec."), Exs. 28, 40, 56.

[13] PSAF 14, regarding BitTorrent lacks foundation, is hearsay and not probative. Cox objects based on FRE 403, 602, and 802. Plaintiffs' evidence is immaterial.

Cox materially contributes to infringement by persons transmitting or receiving data over the Internet would suggest that the "material" qualification is meaningless.

## III.   PLAINTIFFS CANNOT SHOW A TRIABLE ISSUE OF FACT REGARDING VICARIOUS LIABILITY OF COX.

### A.   Plaintiffs Distort the Law to Expand the Doctrine of Vicarious Liability.

Plaintiffs fail to acknowledge that vicarious liability rests upon a special relationship. Arguing that it should apply to an ordinary vendor-customer ISP relationship, they dismiss the important underpinnings of the doctrine. They state "the doctrine has expanded to cover any circumstance involving the necessary combination of supervision and financial interest." POpp. at 22. But they suggest no meaningful limit to what a "necessary" combination is.

The Supreme Court has foreclosed Plaintiffs' effort to expand the law. Vicarious liability in the context of a federal statutory tort is rooted in traditional common law *respondeat superior* principles. *Meyer v. Holley*, 537 U.S. 280, 285-87 (2003). In *Meyer*, the Court looked at vicarious liability under the Fair Housing Act. The Court ruled the Ninth Circuit had improperly extended vicarious liability under the Act; there was no indication in the statute or legislative history that Congress had intended to expand the doctrine. "[W]hen Congress creates a [federal statutory] tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation…." *Id*. at 285-87. The Court therefore concluded that "Congress' silence" permits "an inference that Congress intended to apply ordinary principles" but not that it intended to extend or otherwise "unusual[ly] modif[y]" rules based on those principles. *Id*. Copyright infringement is a federal statutory tort. Congress has amended the Copyright Act many times but never broadened vicarious liability for it. Under *Meyer* only Congress may do so.

Traditional principles of vicarious liability have applied to relationships of employer-employee (respondeat superior), parent-child, principal-agent, and (in some contexts) partner-

partner in making one of them liable to third parties for the conduct of the other.  The Cox-account

holder relationship is like none of those.  The relationship is much more akin to that of a telephone

company to its customers.  The existence of terms of service or a graduated response process does

not transform an ordinary relationship into a special one.  No evidence justifies vicarious liability

of Cox for actions of its account holders or users of its Internet service.

**B.      Plaintiffs Cannot Adduce Material Facts to Support Vicarious Liability.**

Plaintiffs did not acknowledge the leading case on vicarious liability, *Shapiro, Bernstein &

Co. v. H.L. Green Co.,* 316 F.2d 304 (2d Cir. 1963).  In it the Second Circuit stated vicarious

liability could be appropriate "[w]hen the right and ability to supervise coalesce with an obvious

and direct financial interest in the exploitation of copyrighted materials…." *Id.* at 307.

**1.      Plaintiffs Cannot Show Cox's Right and Ability to Supervise.**

Plaintiffs cited, but misdescribed, the *Napster* decision on the question of supervision.  The

Ninth Circuit stated:  "The ability to block infringers' access to a particular environment for any

reason whatsoever is evidence of the right and ability to supervise." *A&M Records, Inc. v.

Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).  A flea market (Cherry Auction), a P2P

software network (Napster), and the like are particular environments.  The broad Internet is not.

Cox's furnishing of general Internet access does not give it a right and ability to supervise any

particular "site and facilities" the same way Napster could supervise its network through a central

index or the way a flea market could supervise its vendors.

Cox is analogous to the search engine defendants in *Perfect 10, Inc. v. Amazon.com, Inc.*,

508 F.3d 1146 (9th Cir. 2007), and payment processing defendants in *Perfect 10, Inc. v. Visa Int'l

Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007).  In *Amazon.com*, the court distinguished between the

closed environment of Napster and the openness of the Internet to which Google provided a search

gateway.  508 F.3d at 1173-75.  In *Visa*, the court observed that defendants might have an indirect effect of reducing infringements on the Internet at large, but they lacked any ability directly to control that activity; and the ability to withdraw service did not create the right and ability to control infringements.  494 F.3d at 803-06.

Plaintiffs concede Cox has no practical ability to supervise account holders.  Plaintiffs' own expert has conceded that all Cox can do is shut off Internet service and that using technology to intercept or block infringement as it occurs, even if theoretically possible, would be improper.  *See* Bridges OpenDec. ¶¶ 16(a)-(b), Ex. 56.  In the analogous context regarding the right and ability to supervise and control infringements under the DMCA, courts have held that the ability to terminate service through a repeat infringer termination policy is not a right and ability to supervise and control infringements.  It would be nonsensical for efforts to gain safe harbor to provoke, rather than reduce, exposure for infringement.  *See, e.g., Universal Music Grp. v. Shelter Capital Partners,* 718 F.3d 1006, 1027 (9th Cir. 2013), and cases cited there.

Plaintiffs cannot show any other facts to establish a right and ability to supervise infringement.  Cox is a "conduit" service provider, unlike hosting and caching service providers that have material stored on networks they control.  Cox does not, and cannot, supervise the specifics of content that passes over its network any more than a cellular service provider can monitor for drug deals.  Plaintiffs refer to "deep packet inspection" but have provided no evidence that Cox can or does supervise infringing conduct through that activity.  Cox does not get requisite information; for policy reasons it would not.  Trickey Dec. in Support of Defts' Mtn for SJ (Dkt. 318) at 6-8.  And a service provider has no obligation to modify its architecture or practices to develop a different right and ability to supervise infringements.  *Napster*, 239 F.3d at 1023-24.

### 2. Plaintiffs Cannot Show Cox's Direct Financial Interest in Infringements of Their Works.

Plaintiffs cannot show that Cox has an "obvious and direct financial interest in the exploitation of copyrighted materials," *Shapiro,* 316 F.2d at 307. Plaintiffs ignored that leading case and the most recent case, *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098, 2014 WL 8628031 (C.D. Cal. 2014), and they give short shrift to other cases. Numerous cases are clear that fees like Cox's are not evidence of a "direct financial benefit" from infringing activity. *See, e.g., Ellison,* 357 F.3d at 1076. "Defendants' profits are derived from the service they provide, not a particular infringement." *Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp. 2d 724, 748 (S.D.N.Y. 2012). "[R]eceiving a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities would not constitute receiving a 'financial benefit directly attributable to the infringing activity.'" *Perfect 10, Inc. v. CCBill LLC,* 488 F. 3d 1102, 1118 (9th Cir. 2007). Plaintiffs' references to Cox's monthly charges for Internet service do not show any material fact to support vicarious liability.[14]

---

[14] Plaintiffs lean heavily upon a Nowlis survey in an effort to show that infringement "acts as a draw" to Cox's services, but that survey is meaningless. Bizarrely, Nowlis did not ask about infringements at all, but only "download or upload [of] free music," and there are many opportunities to download or upload noninfringing free music on the Internet. Moreover, he simply asked if "free music" was a reason why a respondent subscribes to Cox's Internet service. He did not ask whether anything *was a draw* to Cox's Internet service. Nor did he distinguish between *Cox's* Internet service and other forms of Internet service. Defendants will file a *Daubert* motion to exclude all of Mr. Nowlis's testimony, and they object on the grounds of competence, hearsay and improper expert testimony to the materials Plaintiffs cite in PASF 12.

In addition the Court should not consider Plaintiffs' attempts to drum up evidence of a direct financial interest in the form of user comments on the website Reddit. Allan Dec. Exs. 62, 63, 64, 66. These printouts of pseudonymous statements are essentially anonymous and unverifiable, and are textbook hearsay. They are unreliable and lack any foundation; and Plaintiffs have failed to authenticate them. It is impossible to determine whether the commentators were actually Cox subscribers, and Plaintiffs intend to use these isolated, anonymous, and inflammatory comments to prove that Cox subscribers find infringement a draw to Cox's services. As such, they are hearsay, substantially more prejudicial than probative and the court should exclude them under FRE 802,

While those cases addressed the similar language in the DMCA, a court examining "right and ability to supervise" in a substantive vicarious liability claim held that a plaintiff must show a direct financial interest in the exploitation of the *plaintiff's* works.  *Giganews,* 2014 WL 8628031, at *3.  Plaintiffs have no evidence of Cox's financial interest in their works or that their works act as a draw to Cox.  Bridges OpenDec. ¶ 5(n), Ex. 17; ¶ 7(i)-(j), Ex. 22.

## IV.  PLAINTIFFS HAVE FAILED TO ADDUCE ANY EVIDENCE OR DISPUTE OF FACT TO REBUT THEIR UNCLEAN HANDS.

Plaintiffs ignore the unclean hands standard in *Tempo Music, Inc. v. Myers,* 407 F.2d 503 (4th Cir. 1969), and this Court's analysis in *Malibu Media, LLC v. Guastaferro*, No. 1:14-cv-01544, 2015 WL 4603065 (E.D. Va. July 28, 2015).

Plaintiffs' opposition unveiled a striking fact:  Rightscorp's consultant and Plaintiffs' expert Frederiksen-Cross revealed that she herself had seeded Plaintiff's monitored works.  *See* F-C Dec. ¶ ¶ 3-4.  That brings this case into line with allegations in *Guastaferro*.  In light of this new fact Cox is entitled to summary judgment on unclean hands.

Plaintiffs minimize their extortion and blackmail as mere "negotiating tactics."  The undisputed evidence shows that Plaintiffs engaged in unlawful threats and fraud in order to wring money from account holders.  Plaintiffs refer to "asking infringers to pay $20 for music they illegally download and distribute" but they ignore three obvious points:  (a) they are demanding money from persons who have not necessarily engaged in infringement; (b) their phone script reveals oppressive and fraudulent conduct by Rightscorp toward persons who protest their innocence; and (c) the monetary demands are low specifically to make it not worthwhile for an accused account holder to get a lawyer to defend herself against the harassment.  Bridges OpenDec. ¶ 10(c), Ex. 37.

403, 602, and 901.  PSAF 13 is immaterial.  PSAF Nos. 21, 27, 28 are immaterial and denied. *See* Bridges RDec. ¶ 4, Ex. 3 at ¶¶ 13-15; Id. at ¶ 6, Ex. 5 at ¶ 16.

## V.   PLAINTIFFS HAVE FAILED TO ADDUCE ANY EVIDENCE OR FACTUAL DISPUTE TO REBUT THEIR FAILURE TO MITIGATE DAMAGES.

Plaintiffs fail to acknowledge the relevance of this Court's decision in *Guastaferro* to the failure-to-mitigate defense in a claim for statutory damages.  Moreover, statutory damages provide windfalls to plaintiffs in copyright cases.  Jed S. Rakoff, *Copyright Damages:  A View from the Bench*, 62 J. Copyright Soc'y 377 (2015).  Whereas the failure to mitigate damages normally *reduces* damages in an *actual* damages case, it deserves to *bar* damages where a plaintiff seeks a *statutory* damages windfall.  In this case the evidence shows that Plaintiffs failed to mitigate damages (in two different ways, by failing to modify their notices as Cox asked and by failing to address sources of infringements) in order to create an extraordinary statutory damages opportunity for themselves.  Equity demands that Plaintiffs lose the windfall opportunity they artificially tried to engineer, especially where they have not shown any actual damage.

Plaintiffs admitted that they never attacked torrent file dissemination at the source.  They disclaimed the effort as too difficult, citing a hearsay article about The Pirate Bay.  *See* POpp. at 3 n.1.  But ███████████████████████████████████████████████████████████████████
███████████     Bridges RDec. ¶ 10(a) Ex. 9.  Plaintiffs hide the fact that Kickass Torrents has designated in the U.S. Copyright Office an agent to receive DMCA notices and also posts instructions for notices on its website.  *See* Bridges RDec. ¶ 13, Exs. 13, 14.

Plaintiffs have failed to show any evidence of a reasonable effort to mitigate damages.  Cox therefore deserves summary judgment on Plaintiffs' failure to mitigate damages and against Plaintiffs' claim for statutory damages.

## CONCLUSION

Because Plaintiffs can establish no material facts under existing law to justify Cox's liability, and because Cox's defenses are clear, the court should grant summary judgment to Cox.

Respectfully submitted,

Dated:  October 20, 2015

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
Tel:  (703) 549-5354
Fax:  (703) 549-5355
Email:  craig.reilly.@ccreillylaw.com

*Counsel for Defendants*

*Of Counsel for Defendants*

Andrew P. Bridges (*pro hac vice*)
David L. Hayes (*pro hac vice*)
Jedediah Wakefield (*pro hac vice*)
Guinevere L. Jobson (*pro hac vice*)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel:  (415) 875-2300
Fax:  (415) 281-1350
Email:    abridges@fenwick.com
          dhayes@fenwick.com
          jwakefield@fenwick.com
          gjobson@fenwick.com

Brian D. Buckley (*pro hac vice*)
Fenwick & West LLP
1191 2nd Avenue, 10th Floor
Seattle, WA  98101
Tel:  (206) 389-4510
Fax:  (206) 389-4511
Email:    bbuckley@fenwick.com

Armen N. Nercessian (*pro hac vice*)
Ronnie Solomon (*pro hac vice*)
Ciara Mittan (*pro hac vice*)
Fenwick & West LLP
801 California Street
Mountain View, CA  94041
Tel:  (650) 988-8500
Fax:  (650) 938-5200
Email:    anercessian@fenwick.com
          rsolomon@fenwick.com
          cmittan@fenwick.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2015, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

/s/ Craig C. Reilly
Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
Tel:  703-549-5354
Fax:  (703) 549-5355
Email:  craig.reilly.@ccreillylaw.com

*Counsel for Defendants*