# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **BMG RIGHTS MANAGEMENT** | ) | |
| **(US) LLC, and ROUND HILL** | ) | |
| **MUSIC LP** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  1:14-cv-1611(LO/JFA) |
| | ) | |
| **COX COMMUNICATIONS, INC.,** | ) | **REDACTED PUBLIC VERSION** |
| **COXCOM, LLC** | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION
## TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND
## <u>LIMIT THE TRIAL TESTIMONY OF COX'S EXPERT WILLIAM ROSENBLATT</u>

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  APPLICABLE LEGAL STANDARD ................................................................2

III. ARGUMENT.........................................................................................................4

    A. Mr. Rosenblatt Cannot Testify about What the Law Is with Respect to the DMCA. .........4

    B. Mr. Rosenblatt's Opinion that Cox Reasonably Implemented a Repeat Infringer
       Termination Policy Lacks Competence, Rests on Flawed Methodology, and
       Constitutes a Legal Conclusion. ...................................................................................5

      i.   Mr. Rosenblatt Lacks Competence to Opine on ISP Policy. ...........................................6

      ii.  Mr. Rosenblatt's "Reasonable Implementation" Opinion Rests on Fatally Flawed
          Methodology ...............................................................................................................7

      iii. Mr. Rosenblatt's Methodology Is also Unreliable Because He Fails to Consider
          Millions of Infringement Notices that Cox Ignores or Deletes......................................11

      iv.  Mr. Rosenblatt's Opinion that Cox Reasonably Implements a Repeat Infringer
          Policy Is an Improper Legal Conclusion. ....................................................................13

    C. Mr. Rosenblatt Cannot Opine on the Copyright Alert System or Other ISP's DMCA
       Policies and Procedures. ...............................................................................................15

      i.   Mr. Rosenblatt Has No Specialized Knowledge about the Copyright Alert System or
          Other ISP's Policies and Procedures............................................................................15

    D. Mr. Rosenblatt Cannot Offer Comparisons between Rightscorp's Source Code and
       MarkMonitor's Infringement Finder Software. ..............................................................17

IV. CONCLUSION .....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adalman v. Baker, Watts & Co.*,
  807 F.2d 359 (4th Cir. 1986) ...................................................................................4

*Basketball Mktg. Co. v. Steve & Barry's Univ. Sportswear*,
  Civ. A. No. 07-716, 2008 WL 5586141 (E.D. Pa. June 30, 2008) .........................14

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
  12-CV-6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ............................8, 10, 16

*Carter v. United States*,
  No. 4:13CV112, 2014 WL 3895751 (E.D. Va. Aug. 8, 2014) ..................................6

*Chicago Title Ins. Co. v. IMG Exeter Associates Ltd. P'ship*,
  985 F.2d 553 (4th Cir. 1993), 1993 WL 27392 ...........................................3, 11, 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...................................................................................1, 3, 6, 14

*Disney Enter., Inc. v. Hotfile Corp.*,
  No. 11-20427-CIV, 2013 WL 6336286 (S.D. Fla. Sept. 20, 2013)..........................8

*Iacangelo v. Georgetown Univ.*,
  560 F. Supp. 2d 53 (D.D.C. 2008) ..........................................................................14

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999).................................................................................................3

*Minn. Lawyers Mut. Ins. Co. v. Batzli*,
  No. CIV. 3:09CV432, 2010 WL 670109 (E.D. Va. Feb. 19, 2010) .........................7

*Oglesby v. Gen. Motors Corp.*,
  190 F.3d 244 (4th Cir. 1999) .........................................................................3, 6, 16

*Perfect 10, Inc. v. Giganews Inc.*,
  No. CV 11-07098-AB (SHX), 2014 WL 8628031 (C.D. Cal. Nov. 14, 2014) ........4

*Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*,
  27 F. Supp. 3d 671, 677 (E.D. Va. 2013) ...............................................................3

*Roche v. Lincoln Prop. Co.*,
  278 F. Supp. 2d 744 (E.D. Va. 2003) ....................................................................11

*S.G. Supply Co. v. Greenwood Int'l, Inc.*,
  769 F. Supp. 1430 (N.D. Ill. 1991) ........................................................................17

*SMD Software, Inc. v. Emove, Inc.*,
   945 F.Supp.2d 628 (E.D.N.C.2013)..........................................................................6

*The Harvester, Inc. v. Rule Joy Trammell N Rubio, LLC*,
   No. 3:09-CV-358, 2010 WL 2653373 (E.D. Va. July 2, 2010)..................................5

*Thomas J. Kline, Inc. v. Lorillard, Inc.,*
   878 F.2d 791 (4th Cir. 1989) ....................................................................................4

*Trademark Props., Inc. v. A&E Television Networks*,
   C.A. No. 2:06-cv-2195-CWH, 2008 U.S. Dist. LEXIS 87731 (D.S.C. Oct. 28, 2008),
   *aff'd*, 422 F. App'x 199 (4th Cir. 2011).......................................................8, 16, 18

*United States v. McDonnell*,
   No. 3:14-CR-12, 2014 WL 2916721 (E.D. Va. June 26, 2014) ................................7

*United States v. McIver*,
   470 F.3d 550 (4th Cir. 2006) ..............................................................................3, 13

*United States v. Offill*,
   666 F.3d 168 (4th Cir. 2011) ..............................................................................2, 15

*United States v. Wilson*,
   133 F.3d 251 (4th Cir. 1997) ..............................................................................4, 15

*Yates v. Ford Motor Co.*,
   No. 5:12-CV-752-FL, 2015 WL 3448905 (E.D.N.C. May 29, 2015) .......................7

*Zellars v. NexTech Ne., LLC*,
   895 F. Supp. 2d 734 (E.D. Va. 2012) ................................................................3, 16

## OTHER AUTHORITIES

Federal Rule of Evidence 104......................................................................................1

Federal Rule of Evidence 702.........................................................................2, 14, 15

Pursuant to this Court's scheduling order of August 20, 2015 (Dkt. 234), Federal Rule of

Evidence 104, and the standard for expert testimony articulated by the Supreme Court in

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Plaintiffs BMG Rights

Management (US) LLC, and Round Hill Music LP (collectively "Plaintiffs") respectfully move

this Court to exclude four areas of William Rosenblatt's expert reports and opinion, and to limit

his testimony for trial.  The areas of testimony that should be excluded are (1) the DMCA; (2)

whether Cox reasonably implemented a repeat infringer policy; (3) the policies of other ISPs;

and (4) comparisons of the Rightscorp source code to MarkMonitor's infringement identification

software.  These areas should be excluded because they are outside Mr. Rosenblatt's

competence, expertise, and area of specialized knowledge; they are improper legal testimony;

they improperly usurp the providence of the judge and the jury, and they are based on faulty

methodology.

## I.    INTRODUCTION

Rosenblatt has submitted 178 pages of expert testimony in this case, including an opening

report, a report rebutting two of BMG's experts, and a reply report.[1]  He also submitted an

additional declaration (42 pages of testimony and a 7-page Appendix) in opposition to BMG's

summary judgment motions.  Dkt. No. 390.  Mr. Rosenblatt's testimony spans at least 11

separate topics, including DMCA statutory interpretation, ISP policy, computer coding, and

BitTorrent technology.  *See e.g.*, 10/23/2015 Declaration of Jeremy D. Engle ("J. Engle Decl.")

Ex. 1 §§ IV, V, VI, VII, VIII; Ex. 2 §§ III(A), IV, V, VII; Ex. 3 §§ IV, VII; *see also* Dkt. No.

390.  Judge Anderson characterized Mr. Rosenblatt as a "broad-ranging expert" who "has a

number of different opinions on a number of different, not necessarily related, issues."  Dkt. No.

---

[1] Mr. Rosenblatt's reports are attached as Exhibits to the 10/23/2015 Declaration of
Jeremy D. Engle as Exhibit 1 (Report), Exhibit 2 (Rebuttal), and Exhibit 3 (Reply).

233 at 7-8 (August 14 hearing).  Cox attempts to use Mr. Rosenblatt to fix all manners of problems with its defense and, in effect, argue and decide its case.  But Mr. Rosenblatt does not have the experience, the competence, or reliability to do so.  Nor is it permissible for Mr. Rosenblatt to usurp the role of the Court and the jury.  Of all the opinions offered by Mr. Rosenblatt, four should clearly be excluded.

1.  Mr. Rosenblatt should not be allowed to opine on the Digital Millennium Copyright Act "DMCA" and its statutory construction.  Under Fourth Circuit law, an expert witness cannot testify about what the law is – that is solely for the Court.  Nor does Mr. Rosenblatt have any competency to offer such views.  He is not a lawyer.  He is not a copyright expert.  He is not a legislator.

2.  Mr. Rosenblatt should not be able to opine that Cox reasonably implemented a repeat infringer termination policy.  Mr. Rosenblatt has never worked for an Internet Service Provider and he has never implemented a repeat infringer termination policy.  He makes up his own methodology for assessing whether Cox reasonably implemented a termination policy – a methodology that contradicts the law – and then applies this unreliable methodology to improperly reach a legal conclusion, usurping the role of the Court and jury.

3.  Mr. Rosenblatt should not be allowed to opine about other ISP's procedures for handling DMCA complaints.  Mr. Rosenblatt has no specialized knowledge about how other ISPs address infringing subscribers – he has never worked for another ISP, he never spoke to anyone at another ISP about this, he never consulted for another ISP about DMCA policies and procedures, and he has no access to the internal documents of other ISPs.

4.  Mr. Rosenblatt should not be allowed to compare Rightscorp's source code to the MarkMonitor infringement identification software.  Mr. Rosenblatt has never reviewed the MarkMonitor software code and relied only on a thirteen-page redacted description of the system.

## II.   APPLICABLE LEGAL STANDARD

Federal Rule of Evidence 702 provides that if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[,]" a witness qualified as an expert "may testify in the form of an opinion or otherwise." Fed. R. Evid. 702.  The "touchstone" of this rule is whether the testimony will assist the jury. *United*

*States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011). As set forth in *Daubert* and its progeny, the Court serves as a gatekeeper to ensure that expert testimony is reliable, helpful, and will not be given undue weight or otherwise mislead the jury. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999); *Daubert*, 509 U.S. at 597. For an expert to properly opine, he or she must have sufficient relevant experience and specialized knowledge sufficient to make his or her opinions helpful to the trier of fact. *See Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250-51 (4th Cir. 1999) (affirming district court's finding that expert's opinion did not properly draw on specialized knowledge, and lacked probative value; the expert lacked sufficient knowledge about applicable facts and instead made improper assumptions); *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 677 (E.D. Va. 2013) (Expert's testimony was restricted because she lacked specialized knowledge about trademark law.); *Zellars v. NexTech Ne., LLC*, 895 F. Supp. 2d 734, 747 (E.D. Va. 2012) (finding neurologist unqualified to provide expert testimony because she did not have specialized knowledge about toxicity; any conclusions would be only inadmissible speculation because the expert "needed to conduct an Internet search for articles on the topic . . . in order to develop her knowledge of exposure").

It is a fundamental tenet that expert testimony on the meaning and application of the relevant law is inadmissible. *See United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible"). An expert who offers legal conclusions usurps not only the judge's duty to set forth the law but also the jury's role in applying this law to the evidence and facts of the case. *Chicago Title Ins. Co. v. IMG Exeter Associates Ltd. P'ship*, 985 F.2d 553 (4th Cir. 1993) (table decision), 1993 WL 27392, at *4 ("In a jury trial, because of the potential

usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible.") (citing *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366-68 (4th Cir. 1986)).

### III.   ARGUMENT

#### A.  Mr. Rosenblatt Cannot Testify about What the Law Is with Respect to the DMCA.

It is well settled that an expert witness – or any witness – cannot testify as to what the law is. *United States v. Wilson*, 133 F.3d 251, 265 (4th Cir. 1997) ("[T]he jury must be instructed on the law by the court and not by the witnesses.").  The Court is the "sole arbiter of the applicable law." *Id.*

Mr. Rosenblatt is unqualified to opine that "Cox satisfies all the criteria for the safe harbor under § 512(a)."  J. Engle Decl. Ex. 1 ¶ 39.[2]

Despite the clear prohibition on experts testifying about the law, Mr. Rosenblatt proposes to testify extensively about the DMCA.  He opines on the DMCA's requirements.  *See, e.g.*, J. Engle Decl. Ex. 1 ¶ 37 ████████████████████████████████████ He opines on purported ambiguities within the statute.  *See, e.g.*, J. Engle Decl. Ex. 1 ¶ 45 ████

████████████████████████████████████████████████████

████████████████████████████████████████████

---

[2] Nor is Mr. Rosenblatt qualified to testify about the DMCA.  He is not a lawyer.  He is not a copyright expert.  He is not a legislator.  *See* J. Engle Decl. Ex. 4 at 62:6-17 (Rosenblatt 8/5/15 Tr.) ████████████████████████████████████████ The only experience Mr. Rosenblatt has with the DMCA is that he was an expert witness in one other case for the same attorneys that represent Cox in this case.  *See id.* at 56:21-58:19 (referring to *Perfect 10, Inc. v. Giganews Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 8628031 (C.D. Cal. Nov. 14, 2014)).  Testifying as an expert does not qualify one as an expert. *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 800 (4th Cir. 1989) ("[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying.")

█████████████ He interprets the operation of the law.  *See, e.g.*, J. Engle Decl. Ex. 1 ¶¶ 46-47; Dkt. No. 390, ¶ 67 ██████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████. Mr. Rosenblatt then applies his own interpretation of the DMCA to cherry pick "evidence" to conclude that Cox has reasonably implemented a repeat infringer termination policy.  His opinion should be stricken, including Exhibit 1 paragraphs 37-123 and Exhibit 3 paragraphs 45-58.  *See The Harvester, Inc. v. Rule Joy Trammell N Rubio, LLC*, No. 3:09-CV-358, 2010 WL 2653373, at *5 (E.D. Va. July 2, 2010) (granting "motion to exclude [expert's] testimony interpreting the Copyright Act and concluding that Commonwealth's drawings are not 'the design of a building'").

### B.   Mr. Rosenblatt's Opinion that Cox Reasonably Implemented a Repeat Infringer Termination Policy Lacks Competence, Rests on Flawed Methodology, and Constitutes a Legal Conclusion.

Mr. Rosenblatt opines that Cox's procedures are effective at curbing allegedly infringing behavior, and therefore Cox has reasonably implemented a repeat infringer termination policy.  Mr. Rosenblatt's opinion is improper for a multitude of reasons.  (1) Mr. Rosenblatt lacks expertise with respect to repeat infringer termination policies; (2) his methodology is baseless and contradicts the law; (3) he fails to consider millions of infringement notices that Cox ignores or deletes through its extensive filtration process; and (4) his opinion is an improper legal conclusion.

### i.   *Mr. Rosenblatt Lacks Competence to Opine on ISP Policy.*

Mr. Rosenblatt is unqualified to opine as to whether Cox has reasonably implemented a repeat infringer termination policy under the DMCA and on the industry practices of other ISPs. *See Carter v. United States*, No. 4:13CV112, 2014 WL 3895751, at *2 (E.D. Va. Aug. 8, 2014) (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir.1999)) ("Expert testimony must be based on the expert's specialized knowledge, and not based on mere belief or speculation.").  Mr. Rosenblatt, a software engineer and self-proclaimed digital rights management expert, is not a lawyer, copyright expert, or otherwise competent to opine whether Cox has reasonably implemented a repeat infringer termination policy under the DMCA.

When an expert's opinion is based on experience alone, "the expert must explain '[1] how that experience leads to the conclusion reached, [2] why that experience is a sufficient basis for the opinion, and [3] how that experience is reliably applied to the facts.'" *SMD Software, Inc. v. Emove, Inc.*, 945 F.Supp.2d 628, 644 (E.D.N.C.2013) (quoting Fed.R.Evid. 702 advisory comm's notes (2000 amends.)).  Mr. Rosenblatt's report fails on all three fronts. In addition to his lack of legal training, Mr. Rosenblatt has never worked for ISP, has never designed or implemented a repeat infringer termination policy, and has never advised an ISP about the implementation of such a policy.  *See* J. Engle Decl. Ex 1 ¶¶ 9-19 (summarizing qualifications). His opinions concerning Cox's eligibility for the DMCA safe harbor and policies adopted by other ISPs are entirely unsupported by his experience and are based on cursory evaluations of selectively chosen documents produced in this litigation and publicly available Terms of Use from the websites of ISPs such as AT&T and Time Warner. *See e.g. id.* ¶¶ 48, 111-119.  He has failed to show how any of his prior experience provide a sufficient basis to testify, logically support the conclusions he has reached, or were reliably applied to the facts in this case.  The foundation of his opinions does not meet the rigorous standards required by *Daubert* in this area,

6

and therefore, Mr. Rosenblatt plainly lacks the necessary expertise for his opinions to be of any assistance to the trier of fact. *See Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3448905, at *5 (E.D.N.C. May 29, 2015) (excluding medical expert where expert failed to explain how "these qualifications are linked with knowledge or experience in making recommendations to industry as to what actions or technology are effective or appropriate in the prevention of disease.").

Without the necessary expertise, Mr. Rosenblatt's testimony is no more helpful than the opinion of any other lay witness or juror – and it should not be admitted. *See United States v. McDonnell*, No. 3:14-CR-12, 2014 WL 2916721, at *1 (E.D. Va. June 26, 2014) ("[Defendant's expert] is no more qualified as an expert in assessing fraudulent intent than lay persons, making his proposed testimony unhelpful and inadmissible."); *see also Minn. Lawyers Mut. Ins. Co. v. Batzli*, No. CIV. 3:09CV432, 2010 WL 670109, at *2 (E.D. Va. Feb. 19, 2010) ("The Fourth Circuit has . . . held that where lay jurors are fully able to understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue; and, is therefore inappropriate.") .

### ii.  *Mr. Rosenblatt's "Reasonable Implementation" Opinion Rests on Fatally Flawed Methodology*



Mr. Rosenblatt opines that ███████████████████████████████ ███████████████████████████████. *See e.g.*, J. Engle Decl. Ex. 1 § V ███████████████████████████████ ████████████████  He bases his opinion on self-selected data that he concludes shows that Cox's procedures are effective at curbing allegedly infringing behavior. *See id.* ¶ 107 ██████ ███████████████████████████████ *id.*

¶¶ 108-09; Ex. 3 ¶¶ 47-56.  Rosenblatt admits that in reaching his opinion he did not consider

7

whether Cox actually terminates repeat infringers in appropriate circumstances.  J. Engle Decl.

Ex. 5 at 39:12-45:20 (Rosenblatt 8/18/2015 Tr.).  Because his methodology does not consider

actual terminations and rests on his own unsupported methodology, his opinion is fatally flawed.

*See Trademark Props., Inc. v. A&E Television Networks*, C.A. No. 2:06-cv-2195-CWH, 2008

U.S. Dist. LEXIS 87731, at *7-8 (D.S.C. Oct. 28, 2008) (excluding expert testimony because

there was no "evidence that his methodology has been tested, no evidence that his methodology

has been subjected to peer review and publication, no evidence regarding his methodology's

known or potential rate or error, and no information regarding the acceptance of his methodology

within the relevant community."), *aff'd*,  422 F. App'x 199 (4th Cir. 2011).

Section 512(i) plainly states that a service provider is eligible for the safe harbor only if it

"has adopted and reasonably implemented . . . a policy that provides for the termination in

appropriate circumstances of subscribers . . . who are repeat infringers."  Actual termination of

repeat infringers is thus central to any Section 512(i) analysis.  *See, e.g.*, *Capitol Records, LLC v.*

*Escape Media Grp., Inc.*, 12-CV-6646 (AJN), 2015 WL 1402049, at *12 (S.D.N.Y. Mar. 25,

2015) ("Therefore, the relevant question is whether [the defendant] actually terminates the

uploading privileges of repeat infringers under appropriate circumstances."); *Disney Enter., Inc.*

*v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286 at *9 (S.D. Fla. Sept. 20, 2013) ("Thus,

while Hotfile claims to have acted to 'terminate, and stop payments to accounts of users with

numerous complaints at content owners' request,' it has failed to cite evidence to support the

proposition, explain the conditions that led it to target or terminate users, or rebut the Studios'

account of user termination only by litigation." (citation omitted)).

However, Mr. Rosenblatt does not consider terminations or deem terminations relevant in

rendering his opinion that Cox has reasonably implemented a repeat infringer termination policy

under Section 512(i).  Nowhere in 178 pages of Mr. Rosenblatt's expert reports does Mr.

Rosenblatt consider circumstances in which Cox actually terminated a subscriber for repeated

copyright infringement.  *See e.g.*, J. Engle Decl. Exs. 1, 2 and 3.  Neither the circumstances

behind nor the number of purported terminations impact Mr. Rosenblatt's opinion.  ███████

████████████████████████████████████████████████████████████████████████████████████ J.

Engle Decl. Ex. 5 at 55:12-56:9 (Rosenblatt 8/18/2015 Tr.).  When presented with ██████████

████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *Id.* at 109:11-20.

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ J. Engle Decl. Ex. 4 at 249:2-250:11 (Rosenblatt 8/5/15 Tr.).

    Ignoring terminations, Mr. Rosenblatt instead rests his opinions on the irrelevant and

inaccurate claim that Cox's procedures are effective at curbing alleged infringing behavior.  *See*

J. Engle Decl. Ex. 4 235:16-18 (Rosenblatt 8/5/15 Tr.) ████████████████████████████████

████████████████████████████████████ *id.* at 238:12-17 ████████████████████████████

████████████████████████████████████████████████████████████████████████ *id.* at

293:7 ██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████[3] That data consists

---

of  *See* J. Engle Decl. Ex. 1 ¶ 107; Ex. 3

¶¶ 51-53.  According to Mr. Rosenblatt, ██████████████████████

████████████████████████████████████████ *See* J.

Engle Decl. Ex 1 ¶ 107.  Mr. Rosenblatt opines that ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████.  *See*

J. Engle Decl. Ex. 3 ¶¶ 51-53.

The data that Mr. Rosenblatt relies upon to form his ultimate opinion has nothing to do with whether Cox actually terminates repeat infringer in appropriate circumstances.  Even if Cox's procedures are effective at curbing allegedly infringing behavior (which they are not), that is simply not the test for whether Cox has reasonably implemented a repeat infringer termination policy.  *See, e.g.*, *Capitol Records*, 2015 WL 1402049, *12 ("Therefore, the relevant question is



whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances.")

If permitted, Mr. Rosenblatt's testimony would rest on the legally irrelevant claim that Cox's procedures are effective at curbing allegedly infringing behavior. Mr. Rosenblatt should not be allowed to offer an opinion contrary to the law and the instructions that this Court will provide the jury. *See Chicago Title Ins.*, 1993 WL 27392, at *4 ("In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible."); *Roche v. Lincoln Prop. Co.*, 278 F. Supp. 2d 744, 750 (E.D. Va. 2003) (finding expert's testimony inadmissible when opinion was based on unacceptable methodology).

### iii. *Mr. Rosenblatt's Methodology Is also Unreliable Because He Fails to Consider Millions of Infringement Notices that Cox Ignores or Deletes*

Mr. Rosenblatt's entire analysis of whether Cox's procedures are effective at curbing infringement is based on the number of infringement notices Cox accepted for its subscribers. J. Engle Decl. Ex. 1 ¶ 107 ███████████████████████████████████████████████

████████████████████████████████████████████████████████████ *see also* Ex. 3 ¶ 51-56. He reached his conclusion by looking only at the notices that Cox accepted and took action on, while ignoring tens of millions of infringement notices that Cox deleted or ignored. Mr. Rosenblatt cannot ignore millions of infringement notices and reliably opine that the limited number of infringement notices for its customers shows its procedures are effective.

Further, Mr. Rosenblatt does not consider the effect on the data upon which he relies of Cox's various other procedures to ensure that the vast majority of copyright infringement notices fall into a vacuum and go unheeded. First, ███████████████████████████████

11

███████████████████████████████████████████████████. J. Engle Decl.

Ex. 6 at COX_BMG00207509.  That includes all 22 million notices sent by Rightscorp.  Dkt.

No. 316 (9/21/15 Declaration of Gregory Boswell ("Boswell Decl.") ¶ 3).  Even for notices Cox

deems DMCA-complaint, █████████████████████████████████████

█████████████████████████████████████████████.  J. Engle Decl. Ex.

7 at 13 (Cox's 1st Supp'l Response to Interrog. 4); Ex. 8 at 7 (Cox's Response to Interrog. 23).

███████████████████████████████████████████████████

█████.  J. Engle Decl. Ex. 7 at 13 (First Supp'l Response to First Interrogatories).  ██████████

███████████████████████████████████████████████████

███████████████████████  *Id.* at 12 (First Supp'l Response to First Interrogatories).

███████████████████████████████████████████████████

███████  *See* Dkt. No. 390 ¶ 84.[4]  ████████████████████████████

███████████████████████████████████.[5]

None of these blocked, ignored, or deleted infringement notices appear in the data that

Mr. Rosenblatt relies upon to form his analysis.  Indeed, he did not even consider these notices in

---

[4] For example, if Cox received █ infringement notices for a subscriber in January, █ in May, and █ in July, ██████████████████████████████████
████████████████████████████

[5] Between ████████████████████████ when this lawsuit was filed, Cox accepted ██████ DMCA complaints into CATS and received an additional ██████ copyright infringement notices from blacklisted senders that it ████████████████ █████████████.  J. Engle Decl. Ex. 9 at 12-16 (3d Supp'l Response to Interrog. 5).  During that same period, Cox was sent another 9,270,458 infringement notices from Rightscorp that it ████████████████████████████ along with an unknown number of blocked notices from other senders.  *See* Dkt No. 316 (Boswell Decl. ¶ 4).  Together, that is at least ████████████ total notices of infringement sent to Cox.  During that same period, Cox issued ████████ warnings and suspensions to subscribers as a result of copyright infringement notices, each of whom was the ████████████████████████████████████  *See* J. Engle Decl. Ex. 7 at 25-27 (First Supp'l Response to First Interrogatories).

forming his opinion.  *See, e.g.,* J. Engle Decl. Ex. 4 at 300:13-302:5 (Rosenblatt 8/5/15 Tr.)

(stating that  J. Engle Decl. Ex. 5 at

136:8-13 (Rosenblatt 8/18/15 Tr.)

.  He merely considered the small number of notices that managed to make it past Cox's

filters and then opined that the low number of infringing customers receiving a sixth

infringement notice means that Cox's procedures are effective at curbing infringement.

Accordingly, the data Mr. Rosenblatt selected merely demonstrates the effectiveness of Cox's

filtering system (even after if excludes millions of notices by blacklisting), not its effectiveness

in curbing infringement or terminating repeat infringers.

Thus, Mr. Rosenblatt's analysis and conclusion is neither reliable nor accurate.  BMG

should not be prejudiced by having Mr. Rosenblatt opine that Cox has reasonably implemented a

repeat infringer termination policy based on a methodology that is not only inconsistent with the

law, but internally unreliable.  The jury is likely to give undue weight to an "expert" conclusion,

even one based on such flawed methodology.  It should not be permitted.

### iv.  Mr. Rosenblatt's Opinion that Cox Reasonably Implements a Repeat Infringer Policy Is an Improper Legal Conclusion.

Setting aside the various methodological and competency issues with his opinion, Mr.

Rosenblatt cannot apply the law to the facts and opine on the ultimate legal issue – whether Cox

has implemented a reasonable repeat infringer policy.  He admits,

J. Engle Decl. Ex. 4 at 272:11-12 (Rosenblatt 8/5/15 Tr.).  He does it anyway.

Expert opinions that merely tell the trier of fact what legal conclusion to reach have

consistently been found to be inadmissible and unhelpful to fact finders.  *See, e.g., McIver*, 470

F.3d at 561-62 ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *Chicago Title Ins.*, 1993 WL 27392, at *4 ("In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible."); *Iacangelo v. Georgetown Univ.*, 560 F. Supp. 2d 53, 59 (D.D.C. 2008) ("In attempting to use legal experts to prove that liability and causation have been established and to interpret statutory language, Plaintiffs would effectively usurp the function of the trier of fact in this case.") (excluding expert reports and experts from Plaintiffs' witness list); *Basketball Mktg. Co. v. Steve & Barry's Univ. Sportswear,* Civ. A. No. 07-716, 2008 WL 5586141, at *1 n. 2 (E.D. Pa. June 30, 2008) (excluding purported expert testimony on governing law on copyright and trademark disputes and corresponding legal conclusions).

Mr. Rosenblatt does precisely what these cases prohibit – he sets forth his view of the law, then his view of the facts, and then offers the ultimate opinion.  He is not trying to be helpful to the trier of fact.  He is trying to be the trier of fact – as well as the judge.  *See e.g.*, J. Engle Decl. Ex. 1 ¶ 39 ███████████████████████████████████████

███████ ; *id.* ¶ 42 ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████); *id.* ¶ 46

███████████████████████████████████████████████████

███████████████████████████ J. Engle Decl. Ex. 3 ¶ 47 ███████

███████████████████████████████████████████████████

███████████  The *Daubert* line of cases and corresponding amendments to Federal Rule of

14

Evidence 702 serve to limit precisely this kind of testimony.  *See* Fed. R. Evid. 702, advisory

coom.'s  notes  (2000 amends.) (amended rules reflecting trial court's role as gatekeeper for

assessing the reliability and helpfulness of proffered expert testimony.  Testimony of this nature

must be excluded as it supplants the critical roles served by both the judge and jury.  *See Offill*,

666 F.3d at 174 ("[W]hen an expert's testimony directly concerns the ultimate issue in the case,

the risk that the testimony will hinder the jury's deliberations is especially heightened."); *Wilson*,

133 F.3d at 265 ("Permitting such testimony as to legal conclusions gives cogent meaning to the

'apprehensions that jurors will turn to the expert, rather than to the judge, for guidance on the

applicable law.'" (citation omitted)).

Mr. Rosenblatt's testimony that Cox has reasonably implemented a repeat infringer

termination policy is simply legal argument dressed as an expert opinion that Cox hopes the jury

will adopt instead of assessing the evidence for themselves.  Mr. Rosenblatt's testimony,

opinions, and reports should be excluded.

### C.  Mr. Rosenblatt Cannot Opine on the Copyright Alert System or Other ISP's DMCA Policies and Procedures.

#### i.  *Mr. Rosenblatt Has No Specialized Knowledge about the Copyright Alert System or Other ISP's Policies and Procedures.*

Mr. Rosenblatt purports to describe the Copyright Alert System and other ISP's policies

and procedures for handling DMCA complaints and opines that what Cox does is better.  J.

Engle Decl. Ex. 1 ¶¶ 48, 74-119; *see also* Dkt. No 390 ¶¶ 67-87.  First, Mr. Rosenblatt has no

specialized knowledge concerning the Copyright Alert system.  His "knowledge" of the actions

of other ISPs is limited to his general use of the internet and his reading of publically available

documents.  *See* J. Engle Decl. Ex. 4 at 25:4-26:12; 30:19-37:1 (Rosenblatt 8/5/2015 Tr.).

Second, the Copyright Alert System is not even relevant to the issues in this case.  It is not a

system for handling DMCA complaints.  Rather, the Copyright Alert System is an agreement

between a small group of ISPs and copyright holders, and by its express terms is not intended to be a replacement for DMCA policy and procedures. *See* J. Engle Decl. Ex. 10 at BR_00000012 n.1 ("entering into this Agreement is not, by itself, intended to address whether a Participating ISP has adopted and reasonably implemented a DMCA Termination Policy"). The Copyright Alert System does not even provide for termination of repeat infringers, as is required by the plain language of Section 512(i). *See* Section 512(i); *Capitol Records*, 2015 WL 1402049, at *12.

Mr. Rosenblatt has no other special knowledge or experience to opine on what other ISPs do with respect to DMCA complaints. Mr. Rosenblatt has never been employed by an ISP. *See* J. Engle Decl. 11. He has no knowledge about the internal implementation of other ISPs' DMCA policies. *See* J. Engle Decl. Ex. 4 at 25:4-16; 30:3-32:21 (Rosenblatt 8/5/2015 Tr.). He has never spoken to or communicated in anyway with anyone at the other ISPs concerning how the ISPs handle DMCA complaints. *Id*. at 33:4-34:15.

Because Mr. Rosenblatt lacks any special knowledge and because the Copyright Alert System is irrelevant to DMCA procedures, he should not be allowed to opine on comparisons between Cox's and other ISPs' procedures for handling DMCA complaints. *See Oglesby* 190 F.3d at 250-51 (affirming district court's finding that expert's opinion did not properly draw on specialized knowledge, lacked probative value; and lacked sufficient knowledge about applicable facts and instead made improper assumptions); *Zellars*, 895 F. Supp. 2d at 747 (finding neurologist unqualified to provide expert testimony because she did not have specialized knowledge about toxicity; any conclusions would be only inadmissible speculation because the expert "needed to conduct an Internet search for articles on the topic . . . in order to develop her knowledge of exposure"); *See Trademark Props*, 2008 U.S. Dist. LEXIS 87731, at *7-8

16

(excluding expert testimony that was based on "an article in the *New York Times* and information revealed by various Internet searches").

### D. Mr. Rosenblatt Cannot Offer Comparisons between Rightscorp's Source Code and MarkMonitor's Infringement Finder Software.

Mr. Rosenblatt attempts to draw comparisons between Rightscorp's infringement finder software and the infringement finder software of MarkMonitor. Incredibly, Mr. Rosenblatt claims he can make this opinion by only reviewing the Rightscorp software.  He has no meaningful knowledge about MarkMonitor's software upon which to base a comparison.  First, Mr. Rosenblatt never reviewed MarkMonitor's code.  J. Engle Decl. Ex. 4 at 326:17-327:1 ████████████████████████████████████████████████ Second, the *only* knowledge Mr. Rosenblatt has about MarkMonitor is a public, *redacted* report by Stroz Friedberg about the Copyright Alert System.  *See* J. Engle Decl. Ex. 2 ¶ 37 n.17;  J. Engle Decl. Ex. 4 at 325:5-22 (Rosenblatt 8/5/2015 Tr.) ██████████████████████████████ ████████████████████████████████████████████ Mr. Rosenblatt's own lack of knowledge about MarkMonitor is demonstrated by his quoting the redacted Friedberg analysis in his Rebuttal Report.  *See* J. Engle Decl. Ex. 2 ¶¶ 38-40.  He then provides a ████████████ ██████ *id.* ¶¶ 41-47, and concludes that the processes of Rightscorp and MarkMonitor differ ███████████ *Id.* ¶ 48.  He then determines that ████████████████████████ █████████████████████████████████████████████ *Id.* ¶ 73.

Virtually everything Mr. Rosenblatt writes about MarkMonitor is pure conjecture. Reading a heavily-redacted 13 page report written by someone else does not make an expert on the subject—especially to the level necessary to compare MarkMonitor's underlying system to Rightscorp's system. *S.G. Supply Co. v. Greenwood Int'l, Inc.*, 769 F. Supp. 1430, 1435 n.6 (N.D. Ill. 1991) (excluding portions of opinion testimony that are "beyond the knowledge of the

expert" and therefore inadmissible as speculative).  Mr. Rosenblatt's testimony, opinions, and

reports should not be allowed.  *See Trademark Props*, 2008 U.S. Dist. LEXIS 87731, at *7-8.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Rosenblatt's testimony, opinion, and reports regarding the

following should be excluded:  (1) the DMCA; (2) whether Cox reasonably implemented a

repeat infringer policy; (3) the policies of other ISPs; and (4) comparisons of the Rightscorp

source code to MarkMonitor's infringement identification software.

October 23, 2015

Respectfully submitted,

/s/ *Jeremy D. Engle*

Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
Paul Gennari (VSB No. 46890)
pgennari@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

Walter D. Kelley, Jr. (VSB No. 21622)
HAUSFELD, LLP
1700 K Street, NW
Washington, DC 20006
Tel:  (202) 540-7157
Fax:  (202) 540-7201

*Of Counsel*
Michael J. Allan (admitted *pro hac vice*)
William G. Pecau (admitted *pro hac vice*)
John M. Caracappa (admitted *pro hac vice*)
Roger E. Warin (admitted *pro hac vice*)
Stephanie L. Roberts (admitted *pro hac vice*)
STEPTOE & JOHNSON, LLP

18

1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia  30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

William J. Dinkin
Bill.dinkin@gmail.com


/s/ *Jeremy D. Engle*
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902