# Exhibit 8

# October 23, 2015 Declaration of Jeremy Engle

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:14-cv-1611 (LOG/JFA) |
| v. | ) ) |
| COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANT COX COMMUNICATIONS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SIXTH SET OF INTERROGATORIES (NOS. 21-24)**

**PROPOUNDING PARTY**: Plaintiffs BMG RIGHTS MANAGEMENT (US) LLC and ROUND HILL MUSIC LP

**RESPONDING PARTY**: Defendant COX COMMUNICATIONS, INC.

**SET NUMBER**: SIX (Nos. 21 – 24)

In accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure and Civil Local Rule 26(b) and (c), Defendant Cox Communications, Inc. ("Cox Communications") objects and responds to Plaintiffs BMG Rights Management (US) LLC and Round Hill Music LP's (collectively "Plaintiffs") Sixth Set of Interrogatories (Nos. 21 – 24) to Defendant Cox Communications, Inc. as follows. As its investigation in this matter is ongoing, Cox Communications reserves the right to supplement or amend its responses and objections to the extent allowed by the Federal Rules of Civil Procedure, the Local Rules, and the orders of this Court.

## **GENERAL OBJECTIONS**

1.      Cox Communications objects to Plaintiffs' incorporation by reference of definitions and instructions from Plaintiffs' First Set of Interrogatories to Defendant Cox Communications into this Sixth Set of Interrogatories. To the extent that Plaintiffs incorporate by reference their definitions and instructions from Plaintiffs' First Set of Interrogatories to Defendant Cox Communications, Cox Communications incorporates by reference its objections to Plaintiffs' First Set of Interrogatories to Defendant Cox Communications.

2.      Cox Communications objects to the definition of "Assigned" and to any interrogatory incorporating it, as vague, ambiguous, and failing to describe the information sought with reasonable particularity, because it includes "the allocation of IP space."

3.      Cox Communications objects to the definition of "CATS" as vague, ambiguous and incomplete in that the definition is limited to the system "as described in Defendants' Response to Plaintiffs' Interrogatory No. 4." Cox Communications further objects to the definition , in particular the phrase "process copyright infringement notices" as argumentative and improperly requiring the adoption of a false assumption at least because the term "process" is vague and ambiguous. Cox Communications further objects to the definition of this term because it incorporates "copyright infringement notices"; thus, the terms improperly call for a legal conclusion. Cox Communications will interpret the term CATS to refer to the Cox Abuse Tracking System.

4.      Cox Communications objects to the definition of "Complainant" as vague, ambiguous and fails to describe the information sought with reasonable particularity. Cox Communications further objects to the definition of this term because it incorporates "a DMCA Notice, or notice of copyright infringement"; thus, the terms improperly call for a legal conclusion. Any responses about "Complainants" and any putative notice of claimed infringement sent by any

such entity do not constitute an admission or acceptance that the notice complies with the requirements of the DMCA or otherwise has any force or validity with respect to Cox Communications. Cox Communications will interpret the terms "Complainant" to refer to an entity sending a notification of claimed copyright infringement to Cox Communications whether or not such communication comply with Cox Communications' policies and practices concerning putative notices of claimed infringement.

5. Cox Communications objects to the definition of the term "Cox" and to any request incorporating it as vague, ambiguous, overbroad, and unduly burdensome, particularly to the extent that they purport to include any officers, directors, agents, consultants, employees, attorneys and accountants, when such persons are acting outside of a capacity of representing Cox Communications; or "any other person or entity currently or previously acting or purporting to act on its behalf." Cox Communications will not respond on behalf of any other entity or person in this Action.

6. Cox Communications objects to the definition of the term "IP address" as vague, ambiguous and argumentative and improperly requires adopting a false assumption. Cox Communications will not respond with respect to any IP addresses that Cox Communications does not administer.

7. Cox Communications objects to the definition of the term "Open Wi-Fi Network" as vague, ambiguous and incomplete in that the definition is limited to information contained in paragraph 33 of the June 19, 2015 expert report of William Rosenblatt, which is not a offered as complete definition. Cox Communications will interpret this term to mean a network for provision of wireless internet without security features enabled.

8. Cox Communications objects to the definition of the term "Received," and to any request incorporating it, as vague, ambiguous, and failing to describe the information sought with reasonable particularity, including because it incorporates Plaintiffs' objectionable term "Processing." Cox Communications also objects to the definition of this term because it is argumentative and improperly requires adopting a false assumption, at least because it defines the term "Received" to refer to any communication "sent to abuse@cox.net." Cox Communications further objects to the definition of this term because it incorporates "a DMCA Notice, Digital Rights Violation and/or notice of copyright infringement" within its meaning; thus, the term improperly calls for a legal conclusion. Any responses about "receiving" of any putative notice of claimed infringement do not constitute an admission or acceptance that the notice complies with the requirements of the DMCA or otherwise has any force or validity with respect to Cox Communications. Cox Communications will interpret the term "Received" to putative notices of claimed infringement that actually exist with the possession, custody, or control of Cox Communications.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 21:**

Identify each and every fact or element of Plaintiffs' claims for which You assert that Your reliance on an opinion of counsel and/or legal opinion is a defense in this Action.

**RESPONSE TO INTERROGATORY NO. 21:**

Cox Communications hereby incorporates its General objections. Cox Communications objects to this Interrogatory because it calls for a legal conclusion. Cox Communications objects to this request because it is argumentative and improperly requires adopting a false assumption. Cox Communications objects to this Interrogatory to the extent it seeks information that the

4

attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege protects from disclosure. Cox Communications objects to this Interrogatory because it is oppressive and unduly burdensome, and imposes obligations on Cox Communications that exceed those set forth by the Federal Rules of Civil Procedure, the Local Civil Rules of the Eastern District of Virginia, the Federal Rules of Evidence, any applicable case law, and the orders of this Court; in particular, Cox Communications objects because this Interrogatory impermissibly seeks legal analysis rather than evidence. Cox Communications further objects to this request because it impermissibly seeks to circumvent the discovery limitations set by Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Subject to and without waiving any of its General Objections or the specific objections set forth above, Cox Communications objects to and declines to answer this Interrogatory because it impermissibly seeks legal analysis rather than evidence or factual contentions. Cox is not obligated to reveal its legal theories or strategies in response to a discovery request.

**INTERROGATORY NO. 22:**

For the dates January 1, 2012 through June 30, 2015, identify all IP addresses or the range(s) of IP addresses that were assigned to Cox by the American Registry for Internet Numbers (ARIN).

**RESPONSE TO INTERROGATORY NO. 22:**

Cox Communications hereby incorporates its General objections. Cox Communications objects to this request on the ground that it seeks documents and information that are neither relevant to the claims and defenses of the Action nor reasonably calculated to lead to the discovery of admissible evidence. Cox Communications objects to this request because its use of "assigned" renders the request vague, ambiguous, and failing to describe the information sought with reasonable particularity. Cox Communications objects to the extent the Interrogatory calls for documents publicly available to Plaintiffs.

5

**INTERROGATORY NO. 23:**

Identify any limits, restrictions, or quotas that Cox placed on the number of DMCA Notices that it will forward to Customers or otherwise act upon and describe the reasons or bases for implementing each such limit, how any such limits, restrictions, or quotas were determined, and how Cox treats DMCA Notices received by a Complainant that has exceeded such limits, restrictions, or quotas, for the period of January 1, 2011 to the present.

**RESPONSE TO INTERROGATORY NO. 23:**

Cox Communications hereby incorporates its General objections. Cox Communications objects to this request to the extent it seeks documents that the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege protects from disclosure. Cox Communications will not provide such privileged or protected documents or information. Cox Communications objects to this request to the extent it seeks confidential and/or proprietary information. Cox Communications objects to this request because it is argumentative and improperly requires adopting a false assumption. Cox Communications further objects to this request because it calls for a legal conclusion. Cox Communications objects to this Interrogatory because it is vague and ambiguous with respect to the phrases "forward to customers"; "otherwise act upon"; "the reasons or bases"; "limits, restrictions, or quotas" and "treats" and Plaintiffs' failure to describe the requested information with reasonable particularity would impermissibly require Cox Communications to speculate as to the information Plaintiffs seek. Cox Communications objects to this request on the basis that the definition of "DMCA Notice" renders it impermissibly vague and unintelligible. Any responses about any putative notice of claimed infringement do not constitute an admission or acceptance that the notice complies with the requirements of the DMCA or otherwise has any force or validity with respect to Cox Communications.

Subject to and without waiving any of its General Objections or the specific objections set forth above, Cox Communications responds as follows: CATS places a daily limit on the number of complaints from a particular complainant for which CATS will take customer-facing action. Complaints that exceed that daily limit still create a ticket within CATS, but complainants with a valid email address are sent an automated notification that the daily hard-limit has been exceeded, and those tickets are automatically closed. The daily hard-limit for most complainants is 200 complaints. Certain complainants, including those who represent a large number of rights holders, and who agree to Cox's automated-processing parameters, are allowed a higher daily hard-limit which can vary, including daily limits of 300, 400 and 600 per day. Some complainants may also be set to a hard-limit of 10 per day, which typically indicates an ongoing technical or processing problem with the form of their complaint and that Cox is working directly with the complainant to remedy the problem. In such cases, the lowered hard-limit is used to prevent excessive numbers of open tickets that would require manual processing due to the technical problem preventing them from being processed manually. In addition, Cox imposes a daily aggregate limit on suspensions. Since October 2013, that limit is 500 suspensions per day. In January 2011, that limit was 300 per day. Tickets that come in after that daily suspension limit is reached (which very rarely occurs), and that would otherwise have resulted in a suspension, are left open by CATS for manual processing by Tier 2.5 customer service representatives, which may be the following day. These limits have all been implemented and revised over time by Cox's corporate customer safety (abuse) team. The purpose of these limits is to ensure that Cox's systems and services are not overloaded and that tickets are processed in an efficient, orderly manner.

**INTERROGATORY NO. 24:**

Identify and describe any practices, policies and/or procedures employed by Cox to prevent or restrict residential Customers from operating an Open Wi-Fi Network and/or to password protect and/or secure residential Customer Wi-Fi networks, for the period of January 1, 2011 to present.

**RESPONSE TO INTERROGATORY NO. 24:**

Cox Communications hereby incorporates its General objections. Cox Communications objects to this request to the extent it seeks documents that the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege protects from disclosure. Cox Communications will not provide such privileged or protected documents or information. Cox Communications objects to this request because it is argumentative and improperly requires adopting a false assumption. Cox Communications objects to this request to the extent it seeks confidential and/or proprietary information. Cox Communications further objects to this request as vague and ambiguous especially as to the meaning of "practices, policies and/or procedures" and Plaintiffs' failure to describe the requested information with reasonable particularity would impermissibly require Cox Communications to speculate as to the information Plaintiffs seek.

Subject to and without waiving any of its General Objections or the specific objections set forth above, Cox Communications responds as follows: When subscribers call Cox customer service in response to receiving a notice of abuse, Cox customer service representatives advise them to secure their Wi-Fi, remind subscribers that unsecured wireless is a violation of Cox's Acceptable Use Policy, and where appropriate, provide guidance to the subscriber as to how to secure their Wi-Fi connection by enabling encryption, MAC address filtering and other means. Additionally, pursuant to Fed. R. Civ. P. 33(d), Cox Communications will rely on the following documents that constitute or reflect practices, policies and/or procedures employed by Cox Communications with respect to assisting residential subscribers to secure their Wi-Fi Network

connections: COX_BMG00000001; COX_BMG00000081; COX_BMG00000375

COX_BMG00000534; COX_BMG00000542; COX_BMG0000074; COX_BMG00000767;

COX_BMG00000775; COX_BMG00000797; COX_BMG00001060; COX_BMG00021119;

COX_BMG00021206; COX_BMG00022994; COX_BMG00004638; COX_BMG00024292;

COX_BMG00038484; COX_BMG00043949; COX_BMG00051062; COX_BMG00071774;

COX_BMG00076693; COX_BMG00077930; COX_BMG00088489; COX_BMG00096767;

COX_BMG00098099; COX_BMG00101020; COX_BMG00107626; COX_BMG00120638;

COX_BMG00120711; COX_BMG00132524; COX_BMG00132532; COX_BMG00142766;

COX_BMG00144439; COX_BMG00144464; COX_BMG00144613; COX_BMG00145393;

COX_BMG00145418; COX_BMG00146760; COX_BMG00147168; COX_BMG00149207;

COX_BMG00165772; COX_BMG00166159; COX_BMG00168484; COX_BMG00192867;

COX_BMG00203305.

Dated: August 13, 2015

*/s/ Andrew P. Bridges*
Andrew P. Bridges (*pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel:   415-875-2300
Fax:   415-281-1350
Email: abridges@fenwick.com

Craig Crandall Reilly (VSB #20942)
111 Oronoco Street
Alexandria, VA 22314
Phone: 703-549-5354
Fax:   703-549-5355
Email: craig.reilly@ccreillylaw.com

Attorneys for Defendants
COX ENTERPRISES, INC.,
COX COMMUNICATIONS, INC., and
COXCOM, LLC

## **CERTIFICATE OF SERVICE**

The undersigned declares as follows:

I am a citizen of the United States and employed in the County of Santa Clara, State of California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Fenwick & West LLP, 801 California Street, Mountain View, California 94041. On the date set forth below, I served a copy of the foregoing DEFENDANT COX COMMUNICATIONS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SIXTH SET OF INTERROGATORIES (NOS. 21 – 24) on the interested parties in the subject action by placing a true copy thereof as indicated below, addressed as follows:

| **Attorneys for Plaintiffs:** | *Of Counsel:* |
|---|---|
| Jeremy David Engle, Esq.<br>STEPTOE & JOHNSON, LLP<br>1330 Connecticut Ave., NW<br>Washington, DC 20036<br><br>jengle@steptoe.com<br>bmg@steptoe.com | Michael J. Allan, Esq.<br>William G. Pecau, Esq.<br>John M. Caracappa, Esq.<br>Stephanie L. Roberts, Esq.<br>Elizabeth McKenzie, Esq.<br>Paul A. Gennari, Esq.<br>STEPTOE & JOHNSON, LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br><br>mallan@steptoe.com<br>wpecau@steptoe.com<br>jcaracap@steptoe.com<br>sroberts@steptoe.com<br>emckenzie@steptoe.com<br>pgennari@steptoe.com |
| *Of Counsel:* | *Of Counsel:* |
| Walter D. Kelly, Jr., Esq.<br>HAUSFELD, LLP<br>1700 K Street, N.W., Suite 650<br>Washington, D.C. 20006<br><br>wkelley@hausfeld.com | Michael O. Crain, Esq.<br>CRAIN LAW GROUP, LLC<br>The Bottleworks<br>297 Prince Avenue, Suite 24<br>Athens, Georgia 30601<br><br>mocrain@crainlawgroup.com |

☑ **BY E-MAIL:** by causing to be transmitted via e-mail the documents listed above to the addressee at the foregoing email addresses.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.  Executed this 13th day of August, 2015.

                                              */s/ Marti Guidoux*
                                              Marti Guidoux