**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **BMG RIGHTS MANAGEMENT** | ) | |
| **(US) LLC, and ROUND HILL** | ) | |
| **MUSIC LP** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  1:14-cv-1611(LO/JFA) |
| | ) | |
| **COX COMMUNICATIONS, INC.,** | ) | **REDACTED PUBLIC VERSION** |
| **COXCOM, LLC** | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE**
**THE EXPERT REPORT, OPINION, AND TRIAL TESTIMONY**
**OF COX'S EXPERT JOSEPH KARAGANIS**

Pursuant to this Court's scheduling order of August 20, 2015 (Dkt. 234), Federal Rule of Evidence 104, and the standard for expert testimony articulated by the Supreme Court in *Daubert v. Merrell Dow Pharm*aceuticals, Inc., 509 U.S. 579 (1993), Plaintiffs BMG Rights Management (US) LLC ("BMG"), and Round Hill Music LP ("Round Hill") respectfully move this Court to exclude the expert report and to disallow the proffered expert testimony of Joseph Karaganis.

## I.     INTRODUCTION

Cox's expert Joseph Karaganis is a self-proclaimed *sociologist* (Allan Decl., Ex. 1 Karaganis 8/14/15 Tr. at 17)[1] with a degree in comparative literature from Duke University. Allan Decl., Ex. 1 Karaganis 8/14/15 Tr. at 10.  His dissertation concerned the Argentine author Julio Cortázar.  Allan Decl., Ex. 1 Karaganis 8/14/15 Tr. at 10-11.  He currently is a Vice President of the American Assembly whose mission is "to illuminate public policy issues of national importance."  Allan Decl., Ex. 1 Karaganis 8/14/15 Tr. at 33.  His report and opinions, being offered by Cox to rebut the opinions of BMG and Round Hill's well-known expert *economist*, Dr. William H. Lehr, focuses on three main topics: "[1] the effect of copyright infringement on creators and rights holders, [2] Cox Communication's alleged incentives to avoid the termination of repeat infringers, and [3] the role of copyright enforcement from a public policy perspective," including legal "problems of evidence, due process, and proportionality."  Allan Decl. Ex. 2 (Karaganis Report) at 2.  As set forth in detail below, Dr. Karaganis is not qualified to give *any* opinions on these topics and any opinions Mr. Karaganis gives on these topics are unreliable, not based on the facts of this case, and inadmissible as a matter of law.  *Daubert*, 509 U.S. at 590; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137,

---

[1] October 23, 2015 Declaration of Michael J. Allan

151 (1999).

## II.   LEGAL STANDARD

### A.  The *Daubert* Standard

The admissibility of expert testimony in federal court is governed by Federal Rule of

Evidence 702, as interpreted by the Supreme Court in *Daubert*.  Under Rule 702, when

scientific, technical or other specialized knowledge will assist the trier of fact in understanding

the evidence or determining a fact in issue, "[a] witness qualified as an expert by knowledge,

skill, experience, training or education, may testify in the form of an opinion or otherwise if . . .

[1] the testimony is based upon sufficient facts or data; [2] the testimony is the product of

reliable principles and methods; and [3] the witness has applied the principles and methods

reliably to the facts of the case."  Fed. R. Evid. 702.  Rule 702 gives trial courts a "gatekeeping

responsibility" to ensure that expert opinions presented to a jury are based on an adequate factual

foundation and are the product of reliable methodology.

The "starting point" for an evaluation of an expert's testimony is whether "a person

qualified may give opinion testimony if such testimony will aid the fact finder 'to understand the

evidence or to determine a fact in issue.'"  *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791,

799 (4th Cir., 1989).  And fundamental to this question is whether the proffered witness

"possess[es] 'scientific, technical, or other specialized knowledge' that would assist the trier of

fact as required by Rule 702."  *Id.* at 800 (holding that the district court abused its discretion by

qualifying as an expert a witness without the relevant education or experience concerning the

subject of her testimony).

## III.   ARGUMENT

Plaintiffs' expert, Dr. William Lehr, is a telecommunications and Internet industry

economist with over twenty-five years of experience.  He holds a PhD in Economics from

Stanford, an MBA in Finance from the Wharton School, and MSE, BA, and BS degrees from the

University of Pennsylvania.  Allan Decl. Ex. 3 (Lehr Report) §6.  He is currently a research

scientist in the Computer Science and Artificial Intelligence Laboratory ("CSAIL") at the

Massachusetts Institute of Technology ("MIT"), where he directs research efforts addressing the

mix of technical, business economics, and policy challenges associated with the rise of the

Internet as our global communications infrastructure.  Allan Decl. Ex. 3 (Lehr Report) §2. Dr.

Lehr regularly advises senior industry executives and policymakers in the U.S. and abroad on the

market and industry implications of events relevant to the Internet ecosystem, including such

topics relating to digital media.  Allan Decl. Ex. 3 (Lehr Report) §1.

Dr. Lehr offers economic opinions and analysis.  Using extensive industry and internal

Cox data, he calculated average revenue per user ("ARPU") for Cox and other comparable

providers, blended bundle ARPU for a Cox subscriber, and the monthly blended bundle

contribution margin of a Cox subscriber, which he used to estimate the value of a high-speed

internet subscriber to Cox.  Allan Decl. Ex. 3 (Lehr Report) §§ 20, 22-23.  ███████████

██████████████████████████████  Allan Decl. Ex. 3 (Lehr Report) §26. Dr. Karaganis

does not dispute, or offer any opinion, on this figure.  In fact, he explicitly states that he does

"***not have any specific expertise*** that would allow [him] to validate or challenge" the calculation

of profits per customer offered by Dr. Lehr.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 204-205;

Ex. 2 (Karaganis Report) at 16.

However,  Dr. Karaganis does opine on a number of areas where he has no expertise

including "[1] the effect of copyright infringement on creators and rights holders, [2] Cox

Communication's alleged incentives to avoid the termination of repeat infringers, and [3] the role

of copyright enforcement from a public policy perspective," considering legal "problems of evidence, due process, and proportionality."  Allan Decl. Ex. 2 (Karaganis Report) at 2.  Because Dr. Karaganis is not competent to render any opinion on these issues, his expected testimony should be stricken.

### A. *Dr. Karaganis Is Not Competent to Render an Opinion on the Economic Effects of Copyright Infringement*

Dr. Karaganis is not an economic expert and is completely unqualified to render any opinions on the economic effects of piracy for three reasons.

**First**, Dr. Karaganis is *not an economist and has no degrees in economics*.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 205.  He is a sociologist with an educational background in comparative literature.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 10, 14-15; Ex. 2 (Karaganis Report) at Appx. A.  Nor does he have any experience working, advising, or consulting for the music industry, or any involvement with the entertainment business whatsoever.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 37-38; *see Carter v. United States*, No. 4:13CV112, 2014 WL 3895751, at *2 (E.D. Va. Aug. 8, 2014) (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir.1999)) ("Expert testimony must be based on the expert's specialized knowledge, and not based on mere belief or speculation.").

**Second**, Dr. Karaganis' only real opinion, that copyright infringement is beneficial to the economy, is a pure policy argument which could be used to justify any theft.  Specifically, he argues that ***piracy creates an overall benefit for the economy*** because the "money 'saved'" by persons stealing musical works are purchasing "other things—food, health care, video games, and so on—which generate revenue for other industries, create jobs, increase tax receipts, and promote innovation."  Report at 8 (emphasis added).  This view completely ignores the U.S. Constitution, which prohibits copyright infringement, and is not only unreliable, but is also

prejudicial.  *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332,

at *6 (N.D. Cal. June 30, 2012) (finding expert's analysis on apportionment of damages, which

relied on policy arguments, as unreliable and unduly prejudicial).  Indeed, as recognized by the

U.S. Supreme Court, "deliberate unlawful copying is no less an unlawful taking of property than

garden-variety theft."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 961

(2005) (Breyer, J., concurring).

 **Finally**, Dr. Karaganis's opinion on the effect of copyright infringement is fatally

defective because it is not tied to a single fact in this case and is therefore irrelevant.  Under

*Daubert*, a key "aspect of relevancy is whether expert testimony . . . is sufficiently tied to the

facts of the case that it will aid the jury in resolving a factual dispute."  *Daubert*, 509 U.S. at 591;

*see* Fed. R. Evid. Rule 702(b); *Thomas v. Washington Indus. Med. Ctr.*, No. 98-1652, 1999 WL

507150, at * 7 (4th Cir. July 19, 1999) (affirming District Court's decision to exclude opinion

evidence, where conclusion was based on "no factual foundation . . . making the testimony

irrelevant").

 The only data cited in support of Dr. Karaganis' opinion is a 2009 *Dutch* study that

concerned the effects of copyright enforcement in the Netherlands.  Allan Decl. Ex. 2 (Karaganis

Report) at 8.  The Netherlands' market and Dutch behavior is entirely irrelevant to this case.  In

addition, and rather than addressing the effects of piracy on *music rights* holders, Dr. Karaganis'

considers and opines upon the ***software, TV/movie and publishing industries*** without

explanation or justification ("Here, the elephant in the room is not music but software…").  *See*

*e.g.* Report at 4, 8-10.  Opinions on the effects of copyright infringement to the software,

TV/movie and publishing industries are not relevant to this case and should not be allowed.  *See,*

*e.g., Daubert,* 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case

6

is not relevant and, ergo, non-helpful.") (internal citations and quotations omitted); *Highland*

*Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 473 (S.D.N.Y. 2005) (excluding expert

testimony irrelevant to parties' claims); *United States v. Naegele,* 471 F. Supp. 2d 152, 167-169

(D.D.C. 2007) (admitting expert testimony only if a relevant defense is raised at trial);

For at least these reasons, Dr. Karaganis is not qualified under Rule 702 as an expert to

testify regarding the economic loss to the music industry resulting from copyright infringement.

Dr. Karaganis is not an economist and does not base his opinions on sufficient facts or data.  Fed.

R. Evid. 702(a)-(b), 703.  As such, his "economic" opinions should be stricken.

### B.  Dr. Karaganis' Views on the Role of Copyright Enforcement from a Public Policy Perspective Are Irrelevant, Inaccurate, and Prejudicial

Dr. Karaganis' report then wanders from opining that free music benefits the economy, to

his personal views on "the role of copyright enforcement."  Again, Dr. Karaganis looks at

copyright infringement "from a *public policy perspective*."  Allan Decl. Ex. 2 (Karaganis Report)

at 11 (emphasis added).  These irrelevant personal opinions should be excluded for several

reasons.

*First*, Dr. Karaganis lacks any relevant experience or background to opine on these topics

and has no involvement in the music industry or entertainment business.  Allan Decl. Ex. 1

Karaganis 8/14/15 Tr. at 37-38.  Despite his lack of any specialized knowledge, he opines that

"by many measures, the health of the music business overall (as distinct from the recording

business in particular) is ***pretty good***."  Allan Decl. Ex. 2 (Karaganis Report) at 11 (emphasis

added).  Not only does Dr. Karaganis lack expertise in the health of the music industry, but the

health of the music industry is not relevant to this case.  What is relevant is the rampant piracy

that continues to occur on Cox's network to the detriment of BMG and Round Hill who own or

administer the copyrights at issue, and music rights holders as a whole.

***Second***, Dr. Karaganis' public policy opinions are irrelevant.  He states that "the relevance of music piracy to the music business is diminishing, not growing."  Allan Decl. Ex. 2 (Karaganis Report) at 12.  But again, whether piracy is diminishing is not relevant.  In support of this opinion, Dr. Karaganis cites to a Sandvine study "that peer-to-peer use has fallen dramatically in the US as a percentage of total Internet traffic."  Allan Decl. Ex. 2 (Karaganis Report) at 14.  But that study did not show that piracy was decreasing—rather, that the ratio of the volume of pirated musical works to overall internet traffic was *changing* (largely because increasingly popular video files are far larger than audio files).  *See* Allan Decl. Ex. 2 (Karaganis Report) at 18 (quoting Dr. Lehr's report).  Moreover, whether the volume of piracy has fallen is irrelevant to this case.  The important fact is that copyright infringement exists, and is flourishing, on Cox's network.  And, again Dr. Karaganis lacks any qualifications or specialized knowledge to opine of the relevance of music piracy to the music business.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 37-38.

***Third***, Dr. Karaganis impermissibly opines about evidence, due process, and proportionality.  Allan Decl. Ex. 2 (Karaganis Report) at 19-20; *see, e.g., United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.").  Specifically, as a part of his legal analysis, Dr. Karaganis attempts to provide guidance as to what he believes are "key terms" in the safe harbor provision of the Copyright Act, Section 512(i)(1)(A) of the United States Code.  Report at 19-20.  Not only is Dr. Karaganis completely unqualified to offer such opinions as a non-lawyer (Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 228), but it is a fundamental tenet that expert testimony on the meaning and application of the relevant law is inadmissible.  *See McIver*, 470 F.3d at 561-62.  It is the Court's responsibility to

instruct the jury as to safe harbor, not a witness hired by defendants.  *Chicago Title Ins. Co. v. IMG Exeter Assocs. Ltd. P'ship*, No. 92-1440, 1993 WL 27392, at *4 (4th Cir. Feb. 8, 1993) ("In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible.").

Similarly, Dr. Karaganis purports to provide guidance as to the purpose of copyright law in the United States: "from a public policy perspective, the primary concern [of copyright] is not to maintain the revenue streams of the recording and publishing sector, but to ensure that there is a legal environment conducive to cultural and artistic production."  Allan Decl. Ex. 2 (Karaganis Report) at 11.  Again, Dr. Karaganis is completely unqualified to offer this opinion.  He is neither a legal scholar nor a copyright expert.  And, he is unfamiliar with the origins of the Copyright Act.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 128-130.  He has not reviewed any legislative history or discussed the Act with anyone from the U.S. Copyright.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 128-130; *see Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 677 (E.D. Va. 2013) (restricting expert's testimony because she lacked specialized knowledge about trademark law).

In seeking to impose his own legal opinion and public policy arguments as to what copyright law should accomplish, Dr. Karaganis fails to address a "factual issue of consequence to the legal regime underlying a claim or defense."  *See In re Commercial Fin. Servs., Inc*., 350 B.R. 559, 567 (Bankr. N.D. Okla. 2005) (emphasis added); Tr. at 128-130.  In addition, the lack of any support for Dr. Karaganis' opinion also renders his testimony more prejudicial than probative of any relevant fact.  *See* Fed. R. Evid. 702(b); *Viterbo v. Dow Chemical Co*., 826 F.2d 420, 422 (5th Cir. 1987) (fundamentally unsupported opinion offers no assistance to the jury, and

lack of reliable support rendered it more prejudicial than probative under Rule 403).  As such,

Dr. Karaganis' opinions on copyright law and policy add nothing of value to the Court's or the

jury's understanding of the case and should not be allowed.

### C.   Dr. Karaganis Is Not Competent to Render an Opinion on Cox's Incentives to Avoid Termination of Infringers Because He Has Not Reviewed Any Case Specific Evidence

Dr. Karaganis then offers his opinion on Cox's incentives to avoid the termination of

repeat infringers in the third section of his report.  Allan Decl. Ex. 2 (Karaganis Report) at 15-19.

Dr. Karaganis takes no issue with Dr. Lehr's ultimate conclusion and agrees that  it is "axiomatic

that customers (including file sharing customers) are valuable and that terminating would cost

money" so there is "incentive to keep them."  Allan Decl. Ex. 2 (Karaganis Report) at 16.  Yet

Dr. Karaganis categorizes Dr. Lehr's characterizations of the motivations of Cox and its

customers as "peculiar" and opines that peer-to-peer file sharing (and especially music file

sharing) does not drive adoption of high-speed services.  *Id*.

But these opinions are not tied to the facts of this case, and Dr. Karaganis admits that he

did not look at a single Cox document discussing Cox's policies and procedures for addressing

notices of infringement related to its subscribers or to read any relevant deposition transcripts of

Cox employees.  Allan Decl. Ex. 1 Karaganis 8/14/15 Tr. at 158-159.  Accordingly, Dr.

Karaganis does not even have the basic knowledge or factual background to opine on Cox's

incentives to avoid termination of repeat infringers—he admits that he does not know if, or

when, Cox terminates subscribers (which overwhelmingly it does not).  Tr. at 157-160.  And, his

literary and sociological background does not provide any relevant skill, background or

experience to address this economic issue.

Dr. Karaganis next addresses peer-to-peer file sharing and whether this drove the

adoption of high-speed internet services.  He has no experience to address this issue and he

offers no explanation or data countering the survey and hard data of Dr. Stephen Nowlis showing that a significant percentage of Cox subscribers download illegally free music from BitTorrent from sites such as ThePirateBay.  Specifically, Dr. Nowlis's survey shows that 16.1% of Cox subscribers download such free music and that 70.4% of those Cox subscribers [or 59.6% when adjusted] of the respondents indicated that downloading or uploading free digital music through sites such as ThePirateBay is a reason why they subscribe to Cox.  Allan Decl. Ex. 4 (Nowlis Decl.) at ¶ 2; Ex. 5 (Nowlis Report) at ¶ 7, fn. 2.  Dr. Karaganis, who is not a survey expert, can only baldly respond that the result "startling and unlikely."  However, Dr. Karaganis's surprise appears to have arisen from his misunderstanding of the survey results.  Apparently, he understood that the Nowlis survey showed that 70.4% of all Cox subscribers chose Cox because of their ability to illegally download music; rather than the Nowlis survey's actual results that showed 70.4%  of the 16% of Cox subscribers (11% of all Cox subscribers) who illegally downloaded music stated that it was a reason that they subscribe to Cox's services.  Expert testimony that offers only a bare conclusion is insufficient to prove the expert's point.  *See Mid-State Fertilizer Co.,* 877 F.2d at 1339 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

Accordingly, Dr. Karaganis' expert report, opinions and proposed testimony on Cox's incentives to avoid termination of its subscribers should also be excluded.

## III. CONCLUSION

Dr. Karaganis is unqualified to render opinions on economics, public policy and/or legal matters.  Fed. R. Evid. 702(a).  Moreover, the majority of Dr. Karaganis' opinions are irrelevant to this case and should be excluded.  Since his opinions are not tied to the facts of the case and fail to rely on sufficient facts or data, they are deficient under Federal Rule of Evidence 702(b).

For the foregoing reasons, Plaintiffs request that this Court grant its motion to strike Dr.

Karaganis' expert report and preclude his testimony in its entirety.


Respectfully submitted,

/s/ Paul Gennari

Walter D. Kelley, Jr. (VSB No. 21622)
HAUSFELD, LLP
1700 K Street, NW
Washington, DC 20006
Tel:  (202) 540-7157
Fax:  (202) 540-7201

Paul Gennari (VSB No. 46890)
pgennari@steptoe.com
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

*Of Counsel*

Michael J. Allan (admitted *pro hac vice*)
William G. Pecau (admitted *pro hac vice*)
John M. Caracappa (admitted *pro hac vice*)
Stephanie L. Roberts (admitted *pro hac vice*)
Elizabeth McKenzie (admitted *pro hac vice*)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia  30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Rightscorp*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

William J. Dinkin
Bill.dinkin@gmail.com

/s/ *Jeremy D. Engle*
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902