UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| **BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP**<br><br>    Plaintiffs,<br><br>        v.<br><br>**COX COMMUNICATIONS, INC., COXCOM, LLC**<br>    Defendants. | Case No.  1:14-cv-1611 (LO/JFA)<br>**REDACTED PUBLIC VERSION** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE RYAN SULLIVAN FROM OFFERING OPINIONS OR TESTIMONY REGARDING THE ECONOMIC EFFECTS OF INFRINGEMENT OVER THE COX NETWORK**

Plaintiffs BMG Rights Management (US) LLC and Round Hill Music LP ("Plaintiffs") seek to exclude testimony of Defendants' expert Ryan Sullivan regarding the "economic effects" on them of the alleged infringement at issue in this case. While admitting that it is impossible to accurately quantify the damages caused by the infringement with the information available, Sullivan purports to calculate "upper bound" of the damages Plaintiffs have suffered as a result of the infringements at issue through the "displacement" of legal sales that they otherwise would have made.

Sullivan attempts to quantify actual damages from infringement without any data establishing how much infringement has taken place. His analysis is premised on improper and inaccurate legal conclusions, is replete with arbitrary and unsupported assumptions, and does not make use of a reliable or accepted methodology to model the damages Plaintiffs have suffered as

a result of Cox subscribers' use of the Cox network to infringe. Allowing Sullivan to present his "upper bound" damages number will therefore mislead rather than inform the jury as to the injury Plaintiffs have suffered, and his calculations should be excluded.

To start, Sullivan's analysis excludes an entire category of "economic effects" – those arising from all uploads of the works at issue over the Cox network using BitTorrent – on the basis of Sullivan's view that Cox does not "materially contribute" to those infringements. Sullivan concludes that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ if Cox halted infringement over its systems. Therefore, Sullivan does not include any damages associated with these uploads in his analysis of the "economic effects" of infringement. But that is not the law of material contribution. Cox materially contributed to the uploads because its network was the "site and facilities" over which they occurred. And Sullivan's decision to build his damages analysis on a false opinion of law renders it inadmissible. Cox should not be permitted, by burying a contrary legal conclusion in its expert's damages analysis, to deny the Court and the jury the power to decide whether Cox materially contributed to infringement when it allowed its users to upload the works at issue over BitTorrent.

Sullivan's calculation of the economic effects on Plaintiffs of Cox subscribers' downloads of the works at issue is not dependent on this legal conclusion but is replete with baseless factual assumptions that Sullivan himself deems arbitrary and for which he can provide no support. In particular, Sullivan has no reliable estimate of the number of downloads of the works at issue by Cox subscribers or of the type or value of the legal sales that they might displace. Instead, Sullivan makes four "arbitrary" (in his own words) assumptions about the

number of downloads at issue. That is not a reliable basis for expert, actual damages testimony in a copyright case.

The many assumptions on which Sullivan is forced to rely reflect the underlying problems with his methodology and the reasons that it cannot be applied reliably in this case. Sullivan's model does not take into account significant confounding factors and economic effects. Meanwhile, the nature of BitTorrent prevents identification of the exact number of infringements at issue, which even Sullivan admits is essential to an accurate displacement calculation. For these reasons, Sullivan is unable to identify a single other example in which a similar methodology was used to accurately quantify actual damages in a copyright case. Indeed, the difficulty of estimating actual damages in a copyright case is why the law provides for statutory damages. Those are what Plaintiffs have asked for here, and Sullivan's speculative model of actual damages – built on unreliable assumptions and inaccurate legal conclusions – should be excluded.

## BACKGROUND

In their Complaint, Plaintiffs seek only statutory damages, not actual damages, for the infringement at issue. "Since actual damages . . . frequently are difficult to prove, the Copyright Act provides for . . . statutory damages. These damages may be elected by the copyright owner at any time before final judgment is rendered, without proof of actual damages." 2 William F. Patry, Copyright Law & Practice at 1170 (1994).

Nonetheless, Cox's expert Ryan Sullivan offers opinions regarding Plaintiffs' lost revenue and profits, which he terms "economic effects," from the infringement at issue in this litigation. *See* October 23, 2015 Declaration of Jeffrey M. Theodore ("Theodore Decl.") Ex. 1 (Sullivan Report) ¶¶ 118-133. In other words, Sullivan purports to perform an actual damages

calculation for the infringements at issue.  Sullivan opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but purports to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in his report.  Theodore Decl. Ex. 2 (Sullivan Tr.) at 230:11-15, 235:4-8.  Sullivan divides his analysis into the economic effects of uploads of the works at issue over the Cox network and downloads of the works at issue over the Cox network.

Sullivan excludes from his damages calculation uploads of the works at issue from Cox subscribers to other BitTorrent users.  Sullivan's view is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Theodore Decl. Ex. 1 ¶ 120. Sullivan explained in his deposition that this view is based on Section 6.6 of his report. Theodore Decl. Ex. 2 (Sullivan Tr.) at 283:16-18, 288:15-20.  In Section 6.6, Sullivan opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Theodore Decl. Ex. 1 ¶¶ 112-17; Ex. 2 (Sullivan Tr.) at 307-10.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Theodore Decl. Ex. 1 ¶ 120.  On this basis, Sullivan does not include any damages deriving from uploads of the works at issue from Cox subscribers to other BitTorrent users over the Cox network.

To calculate the economic effect of downloads, Sullivan uses a "displacement" analysis in which he purports to determine an "upper bound" on the value of lost legal sales displaced by Cox subscribers' downloading of the works over BitTorrent.  *See* Theodore Decl. Ex. 1 ¶¶ 118-27.  Sullivan starts by making assumptions about the number of BitTorrent downloads by Cox subscribers.  Theodore Decl. Ex. 1 ¶ 118.  Sullivan then allocates those downloads among

different legal channels of distribution (i.e., physical media, digital downloads, and internet radio streams) to determine the number and type of lost sales resulting from the BitTorrent downloads. Theodore Decl. Ex. 1 ¶¶ 121-24. Finally, Sullivan estimates the average revenue earned on sales via each of those legal channels. By multiplying the displaced sales by the potential revenue attributable to those sales, Sullivan estimates Plaintiffs' lost revenue.

At the start of this process, Sullivan makes four different assumptions regarding the number of downloads of the works at issue by Cox subscribers. *See* Theodore Decl. Ex. 1 ¶ 118. Each of these assumptions is based on the observed instances of infringement in the Rightscorp data. Under the first assumption, Sullivan assumes ████████████████████████████ ████████████████████████████████████████████████████ *See* Theodore Decl. Ex. 1 ¶ 118(a). Under the second assumption, ████████████████████████████ ████████████████████████████████████████████████████ *See* Theodore Decl. Ex. 1 ¶ 118(b). Under the third assumption, ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *See* Theodore Decl. Ex. 1 ¶ 118(c). Under the fourth assumption, ████████████████████ ████████████████████████████████████████████████████ ████████████ *See* Theodore Decl. Ex. 1 ¶ 118(d).

Based on these four assumptions about the number of downloads of the works at issue over the Cox network, Sullivan then proceeds to calculate an estimate of lost sales that have resulted from these downloads. In Sullivan's analysis, ████████████████████████ ████████████████████████████████████████████████████ ████████████ Theodore Decl. Ex. 2 (Sullivan Tr.) at 291:10-292:2. Instead, Sullivan apportions

all of the lost sales between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Theodore Decl. Ex. 1 ¶ 122.

Sullivan then attempts to determine the revenue attributable to those lost downloads and streams. Sullivan multiplies the number of lost digital downloads by the average industry price for digital downloads to determine Plaintiffs' lost revenue from digital downloads. Theodore Decl. Ex. 1 ¶ 126; Ex. 2 (Sullivan Tr.) at 295-96. For lost internet streams, Sullivan multiplies the number of BitTorrent downloads he has apportioned to streaming by the number of months to present, the Spotify average figure for streams of the top 100 songs per user per month, and the Spotify average per stream payout to rights holders. Theodore Decl. Ex. 1 ¶¶ 123, 125 & Attachment B-12; Ex. 2 (Sullivan Tr.) at 296-301.

Sullivan's ultimate lost revenue figure is a combination of his assumptions about the number of BitTorrent downloads by Cox subscribers, the allocation of those downloads to displaced digital downloads or internet radio streams, and his estimate of the average revenue per digital download or lost stream. By blending all of these assumptions into an estimate of the "economic effects" of infringement, Sullivan produces an unreliable opinion that is not based on facts or data.

## ARGUMENT

The Court must ensure that expert testimony is reliable and relevant. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 597 at 597 (1993). Although *Daubert* addressed scientific evidence, a trial court should act as gatekeeper under *Daubert* for all types of expert evidence. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

Because it is not logical, fair, or judicially efficient to require jurors to evaluate confusing expert testimony without judicial involvement, proffered expert testimony is admissible only if

"(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, *and* (3) the witness has applied the principles and methods reliably to the facts of the case." Fed R Evid. 702 (emphasis added). The burden is on the party proffering the expert to prove by a preponderance of the evidence that the expert's testimony is admissible and that the requirements of the Federal Rules of Evidence are satisfied. *See Cooper v. Smith & Nephew*, 259 F.3d 194, 199 (4th Cir. 2001); *Daubert*, 509 U.S. 579 at 592 n. 10 ("These matters should be established by a preponderance of proof."). If the testimony is not reliable and relevant, it is not admissible. *See Daubert*, 509 U.S. at 597.

Even if proffered expert testimony is based on a reliable methodology, Federal Rule of Evidence 703 further requires a showing that the underlying data is reliable, *i.e.,* "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Daubert*, 509 U.S. at 595 (quoting Fed. R. Evid. Rule 703). The principle of reliability is particularly important in the context of quantifiable, economic data, such as those presented or referred to in the report that is the subject of this motion. And limitations on what data is available to the expert cannot excuse deficiencies in the resultant analysis. *See Multimatic v. Faurencia Interior Systems USA*, 358 Fed. Appx. 643, 655 (6th Cir. 2009) ("District courts do not abuse their discretion . . . when they exclude expert testimony whose flaws stem in part from the expert's efforts to do the best job he could with the limited data his client would provide.").

I.   **SULLIVAN'S ANALYSIS SHOULD BE EXCLUDED BECAUSE IT IS PREMISED ON AN INVALID LEGAL CONCLUSION**

At the outset, Sullivan's analysis of Plaintiffs' lost revenue and profits from BitTorrent sharing of the works at issue over the Cox network should be excluded because it depends on a false legal conclusion. While purporting to calculate an "upper bound" estimate of the economic

effect on Plaintiffs of the alleged infringement at issue in this litigation, Sullivan excises an entire category of infringement from his damages analysis based on the legal opinion that Cox has not materially contributed to the infringement.

Sullivan opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Theodore Decl. Ex. 1 ¶¶ 112 (emphasis added).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Theodore Decl. Ex. 1 ¶ 113. According to Sullivan, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Theodore Decl. Ex. 1 ¶ 117; *see also* Ex. 2 (Sullivan Tr.) at 310:13-311:1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

On this basis, Sullivan concludes that uploads of the works at issue by Cox subscribers over the Cox network ▮▮▮▮▮▮▮▮▮▮ on Plaintiffs and excludes them from his damages analysis. Theodore Decl. Ex. 1 ¶ 120. During his deposition, Sullivan confirmed that his analysis ignores an entire category of infringements ▮▮▮▮▮▮▮. *See* Theodore Decl. Ex. 2 (Sullivan Tr.) at 288:15-20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

But experts are not entitled to create their own legal standards. *See Bailey v. Allgas*, 148 F. Supp. 2d 1222, 1245-46 (N.D. Ala. 2000) (excluding expert because his opinion was "contrary to law"). And Sullivan's conclusion that Cox does not materially contribute to infringement

when its subscribers use its network to upload infringing files (because the BitTorrent peers to whom they are uploading could have obtained the files elsewhere) is not the law. On the contrary, a defendant "materially contributes" to infringement where it provides the "site and facilities" for infringing activity. *Fonovisa v. Cherry Auction*, 76 F. 3d 259, 264 (9th Cir. 1996). Here, the Cox network was the site and facilities by which the infringing uploads occurred. *See* SJ Op. at 22. It makes no more sense to say that Cox did not materially contribute to the infringement because other BitTorrent could have obtained the files from subscribers of other ISPs than it does to say that a getaway car driver did not materially contribute to a bank robbery because the bank robbers could have found a different driver. In the copyright context, Grokster would have escaped liability for secondary infringement because its users could, instead, have turned to Limewire or another P2P file sharing service.

Sullivan's damages calculation should be excluded because it is premised on this improper conclusion as to the meaning of "materially contribute." In *Loeffel Steel Products v. Delta Brands*, 387 F. Supp. 2d 794 (N.D. Ill. 2005), the Northern District of Illinois excluded an expert who performed a similar maneuver. There, the defendants' damages expert had excluded an entire category of damages on the basis of his own definition of "economic loss." *See id*. at 802-03 (expert's use of his own definition of "economic loss" allowed him to ignore "any amount attributable to the diminished value" of the property). Because this was inconsistent with the definition of "economic loss" damages permitted under the law, the Court excluded the expert's calculation. *Id*. at 804-06.

Here, Sullivan's exclusion of all uploads from his damages analysis is inconsistent with the law, which treats uploads as infringements and permits a rights holder to recover damages. *See Columbia Pictures Industries v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading

and downloading copyrighted material are infringing acts"); *A&M Records v. Napster*, 239 F.3d 1004, 1013 (9th Cir. 2001) ("[U]se [of] the service to download and upload copyrighted music . . . constitute[s] direct infringement of plaintiffs' musical compositions.") (internal quotation omitted); *see also Sony BMG Music Entertainment v. Doe*, No. 5:08-CV-109-H, 2009 WL 5252606, at *4 (E.D.N.C. Oct. 21, 2009) ("the Fourth Circuit has interpreted distribution to include not only actual dissemination, but also making a protected work available to the public."). Sullivan cannot offer a reliable estimate of the upper bound of the economic effects on Plaintiffs of the infringements at issue while excluding from his analysis all uploads of Plaintiffs' works.

II. **SULLIVAN'S MODEL OF THE ECONOMIC EFFECTS OF DOWNLOADS OVER BITTORRENT IS PREMISED ON BASELESS AND UNRELIABLE ASSUMPTIONS**

Even apart from his total exclusion of damages attributable to uploads of the works at issue over the Cox network, Sullivan's damages model is an unreliable estimate that does little more than cobble together a series of arbitrary assumptions to produce a misleading quantification of damages. *See Eastern Auto Distributors v. Peugeot Motors of America*, 795 F.2d 329, 337-38 (4th Cir. 1986) ("Scrutiny of expert testimony is especially proper where it consists of an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it.").

Sullivan's model is based on four different assumptions regarding the number of downloads at issue, not one of which has any basis in fact and which Sullivan has himself described as "arbitrary." Having made these assumptions about the number of downloads, Sullivan attempts to calculate the "economic effect" on Plaintiffs according to the value of displaced legal means of obtaining the works. To do so, he arbitrarily assigns infringements as

substitutes for digital downloads or internet streams while concluding that there is no impact on sales of physical media, such as compact discs. Each of these alone would render his analysis unreliable and justify its exclusion.

The foundation of Sullivan's damages calculation is completely arbitrary: four different assumptions about how instances of observed infringement in the Rightscorp data correlate to the number of downloads of the works at issue. Theodore Decl. Ex. 1 ¶ 118. The fourth and broadest assumption assumes that ███████████████████████████████████ ███████████████████████████████████████████████ while the first through third assumptions assumes that different subsets of those instances of observed infringement correlate to downloads. *Id.*

Sullivan does not provide any basis for any of these four assumptions. Elsewhere in his Report, Sullivan asserts that ███████████████████████████████████████████████ ██████████████████ Theodore Decl. Ex. 1 ¶ 88. Indeed, Sullivan opines that ████████ ███████████████████████████████████████████████████████████████ ██████████████████████████ and rejects █████████████████████████████████ ████████████████████ Theodore Decl. Ex. 1 ¶ 49; *see also* Ex. 2 (Sullivan Tr.) at 234:7-22 ███████████████████████████████████████████████████████████████ ████████████████████████████████

These arbitrary assumptions at the foundation of Sullivan's damages analysis render it unreliable and inadmissible. "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Construction Co. v. Pensacola Consruction*, 29 F.3d 137, 142 (4th Cir. 1994); *see also Pharmanetics, Inc. v. Aventis Pharm., Inc.*, 182 F. App'x 267, 271 (4th Cir. 2006) (damages model based on

speculative assumptions that were 'disconnected' from facts of the case failed to meet Daubert standard for "fit"); *Riani v. Louisville Ladder*, 83 Fed. R. Evid. Serv. 119 (D. Mass. 2010) ("An expert cannot render an opinion that is based on an incorrect factual premise or an assumption as to which there is no evidence."). "When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court." *Tyger Construction*, 29 F.3d at 144.

In particular, Sullivan's assumption that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the Rightscorp data is completely unfounded. The nature of BitTorrent means that Rightscorp could not detect every download or every infringement. BitTorrent allows an infinite series of exchanges, which do not leave a digital trace, and Rightscorp cannot detect BitTorrent transfers between peers. During the period at issue in this litigation, Rightscorp logged instances in which it observed a user *offering 100%* of an infringing torrent. Thus, if a Cox user stopped sharing immediately upon completing a download or Rightscorp's software did not contact a Cox user between the time he completed his download and the time he stopped sharing, that download would not be reflected in the Rightscorp data. Sullivan's assumption that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at issue is false. *See Silicon Knights v. Epic Games*, No. 5:07-CV-275-D, 2011 WL 6748518, at *17 (E.D.N.C. Dec. 22, 2011) ("A damages model premised on a false assumption is not reliable.").

Here, Sullivan's false assumptions about the number of infringements go to the foundation of his damages calculation and completely undermine the reliability of his conclusions. As another putative Cox expert has admitted, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Theodore Decl. Ex. 3 (Karaganis Tr.) at 71:3-72:2. Sullivan himself concedes that ▮

▮

▮ Theodore Decl. Ex. 2 (Sullivan Tr.) at 234:1-8, 239:17-21.

The remainder of Sullivan's calculation is no more reliable. Having made assumptions about the number of downloads by Cox subscribers over BitTorrent, Sullivan concludes that ▮ Theodore Decl. Ex. 1 ¶ 122. Instead, he allocates ▮

▮. *Id*. The average price of a digital download is ▮, while the average price of a physical sale is ▮ Theodore Decl. Ex. 1 ¶ 87. Sullivan estimates average streaming revenue at less than ▮ per stream. Theodore Decl. Ex. 1 Attachment B-12.

Sullivan offers no data or evidence to support this allocation. In fact, he admitted at his deposition that he ▮

▮ Theodore Decl. Ex. 2 (Sullivan Tr.) at 219:21-220:15. Instead, Sullivan opines that ▮

▮ Theodore Decl. Ex. 1 ¶ 122. But Sullivan does not apply a similar analysis to allocate BitTorrent downloads between legal digital downloads and internet radio streams. Though BitTorrent downloads are much closer to legal digital downloads (both result in permanently saved music files) than to evanescent internet radio streams, Sullivan ▮

▮. Theodore Decl. Ex. 1 ¶ 122. Sullivan offers no factual basis for concluding that ▮

▮

prevalence, but not for physical sales at all. "[E]xpert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *See Moore v. International Paint*, 547 F. App'x 513, 515 (5th Cir. 2013); *see also Eastern Auto Distributors*, 795 F.2d at 337-38 (expert testimony premised on speculative underlying assumptions was properly excluded).

In sum, Sullivan's damages analysis consists of arbitrary assumptions built on top of one another to arrive at a figure that is not based on facts or actual data. As a model built on "a series of ad hoc decisions . . . rather than identifiable (or principled) criteria," Sullivan's calculations should be excluded. *Silicon Knights*, 2011 WL 6748518, at *7-10.

### III. SULLIVAN'S ANALYSIS IS NOT BASED ON A RELIABLE METHODOLOGY

Sullivan's need to rely on arbitrary and unsupported assumptions reflects the fact that his damages model is not an appropriate methodology for estimating copyright damages. At his deposition, Sullivan was unable to identify a single example of another expert or academic whom Sullivan thought had been able to reliably quantify the effect of copyright infringement on copyright holders using a similar methodology. *See* Theodore Decl. Ex. 2 (Sullivan Tr.) at 225:13-230:6. That demonstrates the unreliability of his analysis. *See United Co. v. Keenan*, No. CIV.A. 1:06CV00071, 2007 WL 4260930, at *17-18 (W.D. Va. Nov. 30, 2007) (finding lack of reliable principles and methodology where expert could not identify any cases or scholarly works employing the expert's methodology); *Elcock v. Kmart Corp.*, 233 F.3d 734, 748-750 (3d Cir. 2000) (overturning admission of expert testimony using unrecognized combination of accepted methodologies that had not been used by other experts or otherwise referenced in the relevant literature).

Indeed, one of the reasons Congress has made statutory damages available in copyright cases is that it is often impossible to calculate the actual damages a Plaintiff suffers as a result of

infringement.  *See Douglas v. Cunningham*, 294 U.S. 207, 209 (1935) (difficulty of calculating actual damages and lost profits resulted in passage of statutory damages provision of Copyright Act); *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991) (statutory damages available because actual damages and lost profits are "often . . . virtually impossible to prove").  Nor is it a requirement that statutory damages "be strictly related to actual injury."  *See Lowry's Reports v. Legg Mason*, 302 F. Supp. 2d 455, 459 (D. Md. 2004).  Cases involving widespread infringement over BitTorrent are particularly difficult in this regard.  Here, Sullivan's incomplete and simplistic model forces him to rely on a series of unsupported and unreliable assumptions.  That is not sufficient to satisfy the requirements of *Daubert*.

## CONCLUSION

For the reasons set forth above, Plaintiffs ask this Court to exclude Cox's expert Ryan Sullivan from opining or testifying about the economic effects of the copyright infringement occurring over Cox's network as set forth in Section 6 and other portions of his July 10, 2015 expert report.

October 23, 2015

Respectfully submitted,

/s/ *Jeremy D. Engle*
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
Paul Gennari (VSB No. 46890)
pgennari@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

Walter D. Kelley, Jr. (VSB No. 21622)
HAUSFELD, LLP
1700 K Street, NW
Washington, DC 20006
Tel: (202) 540-7157
Fax: (202) 540-7201

*Of Counsel*
Michael J. Allan (admitted *pro hac vice*)
William G. Pecau (admitted *pro hac vice*)
John M. Caracappa (admitted *pro hac vice*)
Roger E. Warin (admitted *pro hac vice*)
Jeffrey M. Theodore (admitted *pro hac vice*)
Stephanie L. Roberts (admitted *pro hac vice*)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia 30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 23, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

                                     /s/ *Jeremy D. Engle*
                                     Jeremy D. Engle (VSB No. 72919)
                                     jengle@steptoe.com
                                     STEPTOE & JOHNSON, LLP
                                     1330 Connecticut Ave, NW
                                     Washington, DC 20036
                                     Tel.: (202) 429-3000
                                     Fax: (202) 429-3902