**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, <br><br> Plaintiff, <br><br> v. <br><br> COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:14-cv-1611 (LOG/JFA) |

**MEMORANDUM IN SUPPORT OF COX'S MOTION TO EXCLUDE
THE TESTIMONY OF PUTATIVE EXPERT RALPH OMAN**

**NON-CONFIDENTIAL PUBLIC VERSION**

**INTRODUCTION**

Plaintiffs try to bolster their legal team with an expert in copyright law.  Ralph Oman, who served as Register of Copyrights three decades ago and before the enactment of the Digital Millennium Copyright Act ("DMCA"), has submitted a report and Plaintiffs have designated Mr. Oman as a testifying trial expert.  But Mr. Oman's deposition revealed that his contribution is primarily as a "good lawyer" who can "read the statute."  *See* Ex. B, 45:18-19.  He opined about the Copyright Act and the World Intellectual Property Organization Copyright Treaty but was unfamiliar with the text of the specific section of the Copyright Act and the specific Article of the Treaty that apply to Plaintiffs' claims in this case.  He claimed to be familiar with, and opined about, provisions of the DMCA, which Congress enacted after Mr. Oman left office, in which he had no visible role, and with which he appears to have had modest involvement in private practice.

Mr. Oman's testimony provides no insight that counsel of record cannot provide through legal arguments to the Court.  Numerous cases hold that it is improper for a party to offer legal argument in the guise of expert opinion.  Counsel for the parties should be making the legal arguments.  Nor should Mr. Oman advise a jury on copyright law: that is the Court's proper role in giving jury instructions.  Mr. Oman's testimony is inadmissible under Federal Rule of Evidence 702 because it is improper legal opinion and under Rule 403 because its prejudice outweighs any possible probative value.

Mr. Oman also attacked the advice of Cox's in-house legal counsel, but conceded that he himself had no expertise rendering opinions in-house.  He specifically criticized Cox's evaluation of Rightscorp's infringement notices, but when he saw one of Rightscorp's notices at deposition, Mr. Oman stated it would take him half an hour to determine whether that notice

contained five elements that DMCA Section 512(c)(3) specifies for a notice.  Ex. B, 282:1-282:14.  Most lawyers with any degree of experience, and certainly all counsel of record in this case, could perform that exercise in fewer than five minutes.

Apart from being inadmissible legal opinion, Mr. Oman's testimony is inadmissible under Rule 702 for additional and independent reasons.  Mr. Oman has no specialized knowledge about the DMCA that would assist the trier of fact, nor does the Court require specialized knowledge—this Court knows the law.  And Mr. Oman's testimony is not reliable.  He admitted that he did not consider, and in fact ignored, many facts in this case in reaching his legal conclusions.  Importantly, while Mr. Oman opines on the propriety of decisions by Cox's in-house counsel regarding Rightscorp's extortionate notices, he failed to consider key aspects of that decision, including the actual steps Cox's in-house counsel took to reach his conclusion and render his advice.

Moreover, Mr. Oman is not objective and would therefore not contribute to any fact finding.  He has frequently opined on copyright policy, always on the side of expanding the copyright statutory monopoly or strengthening the hand of those who claim such a monopoly, in litigation and elsewhere.  Ex. B, 83:8 – 88:7.  He conceded that he has previously "lent [his] prestige and name recognition" to a policy agenda.  Ex. B, 103:7-17.  That is what Plaintiffs want him to do here for their litigation agenda.  Facing a question of how his roles as amicus curiae and as an expert witness differ, his answer was both honest and telling:  "Not to be cute, but for expert reports I generally get paid and for amicus briefs I don't."  Ex. B, 119:5-7.

Mr. Oman is a distinguished former civil servant.  But he brings no current specialized knowledge and expertise to this case that would assist a trier of fact to understand any factual matter.  Plaintiffs take advantage of Mr. Oman's name and former government position to bolster

legal arguments of their counsel, and also to influence a jury to give undue weight to his

testimony because of his position three decades ago.  In sum, Mr. Oman's testimony is entirely

inappropriate and inadmissible under Rules 702 and 403 of the Federal Rule of Evidence.

## BACKGROUND

Mr. Oman issued a report on June 19, 2015.  *See* Ex. A.  Cox deposed Mr. Oman on

August 10, 2015.  *See* Ex. B (excerpts of testimony from Mr. Oman's deposition transcript).

Because Cox recognized that Mr. Oman's opinions were improper and inadmissible as expert

testimony, none of Cox's retained experts responded to Mr. Oman's report.

Mr. Oman purports to offer expert opinions regarding (1) the rationale and bargained-for

exchange between ISPs and content owners that underlie the DMCA, (2) the resulting practices

related to copyright infringement notices and the DMCA's safe harbor provisions, (3) whether

Cox was justified in "ignoring" Rightscorp's notices of claimed infringement, and (4) whether an

opinion by Cox's in-house legal counsel constituted "a reasoned opinion in the legal sense."

*See* Ex. B at 34:20-38:10.  As discussed below, all of those opinions are improper subjects of

expert testimony.

## ARGUMENT

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized

knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a

witness qualified as an expert by knowledge, skill, experience, training, or education, may testify

thereto in the form of an opinion or otherwise."  *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d

194, 199 n.1 (4th Cir. 2001).  Plaintiffs bear the burden of establishing the admissibility of

Mr. Oman's testimony by a preponderance of the evidence.  *Id.*

With respect to expert testimony, the Court serves as a critical "gatekeeper" in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "*Daubert* requires a two-part analysis to determine whether proposed expert testimony is admissible. First, the court must determine whether the expert's testimony is grounded in scientific method and reflects scientific knowledge. Second, the court must determine whether the evidence proffered is relevant." *Miller v. Mandrin Homes, Ltd.*, 305 F. App'x 976, 979 n.2 (4th Cir. 2009).

In exercising their gatekeeping function, "courts must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595). Due to an expert's status or experience alone, the jury may attach more significance to the expert's testimony than is reasonably warranted. *United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003). Thus, in determining whether expert evidence will be helpful to the jury, the Fourth Circuit has observed that "a judge must be mindful of other evidentiary rules," in particular Federal Rule of Evidence 403. *See United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995). Rule 403 requires the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," a risk that is particularly acute with experts. *Daubert*, 509 U.S. at 595.

A critical principle under Rule 702 is that an expert witness may not invade the province of the court by opining on the law. *See, e.g.*, *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 522 n.4 (4th Cir. 2002) (excluding testimony from attorney, who was former TTAB administrative trademark judge, as it "was nothing more than a legal opinion and was thus inadmissible."). As addressed below, this is the primary fatal flaw in Mr. Oman's opinions: he is

4

an attorney seeking to lecture this Court, and ultimately the jury, on the law. That is plainly

impermissible, and Mr. Oman previously has been excluded for the same tactics.

"An additional consideration under Rule 702—and another aspect of relevancy—is

whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it

will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quotation omitted).

That consideration is often referred to as "fit." *Id.*; *accord ePlus, Inc. v. Lawson Software, Inc.*,

764 F. Supp. 2d 807, 812 (E.D. Va. 2011). Expert testimony that is divorced from the facts of

the particular case at hand is much less likely to be helpful to the jury, and much more likely to

be confusing or unfairly prejudicial. *See ePlus*, 764 F. Supp. 2d at 813 ("[N]othing in either

*Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that

is connected to existing data only by the *ipse dixit* of the expert.") (quoting *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 146 (1999)). As addressed in the following subsections, Mr. Oman's

opinions are all inadmissible under Rule 702 and 403.

I.      **MR. OMAN'S TESTIMONY CONSISTS OF INADMISSIBLE LEGAL ARGUMENT AND
        LEGAL CONCLUSIONS.**

"Simply put, testimony that is designed to instruct the jury on the applicable law is not

admissible because, by purporting to do what lies with the exclusive province of the court, it

cannot be helpful to the jury." *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252,

255 (W.D.N.Y. 2000). Mr. Oman's testimony squarely falls within this category of inadmissible

testimony. Mr. Oman's testimony consists of legal arguments for interpretations of the law that

favor Plaintiffs, and applying these interpretations, Mr. Oman draws ultimate legal conclusions

about this case. Mr. Oman's report not only *sounds* like a legal brief; it *is* a legal brief. As

Mr. Oman admitted, the only distinguishing feature between his report and an amicus brief is

monetary compensation:

Q. And when you have written amicus briefs, you've written to express your personal opinions in various pending court cases, correct?

A. Yes.

Q. What distinguishes your role as a friend of the Court in an amicus brief and your role as an expert consultant or witness in litigation?

A: *Not to be cute, but for expert reports I generally get paid and for amicus briefs I don't.* But I refuse to take cases when I do not agree with the position of the client seeking my services, and I always speak the truth and speak my views.

Ex. B, 118:19-119:12.  Masquerading as an "expert report," Mr. Oman's report and related testimony reflect his personal opinions on copyright law and his apparent bias in favor of promoting the interests of rightsholders, as against ISPs, copyright defendants, and those Mr. Oman calls "bad guys."  *Id.*, 250:20-25.  But this Court does not need an "expert" to interpret the law, and the lawyers for the respective parties must argue the law to the Court.

An expert may not compete with the judge by rendering legal conclusions; such legal testimony is improper under Rule 702.  In *U.S. Search,* the Fourth Circuit affirmed the district court's decision that proffered expert testimony by a former Administrative Trademark Judge with the Trademark Trial and Appeal Board and an attorney in private practice "was nothing more than a legal opinion and was thus inadmissible."  300 F.3d at 522 n.4.  Similarly, in *Casper v. SMG*, 389 F. Supp. 2d 618, 621-22 (D.N.J. 2005), the court excluded a law professor's testimony that consisted of applying case law and statutes to the documentary record to draw legal conclusions, finding that the testimony had a direct bearing on legal determinations within the province of the court.  The *Casper* court held that this legal analysis was inadmissible as expert testimony: "While Plaintiff is free when the time comes to make such arguments and offer such conclusions in legal memoranda, he may not do so through the expert testimony of a law professor.  *Id*. at 621-22 n.7 ("Expert witnesses are also prohibited from drawing legal conclusions . . . [t]his proscription precludes an expert from testifying in the language of statutes,

regulations or other legal standards that are at the heart of the case."); *see also Pinal Creek Grp. v. Newmont Mining Corp.,* 352 F. Supp. 2d 1037, 1042-43 (D. Ariz. 2005) ("In addition to prohibiting legal expert testimony which defines the governing law, courts have also prohibited legal expert opinion which applies the law to the facts."); *In re Initial Public Offering Sec. Litig.,* 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("[T]he principle that legal opinion evidence concerning the law is inadmissible is 'so well-established that it is often deemed a basic premise or assumption of evidence law - a kind of axiomatic principle.'").

Even where courts must rely on expert testimony for the purposes of illuminating complicated issues, such as the "complexities of patent regulation," and "matters of PTO practice and procedure and … the complexities of patent prosecution," courts carefully limit the expert testimony so that anything constituting impermissible legal argument is excluded.  *See Tafas v. Dudas*, 511 F. Supp. 2d 652, 661-62 (E.D. Va. 2007).  In *Tafas*, the court held that a declaration by the former commissioner of the Patent and Trademark Office was admissible only to the extent that it assisted the court in understanding "the intricacies of patent regulation"; the rest was impermissible legal argument and would be disregarded.  *Id*.

Mr. Oman's testimony is similarly inadmissible because it consists of bare legal arguments as to the applicable law, the proper interpretations of that law, and application of that law to draw legal conclusions, and therefore invades the province of the Court.  In his report, Mr. Oman purports to opine on the legislative history of the DMCA, analyzes the eligibility requirements set forth for ISPs in Section 512(i), and concludes that Cox does not enjoy safe harbor immunity under Section 512.  Mr. Oman further concludes that Rightscorp's notices of claimed infringement were valid section 512(c) takedown notices, Cox was obligated to act on them, and the decision of Cox's in-house counsel regarding Rightscorp's notices was not a

reasoned legal opinion.  Mr. Oman's opinions do nothing more than advocate for Plaintiffs'

substantive legal positions, which is the type of improper legal testimony that courts routinely

exclude under Rule 702.  *See Pinal Creek,* 352 F. Supp. 2d at 1044.[1]

Beyond his improper legal conclusions, Mr. Oman's testimony can have no other proper

purpose.  For instance, Mr. Oman's testimony does not concern industry norms or assist the

Court with the technical intricacies or complexities about which only specialized practitioners

would have knowledge.  Nor could Mr. Oman provide such testimony because he has never

represented or provided legal advice to an ISP, has never advised a client regarding the

processing of a notice of claimed infringement, and has never served in an in-house legal

capacity.  Ex. B, 38:15-39:9; 42:16-43:11.  And even Mr. Oman acknowledges the impropriety

of legal opinion testimony.  When questioned about basic legal propositions, including the limits

of the distribution right under Section 106(3) of the Copyright Act, Mr. Oman testified that it

was not appropriate for him to provide testimony on a "very complicated" legal issue and a

"nuanced" area of the law:

> Q.  I'd like everything you can tell me about what a copyright owner has the right to distribute under Section 106(3) before we turn to the statute.
>
> A.  Well, this is a very complicated legal issue, actually.  I think you probably appreciate that.  And I would be reluctant to voice an opinion on it in a very nuanced area of the law in which there are conflicts in the circuits and not clarity that would – we'd hope to have in this area of the law.

Ex. B, 190:9-190:23.

---

[1]  Without elaborating, Mr. Oman testified he "would find [it] hard to believe" that a lawyer could reasonably disagree with the opinions he renders in this case regarding what is required by the DMCA. Ex. B, 340:1-341:10.  That is despite the fact that there is no consensus among the industry, including among major ISPs, legal circles, or courts regarding whether a 512(a) conduit ISP is required to forward notices of claimed infringement.

Plaintiffs proffer Mr. Oman's testimony to lend credibility to Plaintiffs' substantive legal arguments in the eyes of the Court and the jury. "That kind of testimony does not assist a jury to determine a disputed issue or to understand other evidence. Indeed, it merely confuses the finder of the fact and asks the jury to accept the expert's view merely because it was expressed by an expert." *ePlus,* 764 F. Supp. 2d at 815. Thus, Mr. Oman's legal testimony leads only to confusion and unfair prejudice, and is therefore inadmissible under Rules 702 and 403.

## II. MR. OMAN HAS NO SCIENTIFIC, TECHNICAL, OR OTHER SPECIALIZED KNOWLEDGE THAT WILL ASSIST THE COURT OR A TRIER OF FACT.

In addition to being impermissible legal opinion, Mr. Oman's testimony is also inadmissible under Rule 702 because it offers no "scientific, technical, or other specialized knowledge" that will assist the trier of fact. While Mr. Oman purports to be a DMCA expert because he is a "good lawyer" who can "read the statute," Ex. B, 45:8 – 45:20, he has no unique, specialized, or otherwise valuable expertise regarding the DMCA or its drafting, passage, and subsequent implementation. Mr. Oman was not the U.S. Register of Copyrights at the time the DMCA was drafted and passed. *See* Ex. B, 54:19-54:25. At the time, he was representing copyright owners in private practice at a law firm. Mr. Oman did not participate in any negotiations with representatives of ISPs leading up to the passage of the DMCA, has no private, non-public information about the negotiations leading up to the DMCA, and had no involvement in drafting regulations implementing the DMCA. Ex. B, 79:24-82:12; 54:15-55:14. Mr. Oman has not represented any ISPs in private practice, and never advised a client regarding the processing of notifications of claimed infringement. Ex. B, 42:16-43:11. And Mr. Oman admitted that he had stepped aside and was not the head of the U.S. delegation during the final stages of WIPO copyright treaties in 1996 (the "Internet Treaties"). Ex. B, 88:8-90:12.

Moreover, though he purports to be an expert on the DMCA, Mr. Oman admitted he

was not familiar with the Online Copyright Infringement Liability Limitation Act ("OCILLA"),

which created the safe harbor immunity provisions for ISPs in section 512.

> Q.  Do you recall what Act Title 5 of the Copyright Act was named within the Digital Millennium Copyright Act?
>
> A.  I don't, actually, unless it's a trick question.
>
> Q.  No, it's not a trick question.  Do you remember anything called Ocilla?
>
> A.  I don't.  I don't remember --Ocilla?
>
> Q.  Ocilla?
>
> A.  I'm sorry I don't.
>
> Q.  O-C-I-L-L-A.
>
> A.  No, I don't recall that.

Ex. B, 48:16 49:3.  And, when questioned, Mr. Oman could not even recall the language of

Section 106 (3) of the Copyright Act or what a copyright holder has the exclusive right to

distribute under that section.  Ex. B, 188:23 – 193:15.

Mr. Oman's attempts to opine on the propriety of legal decisions of other competent

lawyers, including decisions by Cox's in-house counsel, are even less justifiable.  Mr. Oman has

no specialized or expert knowledge about what constitutes a reasoned legal opinion by in-house

counsel.  Mr. Oman has never served in an in-house counsel capacity and has no "formal training

in the operation of an in-house counsel operation".  Ex. B, 38:15-39:9.  Mr. Oman's only basis

for his "expert" opinion is that he is also a lawyer, he has provided legal opinions for clients in

private practice, and he supposedly has a ██████████████████████████████

████████████████████████████████████████████████      Ex. A, ¶ 42.

Whether Cox's in-house counsel correctly interpreted the DMCA is for this Court to determine,

and whether Cox was justified in relying on its counsel's view is for the jury to determine.

Mr. Oman's personal view on the actions of other "good lawyers" are not relevant, and, again,

create a significant risk that the jury will credit his views merely because they were "expressed

by an expert." *ePlus,* 764 F. Supp. 2d at 815.

**III.    MR. OMAN'S TESTIMONY IS NOT RELIABLE AND IGNORES FACTS THAT ARE NOT CONSISTENT WITH HIS BIASED VIEWS OF THE LAW.**

Mr. Oman's testimony violates a basic tenet of *Daubert*: that expert testimony must "fit"

the matter at hand.  Indeed, expert testimony that is not "sufficiently tied to the facts of the case"

is not helpful to the jury and therefore is inadmissible as a matter of law.

Mr. Oman's proffered testimony does not "fit" the context and facts of this case.

Mr. Oman has admitted that he did not review or even consider basic factual issues in the

evidentiary record.  Instead, Mr. Oman relied on documents that were cherry-picked for him by

counsel as a factual basis for rendering his inadmissible legal opinions and conclusions.  Ex. B,

18:8-19:12.  For instance, Mr. Oman testified that Cox's in-house counsel did not conduct any

███████████████████████████████████████ in connection with Cox's decision not to

accept Rightscorp's notices.  Ex. A, ¶ 44 – 45. But Mr. Oman admitted that he was unaware of

the actual steps Cox's in-house counsel took in reaching his decision regarding Rightscorp's

notices.  Notably, Mr. Oman was unaware that Cox *did* in fact consult outside counsel in

reaching a decision about Rightscorp.  *See* Dkt. No. 320 (Declaration of Randall J. Cadenhead In

Support of Cox's Motion for Summary Judgment).  From his deposition:

> Q.  Mr. Oman, are you aware whether Cox consulted with outside counsel
> regarding its dealings with Rightscorp?
>
> A.  I'm not aware of it, and I think, if I had been aware of it, I would have
> reflected that in my expert report.

Ex. B, 341:21-342:1.  Mr. Oman was also ignorant of key facts regarding Plaintiffs' claims and

Rightscorp's role in this case.  For instance, he was unaware that Rightscorp refused to cooperate

with Cox's requests to modify its notices of claimed infringement:

Q. And are you aware that Rightscorp refused to cooperate with Cox in altering the notices?

A. Again, these are complex business relationships, and I'm not familiar with the details or the negotiating strategies or the objectives and what the – what the rationale of the various companies were involved in this transaction, so I can't answer the question.

Ex. B, 327:25-328:9.

Mr. Oman further testified that he was not aware that a basic premise of Rightscorp's business model is that ISPs should suspend account holders in response to Rightscorp's notices of claimed infringement until the account holder pays Rightscorp's settlement demand. Ex. B, 332:1-332:14. Mr. Oman testified that he was not aware that counsel for other major ISPs had expressed concerns about the appropriateness of Rightscorp's notices of claimed infringement. Ex. B, 342:19-343:18. Mr. Oman erroneously believed that sound recordings, not musical compositions, are at issue in this case. Ex. B, 69:5-69:14. He is not familiar with BitTorrent or Rightscorp's software. Ex. B, 149:4-22. And, despite his contention that he is qualified to render a legal opinion about a legal opinion, Mr. Oman did not inquire regarding any reasoned legal opinions challenging Rightscorp's software for identifying alleged infringements. Ex. B, 154:6-156:6. In short, Mr. Oman was ignorant of most of the critical facts in this case and admittedly did nothing to educate himself on those facts.

Moreover, Mr. Oman's uninformed legal opinions are biased and skewed toward Mr. Oman's own personal views on copyright law. Far from a neutral entity, Mr. Oman has routinely taken positions on issues of copyright law that favor copyright holders or Plaintiffs in copyright litigations. All of Mr. Oman's amicus briefs have been in support of copyright holders. Ex. A, 29:10-32:19; 96:20-97:6. In private practice, Mr. Oman's major clients were rightsholders, publishers, and authors. And Mr. Oman has authored articles on the DMCA and copyright law that evidence his bias toward copyright owners, and against ISPs and the sharing

12

of information on the Internet generally.  Exs. C-D.  In other words, Mr. Oman is a lawyer with a

particular legal axe to grind, and he hopes to grind it here.

**IV.     COURTS HAVE PREVIOUSLY EXCLUDED MR. OMAN'S IMPROPER LEGAL OPINION TESTIMONY.**

This is not the first time Mr. Oman has provided objectionable, inadmissible expert

testimony consisting of improper legal conclusions.  Other courts have excluded Mr. Oman's

testimony on identical grounds.  In *Osment Models, Inc. v. Mike's Train House, Inc*., No. 2:09-

cv-04189, 2010 WL 4721228, at *1-2 (W.D. Mo. Nov. 15, 2010), Mr. Oman submitted

testimony regarding copyright doctrines, opined on how the law should apply to the facts of the

case, and offered bare legal conclusions.  The *Osment Models* court held that Mr. Oman's

putative expert testimony was "tantamount to instructing the jury on the law.  That is for the

Court to do, not a party's expert."  *Id.*  Because Mr. Oman's testimony was couched as a legal

conclusion, the court ruled that the testimony would not assist a trier of fact:  "the requirement of

'helpfulness' assures against admitting opinions which would in essence tell the factfinder what

result to reach."  *Id*. at *2.

Similarly, in *Paul Morelli Design, Inc. v. Tiffany And Co*., 200 F. Supp. 2d 482, 484

(E.D. Pa. 2002), Mr. Oman proffered testimony that a party's designs contained sufficient

creative expression to qualify as an original work.  The *Morelli* Court held that Mr. Oman's

testimony would not assist the trier of fact and was "analogous to having expert witnesses testify

in a personal injury action that a party's conduct was negligent."  *Id*. at 486.  Mr. Oman seeks to

do the same here.  He wants to lecture the jury on what the DMCA means and then tell the jury

that Cox does not qualify for DMCA safe harbor protection.  That is the essence of legal

conclusions in the guise of expert testimony, and must be excluded.

13

**CONCLUSION**

Mr. Oman's opinions and testimony are inadmissible under Federal Rules of Evidence

702 and 403 because they are legal opinion testimony that invades the province of judge and jury,

because Mr. Oman has no specialized knowledge regarding the DMCA or the rendering of

reasoned legal opinions, and because Mr. Oman's views do not "fit" the facts of the matter at

hand, as required under *Daubert*.

Based on the foregoing, Cox respectfully requests that the Court exclude the opinions and

testimony of Mr. Oman in their entirety and for any purpose.  A form of proposed order is

submitted with this motion.

Dated: October 23, 2015                                  Respectfully submitted,


                                                         /s/ Craig C. Reilly
                                                         Craig C. Reilly VSB # 20942
                                                         111 Oronoco Street
                                                         Alexandria, Virginia 22314
                                                         TEL:   (703) 549-5354
                                                         FAX:   (703) 549-5355
                                                         E-MAIL: craig.reilly@ccreillylaw.com

                                                         *Counsel for Defendants*

*Of Counsel for Defendants*

Andrew P. Bridges (*pro hac vice*)
David L. Hayes (*pro hac vice*)
Jedediah Wakefield (*pro hac vice)*
Guinevere L. Jobson (*pro hac vice*)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel:  (415) 875-2300
Fax:  (415) 281-1350
Email:    abridges@fenwick.com
          gjobson@fenwick.com

Brian D. Buckley (*pro hac vice)*
Fenwick & West LLP
1191 2nd Avenue, 10th Floor
Seattle, WA  98101
Tel: (206) 389-4510
Fax: (206) 389-4511
Email:    bbuckley@fenwick.com

Armen N. Nercessian (*pro hac vice*)
Ronnie Solomon (*pro hac vice*)
Ciara Mittan (*pro hac vice*)
Fenwick & West LLP
801 California Street
Mountain View, CA  94041
Tel: (650) 988-8500
Fax: (650) 938-5200
Email:    anercessian@fenwick.com
          rsolomon@fenwick.com
          cmittan@fenwick.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2015, the foregoing was filed and served

electronically by the Court's CM/ECF system upon all registered users:

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
craig.reilly@ccreillylaw.com

*Counsel for Defendants*

16