UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:14-cv-1611 (LOG/JFA) |
| v. | ) ) |
| COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, | ) ) ) ) |
| Defendants. | ) ) |

**COX'S OPPOSITION TO PLAINTIFFS'
MOTION *IN LIMINE* NO. 6
(ALLEGED INFRINGEMENT BY NON-COX ACCOUNT HOLDERS)**

**INTRODUCTION**

Cox respectfully submits this opposition to Plaintiffs' Motion *In Limine* No. 6 To Exclude Argument That Cox Is Not Liable For Infringement Over Its Network By Users Other Than Named Account Holders (Dkt. No. 560).

By asking the Court to exclude "evidence, argument, or testimony concerning whether Cox network users other than named Cox account holders are responsible for the [alleged] infringements at issue" (Dkt. No. 559-1), Plaintiffs impermissibly seek to prevent Cox from addressing a central issue in this case: Plaintiffs' total lack of any evidence of infringement. "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *Softech Worldwide, LLC v. Internet Tech. Broad. Corp.*, 761 F. Supp. 2d 367, 375 (E.D. Va. 2011) (internal quotations omitted). Plaintiffs have the burden

to prove that direct infringement by a third party. *See Sony Corp. v. Universal City Studios*, 464 U.S. 417, 434 (1984).

Despite Plaintiffs having the burden, Cox has every right to mount a defense and show the jury why Plaintiffs lack proof of direct infringement.[1] As Plaintiffs explain, they base their claim of infringement on activity they allege is "traceable to Cox-assigned IP addresses." Dkt. No. 560 at 1. They do not connect any of the alleged infringements to any specific person. To the contrary, Plaintiffs made no effort to determine whether Cox account holders, or any other particular person accessing the Internet over the Cox network, personally committed any infringements. *See* Dkt. No. 311 (Bridges Dec. in support of Cox's summary judgment motion) ¶¶ 2, 8.g.–8.k. (testimony of Rightscorp's lead developer that Rightscorp does not "know who [the infringers] are"), 10.b. & 12 (testimony of Rightscorp's CEO that Rightscorp does not have any identifying information about alleged infringers until they call Rightscorp).

The indisputable reality is that many people other than the named account holder may access the Internet through a particular Cox IP address. That fact further undermines Plaintiffs' ability to establish direct infringement, let alone by any specific person accessing the Internet over the Cox network. The Court should deny Plaintiffs' attempt to keep the jury from hearing highly relevant facts about a key issue.

## BACKGROUND

Plaintiffs never took any third-party discovery of any Cox account holders. Dkt. No. 311 ¶ 2. Accordingly, Plaintiffs have conceded that they have no evidence that specific Cox account holders engaged in actual direct infringements. *See id.* ¶¶ 5.i., 7.a. & c. (testimony of Plaintiffs' corporate representatives that Round Hill and BMG do not have evidence that any Cox

---

[1] Cox has moved for summary judgment because of this lack of evidence (Dkt. No. 354), but in the event of a jury trial, Cox must be able to explain this fatal flaw in Plaintiffs' case.

subscriber distributed Plaintiffs' copyrighted works to anyone). Plaintiffs relied on their litigation agent Rightscorp to collect evidence about supposed infringements. *Id.* ¶¶ 5.c., 6.i. As Rightscorp's lead developer testified, Rightscorp has no knowledge of an ISP subscriber's actual activity. *Id.* Ex. 29 at 129:8-130:19. Rightscorp admits its system cannot identify infringers because its software only observes certain conditions at a particular IP address. *Id.* ¶¶ 8.g.–8.k., 10.b., 12.; 13.t.

It is impossible for the Rightscorp software to connect a BitTorrent bitfield to particular individuals using the IP address, port, and time data that Rightscorp claims to collect. Dkt. No. 313 (Rucinski Dec. in support of Cox's summary judgment motion) ¶ 20. Individual IP addresses are dynamically assigned and can belong to multiple Cox account holders over time (even more than one account holder in a day). *Id.* Moreover, even if Cox were able to determine which account holder had a particular assigned IP address on a given date, it is impossible to determine whether or not *that* account holder (or any other specific individual) was using a computer at that IP address at that time. *Id.*; *see also* Dkt. No. 311 ¶ 6.k (testimony of BMG's Deputy General Counsel admitting that account holder may not be liable for another person's use of the account).

A single IP address assigned by an ISP can also provide Internet access to multiple computers and devices simultaneously. Dkt. No. 313 ¶ 20. One IP address can be serving numerous computers and mobile devices of a variety of neighbors, family members, roommates, employees, patrons, or mere passersby. *Id.* Indeed, Rightscorp's own employee coaching materials explain that "[t]he biggest reason for filesharing is caused by an unsecured wireless network; anyone in a close radius can obtain access." Dkt. No. 311 ¶ 10.c. & Ex. 37 (script for communicating with consumers from whom Rightscorp demanded settlements).

3

**ARGUMENT**

Plaintiffs seek exclusion of evidence under Federal Rule of Evidence 403 because of "unfair prejudice." *See* Dkt. 560 at 2 (misquoting Rule 403). Rule 403 only allows exclusion of relevant evidence "if its probative value is *substantially outweighed*" by one or more dangers, one of which is unfair prejudice. FED. R. EVID. 403 (emphasis added). "Of course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Dollar v. Long Mfg., N.C., Inc.*, 561 F. 2d 613, 618 (5th Cir. 1977); *accord U.S. v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003) ("[U]nfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.") (quoting Weinstein's Federal Evidence). As discussed below, it is not remotely unfair for Cox to show the jury the gaping holes in Plaintiffs' case.

Other courts have recognized that an IP address by itself does not identify specific users who might have infringed. "The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer." *Malibu Media, LLC v. Does 1-5*, No. 1:12-cv-02950, 2012 WL 2001968, *1 (S.D.N.Y. June 1, 2012). Because multiple computers can communicate through a single IP address, identifying which of numerous users engaged in particular activity may be impossible. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 178 (D. Mass. 2008). Even assuming that some activity was infringing, the infringer might be "someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *VPR Internationale v. Does 1-1017*, No. 2:11-cv-02068, 2011 WL 8179128, *2 (C.D. Ill. Apr. 29, 2011). "[T]he assumption that the person who pays for Internet access at a given location is the

4

same individual who allegedly downloaded a single [work] is tenuous, and one that has grown more so over time." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012). In light of this uncertainty, courts also have recognized "the growing concern about unscrupulous tactics used by certain [copyright] plaintiffs … to shake down the owners of specific IP addresses." *Malibu Media*, 2012 WL 2001968, at *1.

Plaintiffs downplay the rather obvious notion that someone other than the Cox account holder might be using his or her wi-fi connection. Plaintiffs claim that "Cox's suggestion that non-subscribers are responsible for the infringements at issue are also entirely speculative." Dkt. No. 560 at 4. Far from it. In May 2015, Magistrate Judge Anderson ordered Cox to produce to Plaintiffs personally identifiable information (PII) for subscribers associated with 250 IP addresses connected, according to Plaintiffs, to the "most egregious infringers." *See* Dkt. No. 78. In response to that order, Cox customers sent letters to the Court explaining that they had nothing to do with the activity accused by Rightscorp. *See, e.g.*, Dkt. No. 88 (collecting several customer objections). For example, the Court received a letter from a Navy sailor who was on deployment during the period Plaintiffs claimed infringing activity occurred through his IP address. *See* Ex. A (Dkt. No. 88 at 14).

Other account holders pointed out that other people, including strangers, might share or use their IP address. For example, an "80 year old Cox Cable and Internet customer" responded to the Court as follows:

> I do not have computer experience and I am unaware of any illegal activity on my network. I have wiFi internet, and have had the network set to public not knowing that it needed to be secured. Apparently everyone in my neighborhood has had access to my network.

*See* Ex. B (Dkt. No. 88 at 12). Plaintiffs cannot genuinely dispute these common sense realities. (Anyone with a modern mobile device has watched it roam for an available wi-fi connection.)

And the examples above — the deployed midshipman and the octogenarian, both wrongfully accused by Plaintiffs of being "egregious infringers" — alone illustrate vividly why observations at an IP address tell you essentially nothing. These realities have significant consequences for Plaintiffs' claims, in at least two respects.

<u>First</u>, Plaintiffs claim that Cox is indirectly liable for free-floating direct infringement by users anywhere on its network.[2] Because Plaintiffs have consistently disclaimed any intention or need to prove direct infringement by any specific person, Plaintiffs must instead rely on "circumstantial evidence" in the form of the observation data and downloads purportedly collected by Rightscorp. Even if Plaintiffs' basic legal theory were correct (it is not), and even if the Rightscorp data were reliable (it is not), Plaintiffs must convince a jury that such faceless data alone is sufficiently definite to prove direct copyright infringements. In making that determination, the jury is entitled to know that it is impossible to know who or what is on the other side of an IP address that Rightscorp is observing. Even if Rightscorp were able to prove (it cannot) that someone at an IP address offered a copyrighted file that was in fact downloaded by a third party, whoever offered that file might have done so unknowingly, might have had the copyright holder's permission, or might have been engaged in fair use. Stated differently, the total unpredictability of who is actually accessing the Internet through a particular IP address weakens further Plaintiffs' already tenuous "circumstantial evidence" theories.

---

[2] Plaintiffs reprise their summary judgment arguments regarding the need to prove direct infringement by a particular person. Dkt. No. 560 at 3. But Plaintiffs rely on Section 512(c) cases involving *hosts*, or storage service providers, of infringing content. *See, e.g.*, *Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 686-87 (N.D. Cal. 1994) (finding prima facie case of contributory infringement based on direct infringement by unknown users of electronic bulletin board). Where a host has the ability both to identify infringing content and to take it down, the specific identity of the person posting the content is obviously less relevant. But a Section 512(a) conduit ISP like Cox has no ability to verify the existence or presence of allegedly infringing content, let alone to "take down" that content.

6

Second, Plaintiffs claim that Cox is not eligible for the DMCA safe harbor because Cox has not taken sufficient steps to "terminate repeat infringers." But what is a repeat infringer? Plaintiffs rely on a mathematician's model to claim that repeated observations at a particular IP address "proves" that the same person is engaged in infringing conduct. But because many different people can access the Internet through a single IP address, even the same observations at the same address do not prove it is the same person, *i.e.*, do not identify a "repeat infringer." Moreover, Plaintiffs insist that, based on Rightscorp's unreliable data alone, Cox should terminate its *account holders'* Internet access. But there is absolutely *no* proof that the infringer (if there is one) is the account holder (witness the Navy sailor and the 80-year-old). The jury is entitled to consider those realities when assessing Plaintiffs' attacks on Cox's procedures.

## CONCLUSION

For all the above reasons, the Court should deny Plaintiffs' Motion *in Limine* No. 6 in its entirety and allow Cox to offer evidence, argument, or testimony regarding Plaintiffs' inability to prove that any specific individual directly infringed Plaintiffs' copyrights.

Dated: November 13, 2015                             Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
Tel:   (703) 549-5354
Fax:   (703) 549-5355
E-mail:  craig.reilly@ccreillylaw.com

*Counsel for Defendants*

*Of Counsel for Defendants*

Andrew P. Bridges (*pro hac vice*)
David L. Hayes (*pro hac vice*)
Jedediah Wakefield (*pro hac vice)*
Guinevere L. Jobson (*pro hac vice*)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300
Fax: (415) 281-1350
Email: abridges@fenwick.com
        gjobson@fenwick.com

Brian D. Buckley (*pro hac vice)*
Fenwick & West LLP
1191 2nd Avenue, 10th Floor
Seattle, WA 98101
Tel: (206) 389-4510
Fax: (206) 389-4511
Email: bbuckley@fenwick.com

Armen N. Nercessian (*pro hac vice*)
Ronnie Solomon (*pro hac vice*)
Ciara Mittan (*pro hac vice*)
Nicholas A. Plassaras (*pro hac vice*)
Fenwick & West LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500
Fax: (650) 938-5200
Email: anercessian@fenwick.com
        rsolomon@fenwick.com
        cmittan@fenwick.com
        nplassaras@fenwick.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2015, the foregoing document was filed and served electronically by the Court's CM/ECF system upon all registered users:

        /s/ Craig C. Reilly
        Craig C. Reilly, Esq. (VSB # 20942)
        111 Oronoco Street
        Alexandria, Virginia 22314
        TEL (703) 549-5354
        FAX (703) 549-5355
        craig.reilly@ccreillylaw.com

        *Counsel for Defendants*