UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-1611(LO/JFA) |
| COX COMMUNICATIONS, INC., COXCOM, LLC | ) ) ) | **REDACTED PUBLIC VERSION** |
| Defendants. | ) ) ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 7 TO PRECLUDE COX AND ITS EXPERTS FROM USING DECEPTIVE NOTICE AND WARNING STATISTICS TO ARGUE THAT ITS "GRADUATED RESPONSE" IS HIGHLY EFFECTIVE AT CURBING INFRINGEMENT**

Plaintiffs BMG Rights Management (US) LLC and Round Hill Music LP respectfully submit this Reply in Support of their Motion *in Limine* to preclude Cox and its experts from using deceptive notice and warning statistics to argue that its graduated response is highly effective at curbing infringement.

In their Motion, Plaintiffs explained why Cox should not be permitted to introduce deceptive statistics regarding its graduated response procedures and give them the sheen of expert authority. *See* (Dkt. No. 563) ("Mot."). For example, Cox and its expert William Rosenblatt invoke a Cox internal presentation showing the percentage of subscribers to whom Cox sends ■■■■■ etc. notices and asserting that "96% stop by five notices." But, as Plaintiffs explained, the data simply shows the average numbers of warnings Cox sent to its subscribers during their time with Cox and does not support the conclusion that Cox subscribers

1

stopped infringing after receiving any given number of warnings. *See* Mot. at 1-4. For example, subscribers may continue to infringe without receiving further warnings as a result of Cox's policies, which caused it to ignore ▮ of non-Rightscorp infringement notices. *Id.* Thus, the statistic does not actually measure subscriber behavior.

In response, Cox makes no effort to defend the conclusion that appears on the face of the slide – that "96% of customers stop after five notices" – no effort to identify any probative value, and no effort to demonstrate the existence of any methodology or data that support the slide's conclusion. Instead, Cox claims that Plaintiffs' assertion that Cox takes customer facing action on only ▮ percent of notices is misleading because it ignores Cox's "technical and business reasons" for failing to process other notices. *See* Dkt. 610 ("Opp.") at 2-3. But Cox's reasons for failing to process notices are beside the point and do not render the ▮ percent figure misleading. ▮ percent is simply the number of warnings and suspensions Cox issues to subscribers divided by the number of non-Rightscorp notices of infringement sent to Cox.[1]

Whatever Cox's reasons for failing to act on ▮ of notices,[2] that failure is highly relevant to a graphic claiming that 96% of subscribers stop infringing after receiving five warnings from Cox. Because Cox does not forward the vast majority of infringement notices, there is no reason to think that these subscribers stopped infringing simply because they received no more warnings. Thus, the "96% stop after 5" statistic is highly misleading and should be excluded. *See Registe v. Linkamerica Exp., Inc.*, Civ. No. 3:12-CV-1110-HES-JRK, 2015 WL

---

[1] Including Rightscorp notices, the figure is five percent. *See* Dkt. 563 at 1-2; Dkt. No. 317, September 21, 2015 Declaration of Jeffrey M. Theodore Ex. 41 at 12-16 & Ex. 39 at 25-27.

[2] While Cox insists that it takes action on all copyright complaints, Opp. at 3, for most complaints that action is to close the ticket and notify the sender. *See* SJ Reply at 17.

1288138, at *6 (M.D. Fla. Mar. 19, 2015) (imprecise statistics that did not measure relevant matter were properly excluded as irrelevant and prejudicial).

Rather than defend its claim that "96% stop after 5 notices," Cox argues that Mr. Rosenblatt "did not cite the data to prove 'that 96% of customers stop after five notices.'" Opp. at 4. But that conclusion is emblazoned on the face of the slide that Rosenblatt cites. *See* Dkt. 452-1 ("Rosenblatt Report") ¶ 107; Dkt. 574-11 at COX_BMG00008555. And Mr. Rosenblatt admitted at his deposition that Cox's data stating that "96% of customers stop after five notices" was the basis for his opinion that Cox's policy was reasonable and effective. *See* Dkt. 452 Ex. 4 (8/5/15 Rosenblatt Tr.) at 293:7-15 ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

██████████

Indeed, Cox acknowledges that Rosenblatt "opined that [the slide] suggests that Cox's scheme is more effective at curbing alleged repeat infringements than CAS." Opp. at 4. That is exactly the sort of conclusion regarding subscriber conduct that the slide does not support. The slide suggests nothing about the number of infringements Cox subscribers commit, only the number of warnings that Cox has sent out. The Court should not allow Rosenblatt to give his imprimatur to Cox's misleading claims about subscriber conduct based on its own truncated warning procedures.[3]

Next, Cox argues that the proper remedy is cross-examination and contrary evidence. But the mere opportunity for rebuttal does not justify introduction of highly misleading evidence

---

[3] That Rosenblatt seeks to rely on this statistic to make a false comparison with subscribers of other ISPs only heightens the misleading nature of his testimony. There is no evidence in the record regarding other ISPs' notice handling procedures that might allow an apples to apples comparison between notice recipients at Cox and at CAS ISPs.

that has no probative value. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) ("The court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.' And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded."); *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995) ("Even after the *Daubert* decision, otherwise admissible evidence may be properly excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury."). And Cox does not identify any probative value that the statistic may have. Cox does not explain any aspect of the statistic that might be accurate, informative, and non-misleading to the jury. It is purely misleading and prejudicial and therefore should be excluded.

Finally, Cox argues that Rosenblatt has additional support for his conclusions regarding the effectiveness of Cox's graduated response procedure. That may or may not be. The slide at issue is the only evidence Rosenblatt cites for the conclusion in the topic sentence of paragraph 107 that ███████████████████████████████████████████████ *See* Rosenblatt Report ¶¶ 107-110; *see also* Dkt. 452 Ex. 4 (8/5/15 Rosenblatt Tr.) at 293:7-15 (identifying 96% figure as the basis for his effectiveness opinion). Regardless, the existence of other evidence does not justify allowing Rosenblatt to regurgitate misleading statistics in an effort to confuse the jury.[4]

---

[4] Rosenblatt is not a statistician or otherwise qualified to perform many of his analyses of the Cox graduated response data by which he purports to establish its effectiveness. As discussed in Plaintiffs' Memorandum in Support of Their Motion to Exclude Portions of the Expert Report and Limit the Trial Testimony of Cox's Expert William Rosenblatt (See Dkt. 450 at 7, 10-12), Mr. Rosenblatt is not qualified to opine on whether Cox's procedures are effective at curbing infringing behavior and used improper and unreliable methodologies to assess whether

Indeed, Cox has nothing to say about Rosenblatt's failure to assess the underlying data, perform his own calculations, or determine what information Cox used to prepare the slide at issue other than to assert that it goes to the weight of the evidence. That is not the law. *See Capital Concepts, Inc. v. Mountain Corp.*, 936 F. Supp. 2d 661, 672 (W.D. Va. 2013) ("An expert cannot simply parrot his client's findings or calculations and then pass that data off as his own expert opinion"); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (an expert witness is not "permitted to merely read, selectively quote from, or 'regurgitate' the evidence"). Here, it is unclear what information was used to create the slide, whether or not it accounts for all notices sent to Cox, the time period of the data, and whether it calculates warning totals based on warnings sent over the *lifetime* of a customer's account or merely the past six months. By simply accepting the data and failing to further assess whether it is supported, Rosenblatt failed to satisfy the requirements of permissible expert testimony.

Ultimately, the statistic at issue is not probative, and any value it might possess is far outweighed by the risk of unfair prejudice and the potential to mislead the jury, particularly if offered or discussed under the guise of expert authority. It should be excluded, and Cox and its experts should be precluded from using misleading statistics regarding warnings and notices Cox sends to its subscribers to argue that its graduated response is effective at curbing infringement.

|  |  |
|---|---|
| November 17, 2015 | Respectfully submitted, |
|  | /s/ *Jeremy D. Engle* <br> Jeremy D. Engle (VSB No. 72919) <br> jengle@steptoe.com <br> Paul Gennari (VSB No. 46890) <br> pgennari@steptoe.com <br> STEPTOE & JOHNSON, LLP |

---

Cox reasonably implemented a repeat infringer policy. Those include his blind reliance on the unsubstantiated data that is the subject of this motion.

5

1330 Connecticut Ave, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

Walter D. Kelley, Jr. (VSB No. 21622)
HAUSFELD, LLP
1700 K Street, NW
Washington, DC 20006
Tel: (202) 540-7157
Fax: (202) 540-7201

*Of Counsel*
Michael J. Allan (admitted *pro hac vice*)
William G. Pecau (admitted *pro hac vice*)
John M. Caracappa (admitted *pro hac vice*)
Roger E. Warin (admitted *pro hac vice*)
Stephanie L. Roberts (admitted *pro hac vice*)
Elizabeth A. McKenzie (admitted *pro hac vice*)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia 30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 17, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

                                            /s/ *Jeremy D. Engle*
                                            Jeremy D. Engle (VSB No. 72919)
                                            jengle@steptoe.com
                                            STEPTOE & JOHNSON, LLP
                                            1330 Connecticut Ave, NW
                                            Washington, DC 20036
                                            Tel.: (202) 429-3000
                                            Fax: (202) 429-3902