**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, | ) ) ) |
| Plaintiff, | ) )  Case No. 1:14-cv-1611 (LOG/JFA) |
| v. | ) ) |
| COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## COX'S BRIEF REGARDING JURY INSTRUCTIONS

**Table of Contents**

Page

I.    COPYRIGHT LAW ISSUES ................................................................................. 1

    A.    Direct Infringement (PRPJI 23-25, CRPJI 14) ........................................... 1

    B.    Direct Infringement Versus Secondary Liability (PRPJI 23 and 24;
           CRPJI 13, 14, 16) .................................................................................. 2

    C.    Inference from Making Available to the Public (PRPJI 25) ....................... 3

    D.    Contributory Infringement (PRPJI 26-3037; CRPJI 16) ............................ 3

    E.    Vicarious Infringement (PRPJI 31-33; CRPJI 17) ...................................... 7

    F.    Statutory Damages (PRPJI 36-39, CRPJI 23) ........................................... 10

II.   OTHER ISSUES .............................................................................................. 13

    A.    References to the DMCA (CRPJI 18) ....................................................... 13

    B.    Testimony and Documents by Lawyers (PRPJI 15) .................................. 14

    C.    BMG's Intentional Destruction of Evidence (PRPJI 40; CRPJI 12) ........ 18

    D.    References to the Court's Prior Determinations  (PRPJI 22)..................... 20

Cox respectfully submits this brief regarding the jury instructions.  The first part of the brief focuses on the core copyright law issues in the case.  The second part of the brief addresses a number of other important issues.  Cox has revised some of its earlier proposals based upon both the Court's opinion on the parties' motions for summary judgment ("MSJ Op.") and an attempt to narrow differences between the parties' proposals.   Cox refers to BMG's newly revised instructions as "PRPJI" (Plaintiff's revised proposed jury instructions).  Cox has maintained the numbering of its original jury instructions as revised (now omitting some numbers).  Cox refers to its own proposals as "CRPJI" (Cox's revised proposed jury instructions).

## I.   COPYRIGHT LAW ISSUES

### A.   DIRECT INFRINGEMENT
### (PRPJI 23-25, CRPJI 14)

Plaintiff's proposed instructions regarding direct infringement avoid all mention of the language of the core statute at issue.  Section 106(1) identifies the conduct that constitutes violation of the reproduction right.  Section 106(3) identifies the conduct that constitutes violation of the distribution right.  The statutory language is clear, and the jury should know the statutory provisions.  Cox's proposed instruction offers succinct and clear language that is directly from the statute.

Plaintiff's alternative to the statutory language of direct infringement attempts to revive its "making available" argument and does not rest upon Fourth Circuit law apart from the .  BMG now cites to the Ninth Circuit's *Napster* decision for the remarkable proposition that merely uploading file titles to an index constitutes a distribution.  That argument requires conscious neglect of the unambiguous language of Section 106(3).

The Court should ground its instruction in the language of Sections 106(1) and 106(3) and adopt Cox's proposed instruction CRPJI 14 on direct infringement.

## B.   DIRECT INFRINGEMENT VERSUS SECONDARY LIABILITY (PRPJI 23 AND 24; CRPJI 13, 14, 16)

PRPJI 23 states that "BMG is not required to prove the specific identities of the infringing users."  This statement is misleading.  Although BMG does not have to prove the individual names of infringers, it is required to prove that *specific* subscribers have engaged in *actual* instances of direct infringement.  *CoStar Grp. v. LoopNet, Inc.,* 373 F.3d 544, 550 (4th Cir. 2004) (to establish direct liability, "there must be actual infringing conduct").  Absent such proof, Plaintiffs would be able to show at most only general knowledge on Cox's part that some unidentified users may or do use its Internet service to infringe.  The Supreme Court's decision in *Sony* forecloses contributory liability on that basis.  *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984) (there "is no precedent" in copyright law for imposing secondary liability on the fact that one has sold equipment "with constructive knowledge of the fact that its customers may use that equipment to make unauthorized copies. . . .").  Nor do the cases cited by Plaintiff support the quoted sentence in its instruction.  In all such cases, there was clear evidence that specific acts of actual infringing downloads had taken place.  That sentence of PRPJI 23 will therefore mislead the jury and should not be given.  For similar reasons, all generic references to "users of Cox's internet service" in the second paragraph of PRPJI 24 are erroneous.  Cox's CRPJI 14 carefully tracks the relevant statutory language of the reproduction and distribution rights and should therefore be given to the jury on the issue of direct infringement.

In view of the Court's ruling in the MSJ Op. that, to establish a direct infringement of its distribution right, BMG must show an actual dissemination of a copyrighted work and not a mere "making available," all references to "making the copyrighted work available" and similar phrases in PRPJI 24 are legally erroneous and should not be given to the jury.  In addition, to address the risk that the jury may conclude that the automated responses of Cox's systems to requests for

dissemination of materials on the Internet makes it liable for direct infringement, the jury's instructions should include, at a minimum, the first sentence of CRPJI 13 that "BMG does not claim in this case that Cox is directly liable for infringements of BMG's copyrighted works."

## C. INFERENCE FROM MAKING AVAILABLE TO THE PUBLIC (PRPJI 25)

PRPJI 25 asserts that, if the jury finds that "users of Cox's internet service" made BMG's works available, it may infer that those users actually uploaded the works and therefore infringed BMG's distribution rights.  This instruction is misleading.  Plaintiffs have not submitted any evidence of an actual upload by a user of the Cox Internet service to another Internet user.  The only evidence of actual distributions of plaintiffs' works are the downloads performed by plaintiffs' own agent Rightscorp or its expert Barbara Frederiksen-Cross.  The instruction therefore improperly invites the jury to infer infringement from the mere fact that BitTorrent software, which has substantial non-infringing uses, is used by some Cox subscribers for unproved purposes. Plaintiffs cite to a one-sentence dictum in *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983-84 (D. Ariz. 2008), stating that the Fourth Circuit's decision in *Hotaling v. Church of Christ of Latter-Day Saints*, 118 F.3d 199, 983 (4th Cir. 1997), seems to suggest that "evidence that a defendant made a copy of a work available to the public might, *in conjunction with other circumstantial evidence*, support an inference that the copy was likely transferred to a member of the public" (emphasis added).  But in *Hotaling* the other evidence was *actual previous distributions* of the work by the libraries.  Here, there is no such evidence of actual distributions to other Internet users.  PRPJI 25 is therefore misleading and unfounded and should be rejected.

## D. CONTRIBUTORY INFRINGEMENT (PRPJI 26-3037; CRPJI 16)

Cox furnishes the Court with a straightforward and intelligible instruction for contributory infringement that comes from the Fourth Circuit's decision in *CoStar* with references to the

Supreme Court's decisions in *Sony* and *Grokster*.  *See* CRPJI 16.  BMG's five-instruction alternative in PRPJI 26-30 is both unwieldy and wrong.

Cox believes that the Supreme Court's 2005 *Grokster* opinion, decided after the Fourth Circuit's *CoStar* opinion, sets forth a comprehensive articulation of the law of contributory copyright infringement.  Under *Grokster*, there are two alternative ways to establish contributory liability for the direct infringement by another.  The first is under the inducement theory newly articulated in *Grokster* for copyright law by analogy to the inducement doctrine of patent law.  The second is under the Court's traditional formulation of contributory liability set forth twenty years earlier in *Sony*, which addresses the circumstances under which there can be derivative liability for the use for infringing purposes of a product or service that has substantial noninfringing uses.  Justice Ginsburg summarized these two alternative bases for contributory liability in her concurrence in *Grokster*:  "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (2005) (Ginsburg, J., concurring).  Cox believes that its CRPJI 16 accurately reflects the two alternative theories as summarized by Justice Ginsburg, and accordingly, that CRPJI 16 should be the instruction given to the jury for contributory infringement.

Cox recognizes, however, that this Court disagreed in its MSJ Op., concluding that the traditional "material contribution theory" of contributory liability survives *Grokster*.  Given the Court's ruling, Cox believes that an appropriate instruction for the jury under the traditional formulation should track very closely the articulation of contributory liability in *CoStar* ("Under a

4

theory of contributory infringement, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another' is liable for the infringement, too.")  373 F.3d at 550.  But the instruction should also reflect the holding of the Supreme Court in *Sony,* namely that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes.  Indeed, it need merely be capable of substantial noninfringing uses." 464 U.S. at 442.  *See also Grokster*, 545 U.S. at 937 ("just as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, 464 U.S., at 439, n. 19, mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability"); *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (even "a defendant who distributes a product that materially contributes to copyright infringement will not be liable for contributory infringement if the product also is widely used for legitimate, unobjectionable purposes or is merely capable of substantial noninfringing use") (internal quotation marks and alterations omitted) (quoting *Sony*, 464 U.S. at 442).

Accordingly, the instruction should also explain the "inducement rule from *Grokster* as the Supreme Court explained it.  *See Grokster*, 545 U.S. at 937.  Cox proposes the following instruction for contributory liability:

> To establish contributory infringement, BMG must prove by a preponderance of the evidence that:
>
> (1)   There was direct infringement of BMG's copyrighted works by persons using Cox's Internet service;
>
> (2)   Cox knew or had reason to know of such direct infringement; and
>
> (3)   Cox induced, caused, or materially contributed to that infringement.

> Inducement occurs when one provides a service with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps to foster infringement.
>
> It is not a material contribution to provide a product or service that is capable of substantial non-infringing uses.

Cox believes that the contributory infringement instruction should not reference "reason to know," "strongly suspected," "put on notice," or "should have been on notice," all of which Plaintiffs include in PRPJI 26-28.  No decision of the Fourth Circuit or the Supreme Court has ever used any of those terms in articulating the standard for contributory infringement, and Plaintiffs cite none (*e.g.*, Plaintiffs rely solely on the Seventh Circuit's model jury instructions for the phrase "strongly suspected").  These terms all reflect a type of negligence standard, which is inconsistent with both the *Sony* and *Grokster* holdings that knowledge of infringing potential or of actual infringing uses is insufficient for contributory liability.  PRPJI 28 would wrongly authorize a finding that Cox had knowledge of its users' infringing activity based merely on notices of claimed infringement.  Such notices, which are all that Plaintiffs can demonstrate in this case, *at best* (and not in the circumstances of this case) are akin to "reason to know," which neither the Fourth Circuit in *CoStar* nor the Supreme Court in *Sony* and *Grokster* recognizes.  Nor do the authorities cited by Plaintiffs for PRPJI 28 support a finding of knowledge based on mere notices of claimed infringement.  *ALS Scan* is inapposite because it adjudicated the effects of notices under the DMCA safe harbor.  And in both *Escape Media* and *Cybernet Ventures*, the notices of claimed infringement were coupled with actual knowledge of infringements on the part of the defendants.

Nor should the jury be instructed on willful blindness, as Plaintiffs request in PRPJI 29.  Cox believes that neither any court in the Fourth Circuit nor the Supreme Court has ever held that willful blindness is considered to be knowledge in copyright law, and Plaintiffs cite no such authority.  Indeed, willful blindness is a form of "constructive knowledge," which is precisely what

the Supreme Court rejected as a basis for contributory infringement liability in *Sony*, as Cox

pointed out above.  If, however, the Court chooses to instruct on willful blindness, Cox believes the

instruction should follow the standard articulated in *Viacom Int'l v. YouTube*, 676 F.3d 19, 35

(2d Cir. 2012) ("A person is 'willfully blind' or engages in 'conscious avoidance' amounting to

knowledge where the person 'was aware of a high probability of the fact in dispute and

consciously avoided confirming that fact'").

Finally, the Court should reject PRPJI 30, which equates material contribution with mere

provision of the "site and facilities" for the infringing activity or the "means for its users to access"

infringing copies of BMG's works.  That instruction would be extremely misleading to the jury

because it suggests, contrary to the rules of both *Sony* and *Grokster*, that any ISP is automatically

liable for infringing activity through its network.  Plaintiff cites only Ninth Circuit authority to

support this instruction.  Neither the Fourth Circuit nor the Supreme Court has referenced "site and

facilities" or "means to access" in the formulation for contributory liability.  PRPJI 30 should

therefore be rejected.

## E.   VICARIOUS INFRINGEMENT
##   (PRPJI 31-33; CRPJI 17)

Cox's CRPJI 17 instruction is a correct, adequate, and intelligible articulation of vicarious

liability.  It closely tracks the Fourth Circuit's standard of vicarious liability in *Nelson-Salabes, Inc.*

*v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002) ("In order to establish vicarious

liability, a copyright owner must demonstrate that the entity to be held so liable:  (1) possessed the

right and ability to supervise the infringing activity; and (2) possessed an obvious and direct

financial interest in the exploited copyrighted materials.").  Plaintiffs' PRPJI 31, standing alone

and without PRPJI 32-33, comes near the mark but it omits the word "obvious" from the "obvious

and direct financial interest" element in *Nelson-Salabes*.

Drawing solely from opinions outside the Fourth Circuit, Plaintiffs' proposed multiple additional instructions on the topic in PRPJI 32-33 add a number of focused and distorting comments on the basic standard of *Nelson-Salabes*, each of which should be rejected.  First, in PRPJI 32, Plaintiffs would instruct the jury to find that Cox has the right and ability to supervise its users' infringing activity if it finds that Cox has the right and ability to terminate users' accounts because they engage in infringing activity.  No Fourth Circuit or Supreme Court decision has ever held that the mere ability to terminate service to a customer satisfies the "right and ability to supervise" prong of vicarious liability.  And the proposed formulation is way overbroad because virtually every business has the ability to terminate its customers for bad behavior of a virtually endless range of types (and has a financial interest in keeping customers).  That would leave vicarious liability virtually boundless in the business world.  Nor do the cases cited by Plaintiffs support so sweeping a rule.  In *Napster*, the defendant Napster had the right to supervise because it maintained a central index from which it could search and remove allegedly infringing works, thereby making them unavailable to peer-to-peer sharers using the Napster software.  And in *Fonovisa*, the swap meet operator controlled and patrolled its physical premises where infringing goods were sold.  Cox has no similar capability to search and monitor the specific activities of broadband users on its network, and there are no "premises" on which infringing material is stored that Cox can control and patrol.  The Court should reject PRPJI 32.

Second, PRPJI 32  instructs the jury to find a direct financial benefit if the opportunity to engage in infringing activity acted as a "draw" for some subscribers, if Cox reaped financial benefits from fees paid by subscribers who uploaded or downloaded infringing copies of BMG's works, or if it had an "economic incentive to tolerate" infringing activity by its subscribers.  In this proposed instruction, Plaintiffs cobble together three unrelated comments on the financial benefit

requirement from courts in the Ninth and Second Circuits in an effort to expand potential liability for vicarious infringement beyond the standard set forth in the Fourth Circuit.  The Fourth Circuit's decisions in *CoStar* and *Nelson-Salabes* require the defendant to have a *direct financial interest* in the infringing activity or the exploited copyrighted materials.  *CoStar*, 373 F.3d at 550 ("direct financial interest"); *Nelson-Salabes*, 284 F.3d at 513 ("obvious and direct financial interest").  Neither of these Fourth Circuit decisions mentions a "draw," "fees paid by infringers who want to engage in infringing activity" (among other activities available on a service), or an "economic incentive to tolerate infringing activity."  The attenuated "draw" theory of Plaintiffs does not meet the "direct" (or "obvious and direct") standard.

Moreover, all three of these comments are inconsistent with the Fourth Circuit's requirement of a direct financial interest *in the infringing activity or the exploited copyrighted materials themselves*.  The opportunity to engage in infringing activity could draw some subscribers to a defendant's network, yet the defendant might reap no financial benefit whatsoever from the infringing activity:  for example, if the fees paid by all subscribers were the same, regardless of the types of activities they chose to engage in.  Similarly, fees paid by subscribers who want to upload or download infringing materials through a network would not give the service provider a direct financial interest in the infringing activity where those fees do not vary with whether or not an infringer engages in such activity.  Yet Plaintiffs' instruction would authorize vicarious liability simply because subscribers who engage in such activity pay fees.  Finally, a service provider could have an "economic incentive" to tolerate infringing activity for reasons other than having a financial interest directly  in the exploitation of copyrighted material – for example, because a service provider cannot retain a panel of copyright lawyers to investigate the

9

truth of all claims of infringement and  to hold mini-arbitrations over claims of infringement.  Yet

Plaintiffs' instruction would improperly permit vicarious liability in all of these circumstances.

Fourth Circuit law requires a much stronger financial interest in the infringing activity itself

than any of the three comments in the Plaintiffs' instruction require, as well illustrated by *Nelson-

Salabes*.  In that case, a parent corporation, Morningside Holdings, owned a real estate project for

which it employed a related entity, Morningside Development, to develop the property.

Morningside Development copied without authorization the architectural drawings of the plaintiff.

The plaintiff sought to hold Morningside Holdings vicariously liable for the infringing acts of

Morningside Development in copying the plans.  The Fourth Circuit affirmed vicarious liability.

By virtue of its ownership of the project, Morningside Holdings had the right and ability to control

construction of the project by Morningside Development.  And the court found that its ownership

of the project also provided Morningside Holdings with an obvious and direct financial interest in

the infringing activities of Morningside Development:  "That is, Morningside Holdings enjoyed the

benefit of any increase in the Project's value resulting from Morningside Development's

infringement of the [plaintiff's] Drawings."  *Nelson-Salabes,* 284 F.3d at 514.

For these reasons, the Court should reject PRPJI 33.  As Cox stated earlier, CRPJI 16

correctly and succinctly articulates the standard for vicarious liability under Fourth Circuit law and

should be adopted.

## F.    STATUTORY DAMAGES
    (PRPJI 36-39, CRPJI 23)

BMG's proposed instruction PRPJI 36 on statutory damages fails to include one important

provision of the statute:  "For the purposes of this [provision, calculating statutory damages on a

per-work basis], all the parts of a compilation or derivative work constitute one work."  17 U.S.C.

§ 504(c)(1).  Evidence showed that a number of BMG's claimed songs were parts of compilations,

and respect for this statute lowers the statutory damages available to BMG by a significant

percentage.

Cox anticipates that BMG will argue that the Court and jury should ignore that statutory

"compilation" limitation on the ground that individual songs have independent economic value.

That argument finds no root in the statute, which has no such qualification.  It also is contrary to

Fourth Circuit precedent.  BMG registered a number of its works in groups, by CD, and it

registered songs by depositing the CDs with the Copyright Office.  BMG's choice to register

compilations of songs in CD-based batches illustrates the relevance of the "compilation" limitation

on statutory damages.  *See Xoom, Inc. v. Imageline, Inc.,* 323 F.3d 279, 285 (4th Cir.

2003)(approving two statutory damages awards where multiple works registered in two

registrations); *see also Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 140-42 (2d Cir

2010)(rejecting "independent economic value" test).[1]

Plaintiff's PRPJI includes revenues lost by BMG as a factor, which is appropriate, although

a broader reference to "actual damage" would also be appropriate.  For some reason Plaintiff cites

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.,* 74 F.3d 488, 496 (4th Cir. 1996) as

rejecting the argument that statutory damages must bear some reasonable relationship to actual

damages.  (*See* Authority to PRPJI 36).  That is incorrect.  The Fourth Circuit indicated that "actual

damages suffered by plaintiffs" *was* part of the jury instruction that the appellant in that case

challenged.  The court of appeals went on to discuss other factors in the instruction, but it did not

reject the relevance of actual damages. *See Superior Form Builders,* 74 F.3d at 496.

Moreover, in listing the factors for consideration in statutory damages, BMG omitted the

conduct of the plaintiff and its agent as a factor.  The attitude and conduct of *both* parties are

---

[1] BMG indicated during conferences with counsel over the instructions that it might push for a
"per-infringement" calculation of statutory damages.  That approach flatly contradicts the statute.

relevant.  "Although the Fourth Circuit has not specifically described how the statutory damages

should be determined, the Second Circuit has provided guidance regarding factors to be

considered, as follows: (1) the infringer's state of mind; (2) the expenses saved, and profits earned,

by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the

infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the

value of the infringing material; and (6) the conduct and attitude of the parties." *Oppenheimer v.*

*Holt,* No. 1:14-CV-000208-MR, 2015 WL 2062189, at *2 (W.D.N.C. May 4, 2015)(citing *Bryant,*

603 F.3d at 144).  *See also Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d

Cir. 1989)(plaintiff's conduct in litigation); *Bourne Co. v. Hunter Country Club, Inc.,* 772 F. Supp.

1044, 1052 (N.D. Ill. 1990)(conduct of plaintiff's agent); *L&L White Metal Casting Corp. v.*

*Cornell Metal Specialties Corp.,* 353 F. Supp. 1170, 1176 (E.D.N.Y. 1972)(plaintiff allowed

infringement to continue longer than necessary).

Plaintiff provides a separate instruction (PRPJI 37) ostensibly on only one of the many

statutory damages factors (deterrence), but in reality Plaintiff has grouped together all the factors it

considers favorable to its case.  Carving out a separate instruction on one factor gives undue weight

to that factor; collecting factors favoring one side is more boldly improper.   There is no reason for

such a redundant but partisan instruction.  A jury should hear all factors together, and only once.

Plaintiff provides one separate instruction for willfulness (PRPJI 38) but none for innocent

infringement.  Cox offers one instruction that informs the jury that it may consider expanding the

range of statutory damages for both willful and innocent infringement.  Cox's instruction is more

complete and balanced.

Plaintiff further provides, without authority, an instruction (PRPJI 39) that the jury should

disregard Cox's taxes for purposes of statutory damages.  That undercuts the appropriate factor of

"profits earned by Cox," because taxes naturally reduce profits, as Cox's financial witness testified. The Court should reject PRPJI 39.

Cox's CRPJI 23 appropriately identifies the statutory damages factors, explains the range of damages available, and includes the statutory "compilation" limitation.  Cox's CRPJI 24 and 25 appropriately discuss how the jury may depart from the ordinary range of statutory damages for innocent and willful infringement.  The Court should adopt Cox's proposals.

## II.   OTHER ISSUES

### A.   REFERENCES TO THE DMCA
###      (CRPJI 18)

With the Court's order granting summary judgment against Cox's DMCA defense, the DMCA should have had little or no visibility at trial, yet many documents in evidence referred to the DMCA and there were well over 200 references to the DMCA in the trial transcript.  This creates a serious risk of substantial confusion of the jury.

Cox has proposed a short, plain-language instruction to explain what the DMCA is (an optional safe harbor), to say that it is not at issue, and to state that it is irrelevant to determining whether Cox is liable in the case.  The language aims at capturing, in more jury-friendly fashion, the essence of 17 U.S.C. § 512 (*l*).  That provision states:

> **Other Defenses Not Affected**.  The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense.

The Fourth Circuit in *CoStar* addressed this very issue:

> It is clear that Congress intended the DMCA's safe harbor for ISPs to be a floor, not a ceiling, of protection.  Congress said nothing about whether passive ISPs should ever be held strictly liable as direct infringers or whether plaintiffs suing ISPs should instead proceed under contributory theories.  The DMCA has merely added a second step to assessing infringement liability for Internet service providers, after it is determined whether they are infringers in the first

place under the preexisting Copyright Act. *Thus, the DMCA is irrelevant to determining what constitutes a prima facie case of copyright infringement.*

*CoStar Grp.,* 373 F.3d at 555 (emphasis added).

Cox requests that the Court give Cox's proposed instruction CRPJI 18 to the jury to the same effect.

## B.   TESTIMONY AND DOCUMENTS BY LAWYERS (PRPJI 15)

Plaintiff has proposed a jury instruction (PRPJI 15) that targets and seeks to blunt the testimony of only one witness, Randall Cadenhead.  The proposal wrongly singles Mr. Cadenhead's testimony out:  Plaintiff's evidence in this case consists of many legal statements by both BMG and Rightscorp lawyer-witnesses.  Any jury instruction on the issue should be balanced and refer to all lawyer-witnesses and their writings.  Cox proposes the following instruction as alternative to PRPJI 15:

> "You have heard testimony in this case from certain witnesses who are lawyers: Mr. Hauprich, Mr. Cadenhead, and Mr. Sabec.  You have also seen documents in this case that discuss and take different positions about the law.   Only I will instruct you on the law that you should apply in this case, and you should not give any greater or lesser weight to the testimony of witnesses just because they are lawyers."

Cox highlights some of the legal discussions by BMG's and Rightscorp's lawyers below.

**Christopher Sabec**

Every Rightscorp notice contained legal assertions and legal opinions over the signature of Mr. Sabec, a copyright and entertainment law attorney who was Rightscorp's CEO.  Those assertions included:

**Notice DTX0477:**

- You could be liable for up to $150,000 per infringement in civil penalties.

- This unauthorized copying and/or distribution constitutes copyright infringement under the U.S. Copyright Act. Pursuant to 17 U.S.C. 512(c), this letter serves as actual notice of infringement.

Correspondence between Mr. Sabec and Mr. Cadenhead included vigorous arguments about legal points, with citations to statutes by Mr. Sabec.  Rightscorp's final communications to Mr. Cadenhead, again over Mr. Sabec's signature, contained especially pointed arguments about legal obligations and responsibilities.  Those arguments included:

**June 2011 exchanges of correspondence between Sabec and various personnel at Cox, PX2452:**

- Our notices to Cox are notices of actual, documented infringement, which we substantiate with state-of-the-art forensic evidence. They put Cox on actual notice of illegal activity taking place using Cox's network. Your "acceptance" of them is not really a meaningful concept -- you have them and are now on notice. [June 29, 2011]

- Our notices put Cox at risk of losing its safe harbor.  [June 29, 2011]

- And if Cox has no "safe harbor" under the DMCA, then it is liable for the infringements under the theory (well-tested in the courts) of vicarious infringement. [June 29, 2011]

- This is as a result of Section 512(i), which requires every ISP (including conduits) to have adopted and implemented a policy under which repeat infringers are disconnected. We are building a huge body of evidence that Cox has numerous repeat infringers.

- The DMCA does not have contain any specific requirement that you forward them.  [June 29, 2011]

- But you cannot ignore Section 512(i). And we intend to test you on it. If you ignore the fact that repeat infringers are continuing to use Cox's facilities, then Cox fails the 512(i) test. [June 29, 2011]

- The question is whether Cox is, in fact, entitled to the "safe harbor."  You are if you meet the requirements of Section 512 (i), but you are not if you fail to meet the requirements of Section 512 (i). [June 13, 2011]

- We fully realize that DMCA does not have anything to say about ISPs' responsibility to pass along requests to settle on a reasonable basis. [June 13, 2011]

15

- That will not work, however, if Cox takes the position that it has no responsibilities under DMCA simply because it is a 512(a) "conduit" and not a hosting or other type of OSP. That position is without legal merit, and will not serve Cox well in the long run. [June 13, 2011]

- [W]e recognize that conduit ISPs have different, less stringent requirements to satisfy in order to gain protection under the Section 512 safe harbor.  There are still, however some very real—and very substantive—requirements…. [June 9, 2011]

- We believe that under any interpretation of this statutory requirement, Cox is required to start terminating service to certain of its subscribers as a result of our notices to you. . . .  [June 9, 2011]

- When we do not get cooperation from ISPs, we also resort to other legal remedies available to us.  We serve 512(h) subpoenas in jurisdictions in which they have not been held invalid for conduit ISPs.  We will also initiate John Doe lawsuits.  As you know, ISPs must be made defendants in these lawsuits.  And, where appropriate, we will allege that ISPs have vicarious liability as a result of their failure to implement a reasonable repeat infringer disconnection policy (depriving them of their safe harbor, as mentioned above). [June 9, 2011]

**November 2013 E-Mail on BMG's behalf to Randy Cadenhead (DTX2094.002)**

- As you know from our prior notices, Rightscorp, Inc. ("Rightscorp") has confirmed under penalty of perjury that it is authorized to act in matters involving the infringement of the musical compositions owned or controlled by BMG Rights Management (US) LLC and its affiliated companies (collectively "BMG").

- We would remind you of your obligation pursuant to 17 U.S.C. § 512(i)(1)(a) to adopt, reasonably implement, and inform your subscribers and account holders of your system or network who are repeat infringers.

Mr. Sabec's testimony (by deposition) also included a number of legal assertions,

specifically about infringements.  The statements included:

**(Vol 1) 38:22-1:**

Q.  How did it plan to make money?

A.  By signing up content owners to hire us to be their anti-piracy company for peer-to-peer infringements.

**(Vol 1) 57:25-58:06:**

We scan the peer-to-peer networks for instances of infringement. We send notices of those infringements on the ISPs in question. Those notices of infringement by the -- we know the IP address. So we send that notice of infringement to the ISP and ask the ISP to forward it to the account holder who had the IP address at that time.

**(Vol 1) 60:4-10**:

They give us their copyrights. They provide their copyrights to us, and they let us know that there is no authorized -- there is no one authorized on the peer-to-peer networks to be giving these -- offering these copyrights, and they ask us to send notices to the ISPs when we find instances of infringement of those copyrights.

**(Vol 1) 81:16-17:**

Our technology detects the infringements.

**(Vol 1) 133:22-24:**

No.  It's my understanding that every single notice that we send out is a notice of actual infringement.

## Keith Hauprich

Mr. Hauprich appeared live as BMG's counsel; he testified that he reviewed the Rightscorp

notices that contained legal assertions.  He also testified repeatedly about "infringements."

**Trial Transcript 475:19-24:**

Q.  You know generally what is in the Dashboard?

A.  Yes.

Q.  Could you tell us?

A.  Well, it's -- it's basically information that's substantially similar to what's in the notices. But it shows Cox real -- infringement in realtime.

**491:21-24:**

I'm aware that statutory damages for willful infringement are up to $150,000 per work for infringements. I don't believe this half of the width of the page sentence was intended to be an exhaustive statement on copyright law.

**501:2-6:**

Q. Who determined that any persons were infringers?

A. I appreciate the clarity. We've never issued a license to a BitTorrent. We've never issued a license. So use of our content using BitTorrent on Cox is infringement. There's no license in place. There's no compensation to the songwriters.

**502:9-11:**

I think it's a matter of semantics. There's no license in place. There's no compensation to the songwriters. It's an unauthorized use to the work. It's infringement.

Given the massive amount of legal discussion by BMG's and Rightscorp's lawyers that the jury has been exposed to, it is appropriate for the Court to give a single instruction that applies to *all* the testimony and communications of lawyers in the case. Cox requests that the Court give Cox's alternative language as it set forth above.

## C.   BMG'S INTENTIONAL DESTRUCTION OF EVIDENCE (PRPJI 40; CRPJI 12)

Cox believes that its CRPJI 12 instruction is correct because it reflects the instructions Judge Anderson recommended in his Order on Cox's Spoliation Motion (Dkt. 447) and the recent changes to Fed. R. Civ. Proc. 37(e) do not alter the analysis.

As Cox reiterated in its Motion to Enforce Spoliation Order, Plaintiff's case rests on the reliability and accuracy of the Rightscorp system. *See* Dkt. 526. Plaintiff had a duty to preserve that system since at least early 2013, the source code was intentionally destroyed, and Cox was prejudiced. *See Id.*, Dkt. 447. Therefore, the instructions Judge Anderson recommended as reflected in CRPJI 12 are appropriate. *See* Dkt. 447 at 6.

As the Court has noted, the Federal Rules of Civil Procedure were updated on December 1, 2015. But those changes do not affect the propriety of CRPJI 12, even if the changes apply retroactively.[2] Under the earlier language, "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored

---

[2] As the Court noted, "I don't think this is going to change anything in Judge Anderson's ruling." Dec. 2 Trial Transcript at 5:9-13.

information lost as a result of the routine, good-faith operation of an electronic information

system." The new language of Rule 37 reads as follows:

> (e)     Failure to Preserve Electronically Stored Information.  If electronically
> stored information that should have been preserved in the anticipation or conduct of
> litigation is lost because a party failed to take reasonable steps to preserve it, and it
> cannot be restored or replaced through additional discovery, the court:
>
>> (1)   upon finding prejudice to another party from loss of the information,
>>        may order measures no greater than necessary to cure the prejudice; or
>>
>> (2)   only upon finding that the party acted with the intent to deprive
>>        another party of the information's use in the litigation may:
>>
>>> (A)   presume that the lost information was unfavorable to the party;
>>>
>>> (B)   instruct the jury that it may or must presume the information was
>>>       unfavorable to the party; or
>>>
>>> (C)   dismiss the action or enter a default judgment.

Judge Anderson found both that Rightscorp intentionally destroyed the material information and

that Cox was prejudiced.  Rightscorp testimony and the portion of the source code provided to

BMG's expert in 2013 do not provide an adequate basis for knowing how the Rightscorp system

operated during the relevant time period.  *See* Dkt. 447 at 4, 5.  Thus, CRPJI 12 remains an

appropriate instruction.

In contrast, PRPJI 40 does not track the instructions Judge Anderson suggested (*see* Dkt.

447) and includes an improper and confusing instruction about Cox's failure to suspend its

automatic deletion of DHCP logs.  As Judge Anderson found when considering Plaintiff's motion

for sanctions, Cox, unlike Plaintiff, had no duty preserve documents before Plaintiff filed suit.

Dkt.  381 at 1.  Furthermore, with respect to Cox's conduct, Judge Anderson did not impose any

sanction and only suggested that the Court might consider an instruction "if needed to address any

evidence or argument relating to the lack of specific subscriber information…".  *See* Dkt. 381 at

1-2.  Significantly, unlike the material information that Plaintiff and Rightscorp destroyed, the

DHCP logs had minimal importance to BMG's case and did not feature in Plaintiff's presentation

of evidence: Cox failed to maintain a subset of information that was available, while the evidence

Rightscorp and Plaintiff intentionally destroyed is critical to Plaintiff's own claim and Cox

suffered significant prejudice by the disappearance of the software at the foundation of the

accusations upon which the entire case rests. Plaintiff's PRPJI 40 includes an instruction that

improperly equates and confuses the two issues. To the extent the Court believes an instruction

regarding Cox's DHCP logs is necessary, it should be should be separate and not part of the same

instruction.

　　　　For these reasons, the Court should adopt CRPJI 12 and reject PRPJI 40.

**D.　　REFERENCES TO THE COURT'S PRIOR DETERMINATIONS (PRPJI 22)**

　　　　PRPJI 22 contravenes the Court's statements on December 1 and on that basis the Court

should not adopt it. During the course of the Court's hearing on December 1, counsel for Cox

asked "Your Honor, just the last substantive issue is the extent to which the parties are going to be

permitted to talk about your prior rulings, the summary judgment and the motions in limine.

Dec. 1 Trial Transcript at 49:11-16. After hearing from both parties on this question (*see Id*. at

49-54), counsel for Cox asked for clarification and the Court provided it:

> MR. BUCKLEY: So to be clear, there should not be references to your summary judgment or motion in limine rulings?
>
> THE COURT: No. This is just the way the case is going to go in, this is -- you know, the fact that I have weighed in to construct the case is not relevant to the jury…It is prejudicial to identify on either side that I have limited the testimony or struck certain defenses...

*Id*. at 54:15-56:10. Consistently with the Court's earlier direction, the Court should reject

PRPJI 22.

　　　　　　　　　　　　　　Respectfully submitted,

Dated:  December 14, 2015

*/s/ Craig C. Reilly*

Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
Tel:  (703) 549-5354
Fax:  (703) 549-5355
Email:  craig.reilly@ccreillylaw.com

*Counsel for Defendants*

*Of Counsel for Defendants*

Andrew P. Bridges (*pro hac vice*)
David L. Hayes (*pro hac vice*)
Jedediah Wakefield (*pro hac vice*)
Guinevere L. Jobson (*pro hac vice*)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel:  (415) 875-2300
Fax:  (415) 281-1350
Email:   abridges@fenwick.com
         dhayes@fenwick.com
         jwakefield@fenwick.com
         gjobson@fenwick.com

Brian D. Buckley (*pro hac vice*)
Fenwick & West LLP
1191 2nd Avenue, 10th Floor
Seattle, WA  98101
Tel:  (206) 389-4510
Fax:  (206) 389-4511
Email:   bbuckley@fenwick.com

Armen N. Nercessian (*pro hac vice*)
Ronnie Solomon (*pro hac vice*)
Ciara Mittan (*pro hac vice*)
Nicholas A. Plassaras (*pro hac vice*)
Fenwick & West LLP
801 California Street
Mountain View, CA  94041
Tel:  (650) 988-8500
Fax:  (650) 938-5200
Email:   anercessian@fenwick.com
         rsolomon@fenwick.com
         cmittan@fenwick.com
         nplassaras@fenwick.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2015, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

<u>*/s/ Craig C. Reilly*</u>
Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
Tel:  703-549-5354
Fax:  (703) 549-5355
Email:  craig.reilly@ccreillylaw.com

*Counsel for Defendants*