**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **BMG RIGHTS MANAGEMENT** | ) | |
| **(US) LLC, and ROUND HILL** | ) | |
| **MUSIC LP,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  1:14-cv-1611(LO/JFA) |
| | ) | |
| **COX COMMUNICATIONS, INC.,** | ) | |
| **COXCOM, LLC** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BMG'S MEMORANDUM REGARDING DISPUTED JURY INSTRUCTIONS**

BMG respectfully submits the following memorandum regarding the Parties' proposed jury instructions in advance of the charging conference.

## I.  INSTRUCTIONS REGARDING LIABLITY

### A.  Direct Infringement (BMG 23-25; Cox 14)

The case law is clear that uploading and downloading copyrighted works over peer-to-peer file sharing networks violates a copyright owner's reproduction and distribution rights. *A&M Records v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("We agree that plaintiffs have shown that Napster users infringe at least two of the copyright holders' exclusive rights: the rights of reproduction, § 106(1); and distribution, § 106(3).  Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights.  Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); *In re Aimster Copyright Litigation*, 334 F.3d 643, 645 (7th Cir.2003) ("Teenagers and young adults

who have access to the Internet like to swap computer files containing popular music.  If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright.").

BMG's proposed jury instructions are simple and clear.  They focus on the relevant conduct and facts that the jury needs to find in order to determine whether Cox users directly infringed BMG's copyrighted works.  By contrast, Cox's proposed instruction is loaded with abstruse and confusing legal language that will not help the jury understand the applicable law. For example, Cox's reference to "sale or other transfer of ownership, or by rental, lease, or lending" improperly suggests that title to the copyright itself or some physical object must be transferred.  As the Court held in its summary judgment decision, that is not the law.

BMG has proposed the bracketed language in proposed instruction No. 24 to preserve its objection to the Court's decision that "making available" does not violate the Copyright Act. Nonetheless, BMG understands that the Court's decision is law of the case and believes that an instruction regarding the inference of actual uploading or downloading from "making available" is appropriate in this circumstance given the nature of the BitTorrent protocol and in light of the supporting case law.  *See* BMG Proposed Instruction 25.

## B.      Contributory Infringement (BMG 26-30; Cox 16)

The primary substantive difference between the Parties' contributory infringement instructions is that Cox proposes to instruct the jury that there can be no contributory infringement where the defendant's product is capable of substantial non-infringing uses.  *See* Cox Proposed Instruction 16.  Having failed to persuade the Court that contributory infringement is limited to the facts of *Grokster*, Cox now argues that the doctrine is limited to the facts of *Sony*.

That is not the law.  *Sony* (like *Grokster*) was a stream of commerce case.  The Court held that a manufacturer who releases its product for sale is liable for subsequent infringing uses of that product – of which it has no specific knowledge and over which it has no control – only if the product has no substantial non-infringing uses.  *See Sony Corp. of America v. Universal City Studios*, 464 U.S. 417, 430 (1984).  "*Sony's* holding is of limited assistance" to the provider of a continuing service who knows of ongoing infringement on its systems.  *A&M Records v. Napster*, 239 F.3d 1004, 1020 (9th Cir. 2001); *see also Arista Records v. Usenet.com*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009); *Costar Group v. Loopnet*, 164 F. Supp. 2d 688, 697 (D. Md. 2001).

Under black-letter Fourth Circuit law, a service provider such as Cox is liable for contributory infringement where it knows or has reason to know of infringement and materially contributes to that infringement – regardless of whether its product has substantial non-infringing uses.  *See CoStar Group v. LoopNet*, 373 F.3d 544, 550 (4th Cir. 2004) ("Under a theory of contributory infringement, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another is liable for the infringement.").

Cox's instructions also fail to provide the jury with any direction regarding the meaning of legal terminology such as "knowledge" or "material contribution."  BMG has proposed instructions that explain the elements of contributory infringement in plain language taken straight from applicable case law and model instructions.  *See* BMG Proposed Instructions Nos. 27-30.  Finally, Cox fails to include a willful blindness instruction – to which BMG is entitled.  *See* Dkt No. 703 (Dec. 1, 2015 SJ Memorandum Opinion) at 60-62.  The Court should instruct the jury as to the meaning of the elements of contributory infringement.

### C.    Vicarious Liability (BMG 31-33; Cox 17)

As with contributory infringement, BMG's proposed instructions explain the elements of

vicarious liability to the jury in a manner consistent with the case law and this Court's summary

judgment decision.  Cox would not explain to the jury what it means to "supervise" the

infringing activity or to possess a "direct financial interest" in the activity.

Presumably, Cox seeks to argue that it has no direct financial interest in the infringement

because its monthly subscriber fees are flat and do not depend on any particular user activity.

That is inconsistent with the law, which holds that the financial benefit need not be tied directly

to specific infringements.  *Fonovisa v. Cherry Auction*, 76 F.3d 259, 263 (9th Cir. 1996)

(financial benefit not be "directly tied to the sale of particular infringing items"); Arista Records

v. Lime Group, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) ("The financial benefit need not be

tied directly to sales of the infringing goods.").  Flat fees charged to all users are a direct

financial benefit of infringement where some subscribers are attracted by the opportunity to

infringe.  *See Fonovisa*, 76 F.3d at 263 (Flat admission fees charged to all entrants were

sufficient because they also "flow[ed] directly from customers who want to buy the counterfeit

recordings at bargain basement prices."); Dkt No. 703 (Dec. 1, 2015 SJ Memorandum Opinion)

at 66-67.  BMG's proposed instructions properly explain this law to the jury as well as the law

regarding supervision.[1]

Cox's instruction also refers to an "*obvious* and direct financial interest."  Consistent with

both *Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir.

---

[1] If the Court does not issue more detailed instructions regarding the elements of
vicarious liability, BMG believes that the Court should describe those elements using the
language from *MGM v. Grokster*, 545 U.S. 913, 930 (2005) ("One . . . infringes vicariously by
profiting from direct infringement while declining to exercise a right to stop or limit it."); *see
also Federal Civil Jury Instructions of the Seventh Circuit*, No.12.6.1; *Ninth Circuit Manual of
Model Jury Instructions*, No. 17.20; *Eleventh Circuit, Civil Pattern Jury Instructions*, No. 9.21.

1971), and *MGM v. Grokster*, 545 U.S. 913, 930 (2005), the most recent Fourth Circuit authority

does not use the word "obvious."  *See CoStar Group v. LoopNet*, 373 F.3d 544, 550 (4th Cir.

2004) ("Under a theory of vicarious liability, a defendant who has the right and ability to

supervise the infringing activity and also has a direct financial interest in such activities is

similarly liable.").  That additional adjective is unnecessary and undefined surplusage that

provides no direction to the jury.

###### D.     Cox's Instruction 13

BMG also objects to the first paragraph of Cox's jury instruction number 13.  To the

extent that this instruction purports to explain the relationship between direct and secondary

liability, it duplicates other instructions.  Those include BMG's proposed instruction 23 and the

Parties' contributory and vicarious infringement instructions.

In addition, Cox's proposed instruction 13 improperly and confusingly states for the jury

what BMG "does not claim" and those actions for which Cox (allegedly) is not liable.  The

instruction improperly suggests that a conduit ISP can never be liable for secondary copyright

infringement and may confuse the jury into ignoring significant Cox conduct that, though not a

basis for liability standing alone, does give rise to liability in combination with other factors.

Cox's vague reference to "additional involvement" does not cure the problem.

Ultimately, Cox's use of negatives and confusing legal language is not appropriate.  The

instructions should clearly state what BMG does claim and what conduct makes Cox liable.

BMG's direct and secondary liability instructions explain this in a manner that is clear and

consistent with the law.

## II.      DAMAGES

### A.      Statutory Damages (BMG 36-37, Cox 23)

While BMG's statutory damages instructions reflect available model instructions and Fourth Circuit precedent regarding appropriate statutory damages instructions, Cox's proposed statutory damages instructions grossly misstate the law.  First, Cox would instruct the jury that statutory damages must be proportional to the actual damages BMG has suffered.  On the contrary, "there has never been a requirement that statutory damages must be strictly related to actual injury." *Lowry's Reports v. Legg Mason*, 302 F. Supp. 2d 455, 459 (D. Md. 2004).  In fact, a primary reason for statutory damages is that "actual damages . . . are often virtually impossible to prove." *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). And statutory damages are appropriate "[e]ven for uninjurious and unprofitable invasions of copyright." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).

Cox cites *Seoul Broadcasting System International v. Ro*, No. 1:09CV433, 2011 WL 3207024, at *7 (E.D. Va. 2011), to support its argument that statutory damages must be proportional to actual damages.  But *Seoul Broadcasting* says just the opposite.  Judge Brinkema noted that "courts generally begin by considering" not only "the actual damages suffered by the plaintiff" but also "any profits reaped by the defendants." *Id*. at *8.  And Judge Brinkema went on to conclude that "actual damages . . . merely serve as a ***floor*** for any statutory damages recovery, and the Court must also consider such factors as effective deterrence." *Id*. (emphasis added).

Next, Cox argues that statutory damages are not a penalty.  But the "Supreme Court has concluded that statutory damages for copyright infringement are not only 'restitution of profit and reparation for injury,' but also are in the nature of a penalty, 'designed to discourage wrongful conduct.'" *Cass County Music Co. v. C.H.L.R.*, 88 F.3d 635, 643 (8th Cir. 1996)

(quoting *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952)); *see also Ninth Circuit Manual of Model Jury Instructions*, No. 17.25 ("Its purpose is to penalize the infringer and deter future violations of the copyright laws."); *Eleventh Circuit, Civil Pattern Jury Instructions*, No. 9.32 ("The purposes are to compensate the copyright owner, penalize the infringer, and deter future copyright-law violations.").

Cox also seeks to instruct the jury that multiple songs on the same album are compilations and thus a single work for damages purposes.  But BMG's songs are individual economic units available for purchase individually on iTunes and other music services.  Tr. at 457:3-23, 491:12-17.  That makes them individual works for purposes of statutory damages.  *See Capitol Records v. MP3tunes*, 48 F. Supp. 3d 703, 721 (S.D.N.Y. 2014) ("But when a copyright holder or publisher issues material both on an individual basis and as part of a compilation, the Copyright Act permits a statutory damages award for each individual work offered separately."). Indeed, many works on the same album have different authors.  *See* PA0001768922, PA0000960690, PA0001700308, PA0001861032, PA0001882680.

"Nothing in the Copyright Act bars a plaintiff from recovering a statutory damage award for a sound recording issued as an individual track, simply because that plaintiff, at some point in time, also included that sound recording as part of an album or other compilation."  *Arista Records v. Lime Group*, No. 06 CV 5936 KMW, 2011 WL 1311771, at *3 (S.D.N.Y. Apr. 4, 2011).  Where a plaintiff "'issued [its] . . . works separately,' and not only 'together as a unit,'" each work "also exist[s] as a separate, independent work," "with respect to which Plaintiffs may seek to recover a statutory damage award."  *Id*. (quoting *Bryant v. Media Rights Productions*, 603 F.3d 135 (2d Cir. 2010)); *see also id*. at *4 ("Neither the Copyright Act, nor any judicial decision, stands for the proposition that, because an individual work is included, at one point in

time, on an album, a plaintiff is entitled to only one award for the infringement of any of the works that happen to have been included on that album.  Accordingly, if Plaintiffs issued a sound recording as an individual track during the time that it was infringed on the LimeWire system, Plaintiffs can recover a statutory damage award for that sound recording.").

Nor does it matter that BMG registered multiple works on the same registration with the Copyright Office.  *See Xoom v. Imageline*, 323 F. 3d 279, 285 (4th Cir. 2003) ("the language of the Copyright Act does not bar multiple awards for statutory damages when one registration includes multiple works"); *Gamma Audio & Video. v. Ean–Chea*, 11 F.3d 1106, 1117 (1st Cir.1993) ("Under regulations promulgated by the Copyright Office, the copyrights in multiple works may be registered on a single form, and thus considered one work for the purposes of registration . . . while still qualifying as separate 'works' for purposes of awarding statutory damages."); 37 C.F.R. § 202.3(b)(4)(i)(A) ("For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:  (A) In the case of published works: all copyrightable elements *that are otherwise recognizable as self-contained works*, that are included in a single unit of publication, and in which the copyright claimant is the same.") (emphasis added).

Cox also would instruct the jury that "damages are not based on the number of infringements."  But the scope of the infringement is a factor in the amount of statutory damages to award for each infringed work.  *See Disney Enterprises v. Delane*, 446 F. Supp. 2d 402, 407 (D. Md. 2006) (basing statutory damages on number of infringements and noting that "Delane's acts may have enabled infringement on a widespread scale"); *Agence France Presse v. Morel*, 934 F. Supp. 2d 584, 591-592 (S.D.N.Y. 2013); *Broadcast Music v. DeGallo*, 872 F. Supp. 167,

169 (D.N.J. 1995) ("With due allowance for the level of culpability involved, the penalty must

be proportionate to the extent of the infringement.").

Finally, Cox argues that BMG has the burden of proof in establishing statutory damages.

But, statutory damages do not require the proof of any amount of damages.  The jury must

decide what amount is appropriate, so there is no question of proof.  Thus, none of the pattern

instructions refer to a burden proof (other than as to willfulness or innocence).  *See Federal Civil*

*Jury Instructions of the Seventh Circuit*, No. 12.8.4; *Ninth Circuit Manual of Model Jury*

*Instructions*, No. 17.25; *Eleventh Circuit, Civil Pattern Jury Instructions*, No. 9.32.

### B.       Mitigation (Cox 20-21)

No mitigation instruction is appropriate in this case.  Regardless of whether mitigation is

a factor in the statutory damages analysis,[2] Cox has introduced no evidence of failure to mitigate

that might warrant a mitigation instruction nor any evidence regarding the ***amount*** of damages

that BMG might have avoided by mitigating as Cox has proposed.  Absent any evidence on this

point, there is no basis on which to offer a mitigation instruction.  *See Complete Concepts v.*

*General Handbag Corp.*, 880 F.2d 382, 391 n.8 (11th Cir. 1989) ("the burden was upon [the

defendant] to introduce the amount by which [plaintiff's] award should be reduced by such

mitigation"); *Ellsworth v. Tuttle*, 148 F. App'x 653, 667 (10th Cir. 2005) ("Mitigation is an

affirmative defense that requires the Tuttles to prove with reasonable certainty the amounts by

which the Ellsworths' damages could have been mitigated."); *IDT Netherlands v. West Coast*

*Distribution*, No. SACV0700024JVSANX, 2008 WL 5412889, at *4 (C.D. Cal. Dec. 23, 2008)

---

[2] BMG preserves its objection to a mitigation instruction on the ground that mitigation is
not relevant in a statutory damages copyright case, but understands the Court's view that
mitigation is a relevant consideration in the statutory damages analysis.  *See* Dkt No. 703 (Dec.
1, 2015 SJ Memorandum Opinion) at 68.

("There is no evidence upon which a reasonable fact-finder could make any determination as to whether IDT and UTA could have mitigated and, if so, what the amount of mitigation was."); *Eagle Oil & Gas Co. v. Travelers Property Casualty Co. of America*, No. 7:12-CV-00133-O, 2014 WL 3406686, at *17 (N.D. Tex. July 14, 2014) (granting summary judgment on mitigation defense because "[t]he party asserting failure to mitigate has the burden of proving facts showing lack of mitigation and must also show the amount by which damages were increased by failure to mitigate").

During the Parties' Sunday evening meet and confer regarding jury instructions, BMG repeatedly asked Cox to identify the basis for its mitigation "defense."  Cox refused to do so and told BMG to re-read Cox's summary judgment motion, but did not point to any of the testimony offered during this case.

In its summary judgment motion, Cox argued that BMG's failure to remove settlement demands from its infringement notices and BMG's failure to sue torrent indexing sites constitutes a failure to mitigate.  Dkt. 346 at 30.  Cox introduced no evidence that BMG could have reduced the volume of infringement by proceeding against torrent indexing sites, many of which are overseas and which can sprout up essentially at will.  *See* Tr. at 1103, 1105 (noting the whack-a-mole problem).  Nor does the failure to sue potential co-defendants constitute failure to mitigate.  *See UMG Recordings, Inc. v. Escape Media Group*, No. 11 CIV. 8407, 2015 WL 1873098, at *6 (S.D.N.Y. Apr. 23, 2015) ("Testimony or other evidence suggesting that the absence of suits against third parties not at all involved in this litigation somehow means that plaintiffs failed to properly mitigate damages here would involve a theory the court deems invalid and needlessly speculative.").

As to the settlement offers, the mitigation doctrine does not require BMG to abandon its settlement demands.  The propriety of BMG's notices are a central point of contention in this case, and "[m]itigation does not require a compromise or settlement of plaintiff's claim against defendants."  *Renasant Bank v. Lake Cyrus Development*, No. 2:11-CV-3924-SLB, 2012 WL 3637603, at *11 (N.D. Ala. Aug. 20, 2012).  BMG had every right to seek compensation from infringers of its copyrighted works, and it is not required to abandon that right in order to recover against other participants in the infringement.  *See Monumental Life Insurance Co. v. Nationwide Retirement Solutions*, 242 F. Supp. 2d 438, 454 (W.D. Ky. 2003) ("The doctrine of mitigation does not require Monumental to cut off its own legal rights.");  *Leaf Funding v. Custom Highline*, No. 07–2568–CM, 2008 WL 4305316, at *6 (D. Kan. Sept. 18, 2008) ("The rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights.").  That is particularly axiomatic here, where Cox would have processed only the smallest fraction of Rightscorp's notices even without the settlement language and there is no evidence to suggest that introducing Rightscorp's notices into Cox's grossly inadequate graduated response procedure would have had any effect on the level of infringement.  *See Ellsworth v. Tuttle*, 148 F. App'x 653, 668 (10th Cir. 2005) ("[T]he duty to mitigate does not apply when the proposed mitigation is too speculative.").

Even if a mitigation instruction is appropriate, Cox's proposed instructions are not.  In the statutory damages context, mitigation is not a defense to liability but a "relevant consideration in determining statutory damages under the Copyright Act."  Dkt No. 703 (Dec. 1, 2015 SJ Memorandum Opinion) at 68.  And statutory damages are appropriate even absent proof of any actual damages.  *See F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) (statutory damages appropriate "[e]ven for uninjurious and unprofitable invasions of copyright").

Thus, Cox's proposed instructions 20 and 21, which describe mitigation as an "affirmative defense" "which would excuse Cox from being liable to BMG for copyright infringement" are improper.  At most, mitigation should be mentioned as a consideration relating to one factor in the statutory damages analysis, not as a standalone defense to liability independent from statutory damages.[3]

### C.       Innocence and Willfulness (BMG 38; Cox 24-25)

Cox's innocence and willfulness instructions confuse direct and secondary liability. Cox's instructions conflate Cox *users'* infringing acts with Cox's mental state when engaging in its own conduct.  Cox's conduct relates not to the underlying infringement but to Cox's contribution to and supervision of that underlying infringement.  Those instructions will only confuse the jury.  Plaintiffs have proposed an appropriate willfulness instruction drawn from the Seventh Circuit model instruction and case law, which makes sense in the context of secondary liability.

In addition, there is no basis for an innocence instruction.  As Cox concedes, it bears the burden to show innocence, and it has put no such evidence into the record.  Reduced damages for "innocent" infringement are not available where Defendants have "reason to think" that works alleged to have been infringed were copyrighted and/or not in the public domain.  *See M. Kramer Manufacturing v. Andrews*, 783 F.2d 421, 447 (4th Cir. 1986).  Because there is no dispute that Cox knew the BMG works alleged to have been infringed were copyrighted, an innocent infringer instruction cannot issue.

---

[3] The Court's ruling against Cox's unclean hands defense obviates the need for any unclean hands instruction or for Cox's instruction 19 regarding agency.

At a minimum, Cox's innocent infringement instruction omits language regarding its knowledge that the works were copyrighted or that a copyright symbol appeared on the published versions of the works at issue.  *See Eleventh Circuit, Civil Pattern Jury Instructions*, No. 9.32; *M. Kramer Manufacturing*, 783 F.2d at 447.

## III.   OTHER INSTRUCTIONS

### A.   DMCA (BMG 22; Cox 18)

A DMCA instruction is essential background for the jury in this case.  The DMCA is the context for many of the Parties' decisions, and Cox personnel consistently used the term "DMCA" as a synonym for copyright infringement in documents and testimony.  That requires explanation.  BMG's instruction properly explains this context and that the safe harbor defense is not available to Cox, all of which is law of the case.

By contrast, Cox's proposed instruction is confusing and inaccurate.  Cox describes the DMCA's safe harbors as "optional," which is not correct.  The safe harbors exist, and Cox may or may not fall into one based on its conduct.  But they are not "options" that Cox selects of its choosing.  Cox's instruction improperly suggests to the jury that Cox *chose* not to pursue a safe harbor when the opposite is not only true but forms the basis for much of the Cox conduct at issue in this case.

Nor is the DMCA "irrelevant" to determining whether Cox is liable in this case, as Cox would instruct the jury.  On the contrary, Cox's sham effort to claim a DMCA safe harbor while tolerating massive copyright infringement on its network is evidence of Cox's willfulness and is highly relevant to any understanding of Cox's conduct.

### B.      Legal Opinions (BMG 15)

Cox's decision to tell its story through a former in-house counsel who had minimal involvement with the actual operations of the abuse department or Cox's actual copyright infringement policies as applied by the abuse department is highly prejudicial to BMG and requires a limiting instruction.  Though Cox insists that Mr. Cadenhead testified only in his businessman capacity and assured the Court before his testimony that "he's not going to be, you know, giving legal advice," Cox repeatedly emphasized Mr. Cadenhead's role as a lawyer during direct examination.  Tr. at 1329:6-22, 1330:2-22, 1332:22-1333:3.  Cox had Mr. Cadenhead testify about many aspects of Cox's abuse policies, including Cox's decision to reject notices because they contained settlement offers.  *See, e.g.*, Tr. at 1344:12-1345:14, 1389:8-1391:12 ("payment demand" "wasn't acceptable, that wasn't proper"), 1406:9-16; *see also* Tr. at 1403:10-1404:9.  Mr. Cadenhead also testified about other legal issues.  For example, Mr. Cadenhead described an FCC order regarding Comcast's throttling of BitTorrent without mentioning that it had been overturned on appeal.  *See* Tr. at 1342:6-13, 1398:19-23; *Comcast v. FCC*, 600 F.3d 642 (D.C. Cir. 2010).

Mr. Cadenhead's testimony stands in sharp contrast to that of other witnesses with legal degrees.  Neither BMG's Keith Hauprich nor Rightcorp's Christopher Sabec (whose testimony was introduced by Cox) were called to explain their companies' behavior against the backdrop of the DMCA or offered legal opinions regarding critical matters in this case.  By contrast, Mr. Cadenhead's testimony regarding Cox's treatment of infringement notices containing settlement offers and the "spirit of the DMCA" conclusion contained in his emails goes directly to one of the key questions in this case.  Mr. Cadenhead testified that inclusion of a "payment demand" "wasn't acceptable, that wasn't proper."  Tr. at 1390:12, 16.  He spoke about "improper notices from Rightscorp," contrasted them with "the legitimate notices we were receiving from many

other copyright holders," and asserted that Cox had attempted to "try and help [Rightscorp] understand again the issue." Tr. at 1408:3-4, 18-19. Because Cox chose to introduce Mr. Cadenhead to give this testimony notwithstanding the Court's motion *in limine* order that there had been no competent legal advice, a specific instruction is essential to prevent prejudice to BMG.[4]

The Court has already found that the legal advice Mr. Cadenhead issued was not competent and was not properly disclosed in discovery. The jury now has seen not only many emails referring to Mr. Cadenhead's purported advice that settlement offers are not within the spirit of the DMCA but also Mr. Cadenhead himself testifying to his responsibility for Cox's abuse policies in general and the decision to reject settlement offers in particular. A limiting instruction is essential to prevent the jury from confusing Mr. Cadenhead's legal training with the business role in which Cox purports to have put him on the stand. Absent a proper instruction, the jury may conclude that Cox's actions were founded on Mr. Cadenhead's *bona fide* legal determinations when he offered no competent legal advice.

### C.      Spoliation (BMG 40; Cox 12)

BMG has proposed neutral, parallel jury instructions regarding spoliation that are consistent with the Court's statements during trial. *See* Tr. at 1705-06. BMG's instruction is also appropriate in light of Fed. R. Civ. P. 37(e), which as amended provides that a Court may instruct the jury regarding the loss of electronically stored information "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation."

---

[4] BMG's instruction 15 also informs the jury that no witness testimony should be understood to constitute the applicable law and that the law is only what the Court says it is.

There has been no showing that Rightscorp's failure to use version control software was intended to deprive Cox of evidence in this litigation.

By contrast, Cox offers an extreme instruction regarding Rightscorp's alleged spoliation along with no instruction regarding its own destruction of DHCP logs, which link Cox IP addresses to the names of the Cox subscribers to whom they were assigned.  Cox's instruction regurgitates its own argument to the jury regarding the circumstances and significance of Rightscorp's failure to use version control software.  It repeatedly states the same negative inferences that Cox seeks, which go far beyond the actual facts and any inference that the jury is required to draw.  Cox's proposed instruction is not appropriate under the circumstances and is not justified under Rule 37(e), particularly in light of the admission by Cox's lead counsel that "The system has remained the same."  Tr. at 510:7-8.

## IV.    JURY VERDICT FORM

The Court should adopt Plaintiffs' clear and straightforward jury verdict form.  Unlike Cox's, it does not engage in further parsing out of the elements of direct, contributory, and vicarious infringement that have already been described fully in the instructions.  It properly contains an explicit question regarding Cox's willfulness, which is relevant to post-trial determinations by this Court.  And it includes a cap on damages so that the jury does not inadvertently commit error.

By contrast, Cox's verdict form inappropriately emphasizes mitigation of damages by assigning it one of the five questions asked, even though mitigation is at most one consideration in one factor of the statutory damages analysis.  And Cox's form invites further debate over the elements of contributory and vicarious infringement that are the subject of the jury instructions themselves.

December 14, 2015                       Respectfully submitted,

                                        /s/ *Jeremy D. Engle*
                                        Jeremy D. Engle (VSB No. 72919)
                                        jengle@steptoe.com
                                        Paul Gennari (VSB No. 46890)
                                        pgennari@steptoe.com
                                        STEPTOE & JOHNSON, LLP
                                        1330 Connecticut Ave, NW
                                        Washington, DC 20036
                                        Tel.:  (202) 429-3000
                                        Fax:  (202) 429-3902

                                        Walter D. Kelley, Jr. (VSB No. 21622)
                                        HAUSFELD, LLP
                                        1700 K Street, NW
                                        Washington, DC 20006
                                        Tel:  (202) 540-7157
                                        Fax:  (202) 540-7201

                                        *Of Counsel*
                                        Michael J. Allan (admitted *pro hac vice*)
                                        William G. Pecau (admitted *pro hac vice*)
                                        John M. Caracappa (admitted *pro hac vice*)
                                        Roger E. Warin (admitted *pro hac vice*)
                                        Jeffrey M. Theodore (admitted *pro hac vice*)
                                        Stephanie L. Roberts (admitted *pro hac vice*)
                                        Elizabeth A. McKenzie (admitted *pro hac vice*)
                                        STEPTOE & JOHNSON, LLP
                                        1330 Connecticut Avenue, NW
                                        Washington, DC 20036
                                        Tel.: (202) 429-3000
                                        Fax: (202) 429-3902

                                        Michael O. Crain
                                        Crain Law Group, LLC
                                        The Bottleworks
                                        297 Prince Avenue, Suite 24
                                        Athens, Georgia  30601
                                        Tel. (706) 548-0970
                                        Fax: (706) 369-8869

                                        *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

/s/ *Jeremy D. Engle*
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902