UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:14-cv-1611(LO/JFA) ) |
| COX COMMUNICATIONS, INC., COXCOM, LLC | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff BMG Rights Management (US) LLC ("BMG") respectfully submits this Memorandum in Support of its Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(a).

**I. INTRODUCTION**

The operative facts in this litigation are not in dispute, leaving ripe for judicial determination a number of legal issues. Specifically, BMG is entitled to judgment as a matter of law as to its claims for contributory infringement and vicarious infringement. Further, Cox has wholly failed to present evidence sufficient to establish any defense in this action, so BMG should be granted judgment as a matter for law for each asserted defense.

At minimum BMG asks that Court to grant judgment as a matter of law as to (1) material contribution element of contributory infringement, (2) right and ability to control element of vicarious infringement, (3) innocent infringement, and (4) mitigation. There is no legally sufficient evidentiary basis for the jury to find for Cox with respect to any of these issues, and

1

the exclusion of the issues from consideration by the jury would streamline the remaining disputes and avoid an unnecessary risk of jury confusion.

## II. LEGAL STANDARD

Judgment as a matter of law is appropriate where a party has been fully heard on an issue and "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *see also U.S. ex rel. DRC, Inc. v. Custer Battles, LLC,* 562 F.3d 295, 305 (4th Cir. 2009) ("Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment,"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 807 F. Supp. 2d 544, 563 (E.D. Va. 2011) *aff'd*, 694 F.3d 1312 (Fed. Cir. 2012) (granting judgment as a matter of law in favor of plaintiff where defendant failed to present sufficient evidence of defense to patent infringement). Where no dispute of fact remains, then a case must be decided as a matter of law pursuant to Rule 50. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991) ("[A] directed verdict is mandated where the facts and the law will reasonably support only one conclusion.").

## III. ARGUMENT

### A. BMG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR CONTRIBUTORY AND VICARIOUS INFRINGEMENT

#### 1. Evidence of Direct Infringement by Cox's Subscribers Is Unrebutted

Cox has failed to controvert the evidence presented by BMG concerning the staggering amount of infringements of BMG's copyrighted works committed by Cox's subscribers. BMG has shown that Rightscorp detected approximately 1.847 million instances of infringement, where Cox subscribers offered BMG's copyrighted works for download via the BitTorrent protocol. Trial Tr. at 919:15-17; PXS0003. Rightscorp also collected more than 150,000 copies of the copyrighted works at issue that it downloaded directly from Cox subscribers. Trial Tr. at

337:16; PXS0003. Indeed, the actual amount of infringements on the Cox network is likely far higher than what Rightscorp is able to monitor and capture. *See* Trial Tr. at 884:13-885:1.

Cox asks the trier of fact to ignore clear and substantiated evidence of infringement in favor of unsupported assertions concerning the Rightscorp code. BMG's expert has tested the Rightscorp system and confirmed that it accurately detects infringement. Trial Tr. at 301:2-6. As Cox's counsel noted, "the code is the same," Trial Tr. at 510:3-12, and it sufficiently detects, identifies, and captures samples of copies of BMG's works made available on the Cox network for the world to download. Trial Tr. at 362:1-371:8. Thus, the Rightscorp notices and downloaded samples constitute evidence of direct infringement.[1] Accordingly, BMG is entitled to judgment as a matter of law to a finding that Cox's subscribers have committed underlying direct infringement on the Cox network.

### 2. No Reasonable Jury Could Find that Cox Is Not Liable for Contributory Infringement

BMG's evidence establishes that Cox is contributorily liable for infringement. "Under a theory of contributory infringement, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another is liable for the infringement." *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004). No reasonable jury could find that Cox did not have knowledge of the infringement of BMG's copyrights over its network. Nor could a reasonable jury conclude that Cox did not materially contribute to the rampant infringement on its network, and BMG is entitled to judgment as a matter of law on contributory infringement. Cox was sent millions of notices of infringement,

---

[1] Cox's allegation that BMG must prove the identity of the actual subscriber is contrary to law and to its own policy which states that the subscriber is "solely responsible for any information that is transmitted from [its] IP address or account on the Web …" *See* DTX0140; *Columbia Pictures Indus., v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013); *In re Aimster Copyright Litig.*, 334 F.3d 643, 646 (7th Cir. 2003).

provided access to an infringement "Dashboard," and was sent letters summarizing repeated infringement on its network. Notwithstanding these repeated notices and the available notice of infringement provided by the dashboard, Cox continued to provide the high-speed internet access through which the BMG's copyrights were infringed using BitTorrent and peer-to-peer networks.

### a. The Evidence that Cox Had Actual Knowledge of Its Subscribers' Infringement of BMG's Copyrights Is Undisputed

The law deems a defendant to have knowledge of infringement on its systems where it knows or has reason to know of the infringing activity. *See Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004). There is no dispute that Cox received millions of notices of infringement from BMG, each detailing specific instances of infringement committed by Cox subscribers. Trial Tr. 893:15-19. The notices include a statement, signed under penalty of perjury, that an infringement of BMG's works occurred through Cox's network, the identity of the work infringed, the Cox IP address and the port through which the infringement occurred, and the date and time of the infringement. *See e.g.* PX2839; PXS0004; Trial Tr. 317:19-322:09. Mr. Zabek admitted that the notices he reviewed contained the information about each infringement and that he had no reason to believe the same type of information was not contained in the notices that Cox rejected or deleted prior to their review. Zabek Depo. Tr. 323:03-324:15. There is also no dispute that the BMG copyright infringement notices provided all information that Cox required for such notices. Trial Tr. at 1451:5-7 ("Q. All right. Now, did Rightscorp's notices comply with all six of these requirements that you have on the screen? A. Largely, yes."); PX1330.0010; DTX-0141.0002.

In addition to the notices, it is undisputed that BMG provided Cox with access to a web-based "Dashboard" that included electronic copies of each notice that BMG sent Cox and a summary of the number of identified infringements for specific Cox IP addresses. *See* DTX

2080 (email and letter to Cox providing login information and describing the Dashboard); Trial Tr. 687:16- 693:2 (describing the Dashboard and testifying that Rightscorp provided the login to Cox). Rightscorp, on behalf of BMG, also sent Cox regular and numerous summary letters detailing the repeat infringers on Cox's network. *See, e.g.,* PX2119; DTX2094.002.

Because it is undisputed that Cox received notices of infringement, had access to the Dashboard, and regularly received infringement summary letters, Cox had both actual and constructive knowledge of direct infringement as a matter of law. *See Ellison,* 357 F.3d at 1076 ("Because . . . [AOL] should have been on notice of infringing activity we conclude that a reasonable trier of fact could find that AOL had reason to know of potentially infringing activity occurring within its USENET network."); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1168–69 (C.D. Cal. 2002) (emails notifying the defendant of copyright infringement on its system established knowledge of infringement); *Capitol Records, LLC v Escape Media Grp, Inc.*, No. 12-CV-6646 AJN, 2015 WL 1402049, at *43 (S.D.N.Y. Mar. 25, 2015) ("[T]he evidence demonstrates that Escape had knowledge of the infringing activity" based on "DMCA takedown notices of infringement it received.").

In addition, Cox admitted that it ignored all of the infringement notices and the Dashboard and the summary notices. The evidence therefore is undisputed that Cox was willfully blind to the infringement of BMG's works over its network. "A person is willfully blind or engages in conscious avoidance amounting to knowledge where the person was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *See Viacom Int'l, Inc. v. YouTube*, Inc., 676 F.3d 19, 35 (2d Cir. 2012). "[W]illful blindness is knowledge, in copyright law . . . as it is in the law generally." *Aimster*, 334 F.3d at 650; *accord BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc., et al.*, No. 1:14-CV-1611, 2015 WL

7756130, at *29 (E.D. Va. Dec. 1, 2015) ("willful blindness is the equivalent of knowledge in copyright law") (citation omitted).

The evidence is undisputed that Cox knew that the infringement notices that it blocked provided Cox with notice of infringement of BMG's copyrights. Jason Zabek testified that he would have reviewed the information of infringement in the Rightscorp notices he originally reviewed and he had no reason to believe that type of information in those notices changed after Cox blacklisted the notices. *See* Zabek Depo. Tr. 341:11-19 ("Did you have any reason to believe that the notices that Rightscorp sent Cox after being blacklisted contained different information that what was contained in the information in the notices you had reviewed. A. No."). Nonetheless, Cox blocked BMG's notices because they contained settlement information. Thus, the evidence is that Cox knew the notices informed it of specific infringement occurring through specific IP addresses on its network yet intentionally blocked the notices for a reason unrelated to the knowledge of infringement they conveyed. Under either a constructive knowledge or willful blindness theory, BMG is entitled to judgment as a matter of law that Cox had knowledge of infringement of BMG's copyrights.

    **b.**  **Cox Materially Contributed to the Infringement over Its Network by Providing the Sites and Facilities by which the Infringement Occurred**

The law is straight-forward. A service provider materially contributes to infringement by providing the sites and facilities by which the infringement occurs. *See Ellison*, 357 F.3d at 1078 (internet service provider AOL materially contributed to infringement by providing the means of access to Usenet groups through which its subscribers shared infringing content; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (material contribution where the defendant allows "a worldwide audience of users to access infringing materials"); *Fonovisa, Inc.*

*v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("providing the site and facilities for known infringing activity is sufficient to establish contributory liability."); *Capitol Records Inc., v. MP3Tunes, LLC*, 48 F. Supp. 3d 703, 713 (S.D.N.Y. 2014) ("site and facilities for the infringing activity"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) (same). Cox's network is the site and facilities by which infringement of BMG's copyrights occurs. The evidence is undisputed that Cox provides the high-speed internet services that its subscribers use to infringe BMG's copyrights via BitTorrent and peer-to-peer. *See, e.g.*, PX1343 (Cox's Acceptable Use Policy, stating that Cox provides high-speed internet services to its subscribers); PX1412.0005 (21 hours per month average BitTorrent activity on Cox's network). Cox purposely allowed its service to be used this way in order to generate additional revenue. PX1358; PX1355; PX1381; PX1453; PX1446.

Further, Cox not only knowingly provides the means by which the infringement of BMG's copyrights occurs, the evidence is undisputed that Cox promotes its high-speed internet services for the purpose of downloading and sharing music. *See, e.g.*, PX5001; PX5002; DTX0289; PX1407; Trial Tr. 1208:12-1219:22 (Cox's Director of Marketing testifying about Cox's promotion of its high-speed internet services for downloading and sharing music). Because Cox's network constitutes the sites and facilities by which the infringement of BMG's occurs through BitTorrent and P2P, Cox has materially contributed to the infringement of BMG's copyrights as a matter of law. No reasonable jury could find otherwise.

### 3. No Reasonable Jury Could Find that Cox Does Not Vicariously Infringe BMG's Copyrights

A defendant is vicariously liable where it "possessed the right and ability to supervise the infringing activity" and had an "obvious and direct financial interest" in the infringement. *Nelson-Salabes, Inc. v. Morningside Dev., LLC,* 284 F.3d 505, 513 (4th Cir. 2002). Cox has

failed to present sufficient evidence to permit a reasonable jury to find that it is not vicariously liable for copyright, and BMG is entitled to judgment as a matter of law under Rule 50(a).

### a. Cox Has the Right and Ability to Supervise the Infringing Activity

Cox's control over the access to and termination of infringing subscribers' Internet access establishes the right and ability to supervise the underlying infringing activity. *Napster*, 239 F.3d at 1023 ("The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise."); *Fonovisa*, 76 F.3d at 262 ("Cherry Auction had the right to terminate vendors for any reason whatsoever and through that right had the ability to control the activities of vendors on the premises.").

There is no factual dispute as to Cox's right to supervise its subscribers' access to the Internet. Cox's Acceptable Use Procedure and Subscriber Agreement is a contract between Cox and its subscribers that expressly gives Cox the right to suspend or terminate a subscriber's Internet service for violations of the terms of the agreement (including for acts of infringement), for failure to pay for services, or in response to "exigent circumstances that have a significant effect on our subscribers' ability to use the Service or Cox's ability to provide the service," among other things. *See* PX1343 at 1-3, 8.

The evidence is also undisputed that Cox had the ability to stop the infringement of BMG's copyrights, but elected not to do so. BMG established that Cox's CATS system for automating and managing abuse complaints (including copyright violations) involving Cox internet subscribers gives Cox the ability to take a variety of actions to enforce its acceptable use procedure or otherwise address misuse. Trial Tr. 1386:20-22. Cox can warn customers via email, suspend customers' service and place them in a "walled garden," require them to speak to Cox personnel, or terminate customer accounts. *Id;* Trial Tr. 849:16-18. The suspension of a

subscriber's Internet service is as simple as clicking a button, Trial Tr. 860:15-16, as is the reactivation of that service. Trial Tr. 849:24-850:1. Accordingly, because it controls when, how, and why subscribers are suspended or terminated,[2] Cox has *complete* control in deciding whether its subscribers may infringe on its network.[3] Trial Tr. 1430:22-1431:4, 1432:8-13. BMG is entitled to judgment as a matter of law as to Cox's right and ability to supervise infringing activity by its subscribers.

### b. Cox Obtained a Direct Financial Benefit from Its Subscribers' Infringement and Had an Economic Incentive to Tolerate Infringement on Its Network

A vicarious infringer directly benefits from infringement where "the availability of infringing material acts as a 'draw' for customers." *See Napster*, 239 F.3d at 1023; *see also Escape Media Group*, 2015 WL 1402049, at *42 ("[E]vidence of financial gain is not necessary to prove vicarious liability as long as the service provider has an economic incentive to tolerate infringing conduct."). Cox cannot overcome the substantial and compelling evidence that it refused to terminate infringers (even where it had actual knowledge of multiple, repeated infringements by the same accountholder) because it did not want to lose the revenue or customers. PX1358; PX1355; PX1381; PX1453; PX1446. Cox also cannot overcome the evidence that its customers were drawn to Cox's internet services for the ability to infringe copyrighted works. *See* Trial Tr. 552:2-553:19. Rather than enforcing its stated policies, Cox

---

[2] Cox mistakenly conflates the ability to supervise with an ability to track or control *which* websites its customers use or visit, but it is the right to control internet access as a whole, not access to individual websites, that establishes the requisite right and ability to supervise. The danger of Cox introducing confusing, legally irrelevant information about supervision further supports granting judgment as a matter of law as to the right and ability to supervise in order to avoid jury confusion on an issue for which there are no disputed facts.

[3] Cox likewise exercises the right and ability to supervise through its policy of "soft terminating" subscribers who committed multiple copyright infringements by terminating their service, then immediately reactivating it, which permits the subscribers to continue to infringe without consequence. Trial Tr. 849:16-21.

gave customers additional chances to infringe so it could "get a few extra weeks of payment" and benefit from the high profit margin for its infringing customers. PX1385. No reasonable jury could find that Cox has not received a direct financial benefit from infringement.

### B. COX CANNOT QUALIFY AS AN INNOCENT INFRINGER

Cox is not eligible for reduced statutory damages on the basis of "innocent" infringement under 17 U.S.C. § 504. The Copyright Act provides the Court with discretion to reduce statutory damages to $200 per infringed work only where "such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C.A. § 504. But the Fourth Circuit has previously rejected claims of innocent infringement where, as here, defendants received notice that their acts constituted infringement of valid copyrights. *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1089 (D. Md. 1995) (holding that defendant cannot be considered innocent infringer where the defendant turned a blind eye to indicia of infringing conduct); *see also* M. *Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 447 (4th Cir. 1986) (defendant did not qualify as innocent infringer where they had reason to know infringed work was copyrighted and were informed of such by plaintiff).

The evidence is undisputed that Cox was well-informed of the rampant infringement on its network of BMG's copyrighted works. Rightscorp sent more than 1.8 million infringement notices to BMG for the asserted works, Trial Tr. 893:15-19, as well as regular and repeated summaries of the infringements, and Rightscorp even went so far as to provide Cox with access to a Dashboard containing the same information. *See* PX1427; PX2839-1; PX2839-2. All of these put Cox on notice of the infringement of BMG's valid copyrights despite Cox's decision not to act upon such notice. Accordingly, Cox was aware or should have had reason to believe that its actions constituted copyright infringement, and thereby making Cox ineligible for

reduced damages as an innocent infringer. In fact, as set forth above, the evidence establishes that Cox acted willfully in contributorily and vicariously infringing BMG's copyrights.

### C. NO REASONABLE JURY COULD FIND THAT BMG FAILED TO MITIGATE DAMAGES

Regardless of whether mitigation is a factor in the statutory damages analysis[4], Cox has introduced no evidence of a failure to mitigate or any evidence regarding the ***amount*** of damages that BMG might have avoided by mitigating as Cox has proposed. Absent any evidence on this point, there is no basis for a mitigation defense. *See Complete Concepts v. General Handbag Corp.*, 880 F.2d 382, 391 n.8 (11th Cir. 1989) ("the burden was upon [the defendant] to introduce the amount by which [plaintiff's] award should be reduced by such mitigation"); *Ellsworth v. Tuttle*, 148 F. App'x 653, 667 (10th Cir. 2005) ("Mitigation is an affirmative defense that requires the Tuttles to prove with reasonable certainty the amounts by which the Ellsworths' damages could have been mitigated."); *IDT Netherlands v. West Coast Distribution*, No. SACV0700024JVSANX, 2008 WL 5412889, at *4 (C.D. Cal. Dec. 23, 2008) ("There is no evidence upon which a reasonable fact-finder could make any determination as to whether IDT and UTA could have mitigated and, if so, what the amount of mitigation was."); *Eagle Oil & Gas Co. v. Travelers Property Casualty Co. of America*, No. 7:12-CV-00133-O, 2014 WL 3406686, at *17 (N.D. Tex. July 14, 2014) (granting summary judgment on mitigation defense because "[t]he party asserting failure to mitigate has the burden of proving facts showing lack of mitigation and must also show the amount by which damages were increased by failure to mitigate").

---

[4] BMG preserves its objection, but understands the Court's view that mitigation is a relevant consideration in the statutory damages analysis. *See* Dkt No. 703 (Dec. 1, 2015 SJ Memorandum Opinion) at 68.

In its summary judgment motion, Cox argued that BMG's failure to remove settlement demands from its infringement notices and BMG's failure to sue torrent indexing sites constitutes a failure to mitigate. Dkt. 346 at 30. Cox introduced no evidence that BMG could have reduced the volume of infringement by proceeding against torrent indexing sites, many of which are overseas and which can sprout up essentially at will. *See* Tr. at 1103, 1105 (noting the whack-a-mole problem). Nor does the failure to sue potential co-defendants constitute failure to mitigate. *See UMG Recordings, Inc. v. Escape Media Group*, No. 11 CIV. 8407, 2015 WL 1873098, at *6 (S.D.N.Y. Apr. 23, 2015) ("Testimony or other evidence suggesting that the absence of suits against third parties not at all involved in this litigation somehow means that plaintiffs failed to properly mitigate damages here would involve a theory the court deems invalid and needlessly speculative.").

As to the settlement offers, the mitigation doctrine does not require BMG to abandon its settlement demands. The propriety of BMG's notices are a central point of contention in this case, and "[m]itigation does not require a compromise or settlement of plaintiff's claim against defendants." *Renasant Bank v. Lake Cyrus Development*, No. 2:11-CV-3924-SLB, 2012 WL 3637603, at *11 (N.D. Ala. Aug. 20, 2012). BMG had every right to seek compensation from infringers of its copyrighted works, and it is not required to abandon that right in order to recover against other participants in the infringement. *See Monumental Life Insurance Co. v. Nationwide Retirement Solutions*, 242 F. Supp. 2d 438, 454 (W.D. Ky. 2003) ("The doctrine of mitigation does not require Monumental to cut off its own legal rights."). That is particularly axiomatic here, where Cox would have processed only the smallest fraction of Rightscorp's notices even without the settlement language and there is no evidence to suggest that introducing Rightscorp's notices into Cox's grossly inadequate graduated response procedure would have had any effect

on the level of infringement. *See Ellsworth v. Tuttle*, 148 F. App'x 653, 668 (10th Cir. 2005) ("[T]he duty to mitigate does not apply when the proposed mitigation is too speculative."). BMG is entitled to judgment as a matter of law on Cox's failure to mitigate defense.

### D. NO REASONABLE JURY COULD FIND THAT COX HAS ADEQUATELY ASSERTED ANY AFFIRMATIVE DEFENSE TO INFRINGEMENT

Cox likewise has failed to present evidence of any other affirmative defense in this action such that a reasonable jury could find in its favor.[5] Cox lodged 22 defenses in its Answer, but has not entered evidence to support any of the defenses that remain. Dkt. No. 25 at 5-7. Cox did not offer proposed jury instructions concerning any defenses other than mitigation and, thus, appears not to be pursuing the defenses despite not having formally withdrawn them. Out of an abundance of caution, BMG asks the Court to grant judgment as a matter of law as to the affirmative defenses Cox has not withdrawn.

First, Cox has asserted a defense for copyright misuse. *Id.* at 6. The purpose of that defense is to "prevent abuse of the public policy embodied in the grant of copyright," and it is generally found in cases where the copyright owner has engaged in some form of anti-competitive behavior or attempted to restrain a party from using material over which the plaintiff itself had no rights. *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F. Supp. 2d 526, 536 (E.D. Va. 2008) aff'd, 377 F. App'x 303 (4th Cir. 2010) (citing *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990)). Cox has provided no evidence of anticompetitive behavior or any evidence that BMG has misused its copyrights or otherwise attempted to restrain use of works for which it does not have the rights to enforce.

---

[5] The Court already granted summary judgment as to Cox's unclean hands and safe harbor defenses, rendering it inapplicable. Dkt. No. 703 at 42-43.

13

Second, Cox has asserted a defense against claims falling outside the limitations period, Dkt. No. 25 at 67, but BMG has asserted claims for infringements occurring only from February 2, 2012 until November 26, 2014. Thus, all of the asserted infringements occurred less than three years before the filing of the complaint, and Cox's statute of limitation defense fails as a matter of law.

Third, Cox has presented no evidence to support its assertion that the "Court lacks subject matter jurisdiction over claims that depend upon works for which [BMG has] not obtained copyright registrations." Dkt. No. 25 at 6. There are no such asserted works, so this defense must be rejected.

Fourth, Cox has asserted various constitutional defenses, including general defenses under the First, Fifth, and Eight Amendments and for violation of due process, as well as general defenses based on waiver and estoppel, but Cox has not elaborated on any such defense or otherwise provided the Court with any evidence of such a defense. Accordingly, those defenses should be struck.

## IV.  CONCLUSIONS

For the reasons set forth above, BMG's Motion for Judgment as a Matter of Law should be granted, and this Court should grant the relief sought in BMG's Complaint.

December 14, 2015

Respectfully submitted,

/s/ *Jeremy D. Engle*
Jeremy D. Engle (VSB No. 72919)
jengle@steptoe.com
Paul Gennari (VSB No. 46890)
pgennari@steptoe.com
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave, NW
Washington, DC 20036

Tel.:  (202) 429-3000
Fax:  (202) 429-3902

Walter D. Kelley, Jr. (VSB No. 21622)
HAUSFELD, LLP
1700 K Street, NW
Washington, DC 20006
Tel:  (202) 540-7157
Fax:  (202) 540-7201

*Of Counsel*
Michael J. Allan (admitted *pro hac vice*)
William G. Pecau (admitted *pro hac vice*)
John M. Caracappa (admitted *pro hac vice*)
Roger E. Warin (admitted *pro hac vice*)
Stephanie L. Roberts (admitted *pro hac vice*)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

Michael O. Crain
Crain Law Group, LLC
The Bottleworks
297 Prince Avenue, Suite 24
Athens, Georgia  30601
Tel. (706) 548-0970
Fax: (706) 369-8869

*Counsel for Plaintiff*

15

**CERTIFICATE OF SERVICE**

       I hereby certify that on December 14, 2015, I electronically filed a true and correct copy of the foregoing using the Court's CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record:

Craig C. Reilly (VSB No. 20942)
craig.reilly@ccreillylaw.com

William J. Dinkin
Bill.dinkin@gmail.com

                                             /s/ *Jeremy D. Engle*
                                             Jeremy D. Engle (VSB No. 72919)
                                             jengle@steptoe.com
                                             STEPTOE & JOHNSON, LLP
                                             1330 Connecticut Ave, NW
                                             Washington, DC 20036
                                             Tel.: (202) 429-3000
                                             Fax: (202) 429-3902