**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:14-cv-1611 (LOG/JFA) |
| v. | ) ) |
| COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF COX'S RENEWED**
**MOTION FOR JUDGMENT AS A MATTER OF**
**LAW, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARD.................................................................................................... 3

ARGUMENT ................................................................................................................ 4

    I.      COX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW. ......................... 4

          A.      BMG Failed to Provide Evidence of Cox's Liability for Contributory Infringement................................................................................................. 5

          B.      The Evidence Failed to Show Any Underlying Direct Infringement. ........... 8

                1.      The Evidence Failed to Show Any Underlying Violation of Section 106(3) by Persons Using Cox's Internet Service. ................. 8

                2.      The Evidence Failed to Show Any Underlying Violation of Section 106(1) by Persons Using Cox's Internet Service. ............... 10

          C.      BMG Failed to Provide Evidence That Any Alleged Contributory Infringement by Cox of BMG's Works Was Willful. .................................. 11

    II.      COX IS ENTITLED TO A NEW TRIAL................................................................. 14

          A.      Improper Jury Instructions Prejudiced Cox. ................................................. 14

                 1.      Contributory Infringement (Cox's Proposed Instruction 16)........... 14

                 2.      Direct Infringement (Cox's Proposed Instruction 14) ..................... 15

                 3.      Statutory Damages (Cox's Proposed Instructions 23, 24) .............. 16

                 4.      BMG's Intentional Destruction of Evidence (Cox's Proposed Instruction 12) ................................................................................. 18

                 5.      References to the Digital Millennium Copyright Act (Cox's Proposed Instruction 18) ................................................................. 20

          B.      The Erroneous Exclusion of Relevant Evidence Prejudiced Cox. ............... 21

                 1.      Rightscorp's Phone Script Admission Regarding Unsecured Wireless as a Major Reason for File Sharing ................................... 21

                 2.      Cox's Evidence of Its Reasons for the Way It Handled Rightscorp's Notices and Interacted with Rightscorp..................... 22

3.    Cox's Explanation for the Design and Implementation of its
Graduated Response System................................................................23

a.    Mr. Cadenhead's Testimony Regarding the Copyright
Alert System, Other ISP Practices, and Associated
Documents ..........................................................................23

b.    Evidence of the Effectiveness of Cox's Graduated
Response System and Cox's Internal Assessment of It.......24

4.    Responses to Rightscorp Notices from Other ISPs..........................25

5.    Mr. Rosenblatt's Expert Testimony Regarding the Effectiveness
of Cox's Graduated Response and Its Comparison to Other
Systems..............................................................................................25

6.    Mr. Karaganis's Expert Testimony Regarding Reports BMG
Relied On...........................................................................................26

7.    Evidence of Rightscorp's Misconduct to Impeach Witnesses and
to Show BMG's Unclean Hands Through Its Agent Rightscorp ....26

C.    The Court's Improper Admission of Evidence Warrants a New Trial. .......27

1.    The Court's Failure to Impose an Evidentiary Sanction on BMG ..27

2.    Pervasive Wrongful References to "Infringement" in BMG's
Case....................................................................................................28

a.    Testimony Misusing the Term "Infringement" ..................28

b.    Rightscorp's Notices...........................................................28

c.    Envisional and NetNames Reports......................................29

3.    Improper Evidence Regarding the DMCA Safe Harbor.................29

4.    Irrelevant Internal Cox Emails.........................................................30

CONCLUSION ...................................................................................................................30

## INTRODUCTION

Defendants Cox Communications, Inc. and Coxcom, LLC (collectively "Cox") submit this memorandum to support their renewed motion for judgment as a matter of law, or in the alternative for a new trial, pursuant to Federal Rules of Civil Procedure 50(a) and 59.

Cox is entitled to judgment as a matter of law for these reasons:

1.      BMG failed to provide an evidentiary basis for a finding that Cox is liable for contributory infringement of BMG's asserted works.

2.      BMG failed to provide an evidentiary basis for a finding of underlying direct infringement of the asserted works under Section 106(3) or 106 (1) of the Copyright Act.

3.      BMG failed to provide an evidentiary basis for a finding that Cox engaged in willful contributory infringement.

In the alternative, Cox is entitled to a new trial for these reasons:

1.      The Court erroneously instructed the jury on contributory infringement.

2.      The Court erroneously instructed the jury on the standard of infringement of the Section 106(1) and 106(3) rights of a copyright holder.

3.      The Court failed to instruct the jury on innocent infringement.

4.      The Court erroneously instructed the jury on willfulness.

5.      The Court erroneously instructed the jury on calculation of statutory damages with respect to works that are parts of compilations or derivative works.

6.      The Court erroneously instructed the jury on the relevance of conduct of the parties in calculating statutory damages.

7.      The Court erroneously instructed the jury on the question of BMG's intentional and prejudicial destruction of evidence.

8.      The Court failed to give an appropriate instruction to limit prejudicial and confusing testimony at trial regarding the Digital Millennium Copyright Act after the Court deprived Cox of the DMCA defense by summary judgment.

9.      The Court improperly excluded testimony regarding Cox's decision making and rationales in connection with its graduated response process; its handling of notices from Rightscorp (BMG's agent); the differences between Cox's process and the Copyright Alert System used by major ISPs and reasons why Cox did not join CAS; and the reasonableness of Cox's systems, processes, and decisions.

10.     The Court improperly admitted prejudicial hearsay documents, including purported studies about incidence of infringement using BitTorrent, and related testimony, while denying Cox an opportunity to rebut those documents and testimony with its own expert testimony.

11.     The Court improperly admitted prejudicial documents and testimony that did not pertain to any alleged infringements of BMG's works or to the time period during which BMG sent notices to Cox.

12.     The Court improperly allowed lay witnesses to testify extensively and prejudicially about improper legal conclusions, particularly regarding "copyright infringement."

13.     The Court improperly allowed prejudicial and hearsay communications by Rightscorp, which BMG relied upon for the truth of assertions of claimed infringement and legal conclusions in those communications, and the Court further refused to issue a limiting instruction to the jury to consider those communications only for their fact of communication and not for the truth of the statements they contained.

## LEGAL STANDARD

This Court may grant a motion for judgment as a matter of law if "a party has been fully

heard . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary

basis to find for the party." Fed. R. Civ. P. 50(a)(1).  "Judgment as a matter of law is proper when,

without weighing the credibility of the evidence, there can be but one reasonable conclusion as to

the proper judgment." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 404-05 (4th Cir. 1999); *Bilenky v.

Ryobi Techs., Inc.*, No. 2:13-cv-00345, 2015 WL 3946612, at *4 (E.D. Va. June 26, 2015).  The

moving party is entitled to judgment as a matter of law if the nonmoving party failed to make a

showing on an essential element of its case. *Singer v. Dungan,* 45 F.3d 823, 827 (4th Cir. 1995).

A new trial is appropriate where the jury instructions, taken as a whole, do not adequately

state the controlling law.  *See Scott v. Watsontown Trucking Co., Inc.*, 920 F. Supp. 2d 644 (E.D.

Va. 2013) (citing *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994)).  A court also properly

grants a new trial where the court issues improper jury instructions or fails to give an instruction

that a party properly requested and such failure would taint the deliberation process. *Wyatt v.

Interstate & Ocean Transp. Co.*, 623 F.2d 888, 892 (4th Cir. 1980), *disapproved of on other

grounds*, *Bowen v. U.S. Postal Serv.*, 459 U.S. 212 (1983) (new trial was correct because the jury

was improperly instructed on the question of liability and reached their decision under an

incomplete theory of law); 12 Moore's Fed. Practice § 59.13[2][b][i][B].  The Fourth Circuit has

found reversible error where a district court refused to give a proposed jury instruction on a legal

doctrine applicable to the facts of a case.  *See Copenhaver v. Rent-A-Crane, Inc.*, 32 F.3d 562

(4th Cir. 1994); *see also Nicholson v. Stroup*, 249 F.2d 874 (4th Cir. 1957).

In addition, a court may "grant a new trial on all or some of the issues . . . after a jury

trial, for any reason for which a new trial has heretofore been granted in an action at law in

federal court." Fed. R. Civ. P. 59(a)(1)(A).  A new trial is warranted when "(1) the verdict is

against the clear weight of the evidence"; (2) the verdict "is based upon evidence which is false";

or (3) the verdict "will result in a miscarriage of justice, even though there may be substantial

evidence which would prevent the direction of a verdict."  *Atlas Food Sys. and Servs., Inc. v.*

*Crane Nat'l Vendors, Inc.,* 99 F.3d 587 (4th Cir. 1996); *see also Gill v. Rollins Protective Servs.,*

*Co.*, 773 F.2d 592, 594 (4th Cir. 1985), *opinion amended on denial of reh'g*, 788 F.2d 1042 (4th

Cir. 1986).  In considering a motion for a new trial, the district court may weigh the evidence and

consider the credibility of the witnesses.  *Wyatt*, 623 F.2d at 891–92; *Atlas,* 99 F.3d at 587.

A court must set aside a verdict and grant a new trial if the original verdict will result in a

miscarriage of justice, including because the district court excluded relevant evidence or

erroneously admitted evidence.  *See Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994); *Bresler*

*v. Wilmington Trust Co.*, No. 8:09-cv-02957, 2015 WL 1402377, at *14 (D. Md. Mar. 25, 2015)

*amended in part*, No. 8:09-cv-02957, 2015 WL 4385994 (D. Md. July 10, 2015).

## ARGUMENT

## I.      COX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Cox is entitled to judgment as a matter of law on the contributory infringement claim both

because BMG failed to show evidence to meet the proper standard for contributory infringement

and because BMG did not provide evidence of actual direct infringements by persons using the

Cox Internet service for which Cox should be responsible.  Even if the Court does not grant

judgment as a matter of law on the contributory infringement claim, the Court should grant Cox

judgment as a matter of law on the separate issue of willfulness.

A.      **BMG Failed to Provide Evidence of Cox's Liability for Contributory Infringement.**

BMG failed to adduce evidence to support a contributory infringement claim under either the intentional inducement rule under *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005), or the traditional material contribution rule as the Supreme Court applied it in *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).

BMG's failure to show intentional inducement was consistent with its admission, in its opposition to Cox's summary judgment motion, that it had no evidence to meet that standard. *Compare* Dkt. 386 at v. and 6 (Plaintiffs' response to Cox's statement of material facts admitting Cox fact 8) *with* Dkt. 354 at 4–5 (Cox fact 8 supporting its motion for summary judgment: "There is no evidence Cox intentionally induced or encouraged infringement of Plaintiffs' copyrights by clear expression or other affirmative steps").

BMG rested its entire claim on the "material contribution" phrasing of the traditional standard that the Fourth Circuit cited in *Costar* before the *Grokster* decision:

> Under a theory of contributory infringement, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another . . ." is liable for the infringement, too. *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971) (footnote omitted).

*Costar Grp., Inc. v. Loopnet, Inc.* 373 F.3d 544, 549 (4th Cir. 2004).

The jury struggled with the meaning of "material contribution." The Court gave the jury no guidance either at the outset or when the jury specifically asked for help in understanding it.

In any event, for purposes of judgment as a matter of law, BMG did not provide any evidence of Cox's liability for contributory copyright infringement based upon the "material

contribution" articulation of the standard.[1]  BMG relied on Cox's provision of high-speed Internet access to customers and its failure to cut off service to persons whom BMG through Rightscorp had accused of infringement.  As a matter of law, these facts do not constitute contributory copyright infringement because the evidence conclusively established that Cox's Internet service is capable of substantial non-infringing uses.  *Sony* bars contributory liability for that reason.

In *Sony* the Supreme Court both acknowledged the nonstatutory doctrine of contributory copyright infringement and also imported into it the "staple article of commerce" doctrine of the Patent Act's contributory infringement statute.  Under that doctrine, the mere *capability* of substantial noninfringing uses defeats a traditional claim of contributory infringement:

> [T]he sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product

---

[1]  BMG also failed to show that Cox had actual knowledge of any actual infringements of BMG's works by persons using Cox's Internet service.  Cox's witness testimony established that Cox does not surveil its subscribers and has no knowledge of the specific activities in which its subscribers engage on the Internet.  Therefore Cox has no actual knowledge of specific infringing activities.  Cox's former privacy counsel, Randall Cadenhead, testified that Cox informs its customers that, pursuant to Cox's privacy policy, Cox does not know where its customers go on the internet.  Trial Tr. 1346:17–23.  Mr. Cadenhead also testified that Cox's service is "blind" and Cox does not store data for residential customers.  Trial Tr. 1450:22–1451:4.  Matt Carothers testified that Cox does not use tools such as Deep Packet Inspection ("DPI") to detect the contents of encrypted or unencrypted BitTorrent traffic on Cox's network, both due to technical limitations and because it might violate the privacy of Cox's subscribers and implicate other legal issues.  Trial Tr. 1518:18–1519:15.  He also testified that Cox's DPI tool does not detect the types of files shared, or what a subscriber may upload or download through BitTorrent, and that Cox cannot and does not stop subscribers from sharing individual files using the tools it has in place.  Trial Tr. 1521:12–1522:5.

BMG sought instead to argue Cox's "willful blindness" of infringements of BMG's works based upon Cox's refusal to accept communications from Rightscorp (from *before* Rightscorp acted for BMG) because of Cox's substantial concerns with the purpose and nature of Rightscorp's notices.  Rightscorp's notices and other communications, however, were not proofs of infringement; they were allegations of infringement.  Indeed, the Court's decision ruling that Plaintiff Round Hill LP lacked ownership of copyrights alone makes clear that Rightscorp's notices cannot have provided actual knowledge of particular infringements, even had Cox accepted and processed the notices.  "Willful blindness" to mere allegations cannot provide a substitute for actual knowledge.  In any event, following *Sony*, the unanimous Supreme Court in *Grokster* made clear that "mere knowledge of infringing potential or of [even] actual infringing uses . . ." is not enough to subject Cox to liability for contributory infringement.  *See Grokster*, 545 U.S. at 937.

is widely used for legitimate, unobjectionable purposes.  Indeed, it need merely be capable of substantial noninfringing uses.

*Sony*, 464 U.S. at 442.[2]

In *Grokster*, the Supreme Court reviewed a case where lower courts had ruled in favor of defendants because their services were capable of substantial noninfringing uses. The Supreme Court unanimously articulated a standard by which a plaintiff can still prove contributory infringement where *Sony* would otherwise bar liability:

> The question is under what circumstances the distributor of a product capable of both lawful and unlawful use is liable for acts of copyright infringement by third parties using the product.  We hold that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties.

*Grokster,* 545 U.S. at 918–19.

Justice Ginsburg explained the interplay of *Sony* and *Grokster* in a consolidated statement of contributory infringement principles:

> Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of "substantial" or "commercially significant" noninfringing uses. *Sony*, 464 U.S. at 442; *see also* 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.04[A][2] (2005).  While the two categories overlap, they capture different culpable behavior.  Long coexisting, both are now codified in patent law.  Compare 35 U.S.C. § 271(b) (active inducement liability), with § 271(c) (contributory liability for distribution of a product not "suitable for substantial noninfringing use").

---

[2]  BMG has argued to the Court that the *Sony* rule applies only to products that a defendant has placed into a "stream of commerce" with no ongoing relationship to the provider.  Aside from the unworkability of such a rule where products may be sold or leased, or where sales may be recharacterized as licenses or bailments, courts have wisely rejected such a distinction as unprincipled.  The Seventh Circuit carefully analyzed and rejected an argument that the staple article of commerce doctrine did not apply to services.  *See In re Aimster Copyright Litig.*, 334 F.3d 643, 648–49 (7th Cir. 2003) (Posner, J.).

*Grokster,* 545 U.S. at 942 (Ginsburg, J., concurring).

Turning to the facts here, BMG's expert witness Barbara Frederiksen-Cross explained that Cox provides a pipe to the Internet. Trial Transcript ("Trial Tr.") 263:25–265:2. Ms. Frederiksen-Cross testified that even BitTorrent, the focus of BMG's attention in the case, can be used for purposes that do not violate the law or infringe copyrights. Trial Tr. 440:4–23. Matt Carothers, Cox's Principal Security Architect, testified that BitTorrent can be used for "anything that involves transferring data across the Internet," and that video services and video game companies use BitTorrent to distribute their products. Trial Tr. 1509:16–23.

Because the evidence conclusively established that Cox's Internet service is capable of substantial and commercially significant noninfringing uses, which immunizes Cox under *Sony,* and because BMG failed to provide evidence of active inducement of infringements by Cox to meet the *Grokster* standard, BMG's contributory infringement claim failed to satisfy either prong of contributory copyright infringement. Cox is therefore entitled to judgment as a matter of law.

**B.    The Evidence Failed to Show Any Underlying Direct Infringement.**

**1.    The Evidence Failed to Show Any Underlying Violation of Section 106(3) by Persons Using Cox's Internet Service.**

BMG provided no evidence of any distribution "to the public" of "copies" or "phonorecords" of its copyrighted works "by sale or other transfer of ownership, or by rental, lease, or lending" by any person using Cox's Internet service. 17 U.S.C. § 106(3). On that ground alone, BMG's claim of underlying direct infringement of Section 106(3) by persons using Cox's Internet service failed.

Cox understands that the Court already considered and rejected Cox's arguments that the Copyright Act at Section 101 defines "copies" and "phonorecords" as material objects and that a mere transmission does not involve a "transfer of ownership" of "copies" or "phonorecords" within

8

the meaning of Section 106(3).  The Court properly rejected BMG's effort to invoke an expansive

and indeterminate concept of "making available," determining that a mere "making available"

through an "offer to upload" does not violate Section 106(3).

Under the Court's summary judgment opinion, BMG had to show an actual, *unauthorized*

dissemination of a copyrighted work by a person using Cox's network.  Dkt. 703 ("SJ Op.") at 56.

The Court relied upon an assumption that Rightscorp was not authorized to obtain a dissemination:

> Where a copyright owner has not licensed its agent to authorize
> distribution or reproduction, the agent's downloading of the works is not
> authorized and thus does not run afoul of the general proposition that a
> copyright owner cannot infringe his own copyright.  *See Thomas,* 579 F.
> Supp. 2d at 1215 ("[A] copyright owner's authorization of an
> investigator to pursue infringement does not authorize the investigator
> to validate the third party's unlawful conduct." (internal quotations and
> alteration omitted));  *Howell*, 554 F. Supp. 2d at 985 (D. Ariz. 2008).
> Thus, the fact that Rightscorp caused over 100,000 downloads of the
> copyrighted works is sufficient to meet the volition requirement.

SJ Op. at 45–46.  Evidence at trial, however, established that BMG *did* authorize Rightscorp to

collect evidence of infringements against subscribers:  "Q. Did you understand BMG to authorize

Rightscorp to collect evidence of infringements against subscribers?  A.  Yes."  Trial Tr. 195:8–10

(Hubert Cross).  Mr. Hauprich further explained the relationship between BMG and Rightscorp as

outsourcing the combatting of piracy.  Trial Tr. 462:4–5.

The evidence that Rightscorp collected included downloads that Rightscorp obtained from

Cox IP addresses through transmissions that Rightscorp initiated.  *See* Trial Tr. 685:20–686:6.

Rightscorp initiated the transactions with peer computers connecting through Cox IP addresses.

Trial Tr. 315:12–24.  Rightscorp did not detect transmissions from Cox IP addresses to anyone

other than Rightscorp.  Trial Tr. 925:3–12.

The effect of this testimony was that Plaintiff had no evidence of any transmissions to

anyone other than Rightscorp (or its software expert Ms. Frederiksen-Cross); BMG authorized

Rightscorp's activities as part of its own anti-piracy efforts; Rightscorp initiated all transmissions it detected from Cox IP addresses; and there was no evidence of any transmissions from Cox IP addresses to anyone other than Rightscorp or Ms. Frederiksen-Cross.  Therefore there was no evidence of an actual transmission "to the public" to meet the Court's standard, much less any distribution to the public of copies or phonorecords of BMG's works.

To avoid the problems with its "making available" argument, BMG will likely argue that there was circumstantial evidence of transmissions.[3]  But evidence at trial negated even that. Inspection of the Rightscorp code revealed that peers using BitTorrent software may turn on or off a signal (an "unchoke" message) as to whether the peers are willing to share a file.  Cox's expert Christopher Rucinski testified that Rightscorp's software did not detect whether a BitTorrent peer does or does not indicate availability of the work for sharing.  Trial Tr. 1573:3–1574:24.  Thus Rightscorp's software *did not even detect a "making available" by actual "offers" to upload.*

On this record, there is no basis for any argument resting on circumstantial evidence that persons using Cox IP addresses have transmitted any files to the public.  Therefore, there is no evidence in the case of any violation of the Section 106(3) right by persons using Cox's service.

### 2.    The Evidence Failed to Show Any Underlying Violation of Section 106(1) by Persons Using Cox's Internet Service.

To establish direct infringement of the Section 106(1) right, BMG must prove reproduction of BMG's copyrighted works in copies or phonorecords by persons while using Cox's service. 17 U.S.C. §106(1).  Proof that a user merely possessed reproductions of BMG's works would not establish an underlying violation for which Cox should be responsible.  Users of Cox's service

---

[3]  A mere "offer to upload" cannot constitute competent circumstantial evidence of an actual transmission.  Otherwise the distinction between a mere "offer to upload," as a "making available" that does not rise to the level of a violation, and an actual violation would be meaningless.

may have used any number of other networks and services to obtain copyrighted materials, such as networks at college, at work, at a library, at a coffee shop, of a neighbor, or elsewhere.

BMG failed to prove direct infringement of the asserted works under Section 106(1) of the Copyright Act. There is no evidence that any person downloaded BMG's songs *while using the Cox network*. It is impossible to tell the origin of a file from the Rightscorp data. Plaintiff's expert Ms. Frederiksen-Cross testified that Rightscorp cannot detect transmissions between peers that Rightscorp does not control. Trial Tr. 390:16–21.

Plaintiffs cannot claim mere possession of a file is "circumstantial" evidence of actual downloading activity *through the Cox service*. BMG received information for at least 122 Cox account holders whom BMG accused of "egregious infringement" in this case, yet BMG failed to provide evidence of any actual reproductions by any individual while using Cox's service.

### C.   BMG Failed to Provide Evidence That Any Alleged Contributory Infringement by Cox of BMG's Works Was Willful.

Proof of willful infringement must involve more than merely establishing contributory infringement. Otherwise every contributory infringement would by definition be willful.

There was no competent evidence that any alleged contributory infringement by Cox was willful. BMG did not show Cox has knowledge of the specific activities in which its subscribers engage on the Internet; in fact, the evidence established the opposite. Nor did BMG provide any evidence that Cox's actions constituted a reckless disregard of infringements of BMG's works. The jury's verdict on vicarious liability established that Cox's relationship with its customers did not alone make Cox liable for their infringements, and that Cox lacked a direct financial interest in or the right and ability to supervise any infringements by persons using Cox's Internet service.

The only actions on which Cox's contributory liability could be based were Cox's refusal to receive Rightscorp's notices (which Cox did without knowing the notices were for BMG) or

Cox's failure to suspend or terminate subscribers at Rightscorp's direction.  Neither can constitute willful contributory infringement as a matter of law.

To the contrary, evidence showed that Cox acted in response to claims of infringement, that Cox had a system for addressing and processing complaints of infringement on the Cox network, and that Cox worked in good faith with major rightsholders and their agents to address claims and to process notices.  Trial Tr. 1387:21–1389:7.  Cox also regularly responds to subpoenas for information about defendants in John Doe lawsuits.  Trial Tr. 1404:7–12.

The evidence showed that Cox communicated with BMG's agent Rightscorp and tried to persuade Rightscorp to modify its unacceptable notices so that Cox could process them.  Cox repeatedly asked Rightscorp to remove payment demands from its notices and Cox told Rightscorp it would process notices once Rightscorp modified them.  Rightscorp refused to modify its notices and ignored Cox's repeated requests to modify its notices.

Randall Cadenhead testified that Cox began receiving notices from Rightscorp with payment demands in March 2011.  He communicated with Rightscorp on several occasions throughout 2011 and told Rightscorp that its notices were not acceptable because of the payment demands.  Trial Tr. 1391:18–1394:1; DTX2489; DTX2094.002; DTX0480; DTX2391; DTX1245.  Cox was clear that it would process Rightscorp's notices if Rightscorp would remove those demands.  Trial Tr. 1405:3–9.  Mr. Cadenhead instructed Cox's customer safety team to work with Rightscorp to address the problems with its notices.  Rather than cooperate, Rightscorp refused to work with Cox, ignored its requests, and began sending Cox threatening form letters.  Trial Tr. 1394:2–22.  It also began to inundate Cox with tens of thousands of improper notices per day, leading Cox to treat them as spam and to block them.  Trial Tr.

1407:18–1408:19.  Cox never received a John Doe lawsuit subpoena from Rightscorp.  Trial Tr.

1404:7–12.

      To show willfulness, BMG relied upon (a) evidence that Cox did not separately take a

customer-facing action on every single notice BMG claimed to have sent Cox, (b) a handful of

inflammatory emails by Cox personnel relating to terminations and reinstatement of Cox's

customers (*see e.g.*, PX1354, PX1984), and (c) two inflammatory emails by Cox personnel

provoked by Rightscorp's burdensome demands.  PX1427, PX1392.  None of those emails

pertained to BMG or its copyrights.  BMG never directly communicated with Cox but worked

solely through Rightscorp as its agent.  The Court's ruling that Round Hill did not own the

copyrights that Rightscorp sought to enforce on its behalf established that Rightscorp sent false

notices, a ruling that Cox was precluded from mentioning at trial.  Trial evidence showed that

Rightscorp (a) artificially multiplied claims and notices for the same observation at different

times, even on the same day (Trial Tr. 320:19–23, 779:17–25,  940:4–941:2, 1413:9–15, 1581:6–

21, 1587:1–1589:14, 1604:14–24); (b) made vague and false allegations by asserting actual

infringements by uploads, downloads, or offers to upload, when Rightscorp had not actually

detected the first two actions at the time of the notices[4] and the third action does not constitute a

copyright infringement (*see, e.g.*, DTX0069 (sample Rightscorp notice stating "Your ISP

account has been used to download, upload or offer for upload copyrighted content in a manner

that infringes on the rights of the copyright owner"); and (c) asked Cox to transmit extortionate

and false communications to Cox customers without making any changes to the notices.  *See,*

*e.g.*, DTX0069 ("Note to ISP: Please forward the entire notice"); Trial Tr. 800:4–22.

---

[4] *See* Trial Tr. 1573:5–20 (Mr. Rucinski testified that for the overwhelming majority of instances
(1.4 million out of 1.8 million notices at issue), Rightscorp's software did not proceed farther than
detecting the bitfield before generating notices).

In short, because Rightscorp's notices did not reflect any actual detection of infringements at the time, Cox could not have been "willfully blind" to actual infringements by failing to receive them. The scope of "willful blindness" resting on failure to accept notices could not go beyond any actual knowledge that the notices would have conveyed.  As a matter of law, Cox could not have been willfully blind to actual infringements.

For these reasons, and for the further reason that the evidence did not support a finding of contributory infringement and underlying direct infringements, Cox is entitled to judgment as a matter of law on the issue of willfulness.

## II.   COX IS ENTITLED TO A NEW TRIAL.

If the Court does not grant Cox judgment as a matter of law, Cox at least is entitled to a new trial.  Any one of the errors that Cox cites below would justify a new trial.  Taken together, however, they create a compelling basis for a new trial.

### A.   Improper Jury Instructions Prejudiced Cox.

The Court failed to give proper jury instructions on contributory infringement, direct infringement, statutory damages, the relevance of the DMCA at trial, and BMG's intentional destruction of evidence.  Each of these independently justifies a new trial.  Taken together, they create a compelling basis for a new trial.

#### 1.   Contributory Infringement (Cox's Proposed Instruction 16)

Cox's proposed instruction on contributory infringement explained the "material contribution" element: "[i]t is not a material contribution to provide a product or service that is capable of substantial non-infringing uses."  Dkt. 739 at 25 (citing *Sony*, 464 U.S. at 442).  The Court rejected Cox's proposal and did not include any definition of that term in its jury charge.  During deliberations, the jury sought the Court's guidance on the meaning of "material

14

contribution." Trial Tr. 2270:3–5. Cox again requested that the Court give the jury appropriate

guidance under the governing *Sony* standard that Cox had proposed. Trial Tr. 2271:22–2273:6.

The Court refused. *Id.* The Court's failure to instruct the jury on the meaning of that term

rendered the jury instruction on contributory infringement materially incomplete, inaccurate,

misleading, and confusing. Cox suffered substantial prejudice because, had the Court given the

proper construction, the jury would have considered whether the service Cox provides — the

Internet — is capable of substantial non-infringing uses.

The Court also failed to instruct the jury on the contributory infringement standard that the

Supreme Court articulated in *Grokster*. Absent a meaningful instruction to the jury about the *Sony*

limitation and clarifying "material contribution," the Court should have given an instruction

consistent with *Grokster* as Cox requested.[5]

### 2.      Direct Infringement (Cox's Proposed Instruction 14)

Cox's proposed jury instruction for direct infringement tracked the specific language of

Sections 106(1) and 106(3) of the Copyright Act and would have required the jury to find that a

person using Cox's Internet service, without authorization by the copyright owner, (1) reproduced

BMG's copyrighted works in copies or (2) distributed copies of BMG's copyrighted works to the

public by sale or other transfer of ownership, or by rental, lease, or lending. Dkt. 739 at 23 (citing

17 U.S.C. § 106). Instead, the Court instructed: "If you find that users of Cox's Internet service

uploaded or downloaded BMG's copyrighted works, then BMG has established that users of Cox's

Internet service have infringed BMG's copyrighted works." Trial Tr. 2147:3–10. The statute is

---

[5] The Court may have omitted a *Grokster*-based inducement-prong instruction on contributory
infringement because it believed BMG had waived any claim under that prong: BMG had
conceded in its summary judgment opposition that it had no evidence to meet that standard, it
provided no evidence at trial to meet that standard, and it did not ask for any reference to the
inducement prong in its own jury instructions (*see* Dkt. 735 at 27–31).

controlling law; the Court's instruction did not adequately inform the jury of that controlling law, and it left the jury to apply vague terms in its place. Indeed, not all uploads and downloads may have been violations of BMG's copyrights: the instruction required the jury to find direct infringement simply if a Cox user had downloaded BMG's copyrighted works, which could have included entirely lawful downloads from iTunes or other sources. The Court did not include the "without authorization from the copyright owner" language that Cox had requested in its own instruction. *See* Dkt. 739 at 23. Moreover, the Court's instruction did not require the jury to determine whether any violations had occurred when persons *were actually using Cox's service*. It allowed the jury to make a determination about actions of Cox's customers at any time or place without tying those actions to the customers' use of Cox's service. As a consequence, the jury could find a relevant direct infringement, for purposes of its verdict, simply if Cox had customers who had engaged in any uploads or downloads (lawful or not) of BMG's works on or off the Cox network. Moreover, the Court's instruction directed the jury to find direct infringement based merely upon evidence that a Cox subscriber "uploaded" a BMG copyrighted work, which ran contrary to the Court's summary judgment decision that merely "making available" does not violate Section 106(3). Given BMG's failure to show evidence of any unauthorized reproduction in copies, or distribution to the public of copies by sale, other transfer of ownership, rental lease or lending, of its copyrighted works through use of Cox's service, Cox is entitled to a new trial where the jury could consider the evidence in the context of a proper statement of the controlling law.

### 3.       Statutory Damages (Cox's Proposed Instructions 23, 24)

The Court's instruction to the jury on statutory damages was erroneous in numerous ways. Cox highlights four issues here. First, it omitted Cox's proposed limitation stating that "BMG is entitled to only one award of statutory damages for each of BMG's copyrighted works that Cox

infringed.  All the parts of a compilation (such as an album of songs) constitute one work."
Dkt. 739 at 32–33 (citing 17 U.S.C. § 504(c)); *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135,
144 (2d Cir. 2010).  In view of the evidence in the trial record that multiple works BMG asserted
were parts of a compilation, the Court's failure to give the proper instruction likely resulted in an
inflated damages amount and therefore prejudiced Cox.  *See* Trial Tr. 187:5–9 ("Q. In other words,
these are all musical compositions that are gathered together in a group--  A. That is correct.  Q. --
published together as a group. Correct?  A. That is correct."); 490:17–20 ("Q. Are you aware the
statutory damages provision of copyright law expressly refers to how compilations shall be treated
in determining damages?  A. Yes, I understand that.").

Second, the Court failed to instruct the jury that it could consider the "conduct of the
parties" in determining statutory damages.  *Compare* Dkt. 739 at 32 *with* Trial Tr. 2149:23–
2150:10.  It should have done so.  *See* 17 U.S.C. 504(c)(2); 3 Melville B. Nimmer & David
Nimmer, *Nimmer on Copyright* § 14.04[B] (1991).  Specifically, the jury could have considered
the conduct of BMG and its agent Rightscorp, including their conduct in proposing false and
threatening communications to Cox's customers and their refusal to work with Cox by modifying
notices to omit falsehoods and improper threats.

Third, the Court erred in not giving the instruction regarding innocent infringement that
Cox requested and which Cox drew from 17 U.S.C. § 504 (c)(2).  *Cf*. Dkt. 739 at 34 (Cox's
proposed instruction 24) *with* Trial Tr. 2149:17–22.  This omission prejudiced Cox by setting the
minimum amount the jury could consider at $750 per work infringed instead of $200.  While the
jury determined an amount above the floor for ordinary, non-innocent infringement, the
deliberations may have been different had the jury known the proper damages range.  The Court
compounded this error by including an instruction on willfulness.  These instructions, taken

together as the Court issued them, resulted in an imbalanced and incomplete charge where the jury considered willful infringement without also considering innocent infringement.  Trial Tr. 2149:17–22.  Courts contemplate that juries should consider the questions of willfulness and innocence together: "[i]n determining an award of statutory damages within the applicable limits set by the [Copyright] Act, a court may consider…the infringers' state of mind — whether wilful, knowing, or merely innocent."  *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d. Cir. 1992) (internal quotations omitted).  This error resulted in unfair prejudice to Cox because, if the Court had given the proper instruction, the jury could have considered all the facts in light of the law and might have returned a lower damages award.

Fourth, the Court's willfulness instruction focused the jury on whether Cox was merely aware of infringements by users of its service, not whether Cox willfully engaged in contributory infringement which is the proper inquiry.

### 4.    BMG's Intentional Destruction of Evidence (Cox's Proposed Instruction 12)

After extensive briefing during discovery, Judge Anderson found that BMG's "entire damages case is built on the premise that the Rightscorp system accurately identified infringers"; that BMG and its agent intentionally destroyed material information; that "the deposition testimony provided by Rightscorp is a poor substitute for a documented, historical version of the Rightscorp system"; and that as a result, it was impossible for Cox or the jury to know how the Rightscorp system operated during the relevant time period.  Dkt. 447 ("Spoliation Order") at 3, 5. Specifically, Judge Anderson found that "material information was intentionally destroyed and it was not lost through inadvertence or mistake."  *Id.* at 3.  Under Fed. R. Civ. P. 72(a), BMG had 14 days to challenge the order, and it did not do so.  Nor did the Court modify or set aside the recommendation.  *Id.*  Absent an objection or appeal by BMG, or modification by the Court, Judge

Anderson's findings of fact are conclusive.  *See Wells v. Shriners Hosp.*, 109 F.3d 198, 201 (4th Cir. 1997) ("If written objections to a magistrate judge's recommendations are not filed with the district court within [14] days, a party waives its right to an appeal").

"Once spoliation has been established, the sanction chosen must achieve deterrence, burden the guilty party with the risk of an incorrect determination and attempt to place the prejudiced party in the evidentiary position it would have been in but for the spoliation." *Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 287 (E.D. Va. 2001).  Any remedy the Court issued for BMG's spoliation should have met the *Trigon* standard.  Judge Anderson recommended, *at a minimum*, strongly worded jury instructions and he also recommended a separate evidentiary sanction.

The instruction Cox proposed closely tracked, and in many places was identical to, Judge Anderson's recommendation.  *Compare* Dkt. 739 at 20–21 (Cox's proposed instruction) *with* Dkt. 447.  The Court, however, gave an anemic instruction that did not come close to Judge Anderson's recommendation, much less the *Trigon* standard.  Trial Tr. 2145:1–9.  The Court compounded this error by refusing to grant any evidentiary sanction for BMG's spoliation of the only reliable evidence supporting BMG's claims.  Spoliation Order at 4.  In fact, rather than levelling the evidentiary playing field (as *Trigon* and Fourth circuit cases require), the Court chose the most inequitable and insufficient result: BMG witnesses (including an expert) were permitted to testify at length about the very evidence BMG and Rightscorp willfully destroyed (the source code).  *See, e.g.,* Trial Tr. 297:17–299:20; 300:24–301:6; 303:9–18; 308:14–309:3; 323:6–334:3; 348:11–350:5; 877:2–12; 890–12:891:8; 916:17–917:9.  Cox, however, had literally no ability to rebut that self-serving testimony.  In other words, BMG was actually rewarded for its spoliation.  Moreover, by issuing a similar instruction with respect to Cox's failure to preserve essentially immaterial DHCP logs (as Judge Anderson found), the Court unfairly equated the two issues and

minimized BMG's destruction of the most critical evidence in the case.  Trial Tr. 2145:1–16.  In

these circumstances, the Court's refusal to adopt Judge Anderson's unchallenged recommendation

warrants a new trial where the jury can assess the importance of BMG's destruction of evidence in

light of its claims of underlying direct infringements.

###### 5.      References to the Digital Millennium Copyright Act (Cox's Proposed Instruction 18)

The Court's jury instruction regarding the DMCA did not adequately account for the

numerous references to it that occurred throughout the trial even though the Court had already

disposed of the DMCA issues on summary judgment and had instructed the parties not to refer to

the Court's earlier rulings.  Dec. 1, 2015 Tr. 55:20–56:10; *see, e.g.,* Trial Tr. 131:13–16 ("Cox is

not immune from liability because it did not engage in what was required in order to have that safe

harbor protection.  If it had, we wouldn't be here today."); 132:6–8; 699:5–13; 726:25–727:2;

752:4–7 ("[W]e will allege that ISPs have vicarious liability as a result of their failure to

implement a reasonable repeat infringer disconnection policy depriving them of their safe harbor as

mentioned above"); 756:17–20 ("*If Cox is*, in fact, *entitled to be shielded from vicarious liability*

for its subscribers' illegal downloading activity, *then the only way it gets that shield is by virtue of

the DMCA safe harbor* provisions"); 759:20–23 ("And if Cox has no safe harbor under the

DMCA, then it is liable for the infringements under the theory, well tested in the courts, of

vicarious infringement").  Most egregiously, BMG's counsel stated, at Trial Tr. 2164:23–2165:1,

"You've seen a lot of references in the documents here with respect to the DMCA, Digital

Millennium Copyright Act.  You've just heard the judge instruct you that that defense is not

available to Cox and must be disregarded."  In addition, BMG counsel said, at Trial Tr. 2179:22–

23, "You've already been told by the judge that Cox does not have a DMCA defense here" and, at

Trial Tr. 2189:14–15, "The judge has already told you they don't have the DMCA protection."

Specifically, the instruction did not include the important points that the DMCA safe harbor is

*optional* and that meeting its requirements is irrelevant to determining whether Cox was liable.  *Cf.*

Dkt. 739 at 28 *with* Trial Tr. 2144:16–25.  Fourth Circuit law clearly states that the "DMCA is

irrelevant to determining what constitutes a prima facie case of copyright infringement."  *Costar,*

373 F.3d at 555.  The Court's instruction therefore did not fully and accurately state controlling

law.  Given that the transcript is replete with confusing and prejudicial references to the DMCA —

well over 200 instances in testimony alone, not including statements by BMG's counsel — Cox is

entitled to a new trial with a complete and accurate statement of the law.  Without those

instructions, Cox suffered significant prejudice from BMG's repeated references to the DMCA.

**B.    The Erroneous Exclusion of Relevant Evidence Prejudiced Cox.**

**1.    Rightscorp's Phone Script Admission Regarding Unsecured Wireless as a Major Reason for File Sharing**

The phone script that BMG's agent Rightscorp used in the course of its business to guide

interactions with accused persons (DTX0006)[6] contains admissions attributable to BMG, including

statements that most file-sharing is a result of unsecured wireless networks.  This is competent,

persuasive evidence negating BMG's allegations that the Cox subscribers BMG accused had

actually committed infringements.  The admissions rebut BMG's proof of underlying direct

infringement and go to the accuracy of Rightscorp's notices, and to the question of Cox's

responsibility for actions of persons Cox had no relationship with.  The Court's exclusion of the

evidence (Dkt. 691, granting BMG's motion in limine no. 1 (Dkt. 543)), prevented Cox from

challenging crucial aspects of BMG's evidence.

---

[6]  Unless otherwise noted, all documents Cox contends that the Court improperly excluded were lodged with the Court in connection with Cox's Offer of Proof, filed in open court on December 11, 2015, *see* Dkt. 744.

##### 2.   Cox's Evidence of Its Reasons for the Way It Handled Rightscorp's Notices and Interacted with Rightscorp

The Court improperly limited testimony from former Cox employee Mr. Cadenhead and evidence regarding Cox's reasoning and internal communications about Rightscorp's notices (DTX2411; *see also* DTX0130, DTX 0131, DTX0579, DTX2094.001, PX2281, DTX2102, and DTX2075.001, all attached in Exhibit A), the decision to decline Rightscorp's business proposal, and Cox's response to letters from Christopher Sabec (DTX2094.002–.015).  *See* Dkt. 691 granting BMG's motions in limine nos. 7 (Dkt. 562), 10 (Dkt. 571); Trial Tr. 1296:7–1306:21, 1322:11–1325:5, 1421:9–1422–19 (the Court limited Mr. Cadenhead's ability to testify on Cox's response to Rightscorp); *see also* Cox Offer of Proof at § 7(g).

The Court effectively gave BMG's witnesses free rein to tell BMG's side of the story of the Rightscorp-Cox interaction while denying Cox an opportunity to tell its side fully.  The testimony and evidence Cox would have presented absent the Court's limitations would have shown the jury that Cox refused to act on Rightscorp's notices in order to protect customers from Rightscorp's practices (which were akin to extortion and blackmail), not to turn a blind eye to infringement as BMG argued.  The Court allowed BMG and its witnesses to make extensive use of legal conclusions regarding infringement and interpretation of the DMCA safe harbor but denied Cox the opportunity to explain fully Cox's thinking on the same very legal issues that were at the heart of the interactions between Rightscorp and Cox.  The Court's grant (Dkt. 691) of BMG's motions in limine nos. 1 and 10 (Dkt. 543, limiting certain references to Rightscorp, and Dkt. 571, limiting Cox's ability to explain the reasoning for its actions) severely prejudiced Cox.  The Court ruled that Cox lacked a "competent advice-of-counsel opinion" and that Cox failed to timely notice an "advice of counsel defense."  Dkt. 691 at 4.  But Cox never asserted an advice of counsel "defense."  In any event, nothing required Cox to have a formal opinion of counsel of the sort that

the Court seemed to demand.  The Court appeared to borrow that concept from patent law, but the

Federal Circuit has expressly rejected that requirement.  *See In re Seagate Technology*, LLC, 497

F.3d 1360, 1371 (Fed. Cir. 2007).  Instead, Cox chose a limited waiver of the attorney-client

privilege in order to explain the background of the interactions between Cox and Rightscorp.

Mr. Cadenhead was the Cox employee responsible for the interactions with Rightscorp.  His

counterpart at Rightscorp, Christopher Sabec, is a lawyer, and Mr. Sabec's communications —

which went to the jury with inadequate limiting instructions — were full of legal positioning.  *See*

*e.g.*, DTX2391.  There was no "competent advice of counsel" documentation by BMG or

Rightscorp for all of Rightscorp's legal assertions, yet the Court allowed in all of Rightscorp's

self-serving legal assertions, ranging from the individual accusations of infringement to very

detailed and contentious emails to Cox, while denying Cox an opportunity to put them in context.

*See, e.g.,* Trial Tr. 1298:1–22 (the Court attempting to distinguish Mr. Cadenhead's testimony from

legal opinions offered Rightscorp employees); 667:12–668:23 (Mr. Steele opining on recent

copyright decision); 668:11–23 (Mr. Steele opining on the DMCA's requirements); 691:1–3

(same); 699:5–13 (same); 708:20–709:3 (same).  The jury was entitled to evaluate Mr.

Cadenhead's testimony and review Cox's internal communications along with other evidence of

Cox's intent in handling the Rightscorp notices to assess whether Cox's treatment of those notices

was justified and the critical issue of whether Cox was willfully blind to infringements.

### 3.       Cox's Explanation for the Design and Implementation of its Graduated Response System

#### a.       Mr. Cadenhead's Testimony Regarding the Copyright Alert System, Other ISP Practices, and Associated Documents

The Court improperly limited evidence of industry practices for handling notices of

copyright infringement.  *See* Dkt. 691 (granting Plaintiff's motion in limine no. 3, Dkt. 550).  The

Court also excluded a description of the Copyright Alert System ("CAS") (DTX0143), which

Mr. Cadenhead would have authenticated at trial. Trial Tr. 1324:17–20. This, together with the testimony Mr. Cadenhead would have given about CAS, Cox's participation in negotiations regarding CAS, and its eventual decision not to participate, would have shown Cox's understanding of industry best practices for handling copyright complaints based upon Cox's participation in the negotiations and development of the CAS, and it would have provided context for its procedures for handling notices of copyright infringement. This would have allowed the jury to evaluate properly whether Cox was willfully blind to infringements and engaged in willful infringement. The Court's exclusion of important probative evidence prejudiced Cox.

### b. Evidence of the Effectiveness of Cox's Graduated Response System and Cox's Internal Assessment of It

The Court improperly limited Cox's ability to explain its system for handling notices and why Cox believed it was properly assisting efforts to combat infringements. *See* Dkt. 691 granting BMG's motions in limine nos. 3 (Dkt. 550), 7 (Dkt. 562), and 10 (Dkt. 571). This evidence was critical to whether Cox was willfully blind to infringements of BMG works. Absent the exclusion, Cox would have presented testimony from Mr. Cadenhead about (a) its system that resulted in actual terminations and suspensions of users, (b) Cox's understanding of its own reputation for more vigorous enforcement of its graduated response system as compared to competitors, and (c) internal assessment of the DMCA, policies relating to that act, and Cox's implementation of those policies. Cox would also have presented a document demonstrating the efficacy of Cox's graduated response system in reducing claims of infringement. *See e.g.*, DTX0342 at 23–24.

In contrast, the Court permitted BMG's expert Dr. McGarty to testify about the reasonableness of Cox's policy, the implementation of the graduated response procedure, and the capabilities of Cox's system for responding to allegations of copyright infringement on its network. *See generally* Trial Tr. 1993–2025; s*ee, e.g.*, Trial Tr. 2001:8–16, 2004:9–24, 2005:1–15, 2005:23–

2007:22, 2008:4–2010:10, 2010:11–2011:4, 2024:21–2025:7.  Appearing solely in rebuttal,

Dr. McGarty analyzed internal Cox documents and fact witness testimony on the subject that the

Court had denied Cox the opportunity to put into the context of Cox's overall policy and practices.

*See, e.g.*, Trial Tr. 2001:17–23, 2007:23–2008:3, 2019:5–17,  2022:25–2024:20, 2040:17–2041:16.

The Court also excluded Cox's expert, William Rosenblatt, on these topics.  The jury therefore had

a prejudicially imbalanced and misleading exposure to a one-sided discussion of Cox's system and

its effectiveness.

### 4.   Responses to Rightscorp Notices from Other ISPs

The Court improperly excluded letters from other Internet service providers to BMG and

Round Hill, forwarded to Rightscorp.  *See* Dkt. 691 granting BMG's motions in limine no. 3 (Dkt.

550) and 9 (Dkt. 568), and precluding DTX0074–0075, DTX0218–0226, DTX0246, and

DTX2617.  These were evidence of Rightscorp's intransigence and willful ignoring of defects in

its system and notices in the face of legal rebuttals and factual challenges by other ISPs responding

to similar notices.  The documents also show the likelihood of systematic flaws in Rightscorp's

system, BMG's imputed knowledge of those flaws, and impeachment.  They would have also

buttressed Mr. Cadenhead's testimony regarding Cox's rationale for how it handled Rightscorp's

notices and were relevant to the question of whether Cox was willfully blind to infringements.

### 5.   Mr. Rosenblatt's Expert Testimony Regarding the Effectiveness of Cox's Graduated Response and Its Comparison to Other Systems

The Court also improperly excluded testimony of Mr. Rosenblatt.  *See* Dkt. 691 granting

BMG's motion in limine no. 3 (Dkt. 550) and granting Plaintiff's Daubert motion (Dkt. 449).   Mr.

Rosenblatt would have offered a favorable comparison of Cox's graduated response process to

those of other ISPs and to the CAS, including charts, figures, and demonstratives.  Given that the

Court allowed BMG and its expert Dr. McGarty to present evidence on the subject by testifying

about internal Cox emails and statements by percipient witnesses, the Court should have allowed

the jury to consider Mr. Rosenblatt's evaluation of Cox's system and its reasonableness, as well as

his analysis of Cox emails and statements by percipient witnesses.  Cox suffered prejudice because

the jury heard an unbalanced presentation of expert testimony about Cox's policies, procedures and

actions.

### 6.     Mr. Karaganis's Expert Testimony Regarding Reports BMG Relied On

Over Cox's objections, the Court improperly admitted hearsay reports regarding the

incidence of infringements on the Internet and using the BitTorrent protocol.  (Envisional Reports,

PX2429, DTX0308).  The Court also allowed BMG's experts to testify at length about those

reports.  *See, e.g.,* Trial Tr.  598:13–600:9 (Dr. Stephen Nowlis testimony), 1096:8–1098:11 &

1099:25–1101:10 (admission of DTX0308 and PX 2429 and Dr. Lehr testimony).  Given that the

Court allowed both the reports and expert testimony about them, the Court improperly excluded

testimony of Cox's expert Joseph Karaganis (Dkt. 691) who would have described extensive

literature criticizing those industry-sponsored reports and providing much-needed context for the

jury to properly evaluate the reliability of those reports.   The Court appeared to prefer "economist"

testimony over "sociologist" testimony about patterns of behavior over the Internet, disregarding

Mr. Karaganis's expertise in the numerous conflicting studies and reports in the field.

### 7.     Evidence of Rightscorp's Misconduct to Impeach Witnesses and to Show BMG's Unclean Hands Through Its Agent Rightscorp

The Court's exclusion of Rightscorp's phone script, a recording of a Rightscorp employee,

and letters to Rightscorp from numerous state attorneys general offices prejudicially prevented Cox

from impeaching Rightscorp witnesses and presenting Cox's unclean hands defense.

Rightscorp's phone script demonstrates Rightscorp's policies for communicating with

persons who respond to notices of alleged infringement.  The phone script is but one piece of an

overall enforcement effort by Rightscorp on behalf of BMG and others that relied upon false

threats and extortion.  The Court also improperly excluded letters from multiple attorneys general

raising serious questions about Rightscorp's practices arising from complaints from Rightscorp's

victims.  DTX0490, DTX0491, DTX0492, DTX2411, DTX2412, DTX2424, DTX2425,

DTX2426, DTX2427, DTX2428, DTX2429, DTX2430, and DTX2431.

The Court's order excluding these materials (Dkt. 691, granting BMG's motion in limine

no. 1 (Dkt. 543)) prejudicially prevented Cox from impeaching Rightscorp witnesses and

providing the evidence regarding Cox's defense of unclean hands.

      **C.**      **The Court's Improper Admission of Evidence Warrants a New Trial.**

      **1.**      **The Court's Failure to Impose an Evidentiary Sanction on BMG**

As explained above, Judge Anderson found that BMG intentionally destroyed the evidence

on which BMG's entire case rested.  That finding mandated an evidentiary sanction under *Trigon*

and Fed. R. Civ. P. 37.  Spoliation Order at 3, 5; *Trigon*, 204 F.R.D. at 287; *see also* Dkt. No. 16,

¶¶ 2, 22.  In its motion to enforce Judge Anderson's Spoliation Order, Cox proposed two

alternative sanctions: (1) dismissal or (2) preclusion of BMG testimony or exhibits of how

Rightscorp systems operated prior to July 2015.  Dkt. 526 at 14, 18–19.  Despite Judge Anderson's

undisturbed factual findings, the Court imposed no sanction and instead allowed BMG's fact and

expert witnesses to offer self-serving testimony about a system that its agent had intentionally

destroyed, notwithstanding Judge Anderson's finding that "the deposition testimony provided by

Rightscorp is a poor substitute for a documented, historical version of the Rightscorp system."

Spoliation Order at 5.  If *deposition* testimony was not an adequate substitute for the evidence

BMG destroyed, the Court should not have allowed *trial* testimony to serve as a substitute.  But the

Court's failure to issue an evidentiary sanction did just that, and it only increased the prejudice to Cox from BMG's/Rightscorp's intentional destruction of evidence.

### 2.      Pervasive Wrongful References to "Infringement" in BMG's Case

#### a.      Testimony Misusing the Term "Infringement"

Over Cox's objection, the Court allowed BMG's witnesses, including experts, pervasively to use the term "infringement" when referring to Rightscorp's automated observations and data. *See e.g.*, Trial Tr. 105:19–24, 114:22–24 & 130:21–24 (BMG's opening statement); *Id*. at 176:19–177:1 & (Mr. Hubert); *Id*. at 338:19–339:1 (Ms. Frederiksen-Cross); *Id*. at 474:18–475:2 & 475:19–476:2 (Mr. Hauprich) *Id*. at 656:24–657:4, 677:15–19, 679:24–680:3, 682:19–683:4, 686:13–20, 746:13–23 & 749:12–17 (Mr. Steele); *Id*. at 959:8–10 & 961:6–12 (Dr. Bardwell). This unbridled use of the term allowed the jury to conclude falsely that the references were to actual, proved infringements.  Further, for this and additional reasons, the Court should have excluded Dr. Bardwell's testimony in its entirety.  *See* Dkt. 485.  The Court's instruction did not cure the problem and instead amplified it by allowing BMG to equate a (flawed) observation with infringement.  Trial Tr. 338:1–9.

#### b.      Rightscorp's Notices

The Court erred in denying Cox's motion to preclude BMG from introducing Rightscorp's notices and offering them as proof that infringements occurred.  Dkt. 691 granting Plaintiff's motion in limine no. 1 (Dkt. 533); Trial Tr. 251:18–253:3.  The notices were hearsay, not competent evidence of the legal question of infringement, and unduly prejudicial; therefore they should have been excluded.  The Court magnified this error by refusing to issue the instruction that Cox requested, namely that the notices themselves were not proof of infringement.  *See* Dkt. 706;

Trial Tr. 235:5–14; 248:18–249:22; Trial Tr. 251:18–253:3 ("I'm going to admit the notices

without a limiting instruction") .

**c.      Envisional and NetNames Reports**

Over Cox's objections, the Court improperly admitted two non-party reports that BMG

relied on as proof that the mere use of BitTorrent equates to copyright infringement.  PX1547

(2013 NetNames report) & PX2429 (2011 Envisional report).  It also allowed multiple experts to

testify about those reports.  *See* Dkt. 691 denying Cox's motion in limine no. 2 (Dkt. 535); Trial

Tr. 588:21–595:6; 664:24–666:19; 1096:5–1099:20; 1100:1–11; 1904:15–1906:19.  These reports

are unreliable music industry sponsored research and are inadmissible hearsay because they are

out-of-court statements that BMG relied on for their truth.  Fed R. Evid. 801(c).  The Court

compounded its error by excluding Cox's expert Mr. Karaganis who would have rebutted the

reliability of the reports and attested to the extensive literature criticizing the Envisional and

NetNames reports.  This imbalanced treatment of the evidence prejudiced Cox.

**3.      Improper Evidence Regarding the DMCA Safe Harbor**

The Court's summary judgment ruling disposed of the DMCA safe harbor.  Dkts. 675, 703.

But many exhibits referred to the DMCA and there were well over 200 references to the DMCA in

testimony.  Those references were highly likely to confuse the jury without an adequate curative

instruction.  The Court should have instructed the jury, pursuant to *Costar*, 373 F.3d at 555, that

the DMCA safe harbor is entirely optional for a service provider and the absence of a safe harbor

should have no effect on the substantive claim of contributory infringement.

Moreover, the Court ruled before trial that the parties were not to tell the jury about the

Court's pretrial decisions.  Dec. 1, 2015 Transcript at 55:20–56:10.  The Court admitted Cox's

internal discussions of safe harbor conditions.  As Cox explained above in section II (A)(5) the

29

Court also allowed BMG to refer repeatedly to Cox's loss of the safe harbor.  *See e.g.*, PX1378,

PX1381 and section II(A)(5), above.  This prejudiced Cox by confusing the jury and suggesting it

could equate Cox's lack of safe harbor with liability, contrary to *Costar*.

### 4.      Irrelevant Internal Cox Emails

The Court also improperly admitted internal Cox emails about the handling of complaints

unrelated to BMG's works (or even Rightscorp's notices) and the details of how Cox implemented

its repeat infringer termination policy.[7]  That evidence was irrelevant to BMG's claims of

infringement of its works, especially when the safe harbor was no longer an issue at trial.  These

communications were also substantially more prejudicial than probative under Fed. R. Evid. 403.

### CONCLUSION

For these reasons, the Court should grant Cox's renewed motion for judgment as a matter

of law or, in the alternative, a new trial.

---

[7] *See, e.g.*, PX1373, PX1381, PX1385, PX1453, PX2042, PX2068, (purported "self-authenticating" documents admitted over Cox's objection and later introduced and discussed during witness examination, Trial Tr. 534:21-536:22, 647:25-650:11, 896:18-898:16, 911:25-912:3); PX1354, PX1356 (admitted over Cox's objection, Trial Tr. 253:20-254:20 (regarding video testimony), 526:21-528:06 (admitting exhibits)); PX1334 (admitted over Cox's objection at Trial Tr. 532:11-534:19 (context), 535:3-536:22 (argument)); portions of PX5000 and PX5003 (video testimony by Joe Sikes and Jason Zabek relating to improperly admitted exhibits, admitted at Trial Tr. 253:20-254:20, 526:18-539:4, 253:20-254:20 1130:3-23); PX1378 (admitted over Cox's objection at Trial Tr. 865:18-867:4); PX1392 (admitted over Cox's objection at Trial Tr. 705:8-707:1). The Court also admitted purportedly "self-authenticating" documents that were never used with any witness and were therefore given to the jury with no context in a manner that prejudiced Cox.  *See* PX1380, PX1386, PX1389, PX1390, PX1446, PX1932, PX1960, PX1962, PX2036, PX2067, PX2172, PX2183, PX2310, PX2589, PX2590, PX2598, PX2042 (admitted over Cox's objection, Trial Tr. 534:21-536:22, 647:25-650:11, 896:18-898:16, 911:25-912:3).

Dated:  January 26, 2016                    Respectfully submitted,

                                            */s/ Craig C. Reilly*
                                            Craig C. Reilly (VSB No. 20942)
                                            111 Oronoco Street
                                            Alexandria, VA  22314
                                            TEL:        (703) 549-5354
                                            FAX:        (703) 549-5355
                                            E-MAIL:  craig.reilly@ccreillylaw.com

                                            *Counsel for Defendants*

*Of Counsel for Defendants*

Andrew P. Bridges (*pro hac vice*)
David L. Hayes (*pro hac vice*)
Jedediah Wakefield (*pro hac vice*)
Guinevere L. Jobson (*pro hac vice*)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel:  (415) 875-2300
Fax:  (415) 281-1350
Email:    abridges@fenwick.com
          dhayes@fenwick.com
          jwakefield@fenwick.com
          gjobson@fenwick.com

Brian D. Buckley (*pro hac vice*)
Fenwick & West LLP
1191 2nd Avenue, 10th Floor
Seattle, WA  98101
Tel:  (206) 389-4510
Fax:  (206) 389-4511
Email:    bbuckley@fenwick.com

Armen N. Nercessian (*pro hac vice*)
Ronnie Solomon (*pro hac vice*)
Ciara Mittan (*pro hac vice*)
Nicholas A. Plassaras (*pro hac vice*)
Fenwick & West LLP
801 California Street
Mountain View, CA  94041
Tel:  (650) 988-8500
Fax:  (650) 938-5200
Email:    anercessian@fenwick.com
          rsolomon@fenwick.com
          cmittan@fenwick.com
          nplassaras@fenwick.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2016, the foregoing was filed and served electronically

by the Court's CM/ECF system upon all registered users.


*/s/ Craig C. Reilly*
Craig C. Reilly (VSB No. 20942)
111 Oronoco Street
Alexandria, VA  22314
TEL:  (703) 549-5354
FAX:  (703) 549-5355
E-MAIL:  craig.reilly@ccreillylaw.com

*Counsel for Defendants*