**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> COX COMMUNICATIONS, INC, *et al.*, <br><br> *Defendants*. | Civil No. 1:14-cv-1611 (LO/JFA) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
***IN LIMINE* TO PRECLUDE EVIDENCE AND TESTIMONY AS TO CERTAIN**
**INTERNAL COX EMAILS AND COMMUNICATIONS CONCERNING**
**COX'S TERMINATION POLICIES AND TREATMENT OF ALLEGED INFRINGERS**

## I.    INTRODUCTION

Pursuant to Fed. R. Evid. 402 and 403, Cox respectfully moves *in limine* to preclude Plaintiff from introducing certain emails that lack relevance to the issues remaining before the Court on remand. Under the Fourth Circuit's decision, to hold Cox liable for contributory infringement of its copyrights, BMG must show that Cox had either actual knowledge of, or willfully blinded itself to, specific instances of infringement of BMG's works. Many of the emails or communications that BMG introduced during the first trial are irrelevant to this inquiry, however, and also to any other remaining issues, such as willfulness. Moreover, to the extent that these emails retain any evidentiary value, it is substantially outweighed by a danger of unfair prejudice, confusing the jury, or needlessly presenting cumulative evidence.

The Fourth Circuit has now clarified the legal standards for knowledge and willful blindness to focus the inquiry on "specific instances of infringement." 881 F.3d 293, 311 (4th Cir. 2018) (BMG must show "that Cox knew of specific instances of infringement" of the BMG works at issue, "or was willfully blind to such instances"); *id.* at 312 (showing willful blindness requires

proof "that Cox consciously avoided learning about specific instances of infringement"). The court expressly rejected the prospect of contributory liability if Cox "only generally kn[ew] of infringement." *Id*. at 311; *see id*. ("Selling a product with both lawful and unlawful uses suggests an intent to cause infringement only if the seller knows of *specific* instances of infringement, but not if the seller only *generally* knows of infringement.") (emphases in original); *accord id*. at 311-12 ("[T]he jury [in the first trial] could have found that Cox knew of 'direct infringement of BMG's copyrighted works' by its subscribers if Cox had data showing that *some number of its subscribers* were infringing BMG's copyrights, even if the data did not show *which ones* were infringing."). As the court put it, such "generalized knowledge does not reflect an intent to cause infringement, because it is not knowledge that infringement is substantially certain to result from Cox's continued provision of Internet access to particular subscribers." *Id*. at 311.

None of the emails at issue, however, concerns any BMG work at issue, so none is relevant to actual knowledge. Nor are any of the emails at issue relevant to any deliberate action Cox took that could have willfully blinded it to specific instances of infringement of any works at issue here. And to show that Cox was willfully blind to specific instances of infringement, BMG must show that (1) Cox "subjectively believe[d] that there [wa]s a high probability that [relevant specific acts of infringement]" were occurring, *and* (2) Cox "[took] deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). The emails are not relevant to "specific instances of infringement" under that standard either.

Accordingly, Cox respectfully ask the Court to preclude BMG from offering into evidence certain emails that both (a) lack relevance to knowledge or willful blindness, because they did not inform the decision not to accept Rightscorp's notices; and (b) lack relevance to specific instances of relevant infringement, because they do not concern any BMG work at issue. Cox also asks the

Court to exclude certain communications whose negligible probative value is substantially out-weighed by the danger of prejudice to Cox.

## II.   ARGUMENT

### A.   Internal Cox emails are irrelevant to knowledge and willful blindness because they do not concern any BMG works at issue

As the Fourth Circuit's decision makes clear, to hold Cox liable for contributory infringe-ment of its copyrights, BMG must show that Cox had either actual knowledge of, or willfully blinded itself to, "specific instances of infringement" of BMG's works. 881 F.3d at 311 (BMG must show "that Cox knew of specific instances of infringement" of the BMG works at issue, "or was willfully blind to such instances"); *id.* at 312 (showing willful blindness requires proof "that Cox consciously avoided learning about specific instances of infringement").

None of the Cox emails or communications that BMG introduced during the first trial are relevant to this inquiry, because none of them directly or indirectly concern *any* of BMG's works. Because Cox decided to blacklist (and later block) Rightscorp's notices nearly a year before Rightscorp sent a single notice concerning *any* BMG work at issue, there can be no dispute that Cox lacked actual knowledge of specific infringements of the BMG works at issue. Nor could Cox have been willfully blind to any "specific instances of infringement" of BMG's works, for at least two reasons. **First**, as the Supreme Court has held, a "basic requirement[]" of willful blindness is that "the defendant must subjectively believe that there is a high probability that a fact exists." 563 U.S. at 769; *see* 881 F.3d at 309 ("the *Global–Tech* rule … is a sensible one in the copyright context."). Simply, Cox lacked any basis to form the required subjective belief about infringement of *any* BMG work at *any* relevant time. Before February 5, 2012, no relevant infringement had yet occurred. And Cox could not have formed a subjective belief about *any* work that was the subject

of a notice from Rightscorp, since Cox blacklisted Rightscorp's notices after March 9, 2011, and blocked them entirely after November 1, 2011.

BMG has no evidence, cannot prove, and in any event lacks standing to claim, that *any* third party works were infringed. Indeed—despite ample opportunity to seek such information in discovery—BMG made no attempt to obtain evidence about actual infringement of *any* copyrighted works by *any* subscribers. *See* ECF 794 ("Somewhat curiously, BMG did not attempt to gather … evidence [about alleged infringements of its own works] from the list of Cox subscribers BMG received during discovery.") Accordingly, BMG could not show that Cox had knowledge of, or was willfully blind to, *any* specific instances of infringement—let along with respect to works actually at issue here. And even if BMG could show that Cox willfully blinded itself to knowledge that *some* subscribers were using Cox's services to infringe *some* copyrights—which BMG cannot show—that would be insufficient to show that Cox willfully blinded itself to knowledge concerning any relevant works at issue *here*. Such a showing would merely go to willful blindness to infringement in general, and not the knowledge of "specific instances of infringement" that the Fourth Circuit requires. 881 F.3d at 312.

Accordingly, Cox respectfully asks the Court to preclude BMG's use of internal Cox communications whose purported relevance is to Cox's knowledge or willful blindness, but which do not concern any of BMG's works at issue here. Specifically, Cox asks the Court to preclude the use at re-trial of the following emails and Cox internal communications (which are summarized at Attachments A and B hereto[1]):

PX1340; PX1354; PX1358; PX1378; PX1381; PX1382; PX1388; PX1389; PX1391; PX1392; PX1427; PX1446; PX1453; PX1984; PX2029; PX2036; PX2060; PX2068; PX2589.

---

[1] Attachment A organizes the referenced exhibits by date; Attachment B organizes them by exhibit number at trial.

**B.**   **At a minimum, internal Cox emails are irrelevant to knowledge and willful blindness unless they were sent to, or received by, the Cox employee on whose authority Rightscorp's notices were refused, blacklisted or blocked.**

Cox decided to blacklist (and later block) Rightscorp's notices nearly a year before Rightscorp sent a single notice concerning *any* BMG work at issue. Accordingly, there can be no question that Cox did not obtain actual knowledge of specific infringements of the BMG works at issue, and BMG's theory of contributory infringement relies on willful blindness.

Even then, moreover, internal Cox emails are relevant to willful blindness only to the extent that they were relevant to specific instances of infringement involving BMG works, and only to the extent that they informed the decision, by a Cox employee with decision-making authority, to blacklist or block Rightscorp's notices or other relevant notices. Because the emails cannot satisfy that standard, the Court should preclude use of such emails at trial.

As noted above, to hold Cox liable for contributory infringement under a willful blindness theory, BMG must show "that Cox consciously avoided learning about specific instances of infringement." 881 F.3d at 312. To do so, BMG must show both (1) that Cox "subjectively believe[d] that there [wa]s a high probability that [relevant specific acts of infringement]" were occurring, *and* (2) that Cox "[took] deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011); *BMG*, 881 F.3d at 309 ("the *Global-Tech* rule developed in the patent law context, which held that contributory liability can be based on willful blindness but not on recklessness or negligence, is a sensible one in the copyright context"). Both subjective belief and deliberate avoidance are required: one without the other is insufficient. *Id*. at 308-09 (*Global-Tech* "'requires proof the defendant knew the acts were infringing'" (citing *Global-Tech*, 563 U.S. at 769-71). And, because avoidance of "that fact" must be "deliberate," the belief must be held, and actions toward avoidance taken, by the same decision-maker at Cox

(which, as a corporation, can act only through its agents, officers, and employees, *see, e.g.*, *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 335 (E.D. Va. 2007)).[2]

The decision to block Rightscorp was not made by "Cox" in the abstract: it was, and could only be, made by an employee of Cox who possessed and exercised the requisite authority. Here, it was Cox's Privacy Counsel who had and exercised such authority. After Rightscorp sent its first notice to Cox on March 9, 2011, Cox—primarily through its in-house Privacy Counsel—engaged Rightscorp extensively. At the same time, Cox's in-house counsel and various Cox employees engaged in internal discussions concerning how Cox should handle the notices. Those internal discussions are relevant here only to the extent that they informed the initial decision of Cox's Privacy Counsel that Cox would not process the notices, and later decision to blacklist Rightscorp's notices. Again, when Rightscorp suddenly and drastically increased its volume of notices roughly eight months later, it was Cox's Privacy Counsel who, after some additional internal discussions with other Cox personnel, authorized blocking Rightscorp's notices at the server level. Those internal discussions are likewise relevant insofar as they informed his decision-making concerning Rightscorp.

Opinions and beliefs expressed by Cox employees who were outside the chain of decision-making, lacked relevant authority, and did not make the decision as to how to handle Rightscorp's notices, however, are irrelevant to willful blindness and knowledge in both the practical and the legal senses, *unless* it can be shown that their opinions and beliefs somehow informed the decision by Cox's Privacy Counsel that those notices should not be processed. *See, e.g.*, *Worldwide Network*

---

[2] This does not mean that the opinions or knowledge of each and every subordinate employee may be automatically imputed to the corporation as a whole. *See, e.g.*, *Tysinger Motor Co. v. United States*, 428 F. Supp. 2d 480, 485 (E.D. Va. 2006) (Kelley, J.) (noting that, "[w]hile a corporation can only act through its employees and agents, such imputation is not automatic," and ordering a refund of a penalty assessed against a corporation whose employee had neglected to pay certain taxes on behalf of the company).

*Servs., LLC v. Dyncorp Int'l, LLC*, 365 F. App'x 432, 455–56 (4th Cir. 2010) (holding, in context of employment discrimination claim, that "the focus must be on the motivations of those agents of the corporation *who actually made the ... decision* on behalf of the corporation") (emphasis in original); *Tysinger Motor*, 428 F. Supp. at 485 ("While a corporation can only act through its employees and agents, such imputation is not automatic.").

Accordingly, the Court should preclude BMG from introducing internal Cox emails that discuss Cox's termination policies or actions against alleged infringers, but which were neither sent to nor received by Cox's Privacy Counsel, who both had the authority to make, and actually made, the decision to block Rightscorp's notices. Absent a showing of some nexus to the decision to block Rightscorp's notices, the Court should preclude BMG from introducing at least the following irrelevant emails at trial: PX1340; PX1354; PX1358; PX1378; PX1381; PX1382; PX1388; PX1389; PX1391; PX1392; PX1427; PX1446; PX1453; PX1984; PX2029; PX2036; PX2060; PX2068; PX2589.

**C.    At a minimum, Cox emails concerning third-party infringement allegations from before February 5, 2012, are not relevant to show willful blindness or willfulness.**

Alternatively, if the Court were to conclude that some internal Cox emails may be relevant to willful blindness or willfulness even though they do not address the decisions to blacklist or block Rightscorp's notices, it should limit such emails to those sent between February 5, 2012 (when Rightscorp sent the first notices for BMG's works at issue) and November 26, 2014 (when BMG filed suit). This is the period during which *all* relevant alleged infringements occurred, and the only period during which Cox could, even in theory, have willfully blinded itself to relevant specific instances of relevant infringement. Indeed, emails that predate the direct infringements of BMG's works cannot meet the *Global-Tech* standard, which requires both that Cox "subjectively

believe[d] that there [wa]s a high probability that a fact [here, relevant specific acts of infringe-ment] exist[ed]," *and* that Cox "[took] deliberate actions to avoid learning of that fact." 563 U.S. at 769; 881 F.3d at 311.

For the same reason, the Fourth Circuit's decision confirms that emails from outside this period can have no relevance to willfulness. As BMG itself argued on appeal, "the test [of willful-ness]" for contributory infringement is whether Cox was aware of relevant acts of *direct* infringe-ment *by its users* (BMG Br. 59 (4th Cir. Dkt. No. 44))—a test that plainly cannot be met by com-munications *pre-dating* the alleged direct infringement at issue. That is, even if Cox's conduct before the relevant period were somehow relevant to willfulness—and it is not—the Court should not permit it for at least three independent reasons.

*First*, evidence of such conduct would be unnecessarily duplicative: BMG conducted and obtained ample discovery concerning the *relevant* time period.[3]

*Second*, permitting BMG to introduce this evidence would create a substantial danger of confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence. Fed. R. Evid. 403. BMG has not pleaded, and has made no effort to prove, *any* direct infringement of third-party works (where it would lack standing), or infringement of *any* works outside the relevant time period. BMG should not be permitted to argue, let alone as-sume, that (a) there was direct infringement of third-party works unrelated to any claims at issue here; (b) Cox was contributorily liable for that unrelated direct infringement; (c) Cox's contribu-tory infringement was willful; *or* (d) Cox's willfulness there is relevant to show willfulness here.

---

[3] For the same reason, even if the Court were to conclude that evidence concerning third-party works is relevant to some issues here, BMG would not be prejudiced if evidence from before this relevant time period is excluded—it has ample evidence from February 2012 onward.

*Third*, arguments based on evidence from outside the relevant period, for works not at issue, amounts to the type of improper "propensity" character evidence that the Federal Rules of Evidence prohibit. Fed. R. Evid. 404(b)(1) ("Evidence of a … wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"); *and see, e.g.*, *Byrne v. Gainey Transp. Servs., Inc.*, No. 04-2220-KHV, 2005 WL 1799213, at *1 (D. Kan. July 11, 2005) ("Rule 404(b) does not allow evidence of prior acts to prove [plaintiff's] character and to insinuate that she *would have acted* in conformity with that character.") (emphasis added); *Ritch v. A M Gen. Corp.*, No. Civ. 93-451-SD, 1997 WL 834214, at *3 (D.N.H. Nov. 17, 1997) (same). Even evidence purportedly offered to show "an organization's routine practice"—for which purpose BMG's handful of cherry-picked emails are plainly insufficient—must comply with Federal Rule of Evidence 406. Before BMG may be permitted to introduce such evidence, Cox must be permitted to show countervailing instances in which the conduct of Cox employees showed that Cox was *not* willful. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 512 (4th Cir. 1977) (holding that under Rule 406, "[n]ecessarily… regularity of conduct such as that charged against defendants requires some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place."); *see, e.g., Loussier v. Universal Music Grp., Inc.*, No. 02 CV 2447 (KMW), 2005 WL 5644420, at *3 (S.D.N.Y. Aug. 30, 2005) ("the regularity of a party's conduct is tested by the ratio of reaction to situations, which requires some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place") (quotation marks and citation omitted). This inquiry would require a time-wasting mini-trial for the sake of evidence that, as discussed above, would be at best cumulative, misleading, and confusing to the jury.

**D.    Certain emails from mid-level Cox employees expressing opinions about the Digital Millennium Copyright Act and Rightscorp lack relevance, are highly prejudicial to Cox, and should be excluded.**

In a handful of instances, mid-level Cox employees Jason Zabek and Joe Sikes used coarse, intemperate, or sensationalized language to express opinions about the Digital Millennium Copyright Act (DMCA), Rightscorp (which sometimes styled itself "Digital Rights Corp."), or the possibility of litigation over Rightscorp's notices. While BMG has repeatedly deployed such emails for their shock value, they have little or no evidentiary value to the issues on remand, and at a minimum any probative value they may have is far outweighed by the near-certainty of prejudice to Cox. Those emails should thus be excluded.

Statements by Cox employees expressing their opinions about the DMCA, their frustration at Rightscorp's tactics, or their speculation about possible litigation over Rightscorp's notices, are irrelevant to show knowledge, willful blindness or willfulness, and have no relevance to *any* specific instances of infringement on Cox's network. Contrary to BMG's apparent position, these statements about the DMCA do not express an attitude toward copyright infringement: they do not use "DMCA" as a shorthand for copyright infringement, but to refer to the Act itself. For example, when Cox employee Jason Zabek wrote "F the DMCA!!!" in early 2014 to a colleague at another ISP, he was plainly expressing frustration with the Act itself and complying with it. But frustration with the DMCA does not amount to an endorsement of infringement or an intent to be willfully blind, particularly since compliance with the DMCA is optional. Furthermore, the DMCA itself is not at issue on remand.

BMG's fondness for these emails stems not from their evidentiary value, but from the prejudicial effect of their intemperate language on a jury. That prejudicial effect substantially outweighs any probative value of these irrelevant expressions of opinion from mid-level Cox employees, and the Court should bar their use at trial. In particular, and without limitation, the Court

should bar the following documents (further described at Attachment A hereto) that were listed as exhibits at the first trial: PX1340; PX1392; PX1427.

## III.   CONCLUSION

For the foregoing reasons, Cox respectfully asks that the Court bar BMG from introducing at least the following documents, or testimony concerning them, or in the alternative limit their use to exclude prejudicial and irrelevant language as discussed above: PX1340; PX1354; PX1358; PX1378; PX1381; PX1382; PX1388; PX1389; PX1391; PX1392; PX1427; PX1446; PX1453; PX1984; PX2029; PX2036; PX2060; PX2068; PX2589.

Dated: July 20, 2018

Respectfully submitted,

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

MICHAEL S. ELKIN (*pro hac vice*)
THOMAS PATRICK LANE (*pro hac vice*)
SETH E. SPITZER (*pro hac vice*)
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
Email: melkin@winston.com
Email: tlane@winston.com
Email: sspitzer@winston.com

JENNIFER A. GOLINVEAUX (*pro hac vice*)
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
(415) 591-1000
Email: jgolinveaux@winston.com

**ATTACHMENT A**

Trial Exhibits at Issue, Organized by Date

| Tr. Ex. | Description | Date |
|---------|-------------|------|
| PX1381 | 1/17/2010 Email from J. Zabek to A. Dameri et al. RE Account [redacted] - Zabek Exh. 14 | 1/17/2010 |
| PX1378 | 4/10/2010 Email from R. Vredenburg to M. Moy FW: DMCA Termina-tions - Zabek Exh. 11 | 4/10/2010 |
| PX1382 | 6/22/2010 Email from C. Fraysier to J. Sikes et al. RE: Termination clarifi-cation - Zabek Exh. 15 | 6/22/2010 |
| PX2068 | 8/11/2010 Email from J. Zabek to HRD-TOC et al. re: Customers Termi-nated for DMCA | 8/11/2010 |
| PX1984 | 3/5/2011 email from J. Zabek to CCI-Hampton Roads and CCI-Abuse Cor-porate re: CATS 7442149 | 3/5/2011 |
| PX1391 | 3/11/2011 Email from J. Zabek to J. Barnhardt et al. RE: CATS ticket info on cust acct - Zabek Exh. 24 | 3/11/2011 |
| PX1392 | 3/24/2011 Email on behalf of J. Zabek to ipe@policycircle.com re: [ipe] digitalrightscorp.com - Zabek Exh. 25 | 3/24/2011 |
| PX1388 | 4/20/2011 Email from J. Zabek to J. Sikes et al. re: 7803013 - Zabek Exh. 21 | 4/20/2011 |
| PX2029 | 8/22/2011 email from J. Sikes to J. Zabek, B. Beck, and CCI-Abuse Corpo-rate re: CATS Suspend vs Terminate | 8/22/2011 |
| PX1358 | 1/27/2012 Conversation with joesikesati at Fri 27 Jan 2012 05:54:13 PM EST on G Chao - Sikes Exh. 23 | 1/27/2012 |
| PX2060 | 2/15/2012 Email from A. Dameri to CCI - Abuse Corporate and D. Sim-mons re: DMCA Clarification | 2/15/2012 |
| PX1389 | 12/12/2012 Email from J. Sikes to A. Dameri RE: Termination review CATS ticket 12056367 - Zabek Exh. 22 and Dameri Exh. 24 | 12/12/2012 |
| PX1340 PX1427 | 2/19/2014 Email from M. Carothers to J. Zabek et al. RE: DMCA com-plaint spike? - Carothers Exh. 22 | 2/19/2014 |
| PX1354 PX1446 | 3/27/2014 Email from R. Vredenburg to J. Sikes et al. RE: Request for Termination – CATS Ticket 18640545 - Sikes Exh. 19 | 3/27/2014 |
| PX2036 | 5/27/2014 Email from J. Sikes to CCI-Hampton Roads and CCI-Abuse Corporate re: Termination Review - 19991279 | 5/27/2014 |
| PX2589 | 6/6/2014 Email from J. Sikes to HRD-TOC (CCI-Hampton Roads) et al. RE: Termination Review - 19751123 | 6/6/2014 |
| PX1453 | 6/12/2014 Email from A. Thompson to HRD-TOC (CCI Hampton Roads) RE: Termination review - 19029047 - Vredenburg Exh. 10 | 6/12/2014 |

## ATTACHMENT B

Trial Exhibits at Issue, Organized by Trial Exhibit No.

| Tr. Ex. | Description | Date |
|---------|-------------|------|
| PX1340 (PX1427) | 2/19/2014 Email from M. Carothers to J. Zabek et al. RE: DMCA complaint spike? - Carothers Exh. 22 | 2/19/2014 |
| PX1354 (PX1446) | 3/27/2014 Email from R. Vredenburg to J. Sikes et al. RE: Request for Termination – CATS Ticket 18640545 - Sikes Exh. 19 | 3/27/2014 |
| PX1358 | 1/27/2012 Conversation with joesikesati at Fri 27 Jan 2012 05:54:13 PM EST on G Chao - Sikes Exh. 23 | 1/27/2012 |
| PX1378 | 4/10/2010 Email from R. Vredenburg to M. Moy FW: DMCA Terminations - Zabek Exh. 11 | 4/10/2010 |
| PX1381 | 1/17/2010 Email from J. Zabek to A. Dameri et al. RE Account [redacted] - Zabek Exh. 14 | 1/17/2010 |
| PX1382 | 6/22/2010 Email from C. Fraysier to J. Sikes et al. RE: Termination clarification - Zabek Exh. 15 | 6/22/2010 |
| PX1388 | 4/20/2011 Email from J. Zabek to J. Sikes et al. re: 7803013 - Zabek Exh. 21 | 4/20/2011 |
| PX1389 | 12/12/2012 Email from J. Sikes to A. Dameri RE: Termination review CATS ticket 12056367 - Zabek Exh. 22 and Dameri Exh. 24 | 12/12/2012 |
| PX1391 | 3/11/2011 Email from J. Zabek to J. Barnhardt et al. RE: CATS ticket info on cust acct - Zabek Exh. 24 | 3/11/2011 |
| PX1392 | 3/24/2011 Email on behalf of J. Zabek to ipe@policycircle.com re: [ipe] digitalrightscorp.com - Zabek Exh. 25 | 3/24/2011 |
| PX1427 (PX1340) | 2/19/2014 Email from M. Carothers to J. Zabek et al. RE: DMCA complaint spike? - Carothers Exh. 22 | 2/19/2014 |
| PX1446 (PX1354) | 3/27/2014 Email from R. Vredenburg to J. Sikes et al. RE: Request for Termination – CATS Ticket 18640545 - Sikes Exh. 19 | 3/27/2014 |
| PX1453 | 6/12/2014 Email from A. Thompson to HRD-TOC (CCI Hampton Roads) RE: Termination review - 19029047 - Vredenburg Exh. 10 | 6/12/2014 |
| PX1984 | 3/5/2011 email from J. Zabek to CCI-Hampton Roads and CCI-Abuse Corporate re: CATS 7442149 | 3/5/2011 |
| PX2029 | 8/22/2011 email from J. Sikes to J. Zabek, B. Beck, and CCI-Abuse Corporate re: CATS Suspend vs Terminate | 8/22/2011 |
| PX2036 | 5/27/2014 Email from J. Sikes to CCI-Hampton Roads and CCI-Abuse Corporate re: Termination Review - 19991279 | 5/27/2014 |
| PX2060 | 2/15/2012 Email from A. Dameri to CCI - Abuse Corporate and D. Simmons re: DMCA Clarification | 2/15/2012 |
| PX2068 | 8/11/2010 Email from J. Zabek to HRD-TOC et al. re: Customers Terminated for DMCA | 8/11/2010 |
| PX2589 | 6/6/2014 Email from J. Sikes to HRD-TOC (CCI-Hampton Roads) et al. RE: Termination Review - 19751123 | 6/6/2014 |

## CERTIFICATE OF SERVICE

I certify that on July 20, 2018, a copy of the foregoing **Memorandum of Law in Support of Defendants' Motion *in Limine* to Preclude Evidence and Testimony as to Certain Internal Cox Emails and Communications Concerning Cox's Termination Policies and Treatment of Alleged Infringers** was filed electronically with the Clerk of Court using the ECF system which will send notifications to ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*