**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, *et al.*,<br><br>                    *Plaintiffs*,<br><br>        v.<br><br>COX COMMUNICATIONS, INC, *et al.*,<br><br>                    *Defendants*. | Civil No. 1:14-cv-1611 (LO/JFA) |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MO-TION *IN LIMINE* TO PRECLUDE EVIDENCE AND TESTIMONY AS TO CERTAIN INTERNAL COX EMAILS AND COMMUNICATIONS CONCERNING COX'S TERMINATION POLICIES AND TREATMENT OF ALLEGED INFRINGERS**

## I.    INTRODUCTION

Under the Fourth Circuit's ruling, Cox's actual knowledge of, or willful blindness to, spe-cific alleged infringements of BMG works at issue is the linchpin of this case.  But it is undisputed that Cox did not get actual notice of the alleged infringements, because notices of infringement from Rightscorp were blocked at Cox's server before BMG became a Rightscorp client, and so no BMG notices were ever received by Cox.  And "generalized knowledge" by Cox of "infringement … occurring somewhere on [Cox's] network … [is] … exactly what falls short under *Sony*" of actual knowledge of the BMG infringement in dispute. 881 F.3d 293, 311.

BMG must therefore argue that Cox's decision to block the Rightscorp notices amounted to willful blindness on Cox's part, specifically as to the alleged infringement of the disputed BMG works.  That makes the *bona fides* of Cox's decision to block the notices a central issue in the case. Cox believes that the evidence will show that the notices were blocked in good faith and for legit-imate reasons.  BMG disagrees.  The jury will decide who is right.

It is in light of the scope of the case thus understood that Cox brings this motion.  Contrary to BMG's attempts to make it appear that Cox is seeking to exclude large swaths of relevant documents, Cox simply seeks to exclude emails—including certain emails that BMG plainly seeks to introduce for their prejudicial effect on the jury, not for their negligible probative value—that lack relevance because they do not go to the surviving issues of actual notice or willful blindness.  As BMG concedes, and as this Court has observed, the emails in question do not go to any of the BMG works at issue.  *See, e.g.*, Opp. 2 ("All of this evidence is highly probative, *notwithstanding that it is not specific to infringements of BMG's works*") (emphasis added); Opp. 8 (quoting the Court's pre-appeal finding that "the emails, *even though they are not of BMG clients*, go to actual knowledge") (emphasis added); Opp. 10 ("The Emails Are Relevant *Notwithstanding That They Are Not Specific to BMG Works*") (emphasis added).  Accordingly, they cannot go to actual notice of the BMG works of the sort required by the Fourth Circuit's decision.

Nor can the emails in dispute go to the bona fides of Cox's decision to block the BMG notices, since none of them addresses that decision.  Indeed, the individual who actually made that decision repeatedly testified that he was unaware of the emails, never received them, and in many cases did not even know the people who had sent them.

BMG thus spends 20 pages arguing that the Court should permit it to introduce the emails because they prove a "scheme," "system," or "architecture" on Cox's part to ignore *all* copyright infringement, including the alleged BMG infringement.  Opp. 1, 2 (three times), Opp. 4, 7, 10, 11, 16 (three times), 17 (twice), and 19.  In addition, notwithstanding its admissions that the emails do not address specific infringements of BMG's works, BMG also makes a number of contradictory and demonstrably false claims in an attempt to reclaim their relevance.  For example, in the very

first sentence of its brief, BMG declares that Cox's "system for handling contributory infringe-ment" is "the same system that it applied to the BMG notices on which this suit is based."  Opp. 1.  This is simply false, and BMG knows it, as there is no dispute—and BMG has repeatedly acknowledged—that those notices were blocked, and thus Cox never received them.  BMG's sim-ilar claim that Cox "knew" that the blocked Rightscorp notices "identified specific instances of infringement, including of BMG's works" (Opp. 2) is also false.

BMG's sweeping theories of relevance, however, pose an insoluble dilemma.  Under the legal standard set by the Fourth Circuit, if BMG cannot prove that Cox had actual knowledge of the specific BMG works at issue, then evidence of generalized knowledge of other works is irrel-evant; and if BMG can prove Cox had knowledge of or was willfully blind to specific acts of infringement, then it does not need evidence of generalized knowledge, and such evidence will only serve to confuse the jury.  Both Supreme Court and Fourth Circuit precedent require, at a minimum, that admissible evidence must have a nexus to actual knowledge of, or willful blindness to, *specific* instances of infringement of BMG's works.  We are not suggesting here that evidence meeting this a standard is irrelevant, or urging the Court to exclude such evidence.  But where—as here—BMG fails to show a nexus to a live issue such as Cox's decision to block Rightscorp's notices, the Court should exclude the evidence as irrelevant.[1]

---

[1]  BMG also argues that Cox has waived any objection to the relevance of these emails by failing to raise it on appeal.  BMG cites no authority (and Cox is aware of none) for the proposition that Cox was required to anticipate and argue, in its appellate brief, every evidentiary issue that might possibly arise under the new legal standard—which was announced for the first time in the Fourth Circuit's decision.  BMG cites *United States v. Pileggi*, 703 F.3d 675, 680 (4th Cir. 2013), for the proposition that a party cannot "use the accident of a remand to raise an issue that it could just as well have raised in the first appeal."  Opp. 10.  But the Fourth Circuit there had vacated a criminal sentence and remanded for the sole purpose of resentencing; because "the opinion limited the dis-trict court to correcting only the incarceration term of [the] sentence," the trial court was barred from reconsidering other matters on remand.  *Pileggi* is irrelevant, as Cox's evidentiary issues could not have been raised before the Fourth Circuit set the new standard that caused them to arise.

II.   **ARGUMENT**

A.   **The Emails at Issue Lack Relevance Because There Is No Nexus to Any Relevant Policy, Decision, or Action Concerning BMG.**

As noted above, it is undisputed that the emails at issue do not pertain to any BMG works, and there is no suggestion that any of them relate to the decision to block Rightscorp's notices, either before or after BMG became a Rightscorp client. Accordingly, they are not relevant to any issue in the case. BMG's substitute for relevance is attorney argument that attempts to stitch together the emails in question into a putative overarching "scheme" of ignoring copyright infringement, that encompassed the alleged infringements of BMG's works at issue. The following passage is typical of BMG's argument:

> The emails reflect the full architecture of and purposes behind Cox's policies for tolerating infringement on its network, of which the blacklisting of Rightscorp was only one piece. It is not appropriate to separate out the blacklisting of Rightscorp and assume as a matter of law that it was motivated by intentions different from those underlying the rest of Cox's system for ignoring infringement. The jury is more than entitled to conclude that the emails disclosing the purposes and intentions of Cox's abuse staff in addressing infringement on its network are relevant to the decision to blacklist Rightscorp.

Opp. 10; *see also* Opp. 1, 2, 4, 7, 10, 11, 16, 17, and 19 (stating variations of the same theme).

But the emails in question *do not mention BMG*, and there is simply no evidentiary predicate establishing that the non-BMG emails were "one piece" of anything, let alone a broad "architecture" underlying a "policy for tolerating infringement on its network." Indeed, BMG's explicit justification for introducing the emails is that they will lead "[t]he jury … to conclude that the emails disclosing the purposes and intentions of Cox's abuse staff in addressing infringement on its network are relevant to the decision to blacklist Rightscorp." Opp. 10. But this leap—from evidence showing generalized evidence of "infringement on [Cox's] network," to the inference that Cox therefore had knowledge that specific acts of infringement involving the BMG works at

issue were substantially certain to occur—is exactly what the Fourth Circuit concluded was not probative of Cox's liability:

> Cox maintains that … "generalized knowledge – that infringement was occurring somewhere on its network—is exactly what falls short under *Sony*." We must agree. Selling a product with both lawful and unlawful uses suggests an intent to cause infringement only if the seller knows of *specific* instances of infringement, but not if the seller only *generally* knows of infringement. *See Ludvarts*, 710 F.3d at 1072 (holding that contributory copyright infringement "requires more than a generalized knowledge ... of the possibility of infringement"; it requires "specific knowledge of infringement"). A seller who only generally knows of infringement is aware that "some of [his] products will be misused"—but critically, not *which* products will be misused. *See Grokster*, 545 U.S. at 932–33, 125 S.Ct. 2764. Thus, when that seller makes a sale to a specific customer, the seller knows only that the customer *may* infringe, not that the customer is substantially certain to do so.

881 F.3d at 311 (emphasis in original; record citations omitted). In short, the emails in dispute cannot be used to bootstrap knowledge of non-BMG infringement into evidence of contributory infringement, because that requires knowledge specific to BMG. Viewed most favorably to BMG, these emails show at the most that Cox knew "'that some of [its] products will be misused'—but critically, not *which* products." *Id.* To allow such evidence to go to the jury is—as BMG boasts— to invite the jury to make the very leap of culpability that the Fourth Circuit has forbidden.

Aware of this difficulty, BMG seeks to bolster its relevance argument by repeatedly quoting the Fourth Circuit's statement that the record contains "powerful evidence from which a reasonable jury could find that Cox willfully blinded itself to specific instances of infringement by its subscribers." Opp. 9, 11 (quoting 881 F.3d at 312). In the passage quoted, however, the Fourth Circuit explained that the evidence in question was not the evidence that is the subject of this motion, but rather "evidence that Cox prevented itself from receiving any of the more than one million notices Rightscorp sent on BMG's behalf. Indeed, that appears to be the primary theory for liability advanced by BMG." *Id.*[2]

---

[2] Without quoting the relevant text, BMG also cites pages 300 and 304 of the Fourth Circuit's opinion. But page 300 merely summarizes BMG's evidence, without adding a gloss of approval

None of the emails at issue mentions Cox's decision to block Rightscorp's notices, let alone any notices concerning BMG's works. Cox respectfully submits that the evidence concerning that decision will ultimately show that "BMG's primary theory of liability" is built on a foundation of sand, and that the Rightscorp notices were blocked from Cox's server for perfectly legitimate reasons. But that debate is for another day: the relevant point here is that the evidence that the Fourth Circuit deemed relevant to contributory infringement is *not* the evidence that this motion seeks to preclude. BMG's representations to the contrary mischaracterize the Fourth Circuit's ruling.

### B. Uncontradicted Testimony Shows That Cox's Privacy Counsel Was the Sole Relevant Decision-Maker Concerning Cox's Treatment of Rightscorp's Notices, and These Documents Do Not Go to His State of Mind.

BMG's theory—that the emails in question are probative of an intricate "scheme" by Cox to encourage infringement of BMG's works on its network—fails for an additional reason. For the disputed emails to establish that Cox blocked the BMG emails in furtherance of such a scheme, BMG must show that the emails provide evidence that the person at Cox who actually decided to block the Rightscorp emails did so in furtherance of the alleged scheme or, at a minimum, that the relevant decision-maker was aware of the "scheme" purportedly established by the disputed emails, and blocked the Rightscorp notices in furtherance of it. BMG cannot make this showing.

The person who decided to block the Rightscorp emails is Cox's Privacy Counsel, Randall Cadenhead. He unequivocally testified that he "instructed" the Customer Safety Team "to block the [Rightscorp] notices." Trial Tr. 1408:10-14. Further, he repeatedly testified that from the very

---

or disapproval to it, and page 304 addresses the evidence on which the Fourth Circuit relied in affirming this Court's DMCA safe harbor ruling, an issue that is no longer in the case. Needless to say, Cox's inability to bring its review procedure within the DMCA safe harbor is not evidence that Cox knowingly contributed to copyright infringement by its customers. The evidence that the Fourth Circuit relied on to find a question of fact on the contributory infringement issue related solely to Cox's decision to block the Rightscorp emails.

first it was his decision not to accept notices with settlement demands:  he, and he alone, directed

Cox's response to such notices.  Trial Tr. 1390:2-19 ("[O]n my instruction we got back to PayArt-

ists, informed them that that wasn't acceptable, that wasn't proper…. Q: Who made the decision

to give that response to PayArtists?  A: Oh, it was my decision. It was my job."); *id.* at 1390:20-

1391:8 (testifying that when Cox received such notices from Copyright Enforcement Group, "we

did the same thing—on my instruction, we did the same thing").  Thus, when Cox first began to

receive notices from Rightscorp, it was Cadenhead's decision, on his sole authority, to reject those

notices for exactly the same reasons:  "[I]n the same fashion I instructed the Customer Safety Team

that they should get back with Rightscorp or Digital Rights and explain the problem, discuss the

issue and try to get it resolved."  Trial Tr. 1391:18-25.[3]  BMG's contention that "it was … Mr.

Zabek[] that made the decision to delete Rightscorp's notices" is simply false:  BMG's putative

evidence shows only that Zabek sometimes had a role in *implementing* Cadenhead's instructions

and *effectuating* his decisions.

The significance of these facts is that there is nothing tying the emails in dispute to Mr.

Cadenhead's decision.  When BMG asked Mr. Cadenhead about these emails—none of which lists

---

[3] Extensive record evidence confirms Cadenhead's uncontradicted trial testimony. *E.g.*, ECF 320, at ¶ 24 (Cadenhead Declaration) ("When it became clear that Rightscorp would not alter its objectionable notices, in March 2011 I advised the Customer Safety Team that Rightscorp's notices were not proper, that Cox should not forward them to account holders, and that CATS should 'blacklist' and automatically delete complaint notices from Rightscorp."); *id.* ("Based on these discussions, in October 2011, I approved blocking Rightscorp's emails at the mail server level to prevent Cox's email system from receiving the bodies of Rightscorp's improper notices and clogging the CATS system…"); *id.* at ¶ 19 ("While there was a consensus on the decision, I considered it ultimately mine to make…."); ECF 388 (Cadenhead Declaration, filed under seal Oct 13, 2015) at ¶ 8 ("Shortly after joining Cox, I took responsibility for legal matters related to the DMCA, including supervision of the graduated response process system and the infringement complaint handling process….").

After Mr. Cadenhead left the company in 2013, Ms. Linda Trickey assumed his responsibilities. There is no suggestion that the emails reveal anything about her state of mind in maintaining Mr. Cadenhead's decision to block the Rightscorp notices.

Mr. Cadenhead as sender or recipient—at the last trial, he unequivocally testified that he had never seen them, was not aware of them, had no knowledge of their contents from any source, and denied that they reflected Cox's policies.  Indeed, for several of BMG's supposedly "highly relevant" emails (including PX1382, PX1984, and PX2060), Mr. Cadenhead did not even know the person who had sent the email.  For example, he testified as follows with respect to emails in dispute:

| Trial Ex. # | Testimony of Cox's Privacy Counsel |
|---|---|
| PX1358 | "Q. Were you aware of that?<br>A. No, I—and, I mean, I can interpret it, but, no, sir."<br>(Trial Tr. 1444:13-14) |
| PX1378 | "A. I did not see this e-mail and this did not reflect Cox's—<br>THE COURT: Well, the question was, were you familiar with it, and the answer is yes or no.<br>A. No, sir. Thank you. No, sir."<br>(Trial Tr. 1436.) |
| PX1382 | "Q … This is an e-mail from somebody named Casey Fraysier. Do you know who that is?<br>A. No, sir….<br>Q: And who is it addressed to?<br>A: Joseph Sikes and Jason Zabek."<br>(Trial Tr. 1438:16-24)<br><br>"A. That's not our policy …<br>Q. You didn't know about this e-mail either?<br>A. No, sir, I did not."<br>(Trial Tr. 1439:18-19) |
| PX1388 | "… If there was the procedure, I wasn't aware of it. And I wasn't aware of the e-mail."<br>(Trial Tr. 1437:2-3)<br>"I am certainly not aware of this e-mail, and I don't know anything about what you described."<br>(Trial Tr. 1437:6-7) |

| Trial Ex. # | Testimony of Cox's Privacy Counsel |
|---|---|
| PX1984 | "Q. Now, do you know who Mr. Vredenburg is? <br> A. I don't believe so." <br> (Trial Tr. 1446:20-21) <br> "A. That's not a correct interpretation of our process …" <br> (Trial Tr. 1447:12) <br> "A. No. That's not our policy." <br> (Trial Tr. 1447:19) |

In arguing that the decision to blacklist, and later block, Rightscorp's notices, was made not by Mr. Cadenhead but rather by the authors and recipients of the disputed emails, BMG ignores or misstates the record. Opp. 12-15. According to BMG, because Mr. Cadenhead testified he provided "advice" about the DMCA, he was not "the ultimate decision-maker." Opp. 13. This is a *non sequitur*: obviously a decision-maker (let alone Privacy Counsel) is not precluded from offering advice; and, as noted, Mr. Cadenhead was unequivocal about owning these decisions.

BMG makes much of testimony that Mr. Cadenhead did not himself determine the "mechanism" by which Cox should handle the Rightscorp notices, or program the required "parameters and instructions" into Cox's CATS system. Opp. 13. But that cannot overcome the clear evidence that he *did* make the decision to block the Rightscorp notices at the server level. Trial Tr. 1408:10-14. It is completely unsurprising that technical operational decisions implementing that decision were made by Cox's technical team: that does not make them the decision-makers. In any event, we reiterate that we are not arguing that evidence concerning the technical implementation of the decisions concerning Rightscorp lacks relevance, or that *relevant* emails should be excluded.

BMG urges the Court to find that *all* of the emails at issue are relevant, on the basis that others at Cox were also "involved" in the decision-making. Opp. 13. But BMG supports this argument by citing numerous emails that Cox does *not* seek to exclude (including PX1993,

PX2013, DTX1895, PX2022, and PX1322), as well as extensive citations of depositions and other testimony that Cox does not here challenge.  Opp. 12-15.[4]  The question is whether the emails that Cox *does* seek to exclude played a role in Mr. Cadenhead's decision to block the Rightscorp emails.  The answer is that they did not.  BMG fails to make such any showing to the contrary.

Instead, re-echoing its theme that the Court should simply admit everything because it is all relevant to "Cox's actions as a whole," BMG argues that the "intent" of any employee "can be relevant to the analysis of the decision-maker's motivations."  Opp. 15.  But as BMG's own cases hold, at a minimum BMG must show a "clear nexus" of the emails to "crucial" issue of "*the decision-maker's intent.*"  *Merritt v. Old Dominion Freight Line*, 601 F.3d 289, 301 (4th Cir. 2010) (emphasis added) ("It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the … decision in question, the materiality of stray or isolated remarks is substantially reduced").  Other circuits concur.  *See, e.g., McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686-87 (7th Cir.1991)) (finding remarks "of marginal relevance" because "they were not made by decision makers"); *O'Connor v. Viacom Inc./Viacom Int'l Inc.*, 104 F.3d 356, 1996 WL 722620, *3 (2d Cir. Dec. 16, 1996) (holding, in the employment context, that "stray remarks cannot defeat summary judgment … unless they are both proximate and related to the … decision in question.").  Here again, therefore, BMG's argument sweeps far too broadly.

---

[4] BMG mischaracterizes PX1392, which Cox does seek to exclude, as an email chain between Zabek and Rightscorp's Robert Steele.  Opp. 13.  BMG omits the salient fact that the principal email in the chain is an irrelevant communication from Zabek to unrelated third parties.  *See* Trial Tr. 711:19-713:12.  To be clear, Cox does not here argue that the portions of this exhibit concerning communications between Steele and Zabek are irrelevant.

**C.      Previous Rulings of This Court and the Fourth Circuit Do Not Foreclose the
          Court from Considering This Newly Presented Issue.**

Unable to make a convincing case for relevance under the legal standard that the Fourth

Circuit held governs this case, BMG resorts to arguing that this Court resolved the issue of the

admissibility of these emails at the first trial, and that the Court should therefore skip past both the

effect of the Fourth Circuit's opinion on the scope of relevant evidence and the fact that the emails

in dispute are not probative of the motives behind the decision to block the Rightscorp notices.

BMG is wrong.

As a preliminary matter, BMG cites no authority preventing a court from considering an

evidentiary ruling anew on retrial, let alone where the law defining the key issue to be decided by

the jury has changed and is the occasion for the retrial.  The law is to the contrary.  *See United

States v. Todd*, 920 F.2d 399, 403-04 (6th Cir. 1990) (trial court "has broad discretion on eviden-

tiary rulings … in the context of a new trial"); *U.S. v. Watson*, 146 F. Supp. 258, 259 (D.D.C.1956)

(fact that defendant did not move to suppress certain evidence prior to first two trials does not

preclude him from making the motion prior to third trial); *United States v. Int'l Bus. Machines

Corp.*, 87 F.R.D. 411, 414 (S.D.N.Y. 1980) ("each evidentiary ruling is an exercise of judgment[,]

an interplay of many considerations, such as relevancy, cumulativeness, and probative value, to

name but a few, that may vary from ruling to ruling.").  And here, the Fourth Circuit's focused

legal standard for contributory infringement and willful blindness means that neither of the bases

upon which the Court previously admitted these emails remains relevant.

*First*, it is simply not relevant under the Fourth Circuit's legal standard if, as this Court

previously found, "the e-mails … go to the actual knowledge of the [Cox DMCA safe harbor]

program and the fact that Cox was not going to follow it."  *Id.* at 30:9-11.  That is precisely the

type of awareness of generalized infringement that the Fourth Circuit declared was insufficient to

show contributory infringement.  *Supra* at 5.  Moreover, the question whether Cox's DMCA complaint procedure qualified it for safe harbor simply goes to whether that defense was available, not to whether a *prima facie* case of contributory infringement could be made out in the first place. And since the safe harbor defense is out of the case at this point, this issue is moot.[5]

*Second*, the Court alternatively admitted the emails because they were potentially "relevant to vicarious liability."  But since the jury found that Cox was not vicariously liable (and BMG did not appeal that finding), that theory is no longer available to BMG.  *Id.*

**D.     BMG's Argument That Pre-February 2012 Emails Are Relevant Because They "Evidence the Development of the Cox Policies at Issue" Does Not Withstand Scrutiny.**

BMG's contention that the pre-February 2012 emails at issue are *not* improper propensity evidence is disingenuous, as that is exactly how they will be treated by the jury—which is why such evidence is routinely excluded at trial.

**1.     BMG's Use of Pre-February 2012 Cox Emails Is Improper Propensity Evidence.**

First, at a minimum, BMG's argument for admission of the pre-February 2012 emails implicitly recognizes that the disputed emails should not be used to attempt to prove a propensity on Cox's part to turn a blind eye to infringement, and we would respectfully urge the Court to at least order *in limine* that the emails cannot be used for this purpose.

---

[5] Indeed, if that were not so, then the Fourth Circuit could have disposed of this entire case by analyzing only the DMCA arguments and, upon affirming this Court's summary judgment decision, ruled that Cox was liable to BMG.  Instead, the court addressed the issue of contributory copyright infringement at length, confirming that Cox might well not be liable for contributory copyright infringement under *Sony* and *Grokster* even if it does not qualify for any DMCA safe harbor.  *See generally* Lee A. Holler, *Legal Protection of Digital Information* § III.B.1. (noting that a "safe harbor" in general does not mean that a person is in danger, it just means that "safety is not insured" and, in the context of the DMCA, that one safe harbor requirement not being met is not an indication that an infringement has occurred).

Such an *in limine* order would not be sufficient on these facts, however, if indeed it could ever be.  The problem, as the courts have recognized, is that "[w]hen prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered."  *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994); *State Farm Mut. Auto. Ins. Co. v. Accident Victims Home Health Care Servs., Inc.*, 467 F. App'x 368, 373 (6th Cir. 2012) ("Admission of the propensity evidence and lack of proper instruction to the jury created prejudice to defendants …, it affected defendants' substantial rights, and the evidentiary and instructional errors were not harmless."); *Gonzalez v. Olson*, 2015 WL 3671641, at *23 (N.D. Ill. June 12, 2015) ("Other-act evidence raises special concerns under FRE 403 because it almost always carries some risk that the jury will draw the forbidden propensity inference.  Thus, evidence that is slightly probative under a non-propensity theory but nevertheless has a high likelihood of leading a jury to draw a forbidden propensity inference must be excluded.") (quotations marks and citations omitted).  Here, the absence of a clear nexus between the disputed emails and the actual issues leaves the jury with nothing to do with this evidence except to treat it as propensity evidence.

## 2.    BMG Fails to Demonstrate That Inflammatory Emails Are More Probative Than Prejudicial.

BMG also urges that various versions of a particularly prejudicial email thread (PX1392, PX1340, PX1427) should be admitted as "highly relevant" simply because they mention the DMCA—which, the argument goes, is relevant because Cox's entire DMCA regime was part of a "scheme" intended to give Cox "comfort" in blocking Rightscorp's notices.[6]  This argument fails

---

[6] BMG's repeated attempt to draw a distinction between "prejudicial" and "unfairly prejudicial" evidence is sheer logic-chopping.  Opp. 3, 18.  As shown by the title of Fed. R. Evid. 403 ("Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons"), the two terms are equivalent.

on its face: Cox's DMCA policies and practices date back to the law's passage nearly two decades ago, and plainly have nothing whatsoever to do with Cox's 2010 decision to reject notices containing settlement demands, or its 2011 decision to blacklist (and later block) Rightscorp's notices, or any alleged infringements of BMG's works during or after 2012.  This is simply another attempt to bring in irrelevant information about the no-longer-extant DMCA safe harbor issue.  And the effect can only be to confuse the jury as to the actual dispute and, once again, to attempt to substitute "generalized" evidence of knowledge of infringement for the Fourth Circuit's mandated proof of actual notice or willful blindness.

BMG's second theory of relevance is that the emails are "highly probative" of Cox's "indifference to its legal obligations and contempt for the law … while seeking to develop grounds to evade liability," and therefore relevant to willfulness.  Opp. 19.  This theory does not withstand scrutiny: because the DMCA's safe harbors are now irrelevant and in any event entirely optional—points confirmed by the Fourth Circuit's remand for a new trial on contributory infringement after affirming summary judgment for BMG on the availability of the DMCA safe harbor—Cox's failure to successfully invoke the statutory protection cannot be affirmative evidence of an intent to contribute to its subscribers' infringement. BMG's overwrought allegations fall flat.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant Cox's motion *in limine* to preclude reference to the emails Cox has identified.

Dated: July 31, 2018

Respectfully submitted,

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
Steffen N. Johnson (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com
Email: sjohnson@winston.com

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
Seth E. Spitzer (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
Email: melkin@winston.com
Email: tlane@winston.com
Email: sspitzer@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
(415) 591-1000
Email: jgolinveaux@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600
Email: mbrody@winston.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 31, 2018, a copy of the foregoing Defendants' Reply Memorandum in Further Support of Their Motion *in Limine* to Preclude Evidence and Testimony as to Certain Internal Cox Emails and Communications Concerning Cox's Termination Policies and Treatment of Alleged Infringers was filed electronically with the Clerk of Court using the ECF system which will send notifications to ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*