IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) Civil No. 1:14-cv-1611 ) |
| v. | ) Hon. Liam O'Grady ) |
| COX ENTERPRISES, INC. *et al.*, | ) ) |
| *Defendants*. | ) ) |

## ORDER

This matter comes before the Court on Defendant Cox's Motion to Reconsider the Court's Order Granting Plaintiffs' Motion in Limine No. 3 (Dkt. 928) and Motion for a Pre-trial Instruction Regarding the Import of Testimony Concerning the Digital Millennium Copyright Act (Dkt. 938). For the reasons explained below, both motions are **DENIED**.

I. Motion to Reconsider

Cox moves for reconsideration of the Court's ruling on Motion in Limine No. 3, which prohibited Cox and its experts from referring to the Copyright Alert System (CAS) and the practices of other internet service providers (ISPs) in responding to copyright infringement notices. Cox argues that "evidence of the industry-designed CAS system and Cox's discussions with industry goes directly to *their effect* on Cox's practices and its *state of mind*" and that "the proposed evidence is probative of what Cox *believed* were reasonable measures to take in response to notices of infringement." Dkt. 933 at 2, 4. Specifically, Cox seeks to have Matthew Carothers testify that "companies within the ISP industry . . . regularly exchange best practices and, around 2010, the industry began discussing CAS as an approach to combating copyright

1

infringement" and about "specific conversations [he had] with certain ISPs, such as CenturyLink, about processing Rightscorp's notices." Dkt. 983 at 1-2. Through Mr. Carothers's testimony, Cox intends to show what Cox believed about its system and Rightscorp during the relevant time period, specifically that Cox's response system "exceeded what it understood other ISPs were doing" and that Cox did not believe its enforcement system was a sham. *Id.* at 2. For several reasons, the Court finds it appropriate to deny Cox's motion.

First, the Court has previously considered and ruled upon this issue. In briefing from the first trial, Cox opposed BMG's motion *in limine* on the grounds that "jurors will require *some* context for determining what are 'appropriate circumstances' and what is 'reasonable implementation' of a policy for addressing 'repeat infringers.' The CAS, and information about other ISPs' practices for addressing infringement allegations, both help provide that context and will almost certainly be useful for the jury." Dkt. 626 at 2. Cox characterized the CAS as an "agreed-upon set of best practices among major industry players for addressing notices of alleged infringement, and as such it is a relevant guidepost of industry practices for other entities that deal with infringement allegations." *Id.* at 4. The crux of Cox's argument was that the CAS "plainly has probative value that would help the jury assess the reasonableness of Cox's graduated response procedures." *Id.* at 5.

Upon consideration of the parties' briefs and the arguments presented at the November 20, 2015 hearing, the Court granted BMG's motion to prohibit Cox from referencing the CAS or the practices of other ISPs. Dkt. 691 at 3. The Court concluded that a comparison of Cox's policies to the policies of other ISPs would be irrelevant, prejudicial, and likely to mislead the jury. The Court was also concerned about the credibility of Cox's proposed evidence, as Cox's witnesses would not have independent knowledge of the policies of other ISPs.

Cox describes its current motion as presenting a different argument, asserting that the proposed evidence is relevant to willful blindness, and pointing to the Fourth Circuit's focus on the issues of intent. *See* Dkt. 983 at 4-5 ("Accordingly, Cox asks the Court to reconsider its ruling in light of evidence presented in the previous trial and the Fourth Circuit's focus on 'intent' in deciding liability for contributory infringement."). But the willful blindness issue is not new to this case, or even to this motion *in limine*. Addressing BMG's motion in oral arguments before the first trial, Cox argued that testimony about how other ISPs handled Rightscorp notices "puts into perspective Cox's decisions and Cox's choices in not handling the notices, *which goes to allegations of willful blindness to avoid knowledge of infringement*." Dkt. 676 at 71:2-8 (emphasis added). Thus the Court is not persuaded that Cox's motion addresses an issue newly relevant in light of the Fourth Circuit's decision, and declines to depart from its previous ruling.

Second, the Court does not find that Cox's proposed evidence is admissible under the state of mind exception to the hearsay rule. Putting aside the question of whether this evidence is actually being offered for the truth (which the Court believes it is), even if the testimony were to be admitted under the state of mind exception, the gap between the reliability of the proposed testimony (an individual Cox employee's conversations with other ISPs' abuse teams) and the broad purpose for which it is offered (to demonstrate that Cox's abuse system was "far from a sham" (Dkt. 983 at 3)) is too great to justify its admission. *See Hall v. CIA*, 538 F. Supp. 2d 64, 69 (D.D.C. 2008) ("[I]f any third party statement could be admitted merely because it was heard (and 'perceived') by the witness, the entirety of hearsay jurisprudence would be nullified.").

The proposed testimony is of dubious reliability at best. As was the case in the first trial, there is no evidence in the record about how other ISPs handled infringement notices. No third-

party discovery took place to determine if and when and why other ISPs took action on the notices. As such, the jury would be presented only with Mr. Carothers's impressions of other ISPs' practices based on his conversations with their abuse teams. But Mr. Carothers has no personal knowledge of these issues.[1]

In its Reply, Cox offers the conclusory assertion that "[Mr.] Carothers meets the requirements to testify on these issues," but fails to cite to any source from which the Court could conclude that Mr. Carothers has personal knowledge of the matters upon which he would testify. *See id.* at 10.[2] Cox claims that "Mr. Carothers's communications with CenturyLink and others about processing Rightscorp's notices is 'knowledge of notice of a concrete information' and a reasonable application of the state of mind exception." *Id.* at 9; *see also* Dkt. 930 at 3 ("[Mr.] Carothers will testify that he maintained relationships with other ISP abuse teams and would often trade information about specific complainants, including Rightscorp."). As BMG notes, however, Mr. Carothers's awareness of CAS does not show that CAS or the actions of other ISPs impacted Cox's thinking about its policies, nor does the fact that Mr. Carothers communicated with other abuse teams about Rightscorp's notices establish his personal knowledge of Cox's thinking regarding how to handle infringement, termination, and DMCA notices. For these reasons, the Court finds that the proposed testimony would be speculative, unreliable, and not helpful to the jury.

Third, the Court denies Cox's motion because granting Cox's motion would reward questionable discovery practices. Cox did not disclose its theory that other ISPs' practices were relevant to Cox's decision-making in its interrogatory responses or in the testimony of its

---

[1] Indeed, Cox did not even identify Mr. Carothers as someone with knowledge of CAS or the practices of other ISPs in its original opposition to BMG's motion *in limine*. *See* Dkt. 626.

[2] Earlier, Cox states that "the proffered testimony [is] all based on [Mr.] Carothers's personal involvement as a Cox representative." Dkt. 983 at 10. In support, Cox cites to a portion of the trial transcript dealing primarily with Mr. Zabek, and to a case broadly addressing requirements for a state of mind defense. *See id.*

30(b)(6) witnesses. Cox did not state in its interrogatory responses that it based its decisions on the CAS or discussions with other ISPs. *See* Dkt. 968 at 6. Cox asserts that the proposed evidence is "consistent with the position Cox has taken throughout the entire litigation," and describes that position as "more communication is effective in curtailing the activity that leads to the allegations [of infringement]." Dkt. 983 at 6-7. It is not clear how this could have given BMG fair notice of the theory that Cox relied on CAS and other ISPs' practices in formulating its abuse policies. Therefore it would be unfairly prejudicial to permit Cox to present testimony in support of a theory that BMG did not have the opportunity to test in discovery.

II. <u>Motion for Pre-trial Instruction</u>

Cox also seeks a pre-trial jury instruction to give the jury "essential context" for the Digital Millennium Copyright Act (DMCA). Cox's newly proposed instruction includes a statement that "[s]eeking protection from liability under the DMCA is entirely voluntary." Dkt. 939 at 4. This language is familiar to the Court from Cox's previously proposed instruction that the "DMCA's safe harbor provisions are optional." Dkt. 681 at 28. The Court previously declined to adopt Cox's proposed DMCA instruction, and the Fourth Circuit upheld the Court's decision. *See* Dkt. 893 at 35. The Court does not find good cause to alter its decision regarding the "voluntary" or "optional" nature of the DMCA, nor does the Court find good cause to offer a DMCA instruction absent language that the "DMCA is not a defense in this case and must be disregarded."

The parties agree that a DMCA instruction at the beginning of the trial would be helpful to ensure the jury can understand the evidence that will be presented. Dkt. 963 at 2; Dkt. 979 at 2 (noting the parties' agreement that some DMCA instruction be given to the jury prior to the presentation of evidence). Indeed, the parties are so close to agreement that the Court's

intervention hardly seems necessary. *See* Dkt. 979 at 3 (countering BMG's proposed language of "You will hear some testimony and see some documents that refer to the Digital Millennium Copyright Act, commonly known as the DMCA" with Cox's proposed language of "In the course of the next several days, you will hear some testimony and see some documents that contain the term "DMCA." "DMCA" is an abbreviation for "Digital Millennium Copyright Act").[3]

Accordingly, the Court will give the DMCA instruction from the first trial to the jury at the outset of this case, modifying the language to be forward-looking. *See* Dkt. 963 at 4 (proposing this course of action); Dkt. 979 at 6 ("At a minimum, Cox requests that the Court use the instructions that it used in the first trial, omitting any reference to the theory of vicarious liability.").[4]

For these reasons, and for good cause shown, the Court hereby **DENIES** Cox's motions (Dkt. 928 & Dkt. 938).

It is **SO ORDERED.**

August 9, 2018
Alexandria, Virginia

/s/ *Liam O'Grady*
Liam O'Grady
United States District Judge

---

[3] To ensure a fair and expeditious completion of this trial, and to preserve judicial resources, the Court reminds the parties that their obligation to meet and confer is not a mere formality. Before submitting a motion to this Court, the parties should engage in a "good-faith effort to narrow the area of disagreement." Local Rule 7(E).
[4] The Court will address the parties' dispute over the vicarious liability claim in a separate order, as the issue is raised in a separate motion. *See* Dkt. 944.