IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> COX ENTERPRISES, INC., *et al.*, <br><br> *Defendants.* | Civil No. 1:14-cv-1611 <br><br> Hon. Liam O'Grady |

## ORDER

This matter comes before the Court on Plaintiff BMG's Motion to Preclude Reference to Changes after the Relevant Time Period (Dkt. 946). For the reasons explained below, the motion is **GRANTED**.

BMG moves to (1) exclude any reference by Cox to changes in Cox's practices for handling infringement subsequent to the time period at issue, and (2) to exclude testimony or evidence of subsequent changes to the music infringement and economic environment. Dkt. 947 at 1. Cox agrees that the evidence should be limited to the timeframe in which the alleged infringement occurred, unless BMG seeks deterrence-based statutory damages. Dkt. 959 at 1. In that case, Cox argues, it must be permitted to introduce proof that the conduct to be deterred is no longer being pursued. *Id.*

### I.   Reference to changes after the relevant time period

BMG argues that it would be misleading to allow Cox to argue that its changed practices make deterrence unnecessary while hiding from the jury the fact that the changes occurred only after a substantial statutory damages award (one which presumably at least partially contributed

1

to Cox's decision to change its practices). Dkt. 984 at 1; *see also* Dkt. 943 (Cox's separate motion asking the Court to preclude parties "from referring to the prior trial, including, but not limited to, by making references to the prior trial's verdict and damages award"). The Court agrees with BMG.

It would be unfair to permit Cox to present evidence of changes it has made to its policies while simultaneously precluding BMG from any reference to the prior trial or the prior jury's verdict. More importantly, permitting Cox to present information about changes to its policies in a vacuum would create a misleading picture for the jury. *See* Fed. R. Evid. 403 (a court may exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury). Therefore, the Court precludes any reference by Cox to changes in Cox's practices for handling infringement subsequent to the pre-2015 timeframe.

BMG may argue for deterrence-based damages because even if Cox's policies have changed, damages could still play a deterrent role; a statutory damages award could deter Cox from reverting to its old infringement policies. And, of course, a damages award could deter other would-be infringers who have not yet changed their infringement policies. *See Joe Hand Promotions v. Maupin*, 2:15-cv-06355, 2018 WL 2417840, at *9 (E.D.N.Y. May 25, 2018) ("[D]amages should deter future would-be infringers"). It is appropriate for BMG to present these arguments to the jury.[1]

## II. Evidence of changes to the music infringement environment

During the first trial, BMG's counsel stated that "another factor suggesting a fairly significant award of statutory damages is the massive worldwide scope of the infringement. This

---

[1] BMG expresses doubt that Cox's policies have in fact changed, and argues that discovery would be necessary to clarify the issue. Dkt. 947 at 1; Dkt. 984 at 6.

2

isn't like somebody going down and copying one CD in their basement and stealing it. Once their users go down and start uploading and downloading BMG songs on BitTorrent, like I say, it spreads like a virus." Dkt. 984 at 5. Cox asserts that if BMG intends to make a similar argument on retrial, BMG "must demonstrate that the threat *currently posed* by consuming music through illegal downloads over the BitTorrent protocol is still 'massive and worldwide.'" Dkt. 959 at 4. The gist of Cox's argument appears to be that fewer users engage in digital downloads today than they did at the time of the first trial, and therefore any damages award should be reduced in proportion to the reduced risk that one improper download would lead to many other improper downloads. Presumably Cox also refers to Cox's reduced incentive to retain users who repeatedly infringe, as such users will comprise an increasingly small percentage of Cox's user base.

The Court agrees that evidence and testimony about recent changes to the music infringement landscape would be inappropriate in the absence of discovery on that issue. *See Guilford Nat. Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921 (4th Cir. 1962) ("[O]ne important purpose of discovery is to disclose all relevant and material evidence before trial in order that the trial may be an effective method for arriving at the truth and not a battle of wits between counsel.") (internal quotations omitted). Cox asserts that "evidence in the record already demonstrates that this dramatic shift in music consumption from digital downloads to streaming services was underway at the time of the last trial." Dkt. 959 at 5. But Cox cites only to the testimony of its expert, Dr. Ryan Sullivan, who testified that "[t]here has been a big change in the music industry over the past years such that streaming . . . that's been increasing over time tremendously" and "fundamentally changed the supply and demand equation for the music

industry." *Id.* This is hardly sufficient evidence upon which to base an argument that the music infringement landscape has dramatically changed from 2015 to 2018.

Cox's proposed solution to bring Dr. Sullivan's testimony up to date is clearly unworkable; Cox suggests that he could "review data from 2015-present to assess the current split between digital downloads and streaming." *Id.* Cox's solution would require reopening discovery, which this Court declines to do less than two weeks before trial. *See* Order, Dkt. 920 (holding, on June 20, 2018, that reopening discovery so soon before the August trial would be an unfair burden on BMG, as it would create additional cost and would draw counsel's time and attention away from other trial preparation duties). For these reasons, Cox may not reference changes to the music infringement industry (specifically any reduced popularity of digital downloads).

As for BMG, any deterrence-based arguments that reference the scope of music infringement on the Internet must be based on evidence in the record. Because there is no evidence in the record regarding the state of music infringement today, BMG may not state or suggest to the jury that BMG has any knowledge of the scope of music infringement currently. BMG may refer to the state of the music infringement landscape in the pre-2015 time period, but must make clear to the jury by reference to dates or use of the past tense that BMG is not representing its knowledge of music infringement currently.

### III. Conclusion

Therefore, having considered the parties' arguments and the record in this case, and for good cause shown, the Court hereby **GRANTS** BMG's Motion to Preclude Reference to Changes after the Relevant Time Period (Dkt. 946). Cox may not reference changes to its practices for handling infringement subsequent to the pre-2015 timeframe. BMG may refer to the

scope of music infringement and the state of the music industry only if BMG places its comments within the accused infringement timeframe.

It is **SO ORDERED.**

August 21, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge